**UNITED STATES DISTRICT COURT**
**OFFICE OF THE CLERK**
**WESTERN DISTRICT OF PENNSYLVANIA**
**P. O. BOX 1805**
**PITTSBURGH, PA 15230**
WWW.PAWD.USCOURTS.GOV

03 - 61832



ROBERT V. BARTH, JR.
CLERK OF COURT
412-208-7500

IN REPLYING, GIVE NUMBER
OF CASE AND NAMES OF PARTIES

CIV - DIMITROULEAS

DATE: September 26, 2003

MAGISTRATE JUDGE
SELTZER

Carlos K. Juenke, Clerk
Clerk of Courts for the Southern
   District of Florida
Federal Courthouse Square
301 North Miami Avenue
Miami, FL 33128-7788

RE: SHANNON M. CAIRNS vs. FACTORY AUTHORIZED
MEDICAL SCOPE REPAIR, et al.
Civil Action No. 02-1236

Dear Clerk:

On September 25, 2003, this Court entered an order transferring the above entitled case to your district.  Enclosed please find a certified copy of said order together with all other original papers and a certified copy of the docket entries.

Please acknowledge receipt for same on copy of this letter provided.

Very truly yours,

ROBERT V. BARTH, JR.
CLERK OF COURT

By
Pat Hill
Deputy Clerk

Enclosure

cc: James B. Lieber, Esq..
    Lieber & Hammer, P.C..
    5528 Walnut Street
    Pittsburgh, PA 15232

    Cathy Bissoon, Esq.
    Reed, Smith Shaw & McClay
    435 Sixth Avenue
    Pittsburgh, PA 15219

    George A. Lane, Esq.
    2929 E. Commercial Blvd.
    Suite 205
    Fort Lauderdale, FL  33308

03-61832

CLOSED

CIV-DIMITROULEAS

U.S. District Court
Western District of Pennsylvania (Pittsburgh)
CIVIL DOCKET FOR CASE #: 02-CV-1236

CAIRNS v. FACTORY AUTHORIZED, et al                    Filed: 07/15/02
Assigned to: Judge Gustave Diamond          Jury demand: Plaintiff
Demand: $0,000                              Nature of Suit:  442
Lead Docket: None                           Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 42:2000 Civil Rights: Other

MAGISTRATE JUDGE
SELTZER

FILL by
INTAKE                    D.C.

OCT - 3 2003

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

SHANNON M. CAIRNS                    Samuel J. Cordes
     plaintiff                       [term  09/11/02]
                                     [COR LD NTC]
                                     Mary R. Roman
                                     [term  09/11/02]
                                     [COR LD NTC]
                                     Ogg, Cordes, Murphy & Ignelzi
                                     245 Fort Pitt Boulevard
                                     Fourth Floor
                                     Pittsburgh, PA 15222
                                     (412) 471-8500

                                     James B. Lieber
                                     [COR LD NTC]
                                     Thomas M. Huber
                                     [COR]
                                     Lieber & Hammer
                                     5528 Walnut Street
                                     Pittsburgh, PA 15232
                                     (412) 687-2231

                                     CERTIFIED FROM THE RECORD
                                     Date 9-26-03
                                     ROBERT V. BARTH, JR., CLERK
                                     By

   v.                                                    Deputy Clerk

FACTORY AUTHORIZED MEDICAL           Cathy Bissoon
SCOPE REPAIR                         (412) 288-3070
     defendant                       [COR LD NTC]
                                     Reed Smith
                                     435 Sixth Avenue
                                     Pittsburgh, PA 15219-1886
                                     (412) 288-3131

cat / div

Case #   02CV61832

Judge  WPD       Mag  SELTZEN        George A. Lane
                                     [COR LD NTC]
Mstn fip          Fee pd $           2929 East Commercial Boulevard
                                     Suite 700
Receipt #                            Ft. Lauderdale, FL 33308
                                     (954) 776-8284

Proceedings include all events.
2:02cv1236 CAIRNS v. FACTORY AUTHORIZED, et al                    CLOSED


MEDICAL DEVICE SOLUTIONS           George A. Lane
        defendant                  (See above)
                                   [COR LD NTC]


JEFF TRANK                         George A. Lane
        defendant                  (See above)
                                   [COR LD NTC]

```
Proceedings include all events.
2:02cv1236 CAIRNS v. FACTORY AUTHORIZED, et al                    CLOSED

7/15/02   1      COMPLAINT with summons issued; jury demand   Filing Fee
                 $150.00 Receipt # 4798 (plh) [Entry date 07/15/02]

7/31/02   2      ORDER that the Clerk of Court directly reassign the above
                 captioned case to District Judge Gustave Diamond for all
                 further proceedings. ( signed by Judge Robert J. Cindrich
                 on 7/31/02 ) CM all parties of record. (plh)
                 [Entry date 08/01/02]

7/31/02   --     CASE reassigned to Judge Gustave Diamond (plh)
                 [Entry date 08/01/02]

8/5/02    3      RETURN OF SERVICE executed as to FACTORY AUTHORIZED,
                 MEDICAL DEVICE SOL, JEFF TRANK 7/17/02 Answer due on 8/6/02
                 for FACTORY AUTHORIZED, for MEDICAL DEVICE SOL, for JEFF
                 TRANK (plh) [Entry date 08/05/02]

8/13/02   4      MOTION by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
                 TRANK for George A. Lane to Appear Pro Hac Vice   Filing
                 Fee $ 40.00 Receipt # 5231 with Proposed Order. (plh)
                 [Entry date 08/14/02]

8/15/02   5      Stipulation by SHANNON M. CAIRNS, FACTORY AUTHORIZED,
                 MEDICAL DEVICE SOL, JEFF TRANK Extending Time  with
                 proposed order. (plh) [Entry date 08/15/02]

8/15/02   --     ORDER upon motion granting [4-1] motion for George A. Lane
                 to Appear Pro Hac Vice   Filing Fee $ 40.00 Receipt # 5231
                 (signed by Judge Gustave Diamond on 8/15/02) CM all parties
                 of record. (plh) [Entry date 08/15/02]

8/19/02   --     ORDER upon motion granting [5-1] stipulation Extending
                 Time,  reset Answer deadline to 8/29/02 for JEFF TRANK,
                 for MEDICAL DEVICE SOL, for FACTORY AUTHORIZED ( signed
                 by Judge Gustave Diamond on 8/19/02 ) CM all parties of
                 record. (ka) [Entry date 08/20/02]

8/29/02   6      MOTION and MEMORANDUM OF LAW by FACTORY AUTHORIZED, MEDICAL
                 DEVICE SOL, JEFF TRANK to Dismiss with Proposed Order. (plh)
                 [Entry date 08/29/02]

8/29/02   7      AFFIDAVIT by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
                 TRANK Jeff Trank Re: [6-1] motion to Dismiss by JEFF TRANK,
                 MEDICAL DEVICE SOL, FACTORY AUTHORIZED (plh)
                 [Entry date 08/29/02]

9/4/02    8      ORDER, pltf's Response to Motion set to 9/19/02 for defts'
                 [6-1] motion to Dismiss. ( signed by Judge Gustave Diamond
                 on 9/4/02 ) CM all parties of record. (tt)
                 [Entry date 09/04/02]

9/6/02    9      MOTION by SHANNON M. CAIRNS for Extension of Time to file
                 response to motion to dismiss with Proposed Order. (ka)
                 [Entry date 09/06/02]
```

Proceedings include all events.
2:02cv1236 CAIRNS v. FACTORY AUTHORIZED, et al                    CLOSED

9/9/02    10      NOTICE of Attorney Appearance for SHANNON M. CAIRNS  by
                  James B. Lieber, Thomas M. Huber (jsp) [Entry date 09/09/02]

9/10/02   --      ORDER upon motion granting [9-1] motion for Extension of
                  Time to file response to motion to dismiss, Response to
                  Motion set to 10/19/02 for [6-1] motion to Dismiss.
                  (signed by Judge Gustave Diamond on 9/10/02) CM all parties
                  of record. (plh) [Entry date 09/10/02]

9/11/02   11      MOTION by SHANNON M. CAIRNS for Samuel J. Cordes, Mary R.
                  Roma to Withdraw as Attorney with Proposed Order. (plh)
                  [Entry date 09/11/02]

9/11/02   --      ORDER upon motion granting [11-1] motion for Samuel J.
                  Cordes, Mary R. Roma to Withdraw as Attorney (Terminated
                  attorney Mary R. Roman for SHANNON M. CAIRNS, attorney
                  Samuel J. Cordes for SHANNON M. CAIRNS  ( signed by Judge
                  Gustave Diamond  on 9/11/02 ) CM all parties of record. (plh)
                  [Entry date 09/11/02]

10/1/02   12      ORDER, to set Case Management Order Deadlines: Discovery
                  cutoff to 1/29/03; Pretrial Statements for Plaintiffs due
                  2/18/03; Pretrial Statements for Defendants due 3/10/03;
                  Pretrial Stipulations due 3/20/03 as stated more fully in
                  order. ( signed by Judge Gustave Diamond on 10/11/02 ) CM
                  all parties of record. (plh) [Entry date 10/01/02]

10/2/02   13      MOTION by SHANNON M. CAIRNS for Leave to Take Discovery on
                  Jurisdiction with Proposed Order. (plh)
                  [Entry date 10/02/02]

10/2/02   14      BRIEF by SHANNON M. CAIRNS in support of [13-1] motion for
                  Leave to Take Discovery on Jurisdiction by SHANNON M. (plh)
                  [Entry date 10/02/02]

10/3/02   --      ORDER upon motion granting [13-1] motion for Leave to Take
                  Discovery on Jurisdiction; Pltf will have 60 days to
                  conduct discovery on the issue of personal jurisdiction.
                  (signed by Judge Gustave Diamond on 10/3/02 ) CM all
                  parties of record. (plh) [Entry date 10/03/02]

11/22/02  15      MOTION by SHANNON M. CAIRNS for Schedule Date for Pltf to
                  respond to Defts' Motion to Dismiss with Proposed Order.
                  (plh) [Entry date 11/25/02]

11/26/02  --      ORDER upon motion granting [15-1] motion for Schedule Date
                  for Pltf to respond to Defts' Motion to Dismiss, Response
                  to Motion set to 1/6/03 for [6-1] motion to Dismiss.
                  (signed by Judge Gustave Diamond on 11/26/02 ) CM all
                  parties of record. (plh) [Entry date 11/26/02]

```
Proceedings include all events.
2:02cv1236 CAIRNS v. FACTORY AUTHORIZED, et al                    CLOSED
```

```
11/26/02 16    UNCONTESTED MOTION by FACTORY AUTHORIZED, MEDICAL DEVICE
               SOL, JEFF TRANK to Extend to Reply to Discovery with
               Proposed Order. (plh) [Entry date 11/26/02]

12/3/02  --    ORDER upon motion granting [16-1] motion to Extend to Reply
               to Discovery,  reset Preliminary Discovery deadline to
               12/28/02. ( signed by Judge Gustave Diamond on 12/3/02 )
               CM all of record. (plh) [Entry date 12/03/02]

12/27/02 17    MOTION by SHANNON M. CAIRNS to Extend Time for responding
               to deft's motion to dismiss with Proposed Order. (ka)
               [Entry date 12/27/02]

1/6/03   --    ORDER upon motion granting [17-1] motion to Extend Time for
               responding to deft's motion to dismiss, Response to Motion
               set to 1/28/03 for [6-1] motion to Dismiss  ( signed by
               Judge Gustave Diamond  on 1/6/03 ) CM all parties of
               record. (plh) [Entry date 01/06/03]

1/28/03  18    BRIEF by SHANNON M. CAIRNS in opposition to [6-1] motion to
               Dismiss by JEFF TRANK, MEDICAL DEVICE SOL, FACTORY
               AUTHORIZED (plh) [Entry date 01/28/03]

2/10/03  19    RESPONSE by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
               TRANK to [18-1] brief in opposition by SHANNON M. CAIRNS
               (plh) [Entry date 02/10/03]

2/12/03  20    RESPONSE by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
               TRANK to [18-1] brief in opposition  by SHANNON M. CAIRNS
               (plh) [Entry date 02/12/03]

2/13/03  21    MOTION by SHANNON M. CAIRNS for Leave to File a Surreply
               Brief in Opposition to Defts' Motion to Dismiss with
               Memorandum of Law with Proposed Order. (plh)
               [Entry date 02/13/03]

2/21/03  --    ORDER upon motion granting [21-1] motion for Leave to File
               a Surreply Brief in Opposition to Defts' Motion to Dismiss
               with Memorandum of Law; and Pltf's Surreply Brief in
               Opposition to Defts' Motion to Dismiss and Memorandum of
               Law attached to Pltf's motion is hereby deemed filed.
               (signed by Judge Gustave Diamond on 2/20/03 ) CM all
               parties of record. (plh) [Entry date 02/21/03]

2/21/03  22    SURREPLY BRIEF by SHANNON M. CAIRNS in opposition to [6-1]
               motion to Dismiss by JEFF TRANK, MEDICAL DEVICE SOL,
               FACTORY AUTHORIZED (plh) [Entry date 02/21/03]

3/3/03   23    MOTION by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
               TRANK for leave for Discovery and to file Response to
               Pltf's Surreply with Proposed Order. (plh)
               [Entry date 03/03/03]
```

```
Docket as of September 26, 2003 10:33 am              Page 5
```

Proceedings include all events.
2:02cv1236 CAIRNS v. FACTORY AUTHORIZED, et al                    CLOSED

3/3/03    --    ORDER upon motion granting [23-1] motion for leave for
                Discovery and to file Response to Pltf's Surreply; Defts
                shall have 30 days from the date of this Order to conduct a
                deposition of Pltf on her affidavit dated 2/13/03, request
                documentary evidence, and shall have 20 days after the
                conduct of the deposition to file a response to the
                Surreply granted on 2/20/03. ( signed by Judge Gustave
                Diamond on 3/3/03 ) CM all parties of record. (plh)
                [Entry date 03/03/03]

4/24/03   24    RESPONSE by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
                TRANK to [22-1] brief in opposition  by SHANNON M. CAIRNS
                (plh) [Entry date 04/24/03]

4/29/03   25    MOTION by SHANNON M. CAIRNS for Leave to File a Response
                to Defts' Response to Pltf's Surrely Brief in Opposition to
                Defts' Motion to Dismiss with Proposed Order. (plh)
                [Entry date 04/29/03]

4/30/03   --    ORDER upon motion granting [25-1] motion for Leave to File
                a Response to Defts' Response to Pltf's Surrely Brief in
                Opposition to Defts' Motion to Dismiss the attached to
                Pltf's motion is hereby deemed filed. ( signed by Judge
                Gustave Diamond on 4/30/03 ) CM all parties of record. (plh)
                [Entry date 04/30/03]

4/30/03   26    RESPONSE by SHANNON M. CAIRNS to [22-1] brief in opposition
                by SHANNON M. CAIRNS (plh) [Entry date 04/30/03]

5/12/03   27    MOTION by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF TRANK
                for Leave to File Reply to Pltfs' Response to Defts'
                Response to the Pltf's Surrely Brief in Opposition to Defts'
                Motion to Dismiss and Memorandum of Law with Proposed
                Order. (plh) [Entry date 05/12/03] [Edit date 05/20/03]

5/12/03   --    ORDER upon motion granting [27-1] motion for Leave to File
                Reply to Pltfs' Response to Defts' Response tot he Pltf's
                Surrely Brief in Opposition to Defts' Motion to Dismiss and
                Memorandum of Law; Defts' response to Pltf's Response to
                Defts' Response to Pltf's Surrely Brief in Opposition to
                Defts' Motions to Dismiss and Memorandum of Law attached to
                Defts' motion is hereby deemed filed. ( signed by Judge
                Gustave Diamond on 5/12/03 ) CM all parties of record. (plh)
                [Entry date 05/12/03]

5/12/03   --    w/27  RESPONSE by FACTORY AUTHORIZED, MEDICAL DEVICE SOL,
                JEFF TRANK to [26-1] response by SHANNON M. CAIRNS (plh)
                [Entry date 05/12/03]

8/29/03   --    w/6 MOTION by FACTORY AUTHORIZED, MEDICAL DEVICE SOL, JEFF
                TRANK to Transfer Case to the U.S. District Court for the
                Southern District of Florida with Proposed Order. (plh)
                [Entry date 09/26/03]

Docket as of September 26, 2003 10:33 am                    Page 6

```
Proceedings include all events.
2:02cv1236 CAIRNS v. FACTORY AUTHORIZED, et al                    CLOSED
```

```
9/25/03  28      OPINION dated 9/25/03 as stated more fulling in opinion.
                 (signed by Judge Gustave Diamond on 9/25/03 ) CM all
                 parties of record. (plh) [Entry date 09/26/03]

9/25/03  29      ORDER granting [0-1] motion to Transfer Case to the U.S.
                 District Court for the Southern District of Florida,
                 granting in part, denying in part [6-1] motion to Dismiss;
                 FURTHER ORDERED that insofar as defts' motion raise other
                 grounds for dismissal the motion be and the same hereby is
                 denied as moot. (signed by Judge Gustave Diamond on
                 9/25/03) CM all parties of record.   NOTICE MAILED (plh)
                 [Entry date 09/26/03]

9/25/03  --      Case Transferred to Southern District of Florida (plh)
                 [Entry date 09/26/03]
```

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNON M. CAIRNS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 02-1236 |
| | ) |
| FACTORY AUTHORIZED | ) |
| MEDICAL SCOPE REPAIR, | ) |
| MEDICAL DEVICE SOLUTIONS, | ) |
| and JEFF TRANK, | ) |
| | ) |
| Defendants. | ) |

O P I N I O N

DIAMOND, D.J.

Plaintiff Shannon M. Cairns ("plaintiff") brought this
employment discrimination action against defendants Factory
Authorized Medical Scope Repair ("FAMSR"), Medical Device
Solutions ("MDS") and Jeff Trank ("Trank") in connection with an
incident of alleged sexual harassment. Count I of plaintiff's
complaint sets forth a claim against defendants FAMSR and MDS for
gender discrimination in violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1) (the "sexual
harassment claim"). In Count II, plaintiff alleges that
defendants FAMSR and MDS retaliated against her for opposing
discriminatory employment practices (the "retaliation claim"). In
Count III, plaintiff sets forth a battery claim against Trank. In
response to plaintiff's complaint, defendants filed a motion to
dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal
jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(3) for improper

venue.  In the alternative, defendants request that the case be transferred to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1406.  For the following reasons, defendants' motion will be granted in part and denied in part.

## Background

FAMSR is Florida corporation with its principal office in Pompano Beach, Florida.  MDS is a defunct Florida corporation that had its principal office in Pompano Beach, Florida.  Trank is the president of both companies.  Plaintiff began working for FAMSR in June 1998, as a sales representative.  After being promoted to regional sales manager, plaintiff was based in New Jersey and her territory included New Jersey, New York, Pennsylvania, Ohio, West Virginia and North Carolina.  Affidavit of Jeff Trank in Support of Motion to Dismiss ("Trank Affidavit") (Document No. 7), ¶8.

In November 1999, plaintiff bought a home in New Jersey.  In the Fall of 2000, plaintiff also began to serve as regional sales manager for MDS.  In connection with her work for FAMSR and MDS, plaintiff "mostly worked in the field with the account representatives," but when she was not in the field, she worked out of her home office in New Jersey (the "New Jersey home office") or her parents' home in Charleroi (the "Charleroi home office"), depending on her travel schedule.  Affidavit of Shannon M. Cairns dated January 27, 2003 ("Cairns First Affidavit"), attached as Exhibit A to Plaintiff's Brief in Opposition to

Defendants' Motion to Dismiss ("Plaintiff's Opposition Brief") (Document No. 18), ¶¶25-26. Plaintiff's decision to work out of the Charleroi home office was not a condition of her employment. Trank Affidavit, ¶10.

On October 14, 2000, plaintiff attended a regional sales meeting at Trank's vacation home in Georgia. During the evening of the meeting, plaintiff alleges that she was subjected to two incidents of sexual harassment. First, plaintiff alleges that Trank grabbed her and kissed her and, despite plaintiff's protest, Trank told her that she was "hot and sexy" and refused to release her. Later that evening, plaintiff claims that Trank picked her up, carried her to a bed, pinned her down, groped her breasts and rubbed his pelvis against her. Despite plaintiff's protests, Trank refused to release her and propositioned her for sex. When Trank finally released plaintiff, he allegedly told her everyone would presume they had sexual relations.

The next day, plaintiff reported the incident to Gregg Constantino, who was her supervisor. Constantino allegedly told plaintiff that Trank had been drinking and had been having marital problems. Cairns First Affidavit, ¶22. Plaintiff asserts that after the incident and after her complaint to Constantino, defendants retaliated against her by changing the terms and conditions of her employment.

According to plaintiff, in December 2000, she left New Jersey permanently to live in Charleroi with her parents because of the events of October 14, 2000. Cairns First Affidavit, ¶¶27-28.

Plaintiff claims that she worked out of the Charleroi home office until she was induced to resign on March 3, 2001, which plaintiff alleges was a constructive discharge. However, the record reflects that plaintiff was on a leave of absence from work as of January 2001, and that she did not return in March 2001. See Deposition of Shannon M. Cairns ("Cairns Deposition"), attached as Exhibit H to Defendants' Response to Plaintiff's Surreply Brief (Document No. 24), at 44-45; Electronic mail message from Stephanie Lord dated March 9, 2001 ("Lord E-mail Message"), attached as Exhibit Q to Document No. 24. Instead, plaintiff briefly returned to work on May 29, 2001, see Cairns Deposition at 45; Affidavit of Shannon M. Cairns dated February 13, 2003 ("Cairns Second Affidavit"), attached to Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss (Document No. 22), ¶8; Memorandum from Gregg Constantino dated May 25, 2001 ("Constantino Memorandum"), attached as Exhibit D to Document No. 24, but claims that she was constructively discharged in June 2001.


### Analysis

The question of personal jurisdiction typically is decided in advance of venue. Leroy v. Great Western United Corp., 443 U.S. 173, 180 (1979). Nevertheless, "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject matter jurisdiction is, for both are personal privileges of the defendant, rather than absolute strictures on the court, and both

may be waived by the parties." <u>Id</u>.  Thus, a court may reverse the normal order of considering personal jurisdiction and venue when it is prudential to do so.  <u>Id</u>.; <u>Leech v. First Commodity Corp</u>., 553 F.Supp. 688, 689 (W.D.Pa. 1982).  The court chooses to do so here, because resolution of the venue issue resolves the case before this court.

A defendant challenging venue bears the burden of proving that venue in a particular district is improper.  <u>Myers v. American Dental Assn.</u>, 695 F.2d 716, 724-25 (3d Cir. 1982).  Venue in employment discrimination matters is governed by the specific venue provisions of Title VII and not by the general venue provisions of 28 U.S.C. §1391.  <u>Thurmon v. Martin Marietta Data Systems</u>, 596 F.Supp. 367, 368 (M.D.Pa. 1984).  Congress intended to limit venue in Title VII actions to the judicial district concerned with the alleged discrimination.  <u>Stebbins v. State Farm Mutual Automobile Ins. Co.</u>, 413 F.2d 1100, 1102 (D.C.Cir. 1969).  According to 42 U.S.C. §2000e-5(f)(3), venue in a Title VII action only is appropriate in the following judicial districts:

> (1) in any judicial district in the state in which the unlawful employment practice is alleged to have been committed, (2) in the judicial district in which the employment records relevant to such practice are maintained and administered, or (3) in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

Courts should determine venue by applying a "common sense

appraisal" of events having operative significance.  <u>Donnell v.</u>
<u>National Guard Bureau</u>, 568 F.Supp. 93, 94 (D.D.C. 1983).
Specifically, venue cannot lie in a particular district when "a
substantial part, if not all, of the employment practices
challenged in [the] action" took place outside the district even
when actions taken in the district "may have had an impact on the
plaintiff's situation." <u>Id</u>. In accordance with these principles,
the court has considered the parties' respective arguments.

Defendants maintain that venue is proper in the Southern
District of Florida under the second basis set forth in the
statute because that district is where the employment records
relevant to the alleged unlawful practice are maintained and
administered.  Plaintiff disagrees, arguing that her employment
records are not relevant.  Instead, plaintiff primarily has argued
that venue is proper in the Western District of Pennsylvania for
both her sexual harassment and retaliation claims under the first
basis set forth in 42 U.S.C. §2000e-5(f)(3): that this is the
district in which the unlawful employment practice was committed.
It would appear quite simple to dismiss that basis for laying
venue because the alleged incident of sexual harassment occurred
at a meeting at Trank's vacation home in Georgia.  In addition,
due to the fact that all employment decisions are made at FAMSR's
principal office in Pompano Beach, Florida, <u>see</u> Trank Affidavit,
¶11, it is difficult to envision how the alleged retaliation
occurred in this district.  In an apparent attempt to bypass these
problems, plaintiff has relied heavily on a decision by the United

States Court of Appeals for the Ninth Circuit in which the first basis for venue was at issue.

In *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000), Passantino complained that she was passed over for several promotions for which she was qualified because of her gender. Passantino brought suit in the Western District of Washington. Johnson & Johnson ("J&J") moved for a change of venue to New Jersey, which was denied by the district court.

On appeal, J&J argued that venue was improper in Washington because the unlawful employment practices at issue occurred in New Jersey. J&J argued that the decision not to promote was the sole act that constituted the unlawful employment practice for venue purposes. The Ninth Circuit disagreed and stated that Title VII's authorization that suit may be brought "in any judicial district in the state in which the unlawful employment practice is alleged to have been committed" means that venue should be found "where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented." *Id.* at 505. Thus, the *Passantino* court held that under the first basis for venue set forth in 42 U.S.C. §2000e-5(f)(3), "venue is proper in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Id.* at 506. Relying on this authority, plaintiff argues that venue is proper in the Western District of Pennsylvania for both her sexual harassment

- 7 -

and retaliation claims because she worked out of the Charleroi home office as of the date of the alleged incident and the period that followed and she therefore "felt the effects" of the alleged unlawful practices here.

A. Plaintiff's Sexual Harassment Claim

The incident which gives rise to plaintiff's sexual harassment claim took place in Georgia at a discrete point in time on October 14, 2000.   Therefore, venue is not proper in the Western District of Pennsylvania under the first basis set forth in the statute.   Quite simply, the claimed unlawful employment practice did not occur here; it occurred in Georgia.   The court disagrees with plaintiff's argument that she "felt the effects" of sexual harassment in this district because she was working out of the Charleroi office at that time and during the period that followed.[1]  Unlike the plaintiff in Passantino who complained that

---

1. In addition to the fact that plaintiff's sexual harassment claim is based on an incident that occurred on October 14, 2000 at a meeting in Georgia, plaintiff admits that as of that date, she "mostly worked in the field with account representatives" located in Philadelphia, Pittsburgh, New York, New Jersey and Ohio, but she worked out of the New Jersey home office or the Charleroi home office when she was not in the field, depending on her travel schedule.  Cairns First Affidavit, ¶¶23, 25-26 (emphasis added). Plaintiff's statement that she mostly worked in the field and spent any remaining time in the New Jersey home office or the Charleroi home office depending on her travel schedule undercuts her assertion that she only "felt the effects" of the claimed sexual harassment in this district.   To bolster her "felt the effects" argument regarding her sexual harassment claim, plaintiff further states that she continued to feel the effects of the October 14, 2000 incident in this district because she left New Jersey permanently in December 2000 to live full time with her family in Charleroi.   Plaintiff's Opposition Brief at 13; Cairns

✎AO 72
(Rev. 8/82)

she was denied promotions on a number of occasions over a span of years, plaintiff has not alleged in her complaint that there were ongoing incidents of sexual harassment after October 14, 2000.

In likely recognition that her "felt the effects" argument does not support laying venue in this district with respect to the sexual harassment claim, plaintiff also argues that venue is proper here for that claim under the doctrine of pendent venue. Courts have adopted the principle of "pendent venue" to relax the rule requiring that venue be established for each claim. When the claims amount to a single cause of action, courts have allowed proper venue for one claim to support adjudication of another claim. Kravitz v. Institute for Intern. Research, Inc., 1993 WL 453457 (E.D.Pa. 1993), at *3, citing, Archuleta v. Sullivan, 725 F.Supp. 602, 605-06 (D.D.C. 1989). Because this court finds that venue is not proper in the Western District of Pennsylvania for plaintiff's retaliation claim as explained below, the doctrine of pendent venue does not apply.


B. Plaintiff's Retaliation Claim

According to plaintiff, at the times of defendants' retaliation from December 2000 through June 2001, she resided in Pittsburgh, worked out of the Charleroi home office and felt the

_____

First Affidavit, ¶27.  The fact that plaintiff decided to reside at her parents' home has no impact on the venue determination. Title VII's venue provision does not authorize venue to be laid in the judicial district where the plaintiff lives.  See 42 U.S.C. §2000e-5(f)(3).

effects of retaliation here.   Cairns First Affidavit, ¶36. Relying on Passantino, plaintiff therefore contends that venue is proper in this district.   The court disagrees.

First, from January until June 2001, plaintiff worked for defendants for less than two weeks.  She was on a leave of absence from work until March 2001, at which time she did not return. Cairns Deposition at 44-45; Lord E-mail Message.  She eventually returned to work on May 29, 2001, and worked for FAMSR until June 12, 2001.  See Cairns Second Affidavit, ¶8; Letter from Shannon Cairns to Gregg Constantino dated June 12, 2001, attached as Exhibit C to Document No. 24.  During that brief period, plaintiff was assigned to work in Philadelphia and St. Louis.   Cairns Deposition at 45; Constantino Memorandum.  As plaintiff did not work in this district at the times of defendants' claimed retaliation, it would be impossible for her to "feel the effects" of the retaliation here.[2]

In the alternative, plaintiff argues that venue is proper for her retaliation claim in the Western District of Pennsylvania under the third basis set forth in the statute: that this is the judicial district in which she would have worked but for the alleged unlawful employment practice.  Plaintiff claims that she would have continued working out of the Charleroi home office if

_____

2. Plaintiff's statement that she "resided only in the Pittsburgh area" during the alleged incidents of retaliation from December 2000 through June 2001, see Cairns First Affidavit, ¶36, is of no consequence.  As previously discussed in footnote 1, supra, Title VII's venue provision does not authorize the laying of venue where plaintiff resides.  See 42 U.S.C. §2000e-5(f)(3).

defendants had not retaliated against her.   According to the Constantino Memorandum, however, upon her return to work on May 29, 2001, plaintiff was going to be based in Philadelphia. Therefore, plaintiff would not have worked in the Western District of Pennsylvania, and venue would not be proper here.

C. Proper Venue for Plaintiff's Claims

As indicated at the outset, defendants contend that venue is proper in the Southern District of Florida because that is the district where plaintiff's employment records relevant to the claimed sexual harassment are maintained and administered. Plaintiff argues that venue is not proper under this basis because her employment records are not relevant to her sexual harassment claim against defendants.

The court finds that venue is proper in the Southern District of Florida where plaintiff's employment records are maintained and administered at FAMSR's principal office.   Plaintiff's employment records certainly are relevant to both her sexual harassment claim and her retaliation claim.   The case of Brigdon v. Slater, 100 F.Supp.2d 1162 (W.D.Mo. 2000) is instructive on the relevancy of employment records in this context.

In that case, Brigdon complained that he was subjected to harassment and discrimination based on his gender by his supervisor while he was employed by the Department of Transportation.   Prior to his termination, Brigdon filed several formal complaints regarding his supervisor's conduct.   Brigdon

AO 72
(Rev. 8/82)

asserted that he ultimately was forced into retirement in retaliation for his complaints about his supervisor.

In assessing whether venue was proper in the district where Brigdon's employment records relevant to the claimed unlawful practices were maintained and administered, the Brigdon court analyzed the meaning of "relevant" records. The court applied the relevance standard set forth in Federal Rule of Evidence 401[3] to 42 U.S.C. § 2000e-5(f)(3) to determine whether Brigdon's employment records had any tendency to make the existence of a fact that was of consequence to the determination of his claims more probable or less probable than it would be without the records. Brigdon, 100 F.Supp.2d at 1164-65. In so doing, the court found that Brigdon's employment records were relevant to his claims of harassment, discrimination and retaliation. Id. at 1165. According to the court, at a minimum, the dates of his employment and employment evaluations would be relevant. Id. In addition, as Brigdon complained that he suffered retaliation because of the formal complaints he filed, the court determined that the presence or absence of those documents in his employment file would make his claim more or less credible. Id.

Likewise, here, plaintiff's employment records are relevant to her claims against defendants. By way of example, basic information regarding the dates of plaintiff's employment and

---

3. According to Rule 401, relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

AO 72
(Rev. 8/82)

benefits information is relevant to plaintiff's claims for damages. Further, the presence or absence of documents regarding the company's policy on harassment will bear on plaintiff's sexual harassment claim. In addition, any memoranda, e-mail messages or other documents concerning the incident of October 14, 2000 and the communications between company personnel and plaintiff is relevant to both plaintiff's sexual harassment and retaliation claims. For these reasons, venue is proper in the Southern District of Florida.

D. Defendants' Motion to Transfer

When a plaintiff files an action in the improper venue, 28 U.S.C. §1406(a) directs the district court to dismiss the action or transfer the case to the proper venue, if transfer is in the interests of justice. 28 U.S.C. §1406(a). This statute applies when venue is improper under Title VII's special venue provision just as it applies when venue is judged by the general venue requirements. Washington v. General Electric Corp., 686 F.Supp. 361, 364 (D.D.C. 1988). Generally, the "interest of justice" instructs courts to transfer cases to the appropriate judicial district, rather than dismiss them. Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67 (1962). With this in mind, the court concludes that the interests of justice would be best served by transferring this case to the United States District Court for the Southern District of Florida because venue is proper there for plaintiff's

sexual harassment and retaliation claims.[4]

An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: September 25, 2003

cc:  James B. Lieber, Esq.
     Lieber & Hammer, P.C.
     5528 Walnut Street
     Pittsburgh, PA 15232

     Cathy Bissoon, Esq.
     Reed, Smith Shaw & McClay
     435 Sixth Avenue
     Pittsburgh, PA 15219

     George A. Lane, Esq.
     2929 E. Commercial Boulevard
     Suite 205
     Fort Lauderdale, FL 33308

---

4. Defendants' motion to dismiss for lack of personal jurisdiction challenged the court's jurisdiction over all defendants. That issue is mooted by the transfer of this case to the Southern District of Florida.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,

      Plaintiff,

      v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

**DEFENDANTS' MOTION FOR LEAVE OF COURT TO
FILE A REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
RESPONSE TOTHE PLAINTIFF'S SURREPLY BRIEF IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW**

Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR ("FAMSR"),
MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by undersigned counsel, file
this Motion for leave of this Court to file a reply to Plaintiff's Response to Defendants' Response
to the Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss and
Memorandum of Law and in support thereof avers as follows:

1.     Defendants' Motion to Dismiss for lack of jurisdiction and alternative motion to transfer
this case to the U.S. District Court for the Southern District of Florida is currently before this
Court.

2.     On April 29, 2003, Plaintiff served by mail a Motion for Leave of the Court to file a
Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendants'

Response to the Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss and Memorandum of Law (hereafter the "Response").

3.     The Court granted Plaintiff's motion on April 30, 2003.

4.     The Plaintiff's response contains misstatements of law and of fact, that if adopted by this Court, could lead the Court to render a decision regarding Defendants' motion to dismiss that would be unsupported by the actual law and fact.

5.     For example, Plaintiff asserts that case law provides that venue is proper in any judicial district in the State in which the effects of discrimination are felt.   There is simply no reported case that provides such a holding, and the holding in case referred to by the Plaintiff is incorrectly described.

6.     Plaintiff relies on the incorrectly described case holding as the basis for their argument for asserting proper venue in the Western District of Pennsylvania.

7.     Defendants also request leave of Court to file the attached Reply in order to address a confusion of certain issues in Plaintiff's Response.

8.     Defendants also respectfully submit that their Response will aid the Court in deciding the Defendants' Motion to Dismiss and Alternative Motion to Transfer.

9.     Defendants also respectfully submit that the Plaintiff will not be prejudiced by the granting of this motion and that the granting of this motion will serve the interests of justice.

        WHEREFORE, Defendants respectfully move this Honorable Court to grant Defendants leave of Court to file the attached Response to Plaintiff's Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of

Law.

      An appropriate Order is attached.

                                 Respectfully submitted,

                                 Cathy Bissoon
                                 P A I.D. No. 70371
                                 REED SMITH
                                 435 Sixth Avenue
                                 Pittsburgh, PA 15219-1886
                                 (412) 288-3268

                                 George A. Lane
                                 GEORGE A. LANE, P.A.
                                 2929 E. Commercial Blvd., Suite 205
                                 Fort Lauderdale, FL, 33308
                                 (954) 776-8284
                                 Counsel for Defendants

                                 Signed:

                                 George A. Lane, Esq.
                                 FLBN: 7242

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,

     Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

     Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

**ORDER OF COURT**

AND NOW, to wit, this _12th_ day of _May_, 2003, upon consideration of the within Motion for Leave of Court to file a Reply to Plaintiff's Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law, IT IS HEREBY ORDERED that the motion is GRANTED and Defendants' Response to Plaintiff's Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss and Memorandum of Law attached to Defendants' motion is hereby deemed filed.

_Gustave Diamond_, J.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE TOTHE PLAINTIFF'S SURREPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW

Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR ("FAMSR"), MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by and through their undersigned counsel, file the following Reply to Plaintiff's Response to Defendants' Response to the Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss and Memorandum of Law.

## VENUE

A.    **Plaintiff worked outside the Western District of Pennsylvania and for this reason venue is not proper in this District.**

Plaintiff argues that because the Defendants no longer had an office in New Jersey as of the time of the alleged sexual harassment, there can be no finding that Plaintiff felt the effects of the sexual harassment outside the state of Pennsylvania based

on the sole fact that Defendants previously had had an office in New Jersey. Plaintiff's interpretation of Defendants' argument is either misconstrued or distorted thereby confusing the issues.

In his Affidavit taken in support of Defendants' Motion to Dismiss and sworn on August 28, 2002, Defendant Jeff Trank stated that Plaintiff was a sales manager with the company [FAMSR], and that she was based in New Jersey. (Tran Aff. § 8, attached as Exhibit A), specifically in Marlton, New Jersey, a suburb of Philadelphia. In Plaintiff's Affidavit taken in support of Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law and sworn on January 27, 2003, Plaintiff Cairns talks of FAMSR's satellite office in Philadelphia dissolving. (Cairns' Aff. § 8). This office was, in fact, as Plaintiff is aware, located in Marlton, New Jersey and not Philadelphia as described by Plaintiff.

Later, in Plaintiff's Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law, Plaintiff argues that, simply put, FAMSR never provided Plaintiff with a base office in New Jersey. (Pltf's Surreply at p. 7). In her Affidavit in support of Plaintiff's Surreply, Plaintiff's confirms her position concerning the alleged non-existence of a base office in New Jersey. (Cairns' Feb. 13, 2003 Aff. § 4). In an effort to refute Plaintiff's denial and in response to her sworn statement that she was never provided an office in New Jersey, in their Response to Plaintiff's Surreply Brief, Defendants provide clear detail and point to documentary evidence produced by Plaintiff, that a New Jersey office did, in fact, exist and that this office was, in fact, used by Plaintiff.

The Defendants further confirmed, however, that the New Jersey office was closed in May, 2000, before the date of the alleged sexual harassment. From November, 1999 until July 24, 2001, however, Plaintiff also owned a home in New Jersey. (*See* Cairns' Jan. 27, 2003 Aff. § 8, for Cairns' admission that she owned a home in New Jersey. *See also,* Exhibit L to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law, showing a Discharge of Mortgage on Plaintiff's New Jersey home on July 24, 2001). Plaintiff owned her home in New Jersey at the time of the alleged sexual harassment and continued to own that home until after she left her employment with Defendant FAMSR. The record therefore shows that Plaintiff's worked for Defendant first, from an office based in New Jersey until May, 2000 and thereafter out of her home office until the end of her employment with FAMSR.    Plaintiff attempts to convince this Court that the closure of the base office in New Jersey in 2000 means that Plaintiff stopped working outside of Pennsylvania, distorts the facts, and ignores the fact that Plaintiff still owned a home that constituted her base office in New Jersey.

Plaintiff's version of the facts are misleading, motivated by a desire to have proper venue asserted in the Western District of Pennsylvania, for her own convenience, and not in the interests of justice. First, she calls the office located in Marlton, New Jersey, the "Philadelphia office." The record shows that that office was in New Jersey. Then she claims that she was never provided a base office in New Jersey.   The record shows that Plaintiff was, in fact provided an office in New Jersey, and that all expenses relating to that office were borne by Defendants.  Finally, Plaintiff attempts to argue that the fact that the New Jersey office closed in May, 2000, justifies venue being deemed

proper in the Western District of Pennsylvania. The fact is that Plaintiff maintained a home in New Jersey at all times relevant to this action, and it is from that home that her employment with Defendants was based. Despite the fact that Plaintiff's base office in New Jersey closed in May, 2000, Plaintiff's base of employment was at all material times located in New Jersey, and covered a territory including the states of New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania. Plaintiff's decision to own, to maintain and to not sell this home until after her employment with FAMSR ended is not a mere coincidence, but represents the Plaintiff's recognition that she was based out of New Jersey. The Plaintiff current portrayal that her home was in Pittsburgh, Pennsylvania, is nothing but an attempt to forum shop in order to secure venue that is more convenient and more favorable to her.

**B.     Plaintiff's Assignment to the Philadelphia Territory Upon Her Reinstatement, and the Possibility that She Felt the Effects of the Alleged Wrongful Employment Practice There Does Not Provide a Legal Basis for a Finding that Venue is Proper in the Western District of Pennsylvania.**

Plaintiff points to the fact that upon Plaintiff's return from her unpaid leave of absence, Plaintiff's supervisor required her to work in the "Philadelphia" territory. (Pltf's Response p. 2). Plaintiff then argues that assuming that the Plaintiff was assigned to the Philadelphia territory, Plaintiff felt effects of retaliation in Pennsylvania, and therefore, venue is proper in the Western District of Pennsylvania. Plaintiff's asserts that the first basis for venue under 42 U.S.C. § 2000e-5(f)(3) supports her argument. Quite simply, the first prong of the venue rules under 42 U.S.C. § 2000e-5(f)(3) makes no provision for this argument.

4

The first basis for venue under 42 U.S.C. § 2000e-5(f)(3) makes no reference to where the effects of retaliation were felt. The interpretation on the first prong that speaks to the subject of where effects were felt is raised, not in the statute, but rather in the case *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000). The Court in *Passantino* held

that venue is proper in the forum where the effects of the employment decision are felt. *Id.* at p. 506. In *Passantino,* the Court refers to the **specific district** where the effects were felt, or the district where the Plaintiff worked. In contrast, the wording of the first basis for venue in 42 U.S.C. § 2000e-5(f)(3) provides "**in any judicial district in the State.**" Although the *Passantino* case broadens, for the purposes of multi-state employment, the interpretation of the first prong of 42 U.S.C. § 2000e-5(f)(3) to allow proper venue in the district where the employee works, it **does not** go so far as to say **any judicial district in the State.** That portion of the language of the first prong was simply not addressed in the *Passantino* case. The *Passantino* case only referred to the district where the employee actually worked. Thus, assuming that Plaintiff worked in Philadelphia, which Defendants refute, venue may be proper in the Eastern District of Pennsylvania, but not its western counterpart.

It is important to note, however, that Plaintiff was responsible for the Philadelphia territory and not just "Philadelphia" as incorrectly purported by Plaintiff. As previously and consistently explained, the Philadelphia territory was actually based out of New Jersey, and covered the states of New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania, with little actual sales originating in Pennsylvania. Thus,

assuming *arguendo* that the holding in *Passantino* applied in this instance and venue was proper where the effects of employment discrimination are felt or where the Plaintiff worked, because the Plaintiff worked out of New Jersey, and presumably felt the effects in New Jersey, venue would not be proper in any district in the Commonwealth of Pennsylvania.

**C.    Venue is Proper in the Southern District of Florida Because the Documents Produced by Defendants' Constitute Employment Records Relevant to Plaintiff's Sexual Harassment Claim which were Maintained and Administered in this District**

Plaintiff argues that because the documents produced by Defendants are not "traditional employment records" (Pltf's Resp. at p. 3) relevant to Plaintiff's sexual harassment claim, they are not employment records included in the definition of employment records to which the second prong of 42 U.S.C. § 2000e-5(f)(3).  Plaintiff offers no legal basis for this argument and Defendant asserts that she fails to do so, because there is no legal definition of what constitutes "traditional employment records."

Under various state and federal laws, an employer is required to maintain certain information about their employees, including information on wages and hours, workplace injuries and illnesses, tax withholding, as well as records of accrued vacation and other benefits (*See* Barbara Kate Repa, Esq., *Your Rights in the Workplace,* p. 6/3 (Nolo Press, Berkeley, CA, 1994, discussing legal requirements placed upon employers).  All of these types of documents were, in fact, maintained and administered by FAMSR in their South Florida office.

Beyond the information that an employer is legally required to maintain, an employer may collect all sorts of information about its employees so long as the employees' privacy rights are not violated. *Id.* Defendant therefore asserts that the concept of "traditional employment records" is subjective, and is strictly a factor of what information an employer chooses to maintain. Besides all legally required information, Defendants chose to maintain various other records about Plaintiff, which records they produced as exhibits to their response.

Plaintiff argues that certain of these records are not relevant to Plaintiff's sexual harassment claim. In contrast, Defendant asserts that FAMSR maintained, in Plaintiff's employment records, any and all information relating to Plaintiff's sexual harassment claim that Plaintiff chose to disclose to Defendant FAMSR, or that ever came to the knowledge and attention of Defendants. To rebut Plaintiff's argument that there are no documents relevant to Plaintiff's sexual harassment claim, Defendants produced examples of relevant documents in their Response.

Plaintiff now argues that some of the records produced by Defendants do not satisfy the "maintained and administered" criteria of the second prong of 42 U.S.C. § 2000e-5(f)(3). Contrary to Plaintiff's argument, the Guarantee Life Insurance Company Group Short Term Disability form (Deft's Ex. A) is a document maintained and administered by FAMSR because the document requires a portion thereof to be completed by the employer. Likewise, the letter from Jefferson Pilot Financial to Plaintiff of February 15, 2001 denying insurance coverage to Plaintiff (Defts' Ex. B) was copied and noted copied thereon to FAMSR. By having relevance to its employee and

her employment, and by having been kept in the course of business by Defendant FAMSR, these documents were maintained and administered in accordance with 42 U.S.C. § 2000e-5(f)(3).

Plaintiff also argues that Plaintiff's e-mail of June 12, 2001 (Deft's Ex. C), Gregg Constantino's e-mail message to Plaintiff of May 25, 2001 (Deft's Ex D), and Gregg Constatino's disciplinary action form to Plaintiff of June 4, 2001 (Deft's Ex. E) are not employment records relevant to Defendants' alleged unlawful employment practice. Defendants assert that this argument meritless.   Given that Count I of Plaintiff's Complaint (Count I – Sexual Harassment) seeks damages for lost benefits and value of wages from the date of the alleged incident up to her normal retirement date, the above-noted documents are relevant to the issue of sexual harassment because they speak to the time period for which damages may be awarded.   These three documents demonstrate that Plaintiff was on an unpaid leave of absence from December 27, 2000 until May 28, 2001, a period for which Defendants argue that the Plaintiff would not be entitled to benefits or wages.   Even if, *arguendo,* Plaintiff had never raised the Count II retaliation claim in her Complaint existed, these documents would be relevant to Defendants' response to the sexual harassment claim on the subject of damages.

## Conclusion

Because Plaintiff worked outside the Western District of Pennsylvania, she did not feel the effects of the alleged unlawful employment practices there, and consequently, venue is not proper in that district.  Venue is, however, proper in the Southern District of

Florida since this is where the employment records relevant to the alleged sexual

harassment are maintained and administered pursuant to 42 U.S.C. § 2000e-5(f)(3).


Respectfully submitted,

Cathy Bissoon
P A I.D. No. 70371
REED SMITH
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3268

George A. Lane
GEORGE A. LANE, P.A.
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, FL, 33308
(954) 776-8284
Counsel for Defendants

Signed: _____
George A. Lane, Esq.
FLBN: 7242

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Reply to

Plaintiff's Response to Defendants' Response to the Plaintiff's Surreply Brief in

Opposition to Defendants' Motion to Dismiss with Memorandum of Law was served this

9th day of May, 2003, upon the following by ~~overnight courier~~ *Express U.S Mail* delivery:


James B. Lieber
LIEBER & HAMMER, P.C.
PA. I.D. # 21748
Thomas M. Huber
PA. I.D.#83053
5528 Walnut Street
Pittsburgh, PA, 15232-2312


George A. Lane, Esq.
FBN 7242

GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
#205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 (fax)

LAW OFFICES

# George A. Lane, P.A.

**Attorney at Law**
Wachovia Tower
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, Florida, 33308
Tel. (954) 776-8284
Fax. (954) 771-9393

May 9, 2003

Mr. Robert Varth Jr.
Clerk of the Court
United States District Court for
the Western District of Pennsylvania
8th Floor -U.S. Courthouse
Pittsburgh, PA, 15219

RE:     Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
        Civil Action No. 02-1236 (W.D. Pa.)

Dear Mr. Varth:

We enclose the Defendants' Reply to Plaintiff's Response to Defendants' Response to the
Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of
Law, which we kindly request be filed with the court.

Yours very truly,

GEORGE A. LANE, P.A.

George A. Lane

cc. Cathy Bissoon, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE**
**TO PLAINTIFF'S SURREPLY BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS WITH MEMORANDUM OF LAW**

Plaintiff Shannon M. Cairns, by and through her counsel, Lieber & Hammer, P.C., files

the following Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to

Defendants' Motion to Dismiss with Memorandum of Law.

**VENUE**

**A.    Defendants Closed Their New Jersey Office in May 2000, Four and a Half Months**
**Before the Plaintiff Was Sexually Harassed on October 14, 2000 and Thus, the**
**Existence of that Office Can Not Support a Finding that Plaintiff Felt the Effects of**
**the Sexual Harassment in New Jersey Alone.**

Defendants argue in their Response that Plaintiff could not have felt the effects of the

sexual harassment incidents in the Western District of Pennsylvania because the Defendants

provided the Plaintiff with an office in New Jersey and Defendants "always deemed the Marlton,

New Jersey office to be the Plaintiff's base office." (Defts' Response, at 7-8).  The Defendants'

argument must be rejected by this Court because it is completely contradicted by the facts of

record in that at the time of the sexual harassment the Defendants did not have an office in New

Jersey.

The Plaintiff alleges that she was sexually harassed on October 14, 2000. As of that date (October 14, 2000), Defendants no longer had an office in New Jersey. According to Defendants' Interrogatory Responses, Defendants closed the New Jersey office in May 2000 – **four and a half months before the sexual harassment occurred!!** (*See* Defts' Ex. J, Answer to Interrogatory 17 ("July 1999 through May 2000")). Because the Defendants no longer had an office in New Jersey as of the time of the alleged sexual harassment, there can be no finding that Plaintiff felt the effects of the sexual harassment outside the state of Pennsylvania based on the sole fact that Defendants previously had had an office in New Jersey.

**B.     Assuming that Plaintiff Was Assigned to the Philadelphia Territory Upon Her Reinstatement, Plaintiff Felt the Effects of Retaliation in Pennsylvania and, Therefore, Venue is Proper in the Western District of Pennsylvania.**

Defendants also argue that Plaintiff could not have felt the effects of discrimination (either sexual harassment or retaliation) in the Western District of Pennsylvania because "the documentary proof [ ] shows that Plaintiff's employment duties required her to work in 'Philadelphia' territory . . . ." (Defts' Response, at 13-14 (citing an e-mail from Constantino to Plaintiff of 5/25/01)). Defendants' argument fails to support a decision to transfer the case to an alternative venue and, in fact, provides further support for Plaintiff's contention that venue is proper in the District Court for the Western District of Pennsylvania.

Under the first basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue is proper "in **any judicial district in the State** in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e-5(f)(3) (emphasis added).

Assuming *arguendo* that Plaintiff was required to work in the Philadelphia territory, then Plaintiff was working in Pennsylvania and felt the effects of discrimination in Pennsylvania. *See*

2

*Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 506 (9th cir. 2000)

(holding that under the first prong of the Title VII venue statute, venue is found "where the effect

of the unlawful employment practice is felt: *where the plaintiff works, . . .*") (emphasis added).

Thus, under the first basis for venue in 42 U.S.C. § 2000e-5(f)(3), Plaintiff is permitted to bring a

Title VII action in any judicial district in the Commonwealth of Pennsylvania which includes  the

Western District of Pennsylvania.

**C.      Venue Is Not Proper in the Southern District of Florida Because Defendants Failed
         to Establish that Employment Records Relevant to Plaintiff's Sexual Harassment
         <u>Claim Are Maintained and Administered There.</u>**

Finally, Defendants argue in their Response to Plaintiff's Surreply Brief that venue is

proper in the Southern District of Florida for Plaintiff's sexual harassment claim (Count I) under

42 U.S.C. § 2000e-5(f)(3)(2) because the employment records relevant to such claim are

maintained and administered in that District.  (Defs' Response, at 4-5).  In support of their

argument, Defendants for the first time cite to seven documents allegedly found in Plaintiff's

personnel file which purportedly relate to Plaintiff's hostile work environment claim.  (*Id.* at 5).

The documents cited by Defendants do not justify venue in the Southern District of Florida

because none of those documents are traditional employment records that are maintained and

administered by Defendants relevant to the sexual harassment suffered by Plaintiff.

For example, the Guarantee Life Insurance Company Group Short Term Disability form

completed by Plaintiff (Defts' Ex. A) is not a document maintained and administered by

Defendants; rather, it is a document which is maintained and administered (presumably) by the

Guarantee Life Insurance Company.  Likewise, the letter from Jefferson Pilot Financial to

Plaintiff of February 15, 2001 denying insurance coverage to Plaintiff (Defts' Ex. B) is not a

3

document maintained and administered by Defendants; rather, it is a document maintained and administered (presumably) by Jefferson Pilot Financial.

Further, Plaintiff's e-mail of June 12, 2001 (Defts' Ex. C) is not an employment record maintained and administered by Defendants relevant to the Defendants' sexual harassment of Plaintiff. Instead, that document is relevant to Plaintiff's retaliation claim. Similarly, Gregg Constantino's e-mail message to Plaintiff of May 25, 2001 (Defts' Ex. D) welcoming back Plaintiff is not an employment record maintained and administered by Defendants nor is it in any way relevant to the sexual harassment incidents of October 14, 2000. In addition, Gregg Constantino's disciplinary action form to Plaintiff of June 4, 2001 (Defts' Ex. E) is not in any way relevant to the sexual harassment incidents of October 14, 2000 although, it is relevant to Plaintiff's retaliation claim.

Like the above referenced insurance related documents, Plaintiff's EEOC charge (Defts' Ex. F) is not an employment record maintained and administered by the Defendants. Rather, it is a document maintained and administered by the EEOC itself. Finally, the "B.W. Medical Group Employee Handbook" and sexual harassment policy (Defts' Ex. G), which Defendants allege without any record support "was brought to Plaintiff's attention upon the commencement of her employment,"(Defs' Response to Pltf.'s Surreply Brf., at 5), is not an employment record of Plaintiff's which is relevant to the sexual harassment she suffered on October 14, 2000.

Because none of the documents cited by Defendants are employment records maintained and administered by Defendants relevant to the sexual harassment incidents of October 14, 2000, venue is not proper in the Southern District of Florida. Venue is proper, however, in the District Court for the Western District of Pennsylvania for the reasons stated in Plaintiff's Brief in

4

Opposition and Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law.

Based on the foregoing reasons and the reasons stated in Plaintiff's Brief in Opposition and Surreply Brief to Defendant's Motion to Dismiss, Plaintiff respectfully submits that venue is proper in this District for the Title VII claims in Counts I and II and therefore this Court should deny Defendants' Motion to Transfer Venue.

Respectfully submitted,

LIEBER & HAMMER, P.C.

James B. Lieber
PA I.D. # 21748

Thomas M. Huber
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION FOR LEAVE OF COURT TO
### FILE A RESPONSE TO DEFENDANTS' RESPONSE TO PLAINTIFF'S
### SURREPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Shannon M. Cairns, by and through her counsel, Lieber & Hammer, P.C., files the following Motion for Leave of Court to file a Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law and in support thereof avers as follows:

1.      Currently pending before this Court is the Defendants' motion to dismiss for lack of jurisdiction over the out-of-state defendants and an alternative motion to transfer the case to the United States District Court for the Southern District of Florida.

2.      On April 23, 2003, Defendants filed a Response to Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law.

3.      In their Response, Defendants raise new and different issues from the ones raised in their initial Motion to Dismiss with Memorandum of Law and their Reply Brief.

4.      For example, Defendants offer into evidence for the first time a number of documents allegedly taken from Plaintiff's personnel file, including Plaintiff's short term

disability claim form and a disciplinary action form dated June 4, 2001.

5.      Defendants offer these documents in support of their argument that venue is proper in the Southern District of Florida for Plaintiff's sexual harassment claim (Count I) under 42 U.S.C. § 2000e-5(f)(3)(2) because the employment records relevant to such claim are maintained and administered in that District.  (Defs' Response to Pltf.'s Surreply Brf., at 4-5).

6.      Contrary to Defendants' argument, the documents offered do not establish that venue is proper in the Southern District of Florida because they are not traditional employment records nor are they relevant to Plaintiff's sexual harassment claim.  Furthermore, many of the documents are e-mail transmissions to or from Plaintiff which are equally found where Plaintiff works.

7.      Plaintiff also requests leave of Court to file the attached Response in order to address a confusion of certain issues in Defendants' Response.

8.      For example, contrary to Defendants' assertion, the fact that Defendants had an office in New Jersey up until May 2000 does not in and of itself support the assertion that Plaintiff felt the effects of the October 14, 2000 sexual harassment in New Jersey and not in the Western District of Pennsylvania.

9.      Plaintiff respectfully submits that her Response will aid the Court in deciding the Defendants' Motion to Dismiss and Alternative Motion to Transfer.

10.     Plaintiff also respectfully submits that the Defendants will not be prejudiced by the granting of this motion and that the granting of this motion will serve the interests of justice.

2

WHEREFORE, Plaintiff respectfully moves this Honorable Court to grant Plaintiff leave of Court to file the attached Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law.

An appropriate Order is attached.

Respectfully submitted,

LIEBER & HAMMER, P.C

James B. Lieber
PA I.D. # 21748

Thomas M. Huber
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

Counsel for Plaintiff

3

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, to wit, this _____30_____ day of _____April_____, 2003, upon

consideration of the within Motion for Leave of Court to file a Response to Defendants'

Response to Plaintiff's Surreply Brief in Opposition to Defendant's Motion to Dismiss with

Memorandum of Law, IT IS HEREBY ORDERED that the motion is GRANTED and Plaintiff's

Response to Defendants' Response to Plaintiff's Surreply Brief in Opposition to Defendants'

Motion to Dismiss and Memorandum of Law attached to Plaintiff's motion is hereby deemed

filed.

_____, J.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Leave of Court to file a Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law was served this ___29___ day of April, 2003, upon the following by first class mail, postage prepaid:

Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendant.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond



**DEFENDANTS' RESPONSE TO THE**
**PLAINTIFF'S SURREPLY BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW**

Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR ("FAMSR"),
MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by undersigned counsel, file
this Response to the Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss
and Memorandum of Law.

**I.**      **JURISDICTION**

In quoting Wright & Miller in her Surreply Brief, the Plaintiff argues that "[t]he Supreme
Court never has commented on the role of fair play and substantial justice factors in the context
of general jurisdiction." (Pltf.'s Surreply Brief, at p. 2, *citing,* Wright & Miller 4 Charles A.
Wright, Arthur Miller & Edward H. Cooper, Federal Practice and Procedure 3d § 1067.5).
Defendants concede that there may not be a Supreme Court precedent that squarely holds that

notions of fair play and substantial justice are essential factors to be considered by a court in deciding whether to exercise general jurisdiction over a defendant. Defendants further acknowledge and concede that Plaintiff's assertion that the case, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) dealt with the exercise of specific jurisdiction may be accurate. Defendants argue, however, that the Supreme Court has made indirect references to what factors may come into play when deciding whether to exercise general jurisdiction. In Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law, Defendants highlighted the *BurgerKing* Court's use of a quote from the earlier case of *International Shoe Co. v. Washington,* 326 U.S. 310, 316, a general jurisdiction case. In the *International Shoe* case, the Court asserted general jurisdiction over a foreign corporation based on "continuous and systematic contacts," *Id.*, at 319, which were litigation-related. The Court ruled, however, that once it has been decided that a defendant purposefully established minimum contacts within the forum State (i.e. specific jurisdiction), these contacts may be considered in light of other factors to determine whether assertion of personal jurisdiction would comport with "fair play and substantial justice." *Id.*, at 320.

Although the Court in the *Burger King* case decided jurisdiction based on specific jurisdiction minimum contacts, the Court highlighted the reasoning in *International Shoe* that notions of fair play and substantial justice may come in to play in "appropriate cases, " *Burger King*, 471 U.S., at 477, even when specific or general jurisdiction may otherwise be found to exist.

Defendant asserts that the present action in one of those "appropriate cases" referred to by the Court in *Burger King*. Defendants concede that, according to Pennsylvania law, the Court may be in a position to exercise general jurisdiction over the Defendant FAMSR based on the fact that FAMSR is a foreign corporation qualified to do business in Pennsylvania. Due process notions of fair play and substantial justice enunciated in *International Shoe* necessitate, however, that general jurisdiction not be exercised in this case.

In this instance, it is unreasonable to argue that when the Defendants' applied to qualify as a foreign corporation authorized to transact business in the Commonwealth of Pennsylvania, they anticipated being hailed into a Pennsylvania court for alleged incidences of sexual harassment that occurred in the State of Georgia. The record shows that Defendants' business in Pennsylvania was at the relevant times insignificant at best. The alleged sexual harassment had nothing to do with that business. In addition, the employment relationship, which was allegedly affected by it, had for its primary objective development of markets outside the Commonwealth of Pennsylvania. For these reasons, the exercise of personal jurisdiction over Defendants in this action, though arguably supported by Pennsylvania statutory law, would be improper because it exposes Defendants to unfair and unjust legal control of this Court.

In the alternative, should the Court find that proper exercise of jurisdiction exists over Defendant FAMSR, Defendants urge this Court to accept Plaintiff's request to dismiss *without prejudice* Plaintiff's common law battery claim against Defendant Jeff Trank, as this Court does not have jurisdiction over this Defendant under the circumstances.

## II.   VENUE

As expressed in the Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law and the Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law (hereafter "Surreply Brief"), both parties assert that there are, under 42 U.S.C. § 2000e-5(f)(3), four judicial districts where a Title VII employment discrimination action may be brought:

> (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,"

> (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered,"

> (3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,"

> (4) "but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

42 U.S.C. § 2000e-5(f)(3).


**A. Count I - Sexual Harassment**

As indicated in the Plaintiff's Surreply Brief, the Defendants have asserted that venue is proper in the Southern District of Florida for Count I of the Plaintiff's claim because the Plaintiff's employment records are maintained and administered in Florida.  The second prong provides that venue is proper "in the judicial district in which the employment records **relevant** to such practice are maintained and administered" 42 U.S.C. § 2000e-5(f)(3).

4

Contrary to the Plaintiff's assertion, Plaintiff's employment records maintained and administered by Defendants are relevant to the alleged sexual assaults that make up Plaintiff's hostile work environment claim. Plaintiff's argument that there is nothing in the Plaintiff's employment records that relates to the sexual harassment suffered by Plaintiff is simply false. Plaintiff's employment records contain a number of documents relating to Plaintiff's sexual harassment claim, such as, (i) Plaintiff's Group Short Term Disability claim form, and (ii) insurer's letter dated February 15, 2001 denying coverage, (iii) Plaintiff's electronic mail message to Gregg Costantino dated June 12, 2001 with letter of resignation dated June 12, 2001 as attachment, (iv) electronic mail message to Plaintiff from Gregg Costantino dated May 25, 2001, (v) memorandum regarding Disciplinary Action dated June 4, 2001 from Gregg Costantino to Plaintiff, and (vi) Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination dated June 1, 2001, which documents are attached hereto as Exhibits A to F, respectively. Plaintiff's employment records also contain additional EEOC-related documents beyond those identified herein. Finally, Defendants' policy regarding sexual harassment, which was brought to Plaintiff's attention upon the commencement of her employment with Defendants is maintained and administered in Defendants' South Florida office, and is attached hereto as Exhibit G. Consequently, Defendants argue that compliance with the second prong of 42 U.S.C. § 2000e-5(f)(3) may be easily fulfilled.

Plaintiff argues that venue is proper in the Western District of Pennsylvania for Plaintiff's hostile work environment claim (Count I) because Cairns felt the effects of the hostile work environment in this district having worked out of a home office in the Western District as of the date of the incidents and the period that followed. (*See* Pltf's Opp. Brief, at pp. 12-18).

5

Defendants assert that neither the record nor the law supports the Plaintiff's argument, and consequently, venue is not proper in the Western District of Pennsylvania.

In *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493 (9th Cir. 2000), a case involving sexual discrimination in employee promotions, in analyzing the application of the first prong of the venue rules provided under 42 U.S.C. § 2000e-5(f)(3) to decide proper venue, the Court interpreted the first prong in a broad manner. The Court held that to adopt a narrower interpretation would be to "require [the Court] to draw a distinction between promotion claims and other types of Title VII claims – which allow venue where the plaintiff is employed." *Id.*, at 505. The Court therefore ruled that venue could also be found where the effect of the unlawful employment practice is felt. ." *Id.* Those effects, the Court added would be felt where the Plaintiff actually worked. *Id.* As previously argued in the Defendants' Opposition Brief, the line of cases upon which *Passantino* is based is clearly distinguishable from the case at hand (*See Varsic v. United States District Court*, 607 F.2d 245 (9th Circuit 1979) and *Montero v. AGCO Corp.*, 192 F.3d 856 (9th Cir. 1999), as examples of cases referred to by the *Passantino* court).

Regarding the first prong of 42 U.S.C. § 2000e-5(f)(3), the broad interpretation in *Passantino* and other cases of like circumstances has no application in the Plaintiff's action. *Passantino* and other cases like it dealt with ongoing, cumulative employment practices, such as, denial of promotions. In contrast, Count I of the present case deals with distinct incidences of alleged sexual discrimination that occurred at a specific moment and place, i.e. alleged sexual harassment on October 14, 2000 in the State of Georgia. The effects of the alleged

discriminatory practices occurred at that specific time and at that specific place, and were not ongoing or cumulative. The Plaintiff has never alleged or pleaded that any ongoing sexual discrimination occurred after October 14, 2000. Plaintiff presence in Georgia on October 14, 2000, was a function of her employment and it is only in the State of Georgia that the Plaintiff was effectively working at that time. Plaintiff's argument, on the other hand, that the effects of the alleged sexual discrimination were felt in the Western District of Pennsylvania constitutes a revision of these facts. Because of the specific time and place nature of the alleged incidences of sexual discrimination, the *Passantino* Court's broad interpretation of the first prong of venue rules under 42 U.S.C. § 2000e-5(f)(3) have no applicability.

In the alternative, should this Court find that the broad interpretation followed by the *Passantino* Court does have applicability to the present case, Defendants assert that the effects were not felt in the Western District of Pennsylvania because Plaintiff's ongoing employment was based outside this district. Plaintiff argues that she felt the effects of the hostile work environment in the Western District of Pennsylvania because she worked out of a home office in this district as of the date of the incidents and the period that followed (*See* Pltf's Surreply Brief, at pp. 6-7). Plaintiff also contends that Defendants have attempted "to distort this reality by stating without any record support whatsoever that 'FAMSR provided the Plaintiff with a base office in New Jersey.'" *Id.*, at p. 7. Finally, Plaintiff counters that "FAMSR never provided Plaintiff with a base office in New Jersey" and "never provided Plaintiff with any space for an office nor did it ever pay any fees or rent on her behalf." *Id.* Contrary to Plaintiff's aforementioned contentions, the record does, in fact, show that the Plaintiff was provided with an office in New Jersey and that her employment was primarily based in New Jersey.

Plaintiff admits that Defendants maintained offices in Marlton, New Jersey and that her territory of responsibility incorporated that office (*See* Pltf's Dep, at pp. 8-9, attached hereto as Exhibit H).   Due to the nature of Plaintiff's employment position and the nature of the industry within which Defendants operated, the base office in New Jersey maintained by Defendants for Plaintiff's use was designed to encourage ongoing employee mobility.  In her deposition, Plaintiff confirms her understanding that Defendants' objective was to keep territory representatives "on the road as much as possible." (*See* Pltf's Dep, at p. 10, regarding Plaintiff's understanding that her office was largely mobile).  Plaintiff admits that from this New Jersey office she had access to faxes (*Id.*), telephones *(Id.)*, had the ability to receive scope boxes (*Id.*, at pp. 10-11), and to meet with company account representatives and technicians (*Id.*, at 25).  The Plaintiff also concedes that this office was maintained at the expense of Defendants (*Id.* at 24-25, where Plaintiff acknowledges that the New Jersey office was probably leased by Defendants).

In contrast, despite a request to do so, Plaintiff has, however, produced no documentary evidence that she personally incurred any costs for the use of the office or the provision of these supplies or services.  In fact, Plaintiff admits that she turned in various receipts to Defendants for reimbursement of expenses initially paid by her. (*See* Pltf.'s Dep., at p. 50, detailing reimbursement procedure for cellular telephone; *see id.,* at p. 56, detailing reimbursement procedure for flight and automobile travel reimbursement; *and see id.,* at pp. 56-58, detailing procedure for provision of company car).  All costs relating to the New Jersey office were, in fact, borne by Defendants for the benefit of Plaintiff.

Despite the Plaintiff's statements to the contrary, Defendants always deemed the Marlton, New Jersey office to be the Plaintiff's base office and have always substantiated that fact in all of their words and actions with Plaintiff, at all relevant times.   The Plaintiff's current attempts to refute her use of and the purpose of the Marlton, New Jersey office as her base office, is a distortion of the facts as they existed at all relevant times, and represents her attempt to have this Court decide that venue is proper in the district that is most convenient to her alone.   The record shows that Plaintiff states that the incidents upon which her hostile work environment claim, i.e alleged sexual harassment, is based, occurred on October 14, 2000, in the State of Georgia (Complaint §§ 14-20 and § 27).   Despite Plaintiff's assertion in her Surreply Brief that as of the date of the incidents and the period that followed Plaintiff worked out of her home office in the Western District of Pennsylvania, the record is not supportive of that fact.   In her affidavit sworn on January 27, 2003, Plaintiff states that as of the date of this incident, she and two account representatives "comprised the Philadelphia territory (Cairns' Jan. 27, 2003, Aff., at no. 23, attached as Exhibit I).   Plaintiff also states that she supervised a driver and an account representative for New York/New Jersey, as well as a newly appointed account representative in Columbus. *Id.* Plaintiff attests to the fact that "[w]hen she was not in the field, [she] worked out of [her] 'home' offices in New Jersey or Pittsburgh, depending on [her] travel schedule. *Id.*, at no. 26.

Defendants do, however, admit that there was, in fact, a time when the New Jersey office no longer existed.   Defendants have previously admitted that the Plaintiff's New Jersey base office was closed in May, 2000 (Def.'s Response to Interrogatory No. 17, attached as Exhibit J). Around May, 2000, Defendants closed several territorial offices opting to allow territorial

development managers, such as Plaintiff, as well as account representatives to work from their homes. Plaintiff has acknowledged this change in company policy (*See* Cairns' Dep., at p. 35, describing change in company policy). From that point and up to and including the dates of the alleged sexual harassment and beyond, Plaintiff worked from her home in Marlton, New Jersey. Plaintiff's base, therefore, continued to be in the State of New Jersey and not in the Western District of Pennsylvania.

It is important to recall that the incidents constituting the Defendants' alleged unlawful employment practice, i.e. sexual harassment, occurred on October 14, 2000. By her own admission the Plaintiff confirms that she worked out of her home office in Marlton, New Jersey until early December, well after the date of the alleged incidents (Cairns' Dep., at p. 53 ). Despite Plaintiff's contention that she worked primarily out of her home office in the Western District of Pennsylvania as of the date of the incidents and the period that followed (*See* Pltf.'s Surreply Brief, at p. 6), the Plaintiff, in response to the Defendants' Request for Production of Documents ((*See* Defendants' Request for Documentary Evidence Pursuant to Court Order dated March 3, 2003, attached as Exhibit K), has not substantiated that contention. In fact, the documents produced by the Plaintiff show only a scarce connection to the Western District of Pennsylvania during this period.

The documents produced by the Plaintiff demonstrate the Plaintiff's regular presence in New Jersey. .Despite claiming to have completely withdrawn from New Jersey (Cairns' Jan. 27, 2003 Aff., at no. 28) in late December, 2000, Plaintiff continued to own her residence in New Jersey until well after the alleged incidents, and, in fact, until after her employment with

10

Defendants ended altogether. (*See* Discharge of Mortgage dated July 24, 2001 providing closing date of sale of Plaintiff's New Jersey home, attached hereto as Exhibit L).   Plaintiff also identified 73 Dorset Court, Marlton, New Jersey as her principal address on her 2000 and 2001 federal income tax returns (attached as Exhibit M hereto).  Plaintiff failed to produce state income tax returns for that same period.   Plaintiff produced both gas and electrical service bills relating to her New Jersey home (*see* South Jersey Gas bill covering service from November 21, 2000 to December 20, 2000 and Connectiv Power Delivery bill covering service from November 22, 2000 to December 21, 2000, attached hereto as Exhibits N and O) for dates between October 14, 2000 and December 28, 2000, but produced no utility bills for her alleged Charleroi, Pennsylvania home for that same period.  Finally, Plaintiff's production of bank statements shows an overwhelming majority of debit entries made outside of the Western District of Pennsylvania, the large portion of them having been made in New Jersey (*See* debit entries on Plaintiff's National City Bank of Pennsylvania bank statements covering periods from September 27, 2000 to October 24, 2000 and November 23, 2000 to December 22, 2000, attached as Exhibit P).


Despite also claiming that she worked for the Defendants from her home office in Charleroi, Pennsylvania from October 14, 2000 to December 28, 2000, the Plaintiff has no documentation to substantiate that claim.  The Plaintiff has demonstrated by documentary proof that she continued to be present and to work outside of the Western District of Pennsylvania, primarily in the State of New Jersey, throughout that same period.  The record shows that nearly all of the documents produced by Plaintiff covering the period of the alleged incidents of sexual harassment on October 14, 2001 until the beginning of her unpaid leave of absence prove that the

11

Plaintiff worked primarily from her New Jersey home office and within territories outside of the Western District of Pennsylvania.

Plaintiff's attempts to then convince this Court that she also worked for FAMSR and MDS out of her home office in Charleroi, Pennsylvania (Cairns' Jan. 27, 2003 Aff., at no. 29), during the period from December, 2000 to the end of her employment relationship with Defendants is also extremely misleading.   In fact, during that nearly six-month period, Plaintiff worked a total of less than less than two weeks for Defendants, and none of that time in the Pittsburgh area.   Plaintiff states, "[a]s of January 2001, I was on medical leave" (Cairns' Dep., at p. 44) and "I didn't come back because we came back and, obviously, there was a failure of – they backed out on something, backed out of an agreement.   And so one week in – I believe it might have been the end of May, and then I was shipped off to St. Louis" (Cairns' Dep., at p. 45).   In fact, after December 28, 2000, Plaintiff's resigned her employment with Defendants on two occasions, once on March 3, 2001 and then again on June 12, 2001.   Plaintiff, however, only returned to FAMSR once, and then only on May 29, 2001.

The Plaintiff states that she was on medical leave from late December until early March, 2001.   The Plaintiff's use of the term "medical leave" is not substantiated by the record.   The Plaintiff was denied employee disability insurance coverage by her insurer during this period and did not receive worker's compensation benefits.   Plaintiff's "medical leave" was simply an unpaid leave of absence from FAMSR.   Although she may have lived in Charleroi, Pennsylvania during this period, a fact for which Defendants have no knowledge, Plaintiff did not perform any work on behalf of Defendants during this period.   The record shows, however, that Plaintiff

continued to own a home in Marlton, New Jersey, until well after her unpaid leave of absence and, in fact, until after the end of her employment with Defendants.   Despite Plaintiff's leave of absence ending on March 3, 2001, Plaintiff decided not to return to her employment with Defendants until May, 29, 2001 (*See* electronic message dated March 9, 2001 from Stephanie Lord, Director of Payroll and Human Resources for FAMSR, to staff of FAMSR, attached hereto as Exhibit Q showing that Plaintiff decided not to return to work in March, 2001; a*nd see*, the electronic message from Plaintiff's supervisor, Gregg Constantine, to Plaintiff dated May 25, 2001, evidencing Plaintiff's anticipated return to Defendants' employ on May 29, 2001. *See also*, Cairns' Jan. 27, 2003 Aff. at no. 34 wherein Plaintiff admits that she only returned to work on May 29, 2001).   On June 12, 2001, Plaintiff resigned (*See*  Cairns' Jan. 27, 2003 Aff. at no .35; *and see* Cairns' Feb. 13, 2003 Aff. at no. 9, attached as Exhibit R, wherein Plaintiff admits that her employment with Defendants ended in June, 2001).   In all, after December 28, 2000, Plaintiff worked a total of 14 days for Defendants.   Finally, the documentary proof also shows that Plaintiff's employment duties required her to work in "Philadelphia" territory, a territory previous shown to be based out of the State of New Jersey, and not Pennsylvania (*See* the electronic message from Plaintiff's supervisor, Gregg Constantine, to Plaintiff dated May 25, 2001, clarifying Plaintiff's base Philadelphia territory).

Even if venue is decided on the basis of where the effects of the discrimination were felt, i.e. where Plaintiff worked, Defendants argue that the record does not support the fact that Plaintiff worked in the Western District of Pennsylvania, but rather it demonstrates that she worked outside thereof.  Consequently, the first prong of the 42 U.S.C. § 2000e-5(f)(3) venue rules does not allow venue to be properly asserted in the Western District of Pennsylvania.

13

**B.     Retaliation (Count II)**

Relying again on the rationale in *Passantino,* Plaintiff also asserts that venue is proper in the

Western District of Pennsylvania because she undeniably felt the effects of the retaliation in this

district because she was working only out of her office in Pennsylvania and not the one on New

Jersey during the relevant period.  For the same reasons provided in Part A of this Response,

venue is not proper in the Western District of Pennsylvania for the Plaintiff's Count II retaliation

claim because Plaintiff either worked almost entirely outside this district during the period

relevant to her claim or did not work at all during this period.  As previously explained, from

October 14, 2000 to December 28, 2000, Plaintiff worked outside this district except on a few

occasions when she returned to the Pittsburgh area to visit and spend time with her family.

From December 28, 2000 to May 29, 2001, Plaintiff did not work at all for Defendants.  And

finally, from May 29, 2001 until June 12, 2001, Plaintiff worked in the Philadelphia and St.

Louis areas.  To allow the Western District of Pennsylvania to act as proper venue for Plaintiff's

action would be to do so without a legal and factual basis.

Finally, Plaintiff argues in the alternative that venue is proper in the judicial district in which

the aggrieved person would have worked but for the alleged unlawful employment practice."

Although Defendants acknowledge and accept that 42 U.S.C. § 2000e-5(f)(3) makes such

provision, Defendants argue that Plaintiff would have worked outside the Western District of

Pennsylvania.   Had the Plaintiff, after her unpaid leave of absence, returned to work at anytime

sooner than she did, she would have been required to work in the Philadelphia area.  That fact is

unarguable (*See* the electronic message from Plaintiff's supervisor, Gregg Costantino, to Plaintiff

14

dated May 25, 2001, requesting that Plaintiff return to Philadelphia;  *See also*, Cairns' Dep., at p.

35, where Plaintiff admits that she would be working solely in Philadelphia).   The proper venue

in which to entertain Plaintiff's retaliation claim rests outside the Western District of

Pennsylvania.

## CONCLUSION

Having previously explained how venue is proper where the employment records

pertaining to the alleged unlawful employment practices are administered and maintained,

Defendants assert that The Southern District of Florida is the proper venue as all pertinent

documents are located at Defendants' corporate head office in this district and a majority of the

witnesses also reside there.

Respectfully submitted,

Cathy Bissoon
P A I.D. No. 70371
REED SMITH
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3268

George A. Lane
GEORGE A. LANE, P.A.
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, FL, 33308
(954) 776-8284
Counsel for Defendants

Signed: _____
George A. Lane, Esq.
FLBN: 7242

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Response to the Plaintiff's Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law was served this 23rd day of April, 2003, upon the following by overnight courier delivery:

James B. Lieber
LIEBER & HAMMER, P.C.
PA. I.D. # 21748
Thomas M. Huber
PA. I.D.#83053
5528 Walnut Street
Pittsburgh, PA, 15232-2312

George A. Lane, Esq.
FBN 7242

GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
#205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 (fax)

LAW OFFICES

# George A. Lane, P.A.

**Attorney at Law**
**Wachovia Tower**
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, Florida, 33308
Tel. (954) 776-8284
Fax. (954) 771-9393

April 23, 2003

Mr. Robert Varth Jr.
Clerk of the Court
United States District Court for
the Western District of Pennsylvania
8th Floor -U.S. Courthouse
Pittsburgh, PA, 15219

RE:     Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
        Civil Action No. 02-1236 (W.D. Pa.)

Dear Mr. Varth:

We enclose the Defendants' Response to the Plaintiff's Surreply Brief in Opposition to
Defendants' Motion to Dismiss with Memorandum of Law, which we kindly request be filed with
the court.

Yours very truly,

GEORGE A. LANE, P.A.

George A. Lane

cc. Cathy Bissoon, Esq.

Exhibits A to H

# EXHIBIT "A"

Received: 03 Jan 01 01 07 PM  From UnknownSender  To 5093517573          Powered by eFax.com     Page 2 of 5

Jan 03-01 02:33P                                                                              P. 02



**GUARANTEE LIFE INSURANCE COMPANY**

Guarantee Life Insurance Company
Employee Benefits, Claims Department
P.O. Box 2616
Omaha, NE 68103-2618  (402) 361-7000

## GROUP SHORT TERM DISABILITY

### BENEFITS MAY BE DELAYED IF CLAIM FORM IS NOT FULLY COMPLETED

INSTRUCTIONS TO INSURED

(1) This form is to be filed as soon as it appears that you will qualify for disability benefits.
(2) Complete Employee Claims Statement in FULL to include your signature and the date.
(3) Return form to your Employer for Plan Administrator to complete.
(4) Have your Physician complete Attending Physician's Statement portion of the form.
(5) ORIGINAL FORM MUST BE RECEIVED BEFORE PAYMENT WILL BE RELEASED.
(6) It is the insured Employee's responsibility to provide proof of Total Disability, at his/her expense.

### STATEMENT OF EMPLOYEE
TO BE COMPLETED BY EMPLOYEE

| 1. Full Name (Last, First, Middle Initial) | 2. Social Security Number | 3. Phone Number (Include area code) |
|---|---|---|
| Cairns Shannon M. | 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 | 412-302-1718 |

| 4. Street Address & Mailing Address (no P.O. Boxes) | 5. City | 6. State | 7. Zip Code |
|---|---|---|---|
| 55 Orchard St. | Charleroi | PA | 15022 |

| 8. Date of Birth | 9. Height | 10. Weight | 11. Gender |
|---|---|---|---|
| 5/18/1976 | 5'5 | 118 | ☐ Male  ☒ Female |

| 12. Marital Status | 13. Spouse's Name & Date of Birth |
|---|---|
| ☒ Single  ☐ Married  ☐ Widowed  ☐ Divorced | N/A |

| 14. Employer's Name | 15. Group Policy Number |
|---|---|
| Factory Authorized Medical Scope Repair / MDS | 0000100210084 |

*Medical Device Solutions*

16. Occupation (List the duties of your occupation at the time of disability)
Regional Sales Manager

| 17. Is Spouse Employed?  ☐ Yes  ☐ No | 18. Number of children (under age 19) |
|---|---|
| Spouse's Employer Name & Address  N/A | Names & Dates of Birth  N/A |

19. Date of accident or date first noticed symptoms of illness: 10/14/00

20. I have been unable to work because of the disability since: 12/28/00

21. I returned to work on a part-time basis on: ____

22. I returned to work on a full-time basis on: ____

23. Is your accident or illness related to your occupation? SH  ☒ Yes  ☐ No

24. If "Yes", explain. Claimant was sexually harassed and assaulted by supervisor on 10/14/00.

Have you or do you intend to file a Worker's Compensation Claim?  ☐ Yes  ☐ No
Name & Address of Worker's Comp Carrier: ____

25. Describe how and where accident occurred or describe the onset and nature of your illness.
Employee Cairns attending a regional sales meeting, claimant was sexually harassed & assaulted by her supervisor John Trunk

26. Is this an  ☐ Accident  ☒ Sickness  ☐ Other  Please Explain ____

**WARNING:** Any person who knowingly, and with intent to defraud or deceive any insurance company, files an application or claim containing any false, incomplete, or misleading information is guilty of a felony.

GLCL10 10/96

Received 03 Jan 01 01 07 PM  From UnknownSender  To 5093617573          Powered by AFax.com        Page: 3 of 5

Jan-03-01 02:33P                                                                    P.03

---

**27.** Date you were first treated for your illness or injury: ___/___/___

Dates Hospital confined        From ___/___/___  To ___/___/___

---

**28.** Treated by: (on another piece of paper, provide names & addresses of all doctors who have treated you for this disabling condition)

Hospital
Name            Street Address         City        State     Zip Code

Doctor: John A Hele is   447 W  Main St   Monongahela Pa   15063
Name (MD)       Street Address    City     State    Zip Code

---

**29.** Have you ever had the same or similar condition in the past?   Yes   (No)   (If "Yes" complete #27)

---

**30.** Treated by: (on another piece of paper, provide names & addresses of all doctors who have treated you for this disabling condition)

Hospital
Name            Street Address         City        State     Zip Code

Doctor: Helen Klein   552 N. Neville St  Pittsburgh 15213
Name counselor    Street Address   Suite 21  City  PA  Zip Code

---

**31.** Describe other income you are receiving, have applied for or will be applying for:

| Yes | No | | Amount | Date Began | Date Will Terminate |
|---|---|---|---|---|---|
| ☐ | ☒ | Social Security (Disability Retirement) | $_____ | ___/___/___ | ___/___/___ |
| ☐ | ☒ | Salary Continuance | $_____ | ___/___/___ | ___/___/___ |
| ☐ | ☒ | Retirement (Normal, Early or Disability) | $_____ | ___/___/___ | ___/___/___ |
| ☐ | ☒ | Workers' Compensation | $_____ | ___/___/___ | ___/___/___ |
| ☐ | ☒ | Unemployment, government, or state benefits | $_____ | ___/___/___ | ___/___/___ |
| ☐ | ☒ | Any other income related to your disability | $_____ | ___/___/___ | ___/___/___ |

---

**32.** Have you, or do you plan to apply for benefits described above?

Type _____              Date Application Filed ___/___/___

The above statements are true and complete to the best of my knowledge and belief.

_____                    1/15/01
Signature of Employee                          Date

---

## GROUP CLAIMS
### EMPLOYEE'S AUTHORIZATION FOR CONFIDENTIAL INFORMATION

**I AUTHORIZE ANY PHYSICIAN**, medical professional, hospital, clinic, other medical or medically related facility, pharmacy, insurance or reinsurance company, consumer reporting agency, government agency, department of labor or employer to disclose or furnish to **Guarantee Life Insurance Company**, P.O. Box 2816, Omaha, Nebraska 68103-2616, its subsidiaries or representatives, any and all information with respect to any illness including mental illness, drug/alcohol abuse, medical history, consultations, prescriptions, treatments or benefits, and copies of all applicable records that may be requested. **I ALSO AUTHORIZE** my employer to disclose all employment information needed to process my claim.

The information provided to **Guarantee Life Insurance Company**, its subsidiaries or representatives is to be used solely for the administration of claim(s) as captioned above. **A photo copy** of this authorization is to be considered as valid as the original and is effective for the duration of the claim.

X _____            1/15/01
Patient's (Claimant's) Signature          Date

NOTE: A true copy of this authorization is available to the patient or his authorized representative at any time upon request.

**BENEFITS MAY BE DELAYED IF CLAIM FORM IS NOT FULLY COMPLETED**
Guarantee Life Insurance Company, P.O. Box 2616, Omaha, Nebraska 68103-2616

**EMPLOYER'S REPORT OF CLAIM**     TO BE COMPLETED BY EMPLOYER

| 1. Employee's Name | 2. Social Security Number | 3. Date of Birth |
|---|---|---|
| Shannon Cairns | 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 | 5/18/76 |

| 4. Address | 5. City | 6. State | 7. Zip Code |
|---|---|---|---|
| 55 Orchard St | Charleroi | Pa. | 15022 |

| 8. Insurance Class | 9. Certificate Number |
|---|---|
| | 209581385 |

10. Employee Date of Hire     6/15/98

11. Date employee became eligible for Short Term Disability     12/1/99

12. Date employee was actually last present at work     12/26/00

| 13. Occupation | 14. Number of Hours Worked Per Week |
|---|---|
| Regional Sales Manager | 60 |

15. Reason for ceasing active work
- [ ] Maternity Leave
- [X] Sickness
- [ ] Accident
- [ ] Resignation
- [ ] Vacation
- [ ] Dismissed
- [X] Granted Leave of Absence
- [ ] Laid Off
- [ ] Other

16. Has employee returned to work?
- [ ] Yes [X] No
- [ ] Part-Time Date ___/___/___
- [ ] Full Time Date ___/___/___

17 Employee's Basic Weekly Earnings: $ 4168.xx/ev 2wks   Short Term Disability Benefit $ 2,500/ev 2wks
Normal Base Salary 100K/yr   60% = 60K   5K/mos   2,500/every 2wks   1,250/every wk

18. Percent of premium paid by: Employee ___% Employer ___% (Please indicate as percentage)

19 Has insured received other income since time last worked?

Salary Continuance [ ] Yes [X] No   Weekly Amount $ ____   Salary Begin Date ___/___/___
(To include any future amount the employee may receive)   Date Salary will END ___/___/___

Any Other Type [ ] Yes [X] No   Weekly Amount $ ____   Paid from ___/___/___ to ___/___/___

20. Did claim result from job activity? [X] Yes [ ] No    21 Has a Workers' Compensation claim been filed?
If "Yes" explain    [ ] Yes [X] No [ ] Pending [ ] Denied
Claimant was sexually harassed    Please enclose copies of Notice of Claim Award & Denial
& assaulted by Supervisor

22 Is employee covered by employer sponsored retirement plan? [ ] Yes [X] No
   a. Type of Plan
   b When will employee be eligible for this benefit? ___/___/___

Employer's Name and Address (state association and name of policyholder, if other)

| Telephone Number (include Area Code) | Group Policy Number & Division Number |
|---|---|
| 954-984-1844 x2003 | 0000100210B4 |

Signature of person completing this form

Title of person completing this form: Human Resources    Date

P.05

Jan-03-01 01:33P

Received. 03 Jan 01  01.07 PM  From. UnknownSender  To: 5093517573     Powered by eFax.com     Page 5 of 5

Jan 03-01 02:33P     P.06

## ATTENDING PHYSICIAN'S STATEMENT Guarantee Life Insurance Company, P.O. Box 2015, Omaha, NE 68103-2015

| 1. Name of Patient | 2. Date of Birth | 3. Employer Name |
|---|---|---|
| Shanon Cairas | 5-18-76 | |

| 4. When did symptoms first appear or accident happen? | 5. Date patient ceased work because of disability? |
|---|---|
| 10-24-00 | 12-28-00 |

6. Has patient ever had same or similar condition?  ☐ Yes  ☒ No   If "Yes" state when and describe

7. Do you or the patient consider this condition to be related to the patient's employment?  ☒ Yes  ☐ No
If yes, please indicate underlying cause:  Patient sexually assaulted at work

8. Diagnosis (including complications)  Reactive depression, Anxiety

9. Names, specialty and addresses of other treating physicians:  Counselor

10. If pregnancy, estimated date of delivery or actual delivery date  ___/___/___  vaginal or c-section

11. Subjective symptoms

12. Objective findings (including current x-rays, EKG's, laboratory data and any clinical findings)  Medical Exam

13. Date first treated.  12-22-00

14. Date of last visit/treatment:  same

15. Frequency: ☐ Weekly  ☐ Monthly  ☒ Other (specify)  PRN (as needed)

16. Nature of treatment (including surgery and medications prescribed, if any).  Counseling, medication

17. Has patient: ☐ Recovered  ☐ Improved  ☒ Unchanged  ☐ Regressed

18. Is patient: ☒ Ambulatory  ☐ House Confined  ☐ Bed Confined  ☐ Hospital Confined

19. Has patient been hospital confined? ☐ Yes  ☒ No   Confined from: ___/___/___ to ___/___/___
If "Yes" give name and address of hospital
Dates of Total Disability  12-28-00 to ___/___/___  unknown
Dates of Partial Disability  ___/___/___ to ___/___/___
Is surgery scheduled? ☐ Yes  ☒ No  If yes, date surgery scheduled ___/___/___
Type of surgery scheduled _____

DEFINITION OF TOTAL DISABILITY. Total Disability means the inability of the insured Person, due to sickness or injury, to perform the material duties of the Insured Person's regular occupation. A person engaging in employment for wage or profit is not Totally Disabled.
DEFINITION OF PARTIAL DISABILITY. Partial Disability means that due to sickness or injury the Insured Person is unable to perform one or more of the material and substantial duties of his or her regular occupation or unable to perform such duties on a full-time basis.

20. Prognosis and Rehabilitation:
a. Is patient now TOTALLY disabled from PRESENT occupation?  ☒ Yes  ☐ No
   (or was patient totally disabled for a period of time? If so indicate dates in #19 above)  ☐ Yes  ☐ No
b. Is patient now TOTALLY disabled from ALL OTHER occupations?  ☐ Yes  ☐ No
c. Can present job be modified to allow patient to handle with his/her impairment?  ☐ Yes  ☒ No
d. Do you expect a fundamental or marked change in the future? (If yes see below***)  ☒ Yes  ☐ No
e. When could trial employment commence?  ___/___/___  ☐ Full-time  ☐ Part-time
***If "Yes", when will patient recover sufficiently to perform duties?  ___ Days  ___ Weeks  12 Months

21. Remarks (List Restrictions & Limitations, Therapy, etc.).

| Print Name (Attending Physician) | Degree and Specialty | Telephone (Include Area Code) |
|---|---|---|
| John A. Holets | M.D. Family Prac. | (724) 258-2020 |

| Street Address | City/Town | State/Providence | Zip Code |
|---|---|---|---|
| 442 W. Main St. | Monongahela | PA | 15063 |

| Signature (Attending Physician) No stamp please | Date | Fax Number (Include Area Code) |
|---|---|---|
| | 1-13-01 | (724) 258-3580 |

GUARANTEE LIFE INSURANCE COMPANY IS NOT RESPONSIBLE FOR CHARGES INCURRED DUE TO COMPLETION OF THIS FORM. THE PATIENT IS RESPONSIBLE FOR ANY CHARGES ASSOCIATED WITH FORM COMPLETION. Any person who knowingly and with intent to defraud or deceive any insurance company, files an application or claim containing any false, incomplete, or misleading information is guilty of a felony.

**EXHIBIT "B"**



JEFFERSON PILOT FINANCIAL
P.O. Box 2609
OMAHA, NE 68103-2609
Bus: 1-888-621-3029

## JEFFERSON PILOT
## FINANCIAL

February 15, 2001

SHANNON CAIRNS
55 ORCHARD ST
CHARLEROI PA 15022

RE:  Policy Number:  01-0021084
     Claim Number:  1010017796

Dear Ms. Cairns:

We would like to acknowledge receipt of your request for Short Term Disability benefits.  Based on the information provided, benefits are being denied as a result of the following Provisions in the Policy:

"EXCLUSIONS.  Weekly Income Benefits will not be payable for any period of Disability:
which is the result of a Sickness or Injury payable by Worker's Compensation

WORKER'S COMPENSATION.  This policy is not to provide benefits required by Worker's Compensation laws.

This Policy does not replace or provide benefits required by Workers' Compensation laws or any state disability insurance plan laws."

Our records show your disability started on December 27, 2000.  According to the information which you have submitted, your disability was the result of your occupation.  Your employer has also indicated that this claim was the result of job activity.  The attending physician, who completed your claim form, states that your condition is related to your employment.  According to this information, we believe that you would be considered for Workers' Compensation.  Therefore, based on the above provisions, we can not approve you for Short Term Disability Benefits at this time.

If you disagree with our decision, you can appeal our determination.  To initiate this process, please send your written request to Jefferson Pilot Financial, EBD Claims Department, 8801 Indian Hills Drive, Omaha NE 68114, within 60 days of receipt of this notice.  Please be sure to include your policy and claim numbers.  You have the option to include your comments and views of the issues in writing.  In addition, you may request that we provide a copy of the medical documents used in our review by providing us with an authorization signed by your physician.

Please contact our office if you should have any questions, at 877-843-3948.

Sincerely,

James Beyer
STD Benefit Specialist
Benefit Partners

Cc:
FACTORY AUTHORIZED MEDICAL SCOPE REPAIR
ATTN STEPH LORD
2859 W MCNAB RD
POMPANO BEACH FL 33069

**EXHIBIT "C"**

**GeorgeALane**

| | |
|---|---|
| **From:** | "Jeff Trank" <jtrank@Famsr.Com> |
| **To:** | "GeorgeALane" <GeorgeALane@msn.com> |
| **Sent:** | Tuesday, June 12, 2001 8:47 PM |
| **Attach:** | Resignation Letter.doc |
| **Subject:** | Cairns resignation |

Hi George,

Gregg will be e-mailing you all the correspondance between him and Shannon tomorrow morning. I'll call you Thursday to discuss.

If there is any urgency to our discussion, please call me at 678-521-0355 and we can talk Wed.

Thanks

Jeff


----- Original Message -----
From: "Gregg Costantino" <gregg_c@MindSpring.Com>
To: "Jeff Trank" <jtrank@famsr.com>
Sent: Tuesday, June 12, 2001 4:16 PM
Subject: FW: Please see attachment


>
>
> -----Original Message-----
> From: SWIMGAL17@aol.com [mailto:SWIMGAL17@aol.com]
> Sent: Tuesday, June 12, 2001 5:32 AM
> To: gregg_c@famsr.com
> Subject: Please see attachment
>
> Gregg,
>
> This attachement has been emailed, faxed, and mailed directly to you.
>
> Thank you.
>
> Sincerely,
> Shannon M. Cairns
>

6/13/01

June 12, 2001

Via Facsimile and
Regular Mail

Gregg Costantino
National Sales Manager,
Factory Authorized Medical Scope Repair
        And Medical Device Solutions
2859 West McNab Road
Pompano Beach, FL. 33069

Dear Gregg:

It is with great regret that I am resigning my position as Regional Sales Manager with Factory Authorized Medical Scope Repair and Medical Device Solutions. I had hoped that we could continue to work together; however, your conduct of the last two weeks amounts to a constructive discharge and leaves me with no choice but to resign.

I returned to work as you had instructed on May 29 only to find you had made no preparations for my return, had not provided me with the equipment needed to perform my job, rescinded my benefits, and had not even informed my representatives that I was coming back. You have consistently refused to provide me with any written description of my role or duties and have protested when I have e-mailed you in an attempt to get some outline of my job duties. You have not told me about any policies or procedures that might have changed. You telephoned me with assignments less than two days before those were due, while other sales managers were given at least twice the time for similar assignments. You changed my territory from the Mid-Atlantic Region to Cleveland and St. Louis, giving me a defunct territory on top of no information in the process.

However, you did more that hamper my ability to do my job. On multiple occasions, you have forced me to interact with Jeff Trank who, as you know, harassed me during a regional sales meeting last October. This interaction has caused me severe emotional distress and added to the pressure you placed upon me by giving me inadequate instructions and support.

Your behavior and the companies' clearly demonstrates you no longer want me to work with you and under these conditions, I cannot. Therefore, I am resigning, effective immediately.

Very truly yours,

Shannon M. Cairns

**EXHIBIT "D"**

5/25/01

TO  SHANNON CAIRNS

FROM: GREGG COSTANTINO

Good afternoon Shannon. Welcome back!

You were previously based in Philadelphia. You will need to remain based in Philadelphia to resume your position with the company. Please be in Philadelphia, ready to work on Tuesday, May 29th at 7:00 a.m. Please call me at that time at 770-509-7252. If you have any problems reaching me at that number, please leave me a voice-mail at 800-352-7822, extension 2101 at 7:00 a.m. with a number I can reach you at

Thank you

Gregg Costantino
National Sales Manager

**EXHIBIT "E"**

DISCIPLINARY ACTION

June 4th, 2001

TO: SHANNON M. CAIRNS

FROM: GREGG COSTANTINO

As the National Sales Manager, I am responsible for the productivity and success of the sales force and sales management team.

Your actions that were not within our normal means of conducting business during the week of May 29th significantly hindered my ability to perform my job. In addition, your actions that were not within our normal means of conducting business also resulted in a complaint from one of your direct reports that the environment you foster made him uncomfortable. In addition, your focus of allocating time from performing your normal duties to excessive documentation of your activities and interactions is not within our normal means of conducting business. You are on the company payroll. I have an issue with paying you to create unnecessary documentation rather than applying your activities towards impacting the business.

I informed you that we would have a phone meeting on May 29th. I blocked off 7:00 a.m. to 2:00 p.m. When we spoke at 7:00 a.m., you informed me that you would only talk if you could record the conversation. This is not our normal means of conducting business. I had to contact our legal counsel to determine our response. I then had to reconfigure my entire schedule for the day and the schedules of the other managers. I had to have the management team change their schedule to speak with me in the morning so I could speak with you in the afternoon. In the future, we need to be able to hold our scheduled meetings with no hindrance from your personal documentation needs.

- You worked with Charles Meadows on May 29th and 30th. You composed excessive documentation on the daily activities. This is not our normal means of conducting business. By documenting all day, this would have significantly hindered your ability to manager your region. All that time documenting should have been allocated towards impacting the business, which is our normal means of conducting business.

- You asked Charles Meadows to sign your documentation when the day was completed. This is not or normal means of conducting business. Our representatives are not comfortable with the distraction and stress of signing documentation. The perception is that you are preparing for a lawsuit and the representatives don't want to be involved in litigation that doesn't involve them.

- The normal means of conducting business is for the primary means of communication to be verbal. I am always accessible and we have regularly scheduled times to speak. While e-mails are useful in some limited applications, you continue to send me excessive e-mails documenting our conversations, which is not part of your job

responsibilities or my job responsibilities. As the National Sales Manager, working between 60 and 80 hour per week, I don't have time to constantly read and respond to this excessive and unnecessary documentation that does not affect me accomplishing my professional objectives. This is consuming a significant amount of my time, preventing me from performing my job in my normal means of conducting business.

In addition, you are spending a significant amount of time composing these e-mails. During the business day when you are being paid by FAMSR for your time, your time should be spent managing your representatives and impacting the business, not creating excessive documentation for your own use.

Shannon, these are serious matters that must be addressed immediately. I hope you will be able to resolve these problems so you can focus on performing your job according to our normal means of conducting business, allowing me to perform my job according to our normal means of conducting business.

Thank you,


Gregg Costantino
National Sales Manager

**EXHIBIT "F"**

The EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and
The PENNSYLVANIA HUMAN RELATIONS COMMISSION

## CHARGE OF DISCRIMINATION

Charge Numbe: *150 A1 2717*

**Name**: Shannon Cairns
**Home Telephone Number**: (724) 483-0461
**Address**: 55 Orchard Street, Charleroi, PA 15022
**Date of Birth**: May 18, 1976

## NAMED ARE THE EMPLOYERS, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

**Name:**     Factory Authorized Medical Scope Repair (FAMSR)
2859 West McNab Road
Pompano Beach, FL 33069

Medical Device Solutions (MDS)
1291-A S. Powerline Road
Pompano Beach, FL 33069

**Number of Employees:** More than 200

**Telephone Number:** 1-800-352-7822

**Cause of Discrimination Based On**: Sexual Discrimination and Harassment

**Date Discrimination Took Place**:
Earliest: October 14, 2000

**The Particulars Are:**

1.     I worked for Respondent FAMSR starting in June 1998. During this period my performance was consistently excellent and was never criticized. My last position was Regional Sales Manager. In the fall of 2000. I assumed responsibility as Regional Sales Manager for MDS as well as FAMSR. MDS is a separate corporation but shares a product line, management and employees with FAMSR.

1

2.    On October 14, 2000, my sales representatives and I attended a regional sales meeting at the home of Jeff Trank, President of FAMSR and MDS. During the evening, Mr. Trank grabbed me and kissed me. When I protested, he told me I was "hot and sexy" and he refused to let me go. Later that night, he told me he had to talk with me. Instead of talking, he propositioned me, assaulted me and physically restrained me.

The following day, I reported the incident to my supervisor, Gregg Constantino. He cautioned me that Mr. Trank had been drinking, was experiencing marital difficulties and was afraid he was no longer attractive to young women.

3.    Following the incident and my complaint, my employer changed terms and conditions of employment including requiring me to report directly to and interact with Mr. Trank for several weeks and assigning me to parts of my territory furthest from my home. In addition, my direct supervisor, Gregg Constantino failed to respond to me on projects and began a pattern of canceling meetings and phone calls.

My attorneys contacted my employers asserting my intention to file discrimination lawsuits against my employers and Trank. My employers insisted I resign my employment on March 3, 2001 with false assurances that the matter was settled. The employer did not honor the terms of the negotiated settlement, and I returned to work May 29, 2001. In the meantime, my resignation was a retaliatory constructive discharge which cost me nearly three months of work and income.

When I returned to work on May 29, I continued to experience retaliatory acts similar to and worse than I had experienced following my initial complaint.

4.    As a result of the incident of October 14, 2000 and the petty acts of retaliation that followed my complaints, I have suffered and continue to suffer emotional distress.

5.    I was subjected to conduct made illegal under Title VII in violation of Section 703 and 704(a) of the Title VII of the Civil Rights Act of 1964. 42 U.S.C. §2000e-2(a)(1), as amended, in that I was sexually harassed by the president of my company and retaliated against when I complained about it.

6.    I would like my charge to be cross-filed with the Pennsylvania Human Relations Commission.

2

I declare under penalty of perjury that I have read the above Charge of Discrimination and that it is true and correct to the best of my knowledge, information and belief.

Shannon Cairns

6/1/01
Date

Subscribed and sworn to before me this

1 day of June, 2001.

Notary Public

RUTHLYNN COLLINGE
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 30, 2005

3

**EXHIBIT "G"**



"Never sacrifice quality to make numbers."



"Let things go. If the old way doesn't work — don't keep it."



"You can have fun nearly every day if you approach work with the right attitude."



"Don't eat garlic at lunch."





"Coffee & doughnuts are a meal."

"Being good is important; being trusted is essential."



# Employee Handbook







"Never miss deadlines. Ever."

"Remember the parable about the captain of the battleship steaming through the dark night who proudly insisted that the ship showing the light dead ahead give way ... until the 'ship' identified itself as a lighthouse. It works in many organization situations."



"Never apologize for an idea that didn't work—but always admit a mistake."

"When the note on the refrigerator says it will be emptied this Friday, get your salad dressing. Cleaning the refrigerator is the one corporate initiative that's always fully implemented."



"Performance evaluations take place every day, not every six months or every year."

Quotes taken from "Never Confuse a Memo with Reality" by Richard A. Morgan

# B.W. Medical Group, Inc. and Subsidiaries
# Employee Handbook

## 703 Sexual and Other Unlawful Harassment

Effective Date: 7/1/99

B.W. Medical Group is committed to providing a work environment that is free of discrimination and unlawful harassment. To provide a workplace free of harassment, employees must report the harassment to B.W. Medical Group management as soon as possible. Actions, words, jokes, or comments based on an individual's sex, race, ethnicity, age, religion, disability or any other legally protected characteristic will not be tolerated. As an example, sexual harassment (both overt and subtle) is a form of employee misconduct that is demeaning to another person, undermines the integrity of the employment relationship, and is strictly prohibited.

Any employee who experiences or witnesses an incident of sexual or other unlawful harassment must promptly report the matter to his or her supervisor. If the supervisor is unavailable or the employee believes it would be inappropriate to contact that person, the employee should immediately contact the Human Resources Manager or any other member of management. Employees can raise concerns and make reports without fear of reprisal. All reports will be investigated as appropriate. Confidentiality will be maintained to the extent possible under the circumstances.

Any supervisor or manager who becomes aware of possible sexual or other unlawful harassment should promptly advise the Human Resources Manager or any member of management who will handle the matter in a timely and confidential manner.

Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of employment.

**EXHIBIT "H"**

**DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003**

Page 1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2            FOR THE WESTERN DISTRICT OF PENNSYLVANIA

 3

 4    SHANNON M. CAIRNS,              )

 5                    Plaintiff,     )  CIVIL ACTION

 6        vs.                        )  No. 02-1236

 7    FACTORY AUTHORIZED MEDICAL     )

 8    SCOPE REPAIR; MEDICAL DEVICE   )

 9    SOLUTIONS; and JEFF TRANK,     )

10                    Defendants.    )

11

12            DEPOSITION OF SHANNON M. CAIRNS,

13    taken pursuant to the Federal Rules of Civil Procedure,

14    before Lisa Ann Bauer, Certified Realtime

15    Reporter-Notary Public in and for the Commonwealth of

16    Pennsylvania, on Friday, April 4, 2003, at the offices

17    of Reed Smith LLP, 435 Sixth Avenue, Pittsburgh,

18    Pennsylvania 15219, commencing at 10:00 o'clock a.m.

19                        -  -  -

20

21

22

23

24

25
```

DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003

Page 2

```
 1          A P P E A R A N C E S
 2               - - -
 3  On behalf of the Plaintiff:
 4       Thomas M. Huber, Esquire
 5       Lieber & Hammer, P.C.
 6       5528 Walnut Street
 7       Pittsburgh, PA  15232
 8
 9  On behalf of the Defendant:
10       Cathy Bissoon, Esquire
11       Reed Smith LLP
12       435 Sixth Avenue
13       Pittsburgh, PA  15219
14
15               - - -
16
17            I N D E X
18  WITNESS      EXAMINATION BY      PAGE
19  SHANNON M. CAIRNS    Ms. Bissoon    3, 66
20               Mr. Huber       64
21
22  EXHIBITS
23  None
24               - - -
25
```

Page 3

```
 1          P R O C E E D I N G S
 2       (10:05 o'clock a.m.)
 3          SHANNON M. CAIRNS,
 4  the deponent, having been first duly sworn, was deposed
 5  and testified as follows:
 6          EXAMINATION
 7  BY MS. BISSOON:
 8    Q.  State your full name for the record.
 9    A.  Shannon Michelle Cairns.
10    Q.  Ms. Cairns, my name is Cathy Bissoon, and I'm
11  one of the lawyers representing Factory Authorized
12  Medical Scope Repair, Medical Device Solutions, and
13  Jeff Trank in the action that you filed against them in
14  the Western District of Pennsylvania.
15       I'm going to ask you a few questions today.  I
16  do have a couple of ground rules.  Have you ever been
17  deposed before?
18    A.  No.
19    Q.  Essentially, this is going to be a question and
20  answer session.  I will ask you a series of questions.
21  Your counsel may have questions after me.  And I'll ask
22  that you answer my questions truthfully.  I'll ask that
23  if there is a question as to your comprehension of my
24  question that you ask me to rephrase the question.  If
25  you don't hear my question, you can ask me to repeat
```

Page 4

```
 1  the question.  If you answer the question, I'll assume
 2  that you understood it and that you heard it and that
 3  you answered it truthfully and to the best of your
 4  recollection.
 5       Do you understand?
 6    A.  Yes.
 7    Q.  Can you state your current address for the
 8  record.
 9    A.  55 Orchard Street, Charleroi, Pennsylvania
10  15022.
11    Q.  I'm going to start off, Ms. Cairns, with some
12  questions regarding the documents that you and your
13  counsel have produced for me today.
14       Does this represent the complete set of
15  documents that you have in your possession with
16  respect to the document request that we served on your
17  counsel?
18    A.  Yes.
19    Q.  I noticed in your series of income tax returns
20  that I did not see any state income tax returns.  Do
21  you have those?
22    A.  I went to my income tax place and asked them to
23  make a copy of everything, so that's what I gave to
24  you.
25    Q.  And what is your income tax place?
```

Page 5

```
 1    A.  Ken Dwyer & Associates.
 2    Q.  Do you know why there would not be any forms
 3  for either your local or state taxes in those
 4  documents?
 5    A.  No.
 6    Q.  When you prepared your taxes, did you normally
 7  receive copies of your tax forms?
 8    A.  Yes.
 9    Q.  Do you retain those copies?
10    A.  I couldn't find those ones.  That's why I went
11  to them for their direct copy.
12    Q.  Do you recall which state entities you filed
13  tax returns with in the year 1998?
14    A.  '98 would have been Pennsylvania.
15    Q.  How about '99?
16    A.  Pennsylvania.
17    Q.  2000?
18    A.  New Jersey.
19    Q.  And 2001?
20    A.  It was New Jersey and Pennsylvania.
21    Q.  And last year?
22    A.  2002?  Pennsylvania.
23    Q.  I should also add, Ms. Cairns, if you could,
24  for the court reporter, answer your questions audibly,
25  instead of nodding or gesturing in some way.  She can
```

2 (Pages 2 to 5)

DEPOSI1. _N OF SHANNON M. CAIRNS - Fri⊔  , April 4, 2003

Page 6

1  only take down words. If you can also wait for me to
2  finish asking my question before you start answering,
3  she can only take down one voice at a time.
4      A.  Okay.
5      Q.  I notice with respect to our Request No. 18,
6  which was any copies of electronic mail messages, fax
7  transmissions, telegraph messages received by you that
8  talked about the satellite office in New Jersey, did
9  you not have anything that met that request?
10     A.  No.
11     Q.  And I also noted that you did not produce any
12 pay stubs or paychecks for the defendants from 1998 to
13 2001.
14       Do you not possess those, either?
15     A.  No.  Not that I could find.
16     Q.  When did you begin working at Factory
17 Authorized Medical Scope Repair?  I'm just going to
18 call them Factory Authorized.
19     A.  That's okay, or FAMSR.  June of '98.
20     Q.  What did you do for FAMSR?
21     A.  I was an account executive.
22     Q.  What were your duties as an account executive?
23     A.  Maintain current accounts and develop new
24 accounts with regards to the repair services they
25 offered.

Page 7

1      Q.  How long did you work in that position?
2      A.  I was promoted to TDM within six months, though
3  after being promoted to TDM, I still serviced
4  Pittsburgh, because we had a hire that no longer was a
5  hire.
6      Q.  By TDM, you mean territory district manager?
7      A.  Development manager. So '99 I became that.
8      Q.  And what does a territory development manager
9  do?
10     A.  A territory development manager was responsible
11 for the territory that they grew as an account
12 executive, as well as then being placed into a new
13 area. So it teaches you to train your replacement
14 where you came from, as well as taking you into a
15 different city that has different competitive
16 circumstances to test your skills again to see that you
17 can, obviously, duplicate your success in a different
18 market. So you were responsible for developing
19 yourself and developing, then, your replacement.
20     Q.  How did it come to be that you became a
21 territory development manager?
22     A.  I'm not sure I understand. What was their
23 reasoning?
24     Q.  Were you asked or did you volunteer or how did
25 that happen?

Page 8

1      A.  No. It's only something that they do through
2  promotion, and I was the fastest that ever got moved up
3  into that position.
4      Q.  How did you find out about your promotion to
5  this position?
6      A.  My direct supervisor, George Pratt.
7      Q.  I'm sorry. Can you spell the last name?
8      A.  P-r-a-t-t, I believe.
9      Q.  How did Mr. Pratt communicate that to you?
10     A.  He was in the Pittsburgh office. He came for a
11 visit.
12     Q.  Where was the Pittsburgh office?
13     A.  At that time, we had moved it from a previous
14 Pittsburgh office. It was on the North Side.
15     Q.  Do you recall the address of that office?
16     A.  I believe it was Monterey Street. It was in --
17 what was the name of that area of the North Side?
18 Something streets. I know it's Monterey Street.
19       MR. HUBER: Mexican War Streets?
20       THE WITNESS: Mexican War Streets. I
21 knew it had a name to it. Thank you.
22 BY MS. BISSOON:
23     Q.  What areas were in your territory as a
24 territory development manager?
25     A.  It started as Philly and Pittsburgh, and then I

Page 9

1  was moved to also handle Detroit.
2      Q.  Did you have an office?
3      A.  No, other than the satellite offices that were
4  provided for the reps and the technicians.
5      Q.  And where were those satellite offices provided
6  for the reps and the technicians?
7      A.  In the different cities, you mean?
8      Q.  Were they in Philadelphia, Pittsburgh, and
9  Detroit?
10     A.  Yes. The Philly office was in Marlton, New
11 Jersey.
12     Q.  And the Pittsburgh office was the one that you
13 described before at Monterey Street?
14     A.  When I first got promoted, yes. They did
15 change it one more time before I left.
16     Q.  And where was the Detroit office located?
17     A.  In Detroit, the exact address, I'm not sure.
18 They would have that information. The address I don't
19 recollect.
20     Q.  But it was in the city of Detroit?
21     A.  In the city of Detroit, yes. I know it was
22 across from a Panera Bread. First time I ever had one.
23     Q.  When you utilized these offices, would this be
24 where you would receive faxes or telephone calls and
25 things of that nature?

3 (Pages 6 to 9)

DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003

---

**Page 10**

1  A.  Faxes, yes, but also I have an e-fax, which is
2  through my computer, since we were traveling so much.
3  That was always the best way.  Anything that needed to
4  get to us was shipped in scopes, depending on the
5  territory that we were in.  Phone calls, again, could
6  be taken either in the office, at a hospital, or on my
7  cell phone.  Because, again, our goal is to be on the
8  road as much as possible.
9    Q.  So if you happened to be working at a hospital
10 in a particular day, you would receive phone calls
11 there or on your cell phone?
12   A.  Yes.
13   Q.  Was there a person who took phone calls in
14 those satellite offices that you described?
15   A.  No.
16   Q.  Just whoever was there?
17   A.  Yes.  We had pagers, also.
18   Q.  Was there any written arrangement with respect
19 to how you would receive phone calls or faxes or
20 work-related mail?
21   A.  No.  If the company had something that was
22 confidential, they would just mark confidential on it
23 and send it either, again, one of methods described
24 before, via a scope box, a fax, or an e-fax.
25   Q.  What do you mean by a scope box?

---

**Page 11**

1    A.  How the equipment is shipped to and from the
2  satellite facilities to the home office.  It comes —
3  there is a particular size box that's used via UPS
4  regulations.  So it would go in the box with the scope.
5  That's what I mean when I say scope box.
6    Q.  Would that be delivered to one of the satellite
7  offices or would that go directly to a hospital, or how
8  would that work?
9    A.  They had different arrangements for different
10 clients.  Mostly, they were delivered directly to the
11 satellite offices.  Some, if the hospital needed it
12 before the rep could take it out there, they mailed it
13 directly to the hospital, and some, UPS held them and
14 the rep had to go to UPS to pick them up directly.  It
15 really varied from city to city.
16   Q.  And again, there weren't any written rules or
17 procedures with respect to how you received these?
18   A.  Not that I'm aware of.  Not that I ever
19 received.
20   Q.  As a territory development manager, did you
21 receive faxes from Factory Authorized offices in
22 Atlanta and Florida?
23   A.  Yes.
24   Q.  Was there any particular person at these
25 locations that sent you faxes?

---

**Page 12**

1    A.  It varied.
2    Q.  Who were some of the people that you would
3  receive faxes from?
4    A.  Any of the clerical staff.  When I say clerical
5  staff, anything from, I guess, human resources,
6  technical, like our technician director.  Memos,
7  whoever would generate the memos that needed to go out
8  to us, George Pratt, Gregg Costantino.  But, again,
9  those memos were usually sent by somebody else on their
10 behalf, information that they were disseminating from
11 the company.
12   Q.  Who was Mr. Costantino?
13   A.  At the time, he was my national sales manager.
14   Q.  What was Mr. Pratt's title?
15   A.  He was a regional manager.  He was my direct
16 supervisor until we became colleagues.
17   Q.  What were the nature of the faxes that you
18 might receive, say, from human resources or the memos
19 that you would receive?  What were the nature of those
20 documents?
21   A.  Any updates, company updates, from birthdays to
22 marriage announcements to new technology that was
23 coming out, when we got new company cars.  As things
24 changed in the company, they would send out updates.
25   Q.  Did they send you policy information, things

---

**Page 13**

1  like that?
2    A.  The only time I remember receiving policy
3  information was when we first came on board.  That was
4  the only time that the reps were ever given anything
5  that was policy information.  I can't say that in the
6  time from me starting there to me leaving that they
7  might not have ever sent, you know, an addendum of
8  some, you know, use this conference call number, use
9  this way of filling out this expense report form.
10 Those types of policy changes, yes.
11   Q.  Did you have employees who reported to you in
12 your position?
13   A.  Yes.
14   Q.  Did you receive correspondence about them or
15 for them via fax at these satellite offices?
16   A.  I'm not sure what you mean.  Like, about them
17 or for them in what way?
18   Q.  Anything for you to distribute to them or any
19 communications about them.
20   A.  No.  If it was meant for them to handle
21 directly, it would be sent to them in a scope box or
22 via e-mail.  Correspondence about reps or discussing
23 rep's performances would be done via just phone
24 conversations with the person you were reporting to at
25 the time.  We never had a good system of evaluating

---

4 (Pages 10 to 13)

DEPOSI___ON OF SHANNON M. CAIRNS - Fri___, April 4, 2003

## Page 14

1   people in writing.
2      Q.  And with respect to the faxes that you
3   received, am I correct that you would receive them at
4   all these satellite offices at one time or another,
5   including the office in New Jersey?
6      A.  Yes.
7      Q.  You referenced earlier e-faxes.  Did you have a
8   laptop that you carried with you?
9      A.  Yes.
10     Q.  Was there also a standalone computer at one of
11  these satellite offices that you could use?
12     A.  That depended on the rep.  Those were purchased
13  by the reps directly.  I usually use only my laptop,
14  unless I was working out of my Charleroi address home,
15  which I also have a standalone computer.
16     Q.  Did you ever use any of the computers in the
17  New Jersey satellite offices to -- satellite office --
18  to receive e-mail messages?
19     A.  No.  New Jersey did not have a standalone
20  computer.  I don't recall any of my territories having
21  one in their office.
22     Q.  So you would have used your laptop?
23     A.  My laptop or my Charleroi computer, yes.
24     Q.  How many account representatives were you in
25  charge of overseeing?

## Page 15

1      A.  At which time?
2      Q.  Let's start with when you first became a
3   territory development manager.
4      A.  When I first became a territory development
5   manager, there were two in Pittsburgh and then I was
6   responsible for myself, so I'll include myself as one,
7   and I started to get some responsibility for Philly,
8   but solely all my responsibility was Pittsburgh and
9   then Philly and then I took on two reps in Detroit.  It
10  was a progression.  You had to keep proving yourself at
11  every level for them to move you to the next level.
12     Q.  When did you get to the next level of
13  overseeing account representatives?
14     A.  I would say it was early of '99, because we had
15  hired someone in Pittsburgh and I was to go, and when
16  he came out of training, they didn't like him and we
17  monitored his performance and we ended up letting him
18  go.  So that delayed me moving out a little bit.
19     Q.  When did you become responsible for people in
20  Philadelphia?
21     A.  '99.
22     Q.  That would be early '99?  Do you have a month
23  at all?
24     A.  I don't recall what specific month it was.
25  They would be able to tell you that.

## Page 16

1      Q.  And the two people in Detroit, did that come
2   before Philadelphia or did that come after
3   Philadelphia?
4      A.  It kind of came -- I would say I had full
5   possession of Detroit probably first and then
6   Philadelphia.  I had responsibilities with Philly
7   always, but the real transition over probably happened
8   in Detroit first.
9      Q.  And when did that take place, the transition
10  for Detroit?
11     A.  That was '99, also.
12     Q.  Also early '99?
13     A.  Uh-huh.
14     Q.  And did you have two in Pittsburgh, two in
15  Philly, and two in Detroit?
16     A.  Yes.  At one point, we had three in Philly.
17     Q.  What point in time was that?
18     A.  I'd say late '99.
19     Q.  How would you typically communicate with these
20  account representatives?
21     A.  Via pagers, cell phones, e-mails, and we all
22  had corporate voice mail as well, so the systems that
23  were set in place for us to be able to get in touch
24  with each other.
25     Q.  Would you ever meet with these account

## Page 17

1   representatives in person?
2      A.  Yes.
3      Q.  And how often would you do that?
4      A.  It depended on our rotation of being in the
5   territory.
6      Q.  Would that change from time to time?
7      A.  Yes.
8      Q.  Was there any typical rotation?
9      A.  No.  It depended -- there were different
10  factors.  It depended on the rotation, the newness of
11  the rep, their development in their training, the
12  success of the territory.  But I've always spent most
13  of my time in Pittsburgh.
14     Q.  Other than having to go to the territories when
15  it sounds like they needed you to go, did you have any
16  desired time frame by which you desired to go to the
17  territories?  Say, you wanted to be there, you know,
18  once a week or twice a week, or twice a month or
19  whatever.  Did you have, in your own mind, a time
20  period that you desired to go to these territories?
21     A.  We would try to set something as much as
22  possible, but, again, if something came up with a
23  hospital and there was an issue, like a lot of
24  re-repairs, our schedules always had to be flexible to
25  go.  There was a lot of times that I might have had

5 (Pages 14 to 17)

DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003

**Page 18**

1  scheduled time to be in that city and had my flight
2  booked to go to that city and then ended up having to
3  switch and go to a different city.
4      Q.  How often did you try to go to the New Jersey
5  office?
6      A.  At which time frame?  Because it depends on
7  which time frame.  Earlier on, you had less offices to
8  visit.  Later on, you had more offices to visit.
9      Q.  Did there come a time that you were responsible
10  for more than Philly, Pittsburgh, and Detroit?
11      A.  Yes.
12      Q.  Let's just deal with the time period when you
13  were responsible for Philly, Pittsburgh, and Detroit.
14      A.  Okay.
15      Q.  During that period, how often would you try to
16  get to the New Jersey office?
17      A.  At that point, the New Jersey office was the
18  lowest on the priority for me being there with the
19  reps, because my primary rep responsibilities were
20  Pittsburgh and Detroit.
21      Q.  And why were those your primary rep
22  responsibilities?
23      A.  Pittsburgh because that was the territory I
24  developed and knew, and Detroit because we had two reps
25  there.  It was a territory that had struggled, that

**Page 19**

1  three other managers had been in and not been able to
2  do anything with, and they wanted me to grow it.
3      Q.  Why did Philly emerge as the lowest on your
4  priorities?
5      A.  At that point, because we had another regional
6  manager, Curt Gannon, who started in Philadelphia, and
7  George Pratt was also originally from Philadelphia.  So
8  they worked the Jersey territory.
9      Q.  When you say "at that time," was there a point
10  in time when Mr. Gannon was not in the Philadelphia
11  territory?
12      A.  He was eventually let go.
13      Q.  When was he let go?
14      A.  I don't recall.  They could give you that
15  information.
16      Q.  At what point in time did your territory
17  expand?
18      A.  Early — well, late '99, like November, early
19  2000.  I then took over the Great Lakes region.
20      Q.  And what's included in the Great Lakes region?
21      A.  I had Philadelphia, Pittsburgh, Milwaukee,
22  Minneapolis, Detroit, and Chicago.  So I never lost
23  Philly and Pittsburgh.  Pittsburgh, specifically.
24      Q.  Do you recall whether Mr. Gannon was still
25  employed at the time of this change?

**Page 20**

1      A.  I don't believe so, but, again, I would get
2  clarification from the company.  They would have that
3  record better than I.
4      Q.  Where was Mr. Pratt physically located?
5      A.  Atlanta, I believe, at that time.
6      Q.  I assume that you had occasion to meet with
7  your account representatives in New Jersey from time to
8  time?
9      A.  As far as regular visits, like to work with
10  them?
11      Q.  Correct.
12      A.  Yes.
13      Q.  How regularly would you visit and meet with
14  them on a face-to-face basis?
15      A.  Still talking TDM time frame?
16      Q.  Correct.
17      A.  I'd try to be there once a month.  I think that
18  would be fair to say.
19      Q.  And when you came once a month, how long did
20  you stay?
21      A.  Usually, our rep trips were a week.
22      Q.  Did you ever stay more than a week or less than
23  a week?
24      A.  Sometimes, yes.
25      Q.  Did your territory ever expand beyond the Great

**Page 21**

1  Lakes region?
2      A.  Yes.
3      Q.  And when was that?
4      A.  That would have been summer of 2000.  We then
5  became BW Medical Group, and there were organizational
6  changes with that.  We obviously had Jeff move from
7  president to CEO.  Again, he can give you kind of a
8  structure.  At that point, I took over the Mid-Atlantic
9  region.  Gregg was demoted from national sales manager
10  back to regional manager, and my boss was now Vince
11  Bertolini.
12      Q.  And where did Vince Bertolini —
13      A.  Atlanta.
14      Q.  And where was Mr. Trank located?
15      A.  I believe Atlanta, also.
16      Q.  And what was included in the Mid-Atlantic
17  region?
18      A.  South Carolina up through Pittsburgh and
19  Philadelphia.
20      Q.  Do you have a recollection of the actual states
21  or regions?
22      A.  West Virginia, Virginia, North Carolina, South
23  Carolina, Tennessee.  DC, also.
24      Q.  And then, again, Pittsburgh and Philadelphia?
25      A.  Yes.

6 (Pages 18 to 21)

DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003

## Page 22

1    Q.  At this point in time, did all of these offices
2  have satellite offices?  Did all of these locations
3  have satellite offices?
4    A.  No.  Just Pittsburgh and Philadelphia.
5    Q.  Only Pittsburgh and Philadelphia?
6    A.  Again, it was a region they wanted grown, and
7  that was one of my strengths, so they wanted me to grow
8  it.
9    Q.  What was the new region, Philadelphia and
10  Pittsburgh?
11    A.  No.  Mid-Atlantic.  We had them as mail-in
12  accounts.  We did not have satellite offices.
13    Q.  How would people communicate with you when you
14  were in those regions that didn't have satellite
15  offices?
16    A.  Again, cell phone, e-fax, pager.
17    Q.  I assume you had account representatives in
18  those regions?
19    A.  No.
20    Q.  How often did you visit those regions without
21  satellite offices?
22    A.  Every week.
23    Q.  At this point, were you visiting Philly and
24  Pittsburgh the same amount of time every week?
25    A.  No.  I was traveling, commuting from Pittsburgh

## Page 23

1  to those satellite offices and maintaining Pittsburgh
2  and Philly.  Their focus was to grow the new area.
3  There would be a week here and there to be with those
4  reps, but, again, an exact frequency I couldn't tell
5  you off my hand.
6    Q.  During this time frame when you took over the
7  Mid-Atlantic region, did the frequency of your visits
8  to the New Jersey office change at all?
9    A.  They slowed, because I always preferred my base
10  of Pittsburgh.  My mom was going through breast cancer
11  and that was agreed upon.
12    Q.  You say "that was agreed upon."  Who was that
13  agreed upon with?
14    A.  With my direct supervisor, Vince Bertolini.
15    Q.  What was the agreement?
16    A.  Just that I could work out of my base office of
17  Pittsburgh.
18    Q.  When you say your base office in Pittsburgh,
19  are you talking about that satellite office on Monterey
20  Street?
21    A.  No.  Charleroi office.  I would only be in that
22  satellite office if I was working with the reps.
23    Q.  At that point in time when you were heading the
24  Mid-Atlantic region, did the Monterey Street satellite
25  office still exist?

## Page 24

1    A.  It moved to -- and, again, they could give you
2  the dates.  We had a transition from Monterey to North
3  Huntingdon area.  And specifically when that shifted,
4  again, you could see that in their lease agreements to
5  get a specific date.
6    Q.  Was it agreed that you would work from the
7  Charleroi address because of your mother's health?  Is
8  that what you said?
9    A.  He didn't really have a preference where.  I
10  just expressed that if it didn't matter where I was
11  making my commute from and they felt strongly of my
12  ability and ties with Pittsburgh, that's where I would
13  be.
14    Q.  You had mentioned something about your mother's
15  health.  What was the relevance of that?
16    A.  That's my preference, you know, that I
17  expressed, but, ultimately, the business decision was
18  left to them.
19    Q.  The office space that was the satellite office
20  in New Jersey, is that an office space owned or leased
21  by Factory Authorized?
22    A.  Leased.  I'm not sure whose name would be on
23  that lease.  Again, that would be something they would
24  have.
25    Q.  What did you understand to be the purpose of

## Page 25

1  the satellite office in New Jersey?
2    A.  For the reps and the technicians picking up and
3  dropping off and repairing of scopes that could be
4  handled in that office, paperwork that needed to be
5  done with regards to those repairs, and, ultimately,
6  they were supposed to be out doing phone calls, but if
7  they found themselves there before the end of the day,
8  to make their phone calls for their prospects.
9    Q.  How did you come to that understanding about
10  the purpose of the satellite office?
11    A.  That's how it was always set up to me in
12  working with the company.
13    Q.  What sort of things would you do when you went
14  to the satellite office in New Jersey?
15    A.  Start the day with the rep, check any scopes
16  that were there that the technician fixed, pick up any
17  scopes that were there for UPS, whether they were ones
18  that were delivered to the office or we had to drive to
19  UPS to get them.  Head off for our day to our
20  appointments.  Depending on what my schedule was with
21  the other managers, may or may not return back with
22  that rep to that office to then check their scopes back
23  in with the technician.
24    Q.  Did you ever have group meetings with the reps
25  at that office?

7 (Pages 22 to 25)

DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003

Page 26

1    A.  No.
2    Q.  So any meetings with the reps would be on an
3    individual basis?
4    A.  Yes.
5    Q.  Did you meet with the technicians as well?
6    A.  Only if there was an issue expressed by
7    corporate, and other than to say hello, your daily
8    communication of talking with them when you dropped off
9    the scope, communicating to them what you found and
10   having them communicate back to you what other internal
11   things that they might have found so you could then
12   communicate that to the client or help the rep explain
13   it.
14   Q.  Did your territory ever change again as a
15   territory development manager?
16   A.  As a TDM, no.  I was a regional manager when I
17   became the Great Lakes.  I don't know if you needed
18   that clarified.
19   Q.  Okay.
20   A.  And then a regional manager for Mid-Atlantic,
21   because I had gotten promoted to be a regional manager.
22   Q.  So when did you become a regional manager?
23   A.  That would have been late '99.
24   Q.  I think you said November of '99?
25   A.  That's when I started with Detroit, yes.  Or

Page 27

1    Chicago, excuse me.  Midwest.
2    Q.  Did you ever hold any other titles with Factory
3    Authorized other than the last one of regional manager,
4    TDM, and account rep?
5    A.  At one point, I believe they called us district
6    managers, but then we went back to the regional manager
7    title.
8    Q.  Was it the same job, just a different title?
9    A.  Yes.
10   Q.  What were the duties of a regional manager?
11   A.  Maintain the territories, grow the territories,
12   hiring and firing of reps within those territories,
13   interviewing outside of those territories for other
14   managers if they needed you to back them up, replacing
15   your rep when they went on vacation, so then you
16   actually worked in the territory, Development and
17   progress of the rep, training, and then reporting.
18   Q.  With respect to the office in New Jersey, did
19   you ever use the fax in that office?
20   A.  I'm sure on occasion, yes.
21   Q.  How about the telephones in that office?
22   A.  I'm sure on occasion, yes, in any of the
23   satellite offices I ever would have been in.
24   Q.  Was there ever any discussion between you and
25   anybody in management above you concerning your use of

Page 28

1    these offices?
2    A.  In what way?
3    Q.  Did you ever discuss with them whether you
4    could or how you would use these offices?
5    A.  No.  Just in observation in riding along with
6    George and how he would use our office when I was a rep
7    in Pittsburgh and when he would ride along with me
8    transitioning as a TDM that the office policy or how we
9    worked in it never changed from when I was a rep, at
10   least to my knowledge.
11   Q.  And when George came to the Pittsburgh region
12   to use the office, he would be using the satellite
13   office?
14   A.  Just to meet with us.  He did a lot of his work
15   out of the hotel room that he was staying as well.  If
16   we were on the road and he had to do a conference call
17   or in a hospital, our lives were very transient, so you
18   did move.
19   Q.  But when he would meet with the reps in
20   Pittsburgh, he would meet with them where?
21   A.  Depending on where the day was starting.  He
22   could meet us at the office, he could meet us at the
23   hospital that we were starting out at.
24   Q.  Did he ever meet you at your Charleroi address?
25   A.  No.  Because as a rep, that wasn't my office.

Page 29

1    My office as a rep was the one in Monroeville and the
2    one in Monterey.
3    Q.  When you were the regional manager of
4    Pittsburgh, did the reps ever meet with you at your
5    Charleroi address?
6    A.  No.  Because they have their satellite office.
7    Q.  How did you receive your paychecks from Factory
8    Authorized?
9    A.  Direct deposit.
10   Q.  And where would these be deposited?
11   A.  National City Bank, Pittsburgh.
12   Q.  Would that have been during your entire
13   employment with Factory Authorized?
14   A.  My entire employment.
15   Q.  With respect to your paychecks from MDS, how
16   did you receive those?
17   A.  Direct deposit.
18   Q.  And where would those checks be deposited?
19   A.  National City Bank, Pittsburgh.
20   Q.  Would that have been the entire time that you
21   received checks from MDS?
22   A.  Yes.
23   Q.  Did you ever lease property in the state of New
24   Jersey or rent property?
25   A.  I don't know about rent or lease.  What would

8 (Pages 26 to 29)

Page 30

1  that fall under?  Are you talking about my house?
2      Q.  Did you own property in the state of New
3  Jersey?
4      A.  Yes.
5      Q.  What type of property was this?
6      A.  It was a townhome.
7      Q.  Residential?
8      A.  Yes.
9      Q.  And where was that property located?
10     A.  Marlton.
11     Q.  And when did you purchase that property?
12     A.  November of '99.
13     Q.  Why did you purchase that property?
14     A.  Tax purposes.
15     Q.  What were the tax benefits of purchasing the
16  property?
17     A.  The income level that I was at was very high
18  for being my age and being single and not having any
19  dependents.
20     Q.  Did anyone live with you at that property?
21     A.  No.
22     Q.  How often did you work out of that property?
23     A.  If I was working in Philadelphia, I'd be in the
24  satellite office with the reps.  I'm sure there were
25  times where, after hours, I did conference calls with

Page 31

1  the managers based on time differences, West Coast/East
2  Coast, our travel schedules.  Again, we had to be very
3  flexible.  I remember being on the side of the road
4  doing conference calls.
5      Q.  Any other work that you did out of the address
6  out of your home in New Jersey?
7      A.  For FAMSR, for Factory Authorized?
8      Q.  Correct.
9      A.  My reps never met me at that office, either.
10     Q.  Was there any other work that you did out of
11  that address?
12     A.  Like what type of work?
13     Q.  Any other work, paperwork.  Any other work.
14     A.  I'm sure I did paperwork.  If I was staying
15  there while I was working in Philly, just like if I was
16  staying in a hotel in Detroit, you bring your work home
17  because you're working with the rep in that city, but
18  you also have other reps that you are responsible for.
19     Q.  Did you ever receive faxes at that address?
20     A.  I have my e-fax.  So if I had my laptop there,
21  yeah, I guess you can say that.
22     Q.  Would you sleep at that address?
23     A.  Yes, if I was working in the Philadelphia
24  territory.
25     Q.  Would you eat meals there?

Page 32

1      A.  At night, if I didn't eat out, just like I
2  would in a hotel in a different city.
3      Q.  Did you receive personal mail there?
4      A.  Define personal mail.  I had magazines sent to
5  Orchard Street, so junk mail definitely would come
6  there.
7      Q.  Mail addressed to you?
8      A.  I guess you can say that.  I consider personal
9  mail mail from, like, friends or from things that
10  you've subscribed to, and that would all go to
11  Charleroi.  But there was mail, like gas bills and
12  things for that property, but not really anything
13  pertaining outside of that property that I can recall.
14     Q.  Did you have occasion to write letters to
15  customers or people external to Factory Authorized
16  where you would have occasion to have stationery with
17  your name on it?
18     A.  No.  We never had stationery with our names on
19  it.  By stationery, you meant my personal stationery,
20  correct?
21     Q.  Well, for business purposes.
22     A.  Well, we had company stationery, which was used
23  to write thank-you notes to clients.
24     Q.  Would your name appear on that company
25  stationery?

Page 33

1      A.  As a signature, like if I wrote the note, but
2  it wouldn't say Factory Authorized and then Shannon
3  Cairns.  It wouldn't be personalized that way.  It's
4  just a form sheet.  You fill it out.
5      Q.  Would there be an address on that company
6  stationery?
7      A.  Not that I recall.  I think it just had the
8  emblem or the logo of the company on it.
9      Q.  Did you have any office equipment at your New
10  Jersey home?
11     A.  I had a printer.  That was a printer/fax.  I
12  had one, also, in Charleroi.
13     Q.  Who paid for that printer/fax?
14     A.  I did.
15     Q.  Who paid for the one in Charleroi?
16     A.  I did.
17     Q.  How many phone lines did you have in your house
18  in New Jersey?
19     A.  One.
20     Q.  Who paid for that phone line?
21     A.  I did.
22     Q.  Who paid for the phone line in Charleroi?
23     A.  I did.
24     Q.  Would the same be true for the fax line?  You
25  mentioned you had a printer/fax.  Would the same be

9 (Pages 30 to 33)

DEPOSI.  ON OF SHANNON M. CAIRNS - Fri    , April 4, 2003

Page 34

1 true for the fax line? Would you also pay for that?
2 **A. Yes.**
3 Q. Was that a separate number, or was that the
4 same number as your home number?
5 **A. No. It's one line at Jersey.**
6 Q. The same would be true for Charleroi?
7 **A. There is two lines in Charleroi.**
8 Q. Would you pay for both lines?
9 **A. Yes. Because, again, I had my e-fax.**
10 Q. Who paid for the electricity in your home?
11 **A. I did.**
12 Q. Was the printer/fax also a photocopier, or did
13 you have a photocopier?
14 **A. It can copy, yes. Not very good copies, but it**
15 **can do that.**
16 Q. I've got one of those, too.
17    Do you ever purchase office supplies for your
18 home in New Jersey?
19 **A. Office supplies are always purchased for the**
20 **satellite offices, and that can either be purchased**
21 **directly by the rep or by the manager. One time, I**
22 **bought paint because we had to paint the offices, and**
23 **that was in Detroit.**
24 Q. At the same time you had this townhouse, you
25 still had the satellite office in New Jersey, correct?

Page 35

1 **A. For some time before they went to home offices**
2 **with the reps, and, again, specifically they could tell**
3 **you when they got rid of that, because I don't remember**
4 **if it was while I was on leave. And then both the reps**
5 **worked out of Philadelphia. They had houses in**
6 **Philadelphia. So when I came back and I worked with**
7 **them, I'd be working solely in Philadelphia. No longer**
8 **Jersey at all. And that was during 2001 and possibly**
9 **some of 2000.**
10 Q. When did the satellite office in Pittsburgh no
11 longer exist?
12 **A. I would say around the same time frame. Again,**
13 **they would be able to tell you when they broke the**
14 **lease specifically. And then we had a technician**
15 **working out of his home in Pittsburgh and also the rep**
16 **in Pittsburgh. At that point, I was primarily in**
17 **Pennsylvania.**
18 Q. Did you still own your townhome in New Jersey?
19 **A. Yes. You said did I, right, not do I?**
20 Q. Yes. I'll ask you that.
21    Were you ever reimbursed for office supplies
22 by Factory Authorized?
23 **A. At points, yes. And, again, they would have**
24 **those records, because we had to turn in all original**
25 **receipts to be reimbursed. So they should have any**

Page 36

1 **original receipts for things that were reimbursed. I**
2 **have receipts for things that weren't.**
3 Q. Now, I saw in these documents that you produced
4 I think it was only one receipt. Was that the only
5 receipt that you had for things that were not
6 reimbursed?
7 **A. One receipt of what?**
8    MS. BISSOON: I'll go off the record for
9 a second.
10    (Discussion off the record.)
11    MS. BISSOON: Strike my last question. I
12 misunderstood something that was in the documents that
13 you produced.
14 BY MS. BISSOON:
15 Q. Do you have any of those receipts for office
16 supplies or anything else that you did not get
17 reimbursed for?
18 **A. That the company would reimburse? Not anything**
19 **that fell in their policy. If it was something that**
20 **they would reimburse, we would have everything. What**
21 **I was discussing with him was we had --**
22    MR. HUBER: Don't tell her what you were
23 discussing with me, okay?
24    THE WITNESS: Okay.
25 BY MS. BISSOON:

Page 37

1 Q. What sort of things would they not reimburse?
2 **A. Personal expenses, like if I bought something**
3 **for my house there that was to be used there, as**
4 **opposed to be used with the reps. Things that went**
5 **over the limits, like $250 flights. So if I gave them**
6 **the original receipt and my flight was $500, they would**
7 **still have the original receipt but only reimburse me**
8 **for the 250, because that was their policy for**
9 **reimbursement. So they would have all those.**
10 Q. Did you seek any form of income tax deductions
11 for any of the equipment or supplies for your office in
12 New Jersey?
13 **A. For equipment that was used, like my laptop,**
14 **but that was used everywhere. Business expenses.**
15 **Probably at one time -- and, again, it would be in the**
16 **records -- the faxes, since I bought them. I probably**
17 **put those on some kind of depreciation or flat out**
18 **deduction.**
19 Q. So the printer/fax machine that you referenced
20 earlier, for example?
21 **A. Yes, in both locations.**
22 Q. So both the one in Charleroi and the one in New
23 Jersey?
24 **A. Yes.**
25 Q. Anything else that you identified as a business

10 (Pages 34 to 37)

DEPOSI...ON OF SHANNON M. CAIRNS - Fr... y, April 4, 2003

Page 38

1  expense for tax purposes?
2  **A.  Not that I can recall.  But, again, that would**
3  **be documented in my taxes.**
4  Q.  And the person that you referenced earlier that
5  completed your income tax returns, did they do that for
6  every year from 1998 to 2000?
7  **A.  Yes.**
8  Q.  Where is that person located?
9  **A.  Moon Township, Pittsburgh.**
10  Q.  And on the income tax forms that you filed, do
11  those reflect claimed deductions for home office
12  expenses?
13  **A.  Again, without going back and looking at them,**
14  **I would have to give you my guess is I would assume so.**
15  Q.  Would that be both for Factory Authorized and
16  MDS?
17  **A.  Once MDS came on board, yes, because at one**
18  **point, it was just Factory Authorized.**
19  Q.  Did you ever speak to anyone at Factory
20  Authorized about these home office expenses, like
21  getting reimbursed for them or have any discussion with
22  respect to the home office expenses?
23  **A.  With regards to, like, buying a laptop, we were**
24  **told that that's our expense.**
25  Q.  Buying the printer/fax, for example?

Page 39

1  **A.  That's our expense.**
2  Q.  How did you learn that that was your expense?
3  **A.  From my direct supervisor, which would have**
4  **been George and then eventually Vince.**
5  Q.  Do you have any recollection of having a
6  discussion about that?
7  **A.  Specifically, like when we would have had a**
8  **discussion on it, I don't know, but it's stuff that's**
9  **communicated, because they have to sign off on our**
10  **expense reports.**
11  Q.  Do you have any recollection of going to either
12  George or Vince and discussing either purchasing an
13  item for your home or having purchased an item for your
14  home that you'd like a reimbursement for?
15  **A.  Not on those items, I don't believe so, because**
16  **it was always understood, that, again, from just**
17  **observing when George worked with us that those**
18  **expenses were expenses that you incurred.**
19  Q.  Any other items that you would have discussed
20  with George or Vince?
21  **A.  Binders, if you bought binders.  But, again,**
22  **those would be stored at the office, and if you needed**
23  **one, then you used them.  Paint supplies.  I had to**
24  **have a discussion to buy paint to paint the Detroit**
25  **office.**

Page 40

1  Q.  You mentioned that at some point, the satellite
2  office in New Jersey was no more, correct?
3  **A.  Correct.**
4  Q.  Who paid for expenses then?  I mean, I assume
5  that you still had expenses with respect to your job
6  concerning office supplies and whatnot.
7  **A.  Again, it would depend on, you know, the rep or**
8  **the circumstance or what we were working with.  A lot**
9  **of our need for things, we had such a backlog of**
10  **supplies that the reps split and took to their home**
11  **offices.  Again, if I wasn't working with them in the**
12  **territory, I wouldn't know that they were low on**
13  **binders or they were low on those things.  They would**
14  **then become responsible for purchasing those.**
15  Q.  At the point in time where you didn't have
16  satellite offices any longer in New Jersey, where did
17  you meet with reps or technicians?
18  **A.  Technician was only in Pittsburgh, so we could**
19  **meet at his -- he had an office out of his house.  He**
20  **built a shop there.  We would either meet at the rep's**
21  **home office, which, again, Pittsburgh was in**
22  **Pittsburgh.  Philly, both people in Philly had their**
23  **home offices in Philly.  There was no more Jersey.  Or**
24  **at a hospital.  If there was a hospital that was in**
25  **some way kind of middle of the road, we could meet**

Page 41

1  there.
2  Q.  Now, you had mentioned before that certain
3  correspondence would be mailed or faxed to the
4  satellite offices.
5  Once the satellite offices were gone, where
6  would that correspondence be mailed?
7  **A.  It still came that same way.  Again, when some**
8  **people went to satellite offices, they then either had**
9  **UPS hold those scopes and the reps drove to UPS to pick**
10  **that stuff up, or those scopes were then delivered to**
11  **their house.  That basically came down to a manageable**
12  **situation on their standpoint.**
13  **So if they wanted to get something to me in**
14  **Philadelphia, they would send it in a scope to either**
15  **one of my reps, mark my name on it, and the rep would**
16  **put it aside to know to give it to me.  So things were**
17  **still only mailed to me through them.  And at that**
18  **point, that was all through Philadelphia.  No longer**
19  **Jersey at all.**
20  Q.  Would the same be true in Pittsburgh?
21  **A.  Yes.**
22  Q.  The reps would receive mail in scope boxes for
23  you?
24  **A.  Yes.**
25  Q.  And that would be at their home addresses?

11 (Pages 38 to 41)

DEPOSI___ ON OF SHANNON M. CAIRNS - Fr___ y, April 4, 2003

Page 42

1    A.  It could be there, or they could send it to UPS
2    hold for pickup in New Stanton, because that was closer
3    to my Charleroi address, so they did send things closer
4    to me if they knew it was specifically a big packet
5    that was coming just for me.
6    Q.  When we talked earlier about your use of the
7    fax or phone in your New Jersey home for Factory
8    Authorized work, how often would you say that you used
9    your fax or phone in New Jersey for Factory Authorized
10   work?
11   A.  I would say only on probably like an
12   after-hours basis as far as during the week, because we
13   were in the satellite offices or on the road.  I'm
14   trying to come up with what would be a decent time
15   frame.  It really would depend on how often you were in
16   those territories, because they were so -- there wasn't
17   set times to be somewhere.  If I was working -- I guess
18   this is the best way:  If I was working that week in
19   Philadelphia with those reps, any time after 6 o'clock,
20   maybe, or 7 o'clock, depending on how late our day
21   ended, if we needed to have a conference call again
22   because of the time difference, East Coast/West Coast,
23   if I was on the road or going to do grocery shopping or
24   going to eat at a restaurant or being back at home, I
25   couldn't tell you that I definitely was at home, but I

Page 43

1    couldn't tell you that I definitely wasn't, either.  In
2    that week, you would have -- sometimes.  Again, it
3    wasn't always a guarantee -- sometimes have a day where
4    you just did your -- usually a Friday or a Monday where
5    you did your follow-ups with your reps.
6    Q.  You would do that at the satellite office, when
7    there was one?
8    A.  When there was one.
9    Q.  Your laptop, when you were checking e-mail,
10   e-faxes, would you hook that up at the satellite office
11   or would you hook that up at your home in New Jersey?
12   A.  Both, both.
13   Q.  How long would you hook up to the system from
14   your home in New Jersey?
15   A.  Well, the system was just regular internet, so
16   I could use it for personal use and be checking my --
17   and go in and check my e-mails as well because of time
18   difference.  Sometimes we didn't get things during the
19   course of the business day.  That would be the same if
20   I was in a hotel room in Detroit or Chicago or in
21   Pittsburgh.  If I went home at the end of the day and,
22   after eating dinner, was sitting in the hotel room,
23   that might be my form of communicating with my friends,
24   but then also entertainment or then business.
25   Q.  And you did not have a separate e-mail address

Page 44

1    for FAMSR?  That was just your personal e-mail address
2    is what was used?
3    A.  They used both.  When we first came on board,
4    they didn't have specific e-mail addresses.  Then we
5    got into that, but people used both.  And my
6    supervisors can tell you that, that they used both.
7    Q.  Now, once the satellite offices were gone, did
8    your use of your home for office purposes change in any
9    way in New Jersey?
10   A.  I would say they would have had to, and the
11   same for Pittsburgh.  Because you meet with the rep,
12   but if I go home at the end of the day, I don't have
13   the office.  I have to go to my place or use their
14   space that they use there.  But then again, I'm not
15   faxing stuff as much because they are taking care of
16   writing everything up and shipping it out.  We didn't
17   no longer have the paperwork flow that we had when we
18   had a satellite office because of filling it out for
19   the technician, communicating that back and forth and
20   so forth.
21   Q.  In 2001, how often would you go to New Jersey?
22   A.  In 2001?
23   Q.  Yes.
24   A.  As of January 2001, I was on medical leave, so
25   I was living solely in Pittsburgh.

Page 45

1    Q.  Following your medical leave?
2    A.  I didn't come back because we came back and,
3    obviously, there was a failure of -- they backed out on
4    something, backed out on an agreement.  And so one week
5    in -- I believe it might have been the end of May, and
6    then I was shipped off to St. Louis.
7    Q.  So one week at the end of May, you did go to
8    New Jersey?
9    A.  Uh-huh, because that's when I was reporting
10   back and they wanted me to work with the Philadelphia
11   reps.  So whatever week was the report back week, I
12   went back there, and then they sent me to St. Louis.
13   Q.  I may have asked you this already, but bear
14   with me for one second.
15       With respect to your position as the regional
16   manager of Mid-Atlantic, did that ever change at all,
17   or was that the last position that you ever held?
18   A.  No.  It was still called the Mid-Atlantic
19   region, but they restructured it with the failure of BW
20   Medical Group, and I had Pittsburgh, Philly, New York,
21   and Columbus.
22   Q.  And when did that change take place?
23   A.  I would say that was the summer of 2000.  Late
24   summer.  Again, they would know specifically when.
25   Q.  Did New York or Columbus have satellite

12 (Pages 42 to 45)

Page 46

1  offices?
2      A.  I don't recall if Columbus did.
3      Q.  Did New York?
4      A.  New York didn't, no.
5      Q.  Did not?
6      A.  Did not.  At that time, I don't remember if
7  Columbus did.
8      Q.  Tell me if I have anything wrong here.  You
9  started as an account executive.  You moved into the
10  territory development manager position in 1999.
11  Thereafter, you became a regional manager, and while
12  the regional manager position changed its title to
13  district manager at some point, you remained a regional
14  manager until the end of your employment?
15      A.  Yes.
16      Q.  The territories of your position as regional
17  manager changed?
18      A.  Yes.  And that was also my title under MDS as
19  well.
20      Q.  And other than Great Lakes, the Mid-Atlantic
21  region that you described earlier, and this change in
22  the Mid-Atlantic region to include New York and
23  Columbus and remove a lot of southern territories, West
24  Virginia, Virginia, Tennessee, South Carolina, North
25  Carolina, were those the only changes?

Page 47

1      A.  Yes.
2      Q.  The territory in Charleroi, Pennsylvania, did
3  you reside there alone?
4      A.  No.
5      Q.  Who else resided there?
6      A.  My mother.
7      Q.  What was your mother's name?
8      A.  Claudia.  And my Nonny, which is like
9  grandmother, Helen.
10      Q.  You mentioned earlier that you had two lines
11  there?
12      A.  (Nodding head affirmatively.)
13      Q.  Were both of those lines telephone lines, or
14  was one a fax line and one a telephone line?
15      A.  One was a fax line and one was a telephone
16  line.
17      Q.  The telephone line, was that for your exclusive
18  use?
19      A.  No.
20      Q.  Did your mother and grandmother receive calls
21  on that line?
22      A.  Yes.
23      Q.  Who paid for that phone line?
24      A.  The phone line was in her name.  I would pay
25  for my —

Page 48

1      Q.  Who?
2      A.  I'm sorry.  Claudia, my mother's name, and I
3  would pay her for my phone calls.
4      Q.  Was the fax your exclusive fax?
5      A.  Yes.  They don't even know how to operate a
6  fax.
7      Q.  Would you pay for that line?
8      A.  Yes.
9      Q.  Did you have a standalone computer there?
10      A.  Yes.
11      Q.  Who paid for that computer?
12      A.  I did.
13      Q.  Do you have any receipts for that computer?
14      A.  Not that I looked at or saw as far as
15  retrieving all that information.
16      Q.  Do you have any statements for your --
17  telephone statements for your fax line?
18      A.  Not that I found in that, but, again, that's...
19      Q.  And who paid for the electricity at the
20  Charleroi address?
21      A.  It's in her name, but I paid for my share.  I
22  contributed a certain amount to the bills.
23      Q.  How much would you contribute to the bills?
24      A.  Depending on the season.  It fluctuated.  So
25  whatever she decided.

Page 49

1      Q.  Was it based on anything?
2      A.  Just expensive, you know.  Winter.  Obviously,
3  heat is going to be more expensive certain months, if
4  it's a winter like this year or a winter like last
5  year.  So that's what I mean by that.
6      Q.  Other than your bank account at National City,
7  did you have any other bank accounts?
8      A.  No.
9      Q.  And the bank accounts that are in the files
10  that you produced to me today, are those the only bank
11  accounts you have?
12      A.  For the time frame that you've asked for, yes.
13      Q.  And are those the only bank statements that you
14  were able to locate?
15      A.  Yes.
16      Q.  And credit cards?
17      A.  Yes.
18      Q.  And where would you receive the statements for
19  those credit cards?
20      A.  My Charleroi address.
21      Q.  And the credit card statements that are in the
22  file, were those the only statements that you were able
23  to locate?
24      A.  Yes, for the time frames that you asked.
25      Q.  You mentioned that you had a cell phone that

13 (Pages 46 to 49)

DEPOSI ...N OF SHANNON M. CAIRNS - Frid ..., April 4, 2003

---

## Page 50

1 you used. Did you have only one carrier during the
2 time that you worked for Factory Authorized?
3 **A. I believe in '98 when I started, I was with**
4 **AT&T and shortly thereafter went to Verizon. But any**
5 **original invoices, again, that aren't in there would be**
6 **at corporate office for FAMSR.**
7 Q. Did the company arrange for your cell phone for
8 you, or did you have to do that yourself?
9 **A. You did it yourself.**
10 Q. What was the phone number for that phone?
11 **A. 412-302-1718. And that's been the number for**
12 **as long as I can recall.**
13 Q. Do you still have that phone?
14 **A. Yes. Well, not the exact phone, but the same**
15 **number. Technology has changed.**
16 Q. And that's still with Verizon?
17 **A. Yes.**
18 Q. Where did you receive the monthly statements
19 for that phone?
20 **A. Both places.**
21 Q. When you say both places, what do you mean?
22 **A. Well, starting off, I believe they were solely**
23 **at 55 Orchard. I believe there was a time where they**
24 **were sent to 73 Dorset, though I'm not positive. And**
25 **as of 2001, everything that ever went to Dorset**

## Page 51

1 **automatically came to Charleroi, including my home**
2 **bills there for that property.**
3 Q. Now, I saw some business cards in the file, and
4 those appear only to have the home address for Factory
5 Authorized. They would not have your New Jersey or
6 Pittsburgh addresses. Is that accurate?
7 **A. That's accurate, yes.**
8 Q. That would be true of all the business cards
9 you received during your time frame with Factory
10 Authorized?
11 **A. Yes.**
12 Q. They seem to only have an 800 number. They
13 would not have any kind of local numbers. Is that
14 accurate?
15 **A. That's accurate. I believe that you have --**
16 **well, you have every one that I could find. I believe**
17 **you have the one I had when I was there. Corporate**
18 **would have those records. Our cell phone might have**
19 **been on that, but the 800 number is our corporate voice**
20 **mail. As an account executive, you should have seen a**
21 **local pager number.**
22 MS. BISSOON: We can go off the record
23 while I look at that.
24 MR. HUBER: Can we take just a quick
25 break?

## Page 52

1 MS. BISSOON: Sure.
2 (Recess.)
3 MS. BISSOON: I just had a few more
4 questions, Ms. Cairns.
5 BY MS. BISSOON:
6 Q. Did you at some point sell your home in New
7 Jersey?
8 **A. Yes.**
9 Q. When was that?
10 **A. July of 2001.**
11 Q. And why did you sell your home?
12 **A. Because I was taking a job back here in**
13 **Pittsburgh and I had been living in Pittsburgh solely**
14 **since December of 2000. It was no longer used and it**
15 **was becoming a financial strain as well.**
16 Q. When was the last time you had been to your New
17 Jersey home prior to selling it?
18 **A. Just to do the walk-through with the realtor,**
19 **so July, also, of 2001.**
20 Q. Prior to that, when was the last time you were
21 in the New Jersey home prior to selling it?
22 **A. I don't recall if I was there at all before**
23 **that, maybe one trip out, but I wouldn't be able to**
24 **tell you what time of year.**
25 Q. Well, were you there in 2000?

## Page 53

1 **A. In 2000, yes.**
2 Q. When was the last time in 2000 that you were in
3 your New Jersey home?
4 **A. I was there in November of 2000 and probably**
5 **early December of 2000. And I will -- as far as 2001,**
6 **yes, I was there before July, because I had to report**
7 **back there for that week that I was working in Philly.**
8 Q. When did you decide to sell your home in New
9 Jersey?
10 **A. I started -- I don't know. Decision is a tough**
11 **word. I started thinking about it when I was going**
12 **through a lot of financial strain while I was on**
13 **medical leave.**
14 Q. What was the date of your medical leave?
15 **A. I believe -- again, that would be paperwork**
16 **that they had. I know it was January through -- I**
17 **don't recall the specific date that we went back,**
18 **because we were saying we were coming back to work and**
19 **that's when, you know, the negotiation and those things**
20 **occurred. So specific dates, again, would be marked on**
21 **your paperwork.**
22 Q. Do you recall how long your leave was?
23 **A. I'm pretty sure through mid February, at least,**
24 **but, again, not having it in front of me, I want to**
25 **make sure I'm giving you the best answer. I would**

14 (Pages 50 to 53)

DEPOSITION OF SHANNON M. CAIRNS - Friday, April 4, 2003

Page 54

1  check that with them.
2  Q.  So during that time, sometime during that time
3  that you were on leave, you made a decision that your
4  house was a financial strain?
5  A.  I started thinking that it was, yes, because my
6  medical disability and all income was cut off from the
7  company. So I had nothing coming in and bills to pay.
8  Q.  Did you initiate any selling of your house at
9  that point?
10  A.  No, because we didn't know.
11  Q.  You didn't know what?
12  A.  Financially if it would be even more expensive
13  to try and sell it and get a realtor and moving. And
14  at that point in time, too, emotionally and mentally, I
15  was involved with other things.
16  Q.  So when did you actually initiate the sale of
17  your home in 2001, actually put it on the market?
18  A.  In July. It sold very quickly. Within a week,
19  I believe.
20  Q.  How did you travel to your various territories?
21  A.  Mostly by car with the way the last grouping
22  was set up, Pittsburgh, Philly, Columbus, New York.
23  Obviously, if I'm going to Chicago and Detroit, that
24  was by plane.
25  Q.  So when you had the Great Lakes region, for

Page 55

1  example, you would travel to Chicago and Detroit by
2  plane?
3  A.  Yes.
4  Q.  Were there any other places that you would
5  travel to by plane?
6  A.  Milwaukee, Minneapolis, although on occasion I
7  did drive to Detroit to be there early for my rep.
8  Mid-Atlantic, if I needed to go to South Carolina,
9  those types of distances.
10  Q.  What kind of personal items did you keep at
11  your home in New Jersey?
12  A.  Furniture.
13  Q.  Did you have clothing there?
14  A.  Yes. My clothing was pretty much split between
15  Charleroi and there and the dry cleaners. They had a
16  nice collection of my clothes.
17  Q.  Would you keep food in your home in New Jersey?
18  A.  Only when I came to work as far as perishables
19  with the refrigerator. I did have the cans and pasta
20  and stuff in the cupboards. It never quite got
21  decorated, though.
22  Q.  The flight itineraries and flight information
23  and tickets that you've provided, are those the only
24  ones that you have in your possession?
25  A.  Those are the only ones I can find, yes. And

Page 56

1  those are just coupons. Again, any original receipts
2  of reimbursement would have gone down to corporate.
3  Q.  Did you keep a travel log of any kind?
4  A.  No.
5  Q.  What type of paperwork did you have to fill out
6  with respect to your mileage for commuting to your
7  various territories?
8  A.  The only time we had to do that was an as an
9  account executive. We had to fill out a mileage
10  tracking form.
11  Q.  So in your other jobs, you didn't have to do
12  that?
13  A.  Not as a regional manager, no. We didn't get
14  mileage reimbursement.
15  Q.  Did you get a car?
16  A.  I had a car, yes.
17  Q.  And that was a company car?
18  A.  Company car, out of Pennsylvania. Out of
19  Charleroi, actually, is where it was bought. And the
20  plates never changed, as well as my personal car is
21  Pennsylvania and my license was always Pennsylvania.
22  Q.  How did you go about purchasing the car that
23  you used for business use?
24  A.  That was a corporate lease. They were company
25  cars. I believe it was — I know they bought it at

Page 57

1  Davies Ford in Charleroi, so the organization they went
2  through, they would have all that information.
3  Q.  Were there particular vendors that were
4  approved?
5  A.  It was a Taurus. Everyone had a Taurus.
6  Q.  Do you know how it came about that they went to
7  Davies Ford?
8  A.  Because my office was in Charleroi and that's
9  the dealership. Not much else there.
10  Q.  Did you pick out the car?
11  A.  Yes. I picked it up. We picked the color
12  beforehand.
13  Q.  Were you in charge of finding a Taurus dealer
14  in your area?
15  A.  I don't recall. They might have asked for,
16  like, a suggestion, but I don't recall. They usually
17  went from where your home base was. That was my
18  understanding of how it worked.
19  Q.  Who told you this?
20  A.  Whoever was in charge of taking care of getting
21  our -- at that point. I don't remember who it is now.
22  Getting our information, what color do you want,
23  because you had to put your home address down, your
24  license, and the license number, obviously, for their
25  vendors. And my license has always reflected 55

15 (Pages 54 to 57)

## Page 58

Orchard Street.
Q. So would you have gotten the car in 1999?
A. I believe so.
Q. And was it the same car that you had the entire time that you worked for Factory Authorized, or did you get other cars?
A. No. When we first started, we didn't have a company car policy. I had a nice Geo Metro.
Q. That was your own?
A. That was my own.
Q. But after 1999, was that the only car that you had, the Taurus?
A. From the company, yes.
Q. How long a lease was that?
A. I don't recall. I had it the whole time I was there, with the exception of the -- obviously, when I left, in that time period.
Q. Did the car have to be -- you mentioned it had to be a Taurus. Did it have to be a particular style of Taurus? Did it have to be a sedan, did it have to be a wagon? Did it have to be anything in particular, or did you have the option of selecting any kind of Taurus?
A. No. We all had the same four door, whatever, I guess, that '99 model was. The only selection we made

## Page 59

was the color.
Q. Now, the only pager number I saw on the business cards was an 877 number.
A. Okay. That would have been our little local pager, because it's toll free for the hospitals or clients.
Q. And if somebody had to communicate with you, that would be the pager number that they would use?
A. Yes.
Q. Even corporate people, if they had to communicate with you in the field?
A. Yes. They could always use your cell phone, too.
Q. The number that was listed on the business cards, was that your own personal cell phone number, the 800 number that was listed on the business cards?
A. No.
Q. What was that 800 number?
A. That would have been -- again, without looking at it, but it would be what I would assume is corporate voice mail. Because if it had an extension with it, it would be the corporate number and then corporate voice mail, as regional manager. They can clarify, too, those numbers for you. Those are corporate numbers.
Q. So if it has an extension, that would be

## Page 60

corporate voice mail?
A. Yes.
Q. And what if it didn't have an extension?
A. I would assume that that's a main line.
Q. And how would people contact you once they called in to the main line?
A. They would ask for my name, or at one point we did get a voice system, which you could do a directory and go into my corporate voice mail.
Q. If someone were to call you at this number -- and let's just use the 1-800-352-7822 number -- would there be any way to connect to you live?
A. No.
Q. So it would just go into a corporate voice mail system and then you would return the phone call?
A. Yes.
Q. Would the same be true for the Medical Device Solutions card you gave me? It has another number, but, again, no extension. It just says corporate. 373-6221. It's an 800 number.
A. I would assume. Even if it was a pager number, it would be something where they have to leave a message. And, again, they can clarify for you which numbers those are.
Q. I notice on your cards at one point in time

## Page 61

when you were an account representative early on, you have a 412 pager number and then that 412 pager number doesn't show up subsequently. Why is that?
A. Subsequently, on non-account executive cards?
Q. On regional manager, Mid-Atlantic region manager.
A. Because clients and people just contacted you through your corporate voice mail or the 800 numbers. That was 412 because it was a local system that they did in Pittsburgh, but then eventually everyone went to 800, 877. So that card would be from '98 before they kind of streamlined everything.
Q. And so after the streamlining, this 412 extension for your pager would no longer exist?
A. Right. And they would have those records with their pager vendor down at corporate.
    MS. BISSOON: We can go off the record for a few minutes.
    (Discussion off the record.)
BY MS. BISSOON:
Q. You mentioned earlier when I was asking you about your state income tax records that there was one year that you filed state forms only for the state of New Jersey; is that correct?
A. Yes.

LISA ANN BAUER COURT REPORTING SERVICE
(724) 444-1080

DEPOS___ON OF SHANNON M. CAIRNS - Fr___y, April 4, 2003

---

Page 62

1  Q. And which year was that?
2  A. I believe that would have been 2000.
3  Q. And why that year did you only file state forms
4  for the state of New Jersey?
5  A. I believe that was the recommendation of my tax
6  accountant.
7  Q. Based on what?
8  A. Based on, again, income level, tax purposes.
9  Q. That year, did you represent to the IRS that
10 you only resided in the state of New Jersey?
11 A. I believe so, if it says that on that
12 paperwork.
13 Q. And was your representation to the IRS accurate
14 that you only resided in the state of New Jersey during
15 that year?
16 A. As far as where I was -- property that I owned
17 and where I was living?
18 Q. Correct. Is that right?
19 A. I would say it was right, yes.
20 Q. And then the following year, 2001, you said you
21 filed state forms in both New Jersey and Pennsylvania;
22 is that correct?
23 A. Yes.
24 Q. And that was because you sold your house in New
25 Jersey that year?

---

Page 63

1  A. Well, that was because I was living in
2  Pittsburgh, but I still owned property in Jersey.
3  Because after everything occurred, I was staying there,
4  but I still owned the property.
5  Q. Did you represent to the IRS in 2001 that you
6  resided for part of the year in New Jersey?
7  A. Yes.
8  Q. And was that representation to the IRS
9  accurate?
10 A. I don't know, because I was back home, you
11 know, going to the doctors and everywhere.
12 MR. HUBER: Do you think it was accurate
13 or not?
14 BY MS. BISSOON:
15 Q. Is your statement to the IRS that you resided
16 for part of the year in New Jersey accurate?
17 A. No.
18 Q. What was inaccurate about that?
19 A. I owned property there, but I was staying at my
20 Charleroi address and visiting my doctors, which were
21 all in Pittsburgh.
22 MS. BISSOON: Those are all the questions
23 I have.
24 Do you want to explain to her her right to
25 read?

---

Page 64

1  MR. HUBER: Can I just take a minute? I
2  think I'm going to ask her a couple follow-ups.
3  MS. BISSOON: Sure.
4  (Recess.)
5  EXAMINATION
6  BY MR. HUBER:
7  Q. Ms. Bissoon asked you about some office days,
8  either on a Friday or a Monday. Could you explain what
9  you would do on those office days?
10 A. Are we talking an ideal situation?
11 Q. A normal, ideal situation.
12 A. A normal, ideal situation was to have an office
13 day on either a Monday or a Friday of the week of the
14 territory that you were going to be in or before you
15 went to the territory. So, ideally, if I was on the
16 eastern half of Pennsylvania, I would take that office
17 day out of Jersey. If I was in the western half of
18 Pennsylvania, I'd take that office day in Charleroi.
19 And we would have conference calls or one-on-one calls,
20 depending on how that worked, with the reps. It was a
21 catch-up day to catch up with the reps that you weren't
22 in town with and then to report back to your direct
23 supervisor at the time.
24 Q. Now, on these office days, would you actually
25 go in to the satellite offices?

---

Page 65

1  A. Not in an ideal situation.
2  Q. What did you do in the ideal situation?
3  A. You'd be at home. You'd be on the phone.
4  You'd be on the phone from the moment you got up until
5  when your day was done. So you're doing one-on-ones
6  with your reps from anywhere from one to two hours
7  going account by account.
8  Q. Did you ever do that out of your Marlton
9  residence?
10 A. Yes.
11 Q. Did you ever do that out of your Charleroi
12 residence?
13 A. Yes.
14 Q. Now, during the time that you had the home in
15 New Jersey, did you have any photo albums?
16 A. No.
17 Q. In general, did you have any photo albums
18 during that time?
19 A. Oh, in general did I own photo albums? Yes.
20 Q. And where did you keep those?
21 A. Charleroi.
22 Q. Did you ever bring them to New Jersey?
23 A. No.
24 Q. Now, in 2000, you had mentioned that you had
25 asked to go stay with your mother in Charleroi because

---

17 (Pages 62 to 65)

Page 66

1 of breast cancer; is that correct?
2 **A. I suggested that that would be my preferred**
3 **office space to work out of, since the southern**
4 **territories didn't have, you know, satellite offices.**
5 **If I was going to be commuting from one place, I'd**
6 **rather work out of that office.**
7 Q. And did you?
8 **A. Yes.**
9 Q. And for how long?
10 **A. For the length of time that I was the**
11 **Mid-Atlantic regional manager with those territories.**
12 **So at least the summer the 2000, so one quarter of the**
13 **year. So three months, at least.**
14     MR. HUBER: I have no further questions.
15     MS. BISSOON: I have a few follow-up
16 questions.
17     EXAMINATION
18 BY MS. BISSOON:
19 Q. And first I'd like to apologize, because I do
20 see some state e-forms in your tax documents.
21     I don't see any state e-forms or any other
22 state filings for New Jersey. Do you have those?
23 **A. No, because they have all my records.**
24 Q. And I notice with respect to not only the year
25 2000, but also the year 1999, you represent your

Page 67

1 address as the Dorset Court address in Marlton, New
2 Jersey; is that correct?
3 **A. If it states that on there. Because I didn't**
4 **purchase that house until November of '99. So the bulk**
5 **of – I didn't even own it until the end, the last**
6 **month of that year.**
7 Q. I'll just show you your tax form. You'll agree
8 with me that for the tax year 1999, you list your
9 address as the New Jersey address?
10 **A. That is what it states. Thanks.**
11 Q. When you voiced to your manager your desire to
12 use the Charleroi address as your home base due to your
13 mother's illness, was there any sort of written
14 document concerning this conversation or any written
15 request?
16 **A. No.**
17 Q. And you said that was made to whom?
18 **A. Vince Bertolini.**
19 Q. And what exactly was Vince Bertolini's response
20 to you when you asked for that to be done?
21 **A. He told me that I work out of both offices,**
22 **Philadelphia and Pittsburgh, so it didn't matter to him**
23 **if, while I was taking over this new responsibility, I**
24 **wanted to commute solely from Pittsburgh.**
25 Q. Is that the only thing that you can recall

Page 68

1 Vince saying to you?
2 **A. I'm sure he said something like "I hope your**
3 **mom is doing good."**
4 Q. Did anyone in management at FAMSR ever ask you
5 to make Charleroi, the Charleroi address, your home
6 base?
7 **A. No. They never asked me to make Philly my home**
8 **base, either.**
9 Q. And when you say that the Charleroi address was
10 your home base for a quarter of that year, what do you
11 mean by that?
12 **A. Meaning that I was at least there for those**
13 **three months of the summer of 2000. So that's**
14 **one-fourth of the year.**
15 Q. When you asked Vince to have that be your home
16 base during your mother's illness, did you set a time
17 frame for him?
18 **A. No. Because I was already working out of**
19 **Pittsburgh and Philly anyway. So it wasn't like it was**
20 **a change. Pittsburgh had been my home town since I**
21 **came on in '98.**
22 Q. And when you say that it was your home base for
23 a quarter of the year, what happened that ended that
24 situation? What caused it not to be your home base
25 anymore?

Page 69

1 **A. It was still always a home base, because my**
2 **travel schedule then picked up again when they did the**
3 **restructuring, and I went back to having territories**
4 **that had satellite offices and reps that I had to**
5 **visit. So I became more, again, a commuter with home**
6 **offices between Philly and Pittsburgh.**
7 Q. I'm just trying to understand why you asked
8 Vince to have this be your home base. If what you say
9 is true that that was always the case, why did you have
10 to ask him for this to be your home base for that
11 quarter of the year?
12 **A. I guess I just was telling him that that's what**
13 **I was going to be doing. Like I said, that's why it**
14 **wasn't an issue, because it had already always been**
15 **that way, but I guess I still felt the courtesy to**
16 **want, as my supervisor, to see if he had any opinion on**
17 **it.**
18     MS. BISSOON: Those are all my questions.
19     MR. HUBER: I have no further questions.
20     MS. BISSOON: Do you want to explain to
21 her her right to read?
22     MR. HUBER: We're going to read.
23     (Witness excused.)
24     (Signature not waived.)
25     (Deposition concluded at 12:10

18 (Pages 66 to 69)

DEPOSI...N OF SHANNON M. CAIRNS - Fri..., April 4, 2003

Page 70

```
 1    o'clock p.m.)
 2                - - -
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 72

```
 1
 2
 3
 4
 5
 6         I, SHANNON M. CAIRNS, having read the foregoing
 7    deposition, certify that all corrections to the
 8    deposition that I desire to make, together with my
 9    reasons for such corrections, appear on the preceding
10    page, and I further certify that the foregoing
11    deposition is a true record of my testimony.
12
13
14         _____
15         SHANNON M. CAIRNS
16
17
18         _____
19         DATE
20
21
22
23
24
25                          lab
```

Page 71

```
 1         DEPOSITION OF SHANNON M. CAIRNS
 2         CHANGES AND/OR CORRECTIONS
 3
 4    PAGE   LINE   NOW READS: _____
 5         _____
 6    SHOULD READ: _____
 7         _____
 8    REASON FOR CHANGE: _____
 9    PAGE   LINE   NOW READS: _____
10         _____
11    SHOULD READ: _____
12         _____
13    REASON FOR CHANGE: _____
14    PAGE   LINE   NOW READS: _____
15         _____
16    SHOULD READ: _____
17         _____
18    REASON FOR CHANGE: _____
19    PAGE   LINE   NOW READS: _____
20         _____
21    SHOULD READ: _____
22         _____
23    REASON FOR CHANGE: _____
24
25                          lab
```

Page 73

```
 1
 2
 3
 4         C E R T I F I C A T I O N
 5
 6         I hereby certify pursuant to F.R.C.P. No.
 7    30(f)(1), that the witness, SHANNON M. CAIRNS, was duly
 8    sworn by me and that the foregoing deposition is a true
 9    record of the testimony of the witness.
10         The foregoing certification does not apply to
11    any reproduction of this transcript in any respect
12    unless under the direct control and/or direction of the
13    certifying reporter.
14
15
16
17         _____
18         Lisa Ann Bauer
19         Notary Public
20
21
22    My Commission expires April 13, 2003.
23
24
25
```

19 (Pages 70 to 73)

LISA ANN BAUER COURT REPORTING SERVICE
(724) 444-1080

**A**

ability 24:12
able 15:25 16:23
  19:1 35:13 49:14
  49:22 52:23
account 6:21,22
  7:11 14:24 15:13
  16:20,25 20:7
  22:17 27:4 46:9
  49:6 51:20 56:9
  61:1 65:7,7
accountant 62:6
accounts 6:23,24
  22:12 49:7,9,11
accurate 51:6,7,14
  51:15 62:13 63:9
  63:12,16
action 1:5 3:13
actual 21:20
add 5:23
addendum 13:7
address 4:7 8:15
  9:17,18 14:14
  24:7 28:24 29:5
  31:5,11,19,22
  33:5 42:3 43:25
  44:1 48:20 49:20
  51:4 57:23 63:20
  67:1,1,9,9,12 68:5
  68:9
addressed 32:7
addresses 41:25
  44:4 51:6
affirmatively 47:12
after-hours 42:12
age 30:18
agree 67:7
agreed 23:11,12,13
  24:6
agreement 23:15
  45:4
agreements 24:4
albums 65:15,17,19
amount 22:24
  48:22
and/or 71:2 73:12
Ann 1:14 73:18
announcements
  12:22
answer 3:20,22 4:1
  5:24 53:25
answered 4:3
answering 6:2
anybody 27:25
anymore 68:25

anyway 68:19
apologize 66:19
appear 32:24 51:4
  72:9
apply 73:10
appointments
  25:20
approved 57:4
April 1:16 73:22
area 7:13 8:17 23:2
  24:3 57:14
areas 8:23
arrange 50:7
arrangement 10:18
arrangements 11:9
aside 41:16
asked 4:22 7:24
  45:13 49:12,24
  57:15 64:7 65:25
  67:20 68:7,15
  69:7
asking 6:2 61:21
Associates 5:1
assume 4:1 20:6
  22:17 38:14 40:4
  59:20 60:4,21
Atlanta 11:22 20:5
  21:13,15
AT&T 50:4
audibly 5:24
Authorized 1:7
  3:11 6:17,18
  11:21 24:21 27:3
  29:8,13 31:7
  32:15 33:2 35:22
  38:15,18,20 42:8
  42:9 50:2 51:5,10
  58:5
automatically 51:1
Avenue 1:17 2:12
aware 11:18
a.m 1:18 3:2

**B**

back 21:10 25:21
  25:22 26:10 27:6
  27:14 35:6 38:13
  42:24 44:19 45:2
  45:2,10,11,12
  52:12 53:7,17,18
  63:10 64:22 69:3
backed 45:3,4
backlog 40:9
bank 29:11,19 49:6
  49:7,9,10,13
base 23:9,16,18

57:17 67:12 68:6
  68:8,10,16,22,24
  69:1,8,10
based 31:1 49:1
  62:7,8
basically 41:11
basis 20:14 26:3
  42:12
Bauer 1:14 73:18
bear 45:13
becoming 52:15
behalf 2:3,9 12:10
believe 8:8,16 20:1
  20:5 21:15 27:5
  39:15 45:5 50:3
  50:22,23 51:15,16
  53:15 54:19 56:25
  58:3 62:2,5,11
benefits 30:15
Bertolini 21:11,12
  23:14 67:18
Bertolini's 67:19
best 4:3 10:3 42:18
  53:25
better 20:3
beyond 20:25
big 42:4
bills 32:11 48:22,23
  51:2 54:7
binders 39:21,21
  40:13
birthdays 12:21
Bissoon 2:10,19 3:7
  3:10 8:22 36:8,11
  36:14,25 51:22
  52:1,3,5 61:17,20
  63:14,22 64:3,7
  66:15,18 69:18,20
bit 15:18
board 13:3 38:17
  44:3
booked 18:2
boss 21:10
bought 34:22 37:2
  37:16 39:21 56:19
  56:25
box 10:24,25 11:3,4
  11:5 13:21
boxes 41:22
Bread 9:22
break 51:25
breast 23:10 66:1
bring 31:16 65:22
broke 35:13
built 40:20
bulk 67:4

business 24:17
  32:21 37:14,25
  43:19,24 51:3,8
  56:23 59:3,14,16
buy 39:24
buying 38:23,25
BW 21:5 45:19

**C**

C 2:1 3:1 73:4,4
Cairns 1:4,12 2:19
  3:3,9,10 4:11 5:23
  33:3 52:4 71:1
  72:6,15 73:7
call 6:18 13:8 28:16
  42:21 60:10,15
called 27:5 45:18
  60:6
calls 9:24 10:5,10
  10:13,19 25:6,8
  30:25 31:4 47:20
  48:3 64:19,19
cancer 23:10 66:1
cans 55:19
car 54:21 56:15,16
  56:17,18,20,22
  57:10 58:2,4,8,11
  58:18
card 49:21 60:18
  61:11
cards 49:16,19 51:3
  51:8 59:3,15,16
  60:25 61:4
care 44:15 57:20
Carolina 21:18,22
  21:23 46:24,25
  55:8
carried 14:8
carrier 50:1
cars 12:23 56:25
  58:6
case 69:9
catch 64:21
catch-up 64:21
Cathy 2:10 3:10
caused 68:24
cell 10:7,11 16:21
  22:16 49:25 50:7
  51:18 59:12,15
CEO 21:7
certain 41:2 48:22
  49:3
certification 73:10
Certified 1:14
certify 72:7,10 73:6
certifying 73:13

change 9:15 17:6
  19:25 23:8 26:14
  44:8 45:16,22
  46:21 68:20 71:8
  71:13,18,23
changed 12:24 28:9
  46:12,17 50:15
  56:20
changes 13:10 21:6
  46:25 71:2
charge 14:25 57:13
  57:20
Charleroi 4:9 14:14
  14:23 23:21 24:7
  28:24 29:5 32:11
  33:12,15,22 34:6
  34:7 37:22 42:3
  47:2 48:20 49:20
  51:1 55:15 56:19
  57:1,8 63:20
  64:18 65:11,21,25
  67:12 68:5,5,9
check 25:15,22
  43:17 54:1
checking 43:9,16
checks 29:18,21
Chicago 19:22 27:1
  43:20 54:23 55:1
circumstance 40:8
circumstances 7:16
cities 9:7
city 7:15 9:20,21
  11:15,15 18:1,2,3
  29:11,19 31:17
  32:4 49:6
Civil 1:5,13
claimed 38:11
clarification 20:2
clarified 26:18
clarify 59:23 60:23
Claudia 47:8 48:2
cleaners 55:15
clerical 12:4,4
client 26:12
clients 11:10 32:23
  59:6 61:7
closer 42:2,3
clothes 55:16
clothing 55:13,14
Coast 31:2 42:22
Coast/East 31:1
Coast/West 42:22
colleagues 12:16
collection 55:16
color 57:11,22 59:1
Columbus 45:21,25

Case 0:03-cv-61832-WPD  Document 2  Entered on FLSD Docket 10/06/2003  Page 108 of 487
DEPOS ON OF SHANNON M. CAIRNS - Fi y, April 4, 2003

75



46:2,7,23 54:22
**come** 7:20 16:1,2
  18:9 25:9 32:5
  42:14 45:2
**comes** 11:2
**coming** 12:23 42:5
  53:18 54:7
**commencing** 1:18
**Commission** 73:22
**Commonwealth**
  1:15
**communicate** 8:9
  16:19 22:13 26:10
  26:12 59:7,11
**communicated** 39:9
**communicating**
  26:9 43:23 44:19
**communication**
  26:8
**communications**
  13:19
**commute** 24:11
  67:24
**commuter** 69:5
**commuting** 22:25
  56:6 66:5
**company** 10:21
  12:11,21,23,24
  20:2 25:12 32:22
  32:24 33:5,8
  36:18 50:7 54:7
  56:17,18,24 58:8
  58:13
**competitive** 7:15
**complete** 4:14
**completed** 38:5
**comprehension**
  3:23
**computer** 10:2
  14:10,15,20,23
  48:9,11,13
**computers** 14:16
**concerning** 27:25
  40:6 67:14
**concluded** 69:25
**conference** 13:8
  28:16 30:25 31:4
  42:21 64:19
**confidential** 10:22
  10:22
**connect** 60:12
**consider** 32:8
**contact** 60:5
**contacted** 61:7
**contribute** 48:23
**contributed** 48:22

**control** 73:12
**conversation** 67:14
**conversations**
  13:24
**copies** 5:7,9 6:6
  34:14
**copy** 4:23 5:11
  34:14
**corporate** 16:22
  26:7 50:6 51:17
  51:19 56:2,24
  59:10,20,22,22,24
  60:1,9,14,19 61:8
  61:16
**correct** 14:3 20:11
  20:16 31:8 32:20
  34:25 40:2,3
  61:24 62:18,22
  66:1 67:2
**corrections** 71:2
  72:7,9
**correspondence**
  13:14,22 41:3,6
**Costantino** 12:8,12
**counsel** 3:21 4:13
  4:17
**couple** 3:16 64:2
**coupons** 56:1
**course** 43:19
**court** 1:1 5:24 67:1
**courtesy** 69:15
**credit** 49:16,19,21
**cupboards** 55:20
**current** 4:7 6:23
**Curt** 19:6
**customers** 32:15
**cut** 54:6

---
**D**
**D** 2:17 3:1
**daily** 26:7
**date** 24:5 53:14,17
  72:19
**dates** 24:2 53:20
**Davies** 57:1,7
**day** 10:10 25:7,15
  25:19 28:21 42:20
  43:3,19,21 44:12
  64:13,17,18,21
  65:5
**days** 64:7,9,24
**DC** 21:23
**deal** 18:12
**dealer** 57:13
**dealership** 57:9
**December** 52:14

53:5
**decent** 42:14
**decide** 53:8
**decided** 48:25
**decision** 24:17
  53:10 54:3
**decorated** 55:21
**deduction** 37:18
**deductions** 37:10
  38:11
**Defendant** 2:9
**defendants** 1:10
  6:12
**Define** 32:4
**definitely** 32:5
  42:25 43:1
**delayed** 15:18
**delivered** 11:6,10
  25:18 41:10
**demoted** 21:9
**depend** 40:7 42:15
**depended** 14:12
  17:4,9,10
**dependents** 30:19
**depending** 10:4
  25:20 28:21 42:20
  48:24 64:20
**depends** 18:6
**deponent** 3:4
**deposed** 3:4,17
**deposit** 29:9,17
**deposited** 29:10,18
**deposition** 1:12
  69:25 71:1 72:7,8
  72:11 73:8
**depreciation** 37:17
**described** 9:13
  10:14,23 46:21
**desire** 67:11 72:8
**desired** 17:16,16,20
**Detroit** 9:1,9,16,17
  9:20,21 15:9 16:1
  16:5,8,10,15
  18:10,13,20,24
  19:22 26:25 31:16
  34:23 39:24 43:20
  54:23 55:1,7
**develop** 6:23
**developed** 18:24
**developing** 7:18,19
**development** 7:7,8
  7:10,21 8:24
  11:20 15:3,4
  17:11 26:15 27:16
  46:10
**Device** 1:8 3:12

60:17
**difference** 42:22
  43:18
**differences** 31:1
**different** 7:15,15,17
  9:7 11:9,9 17:9
  18:3 27:8 32:2
**dinner** 43:22
**direct** 5:11 8:6
  12:15 23:14 29:9
  29:17 39:3 64:22
  73:12
**direction** 73:12
**directly** 11:7,10,13
  11:14 13:21 14:13
  34:21
**director** 12:6
**directory** 60:8
**disability** 54:6
**discuss** 28:3
**discussed** 39:19
**discussing** 13:22
  36:21,23 39:12
**discussion** 27:24
  36:10 38:21 39:6
  39:8,24 61:19
**disseminating**
  12:10
**distances** 55:9
**distribute** 13:18
**district** 1:1,2 3:14
  7:6 27:5 46:13
**doctors** 63:11,20
**document** 4:16
  67:14
**documented** 38:3
**documents** 4:12,15
  5:4 12:20 36:3,12
  66:20
**doing** 25:6 31:4
  65:5 68:3 69:13
**door** 58:24
**Dorset** 50:24,25
  67:1
**drive** 25:18 55:7
**dropped** 26:8
**dropping** 25:3
**drove** 41:9
**dry** 55:15
**due** 67:12
**duly** 3:4 73:7
**duplicate** 7:17
**duties** 6:22 27:10
**Dwyer** 5:1

**E**

**E** 2:1,1,17 3:1,1
  73:4
**earlier** 14:7 18:7
  37:20 38:4 42:6
  46:21 47:10 61:21
**early** 15:14,22
  16:12 19:18,18
  53:5 55:7 61:1
**East** 42:22
**eastern** 64:16
**eat** 31:25 32:1
  42:24
**eating** 43:22
**either** 5:3 6:14 10:6
  10:23 31:9 34:20
  39:11,12 40:20
  41:8,14 43:1 64:8
  64:13 68:5
**electricity** 34:10
  48:19
**electronic** 6:6
**emblem** 33:8
**emerge** 19:3
**emotionally** 54:14
**employed** 19:25
**employees** 13:11
**employment** 29:13
  29:14 46:14
**ended** 15:17 18:2
  42:21 68:23
**entertainment**
  43:24
**entire** 29:12,14,20
  58:4
**entities** 5:12
**equipment** 11:1
  33:9 37:11,13
**Esquire** 2:4,10
**Essentially** 3:19
**evaluating** 13:25
**eventually** 19:12
  39:4 61:10
**exact** 9:17 23:4
  50:14
**exactly** 67:19
**EXAMINATION**
  2:18 3:6 64:5
  66:17
**example** 37:20
  38:25 55:1
**exception** 58:16
**exclusive** 47:17
  48:4
**excuse** 27:1
**excused** 69:23
**executive** 6:21,22

7:12 46:9 51:20
56:9 61:4
**EXHIBITS** 2:22
**exist** 23:25 35:11
61:14
**expand** 19:17 20:25
**expense** 13:9 38:1
38:24 39:1,2,10
**expenses** 37:2,14
38:12,20,22 39:18
39:18 40:4,5
**expensive** 49:2,3
54:12
**expires** 73:22
**explain** 26:12 63:24
64:8 69:20
**expressed** 24:10,17
26:6
**extension** 59:21,25
60:3,19 61:14
**external** 32:15
**e-fax** 10:1,24 22:16
31:20 34:9
**e-faxes** 14:7 43:10
**e-forms** 66:20,21
**e-mail** 13:22 14:18
43:9,25 44:1,4
**e-mails** 16:21 43:17

**F**

**F** 73:4
**face-to-face** 20:14
**facilities** 11:2
**factors** 17:10
**Factory** 1:7 3:11
6:16,18 11:21
24:21 27:2 29:7
29:13 31:7 32:15
33:2 35:22 38:15
38:18,19 42:7,9
50:2 51:4,9 58:5
**failure** 45:3,19
**fair** 20:18
**fall** 30:1
**FAMSR** 6:19,20
31:7 44:1 50:6
68:4
**far** 20:9 42:12
48:14 53:5 55:18
62:16
**fastest** 8:2
**fax** 6:6 10:24 13:15
27:19 33:24 34:1
42:7,9 47:14,15
48:4,4,6,17
**faxed** 41:3

**faxes** 9:24 10:1,19
11:21,25 12:3,17
14:2 31:19 37:16
**faxing** 44:15
**February** 53:23
**Federal** 1:13
**fell** 36:19
**felt** 24:11 69:15
**field** 59:11
**file** 49:22 51:3 62:3
**filed** 3:13 5:12
38:10 61:23 62:21
**files** 49:9
**filings** 66:22
**fill** 33:4 56:5,9
**filling** 13:9 44:18
**financial** 52:15
53:12 54:4
**Financially** 54:12
**find** 5:10 6:15 8:4
51:16 55:25
**finding** 57:13
**finish** 6:2
**firing** 27:12
**first** 3:4 9:14,22
13:3 15:2,4 16:5,8
44:3 58:7 66:19
**fixed** 25:16
**flat** 37:17
**flexible** 17:24 31:3
**flight** 18:1 37:6
55:22,22
**flights** 37:5
**Florida** 11:22
**flow** 44:17
**fluctuated** 48:24
**focus** 23:2
**following** 45:1
62:20
**follows** 3:5
**follow-up** 66:15
**follow-ups** 43:5
64:2
**food** 55:17
**Ford** 57:1,7
**foregoing** 72:6,10
73:8,10
**form** 13:9 33:4
37:10 43:23 56:10
67:7
**forms** 5:2,7 38:10
61:23 62:3,21
**forth** 44:19,20
**found** 25:7 26:9,11
48:18
**four** 58:24

**frame** 17:16 18:6,7
20:15 23:6 35:12
42:15 49:12 51:9
68:17
**frames** 49:24
**free** 59:5
**frequency** 23:4,7
**Friday** 1:16 43:4
64:8,13
**friends** 32:9 43:23
**front** 53:24
**full** 3:8 16:4
**Furniture** 55:12
**further** 66:14 69:19
72:10
**F.R.C.P** 73:6

**G**

**G** 3:1
**Gannon** 19:6,10,24
**gas** 32:11
**general** 65:17,19
**generate** 12:7
**Geo** 58:8
**George** 8:6 12:8
19:7 28:6,11 39:4
39:12,17,20
**gesturing** 5:25
**getting** 38:21 57:20
57:22
**give** 19:14 21:7
24:1 38:14 41:16
**given** 13:4
**giving** 53:25
**go** 11:4,7,14 12:7
15:15,18 17:14,15
17:16,20,25 18:2
18:3,4 19:12,13
32:10 36:8 43:17
44:12,13,21 45:7
51:22 55:8 56:22
60:9,14 61:17
64:25 65:25
**goal** 10:7
**going** 3:15,19 4:11
6:17 23:10 38:13
39:11 42:23,24
49:3 53:11 54:23
63:11 64:2,14
65:7 66:5 69:13
69:22
**good** 13:25 34:14
68:3
**gotten** 26:21 58:2
**grandmother** 47:9
47:20

**Great** 19:19,20
20:25 26:17 46:20
54:25
**Gregg** 12:8 21:9
**grew** 7:11
**grocery** 42:23
**ground** 3:16
**group** 21:5 25:24
45:20
**grouping** 54:21
**grow** 19:2 22:7 23:2
27:11
**grown** 22:6
**guarantee** 43:3
**guess** 12:5 31:21
32:8 38:14 42:17
58:25 69:12,15

**H**

**half** 64:16,17
**Hammer** 2:5
**hand** 23:5
**handle** 9:1 13:20
**handled** 25:4
**happen** 7:25
**happened** 10:9 16:7
68:23
**head** 25:19 47:12
**heading** 23:23
**health** 24:7,15
**hear** 3:25
**heard** 4:2
**heat** 49:3
**held** 11:13 45:17
**Helen** 47:9
**hello** 26:7
**help** 26:12
**high** 30:17
**hire** 7:4,5
**hired** 15:15
**hiring** 27:12
**hold** 27:2 41:9 42:2
**home** 11:2 14:14
31:6,16 33:10
34:4,10,18 35:1
35:15 38:11,20,22
39:13,14 40:10,21
40:23 41:25 42:7
42:24,25 43:11,14
43:21 44:8,12
51:1,4 52:6,11,17
52:21 53:3,8
54:17 55:11,17
57:17,23 63:10
65:3,14 67:12
68:5,7,10,15,20

**68:22,24 69:1,5,8
69:10
**hook** 43:10,11,13
**hope** 68:2
**hospital** 10:6,9 11:7
11:11,13 17:23
28:17,23 40:24,24
**hospitals** 59:5
**hotel** 28:15 31:16
32:2 43:20,22
**hours** 30:25 65:6
**house** 30:1 33:17
37:3 40:19 41:11
54:4,8 62:24 67:4
**houses** 35:5
**Huber** 2:4,20 8:19
36:22 51:24 63:12
64:1,6 66:14
69:19,22
**human** 12:5,18
**Huntingdon** 24:3

**I**

**ideal** 64:10,11,12
65:1,2
**ideally** 64:15
**identified** 37:25
**illness** 67:13 68:16
**inaccurate** 63:18
**include** 15:6 46:22
**included** 19:20
21:16
**including** 14:5 51:1
**income** 4:19,20,22
4:25 30:17 37:10
38:5,10 54:6
61:22 62:8
**incurred** 39:18
**individual** 26:3
**information** 9:18
12:10,25 13:3,5
19:15 48:15 55:22
57:2,22
**initiate** 54:8,16
**internal** 26:10
**internet** 43:15
**interviewing** 27:13
**invoices** 50:5
**involved** 54:15
**IRS** 62:9,13 63:5,8
63:15
**issue** 17:23 26:6
69:14
**item** 39:13,13
**items** 39:15,19
55:10

Case 0:03-cv-61832-WPD   Document 2   Entered on FLSD Docket 10/06/2003   Page 110 of 487
DEPOSI   N OF SHANNON M. CAIRNS - Fri   , April 4, 2003

77



itineraries 55:22

**J**

January 44:24
  53:16
Jeff 1:9 3:13 21:6
Jersey 5:18,20 6:8
  9:11 14:5,17,19
  18:4,16,17 19:8
  20:7 23:8 24:20
  25:1,14 27:18
  29:24 30:3 31:6
  33:10,18 34:5,18
  34:25 35:8,18
  37:12,23 40:2,16
  40:23 41:19 42:7
  42:9 43:11,14
  44:9,21 45:8 51:5
  52:7,17,21 53:3,9
  55:11,17 61:24
  62:4,10,14,21,25
  63:2,6,16 64:17
  65:15,22 66:22
  67:2,9
job 27:8 40:5 52:12
jobs 56:11
July 52:10,19 53:6
  54:18
June 6:19
junk 32:5

**K**

keep 15:10 55:10,17
  56:3 65:20
Ken 5:1
kind 16:4 21:7
  37:17 40:25 51:13
  55:10 56:3 58:22
  61:12
knew 8:21 18:24
  42:4
know 5:2 8:18 9:21
  13:7,8 17:17
  24:16 26:17 29:25
  39:8 40:7,12
  41:16 45:24 48:5
  49:2 53:10,16,19
  54:10,11 56:25
  57:6 63:10,11
  66:4
knowledge 28:10

**L**

lab 71:25 72:25
Lakes 19:19,20
  21:1 26:17 46:20

54:25
laptop 14:8,13,22
  14:23 31:20 37:13
  38:23 43:9
late 16:18 19:18
  26:23 42:20 45:23
lawyers 3:11
learn 39:2
lease 24:4,23 29:23
  29:25 35:14 56:24
  58:14
leased 24:20,22
leave 35:4 44:24
  45:1 53:13,14,22
  54:3 60:22
leaving 13:6
left 9:15 24:18
  58:17
length 66:10
letters 32:14
letting 15:17
let's 15:2 18:12
  60:11
level 15:11,11,12
  30:17 62:8
license 56:21 57:24
  57:24,25
Lieber 2:5
limits 37:5
line 33:20,22,24
  34:1,5 47:14,14
  47:15,16,17,21,23
  47:24 48:7,17
  60:4,6 71:4,9,14
  71:19
lines 33:17 34:7,8
  47:10,13,13
Lisa 1:14 73:18
list 67:8
listed 59:14,16
little 15:18 59:4
live 30:20 60:12
lives 28:17
living 44:25 52:13
  62:17 63:1
LLP 1:17 2:11
local 5:3 51:13,21
  59:4 61:9
locate 49:14,23
located 9:16 20:4
  21:14 30:9 38:8
locations 11:25
  22:2 37:21
log 56:3
logo 33:8
long 7:1 20:19

43:13 50:12 53:22
  58:14 66:9
longer 7:4 35:7,11
  40:16 41:18 44:17
  52:14 61:14
look 51:23
looked 48:14
looking 38:13 59:19
lost 19:22
lot 17:23,25 28:14
  40:8 46:23 53:12
Louis 45:6,12
low 40:12,13
lowest 18:18 19:3

**M**

M 1:4,12 2:4,19 3:3
  71:1 72:6,15 73:7
machine 37:19
magazines 32:4
mail 6:6 10:20
  16:22 32:3,4,5,7,9
  32:9,11 41:22
  51:20 59:21,23
  60:1,9,14 61:8
mailed 11:12 41:3,6
  41:17
mail-in 22:11
main 60:4,6
Maintain 6:23
  27:11
maintaining 23:1
making 24:11
manageable 41:11
management 27:25
  68:4
manager 7:6,7,8,10
  7:21 8:24 11:20
  12:13,15 15:3,5
  19:6 21:9,10
  26:15,16,20,21,22
  27:3,6,10 29:3
  34:21 45:16 46:10
  46:11,12,13,14,17
  56:13 59:23 61:5
  61:6 66:11 67:11
managers 19:1
  25:21 27:6,14
  31:1
mark 10:22 41:15
marked 53:20
market 7:18 54:17
Marlton 9:10 30:10
  65:8 67:1
marriage 12:22
matter 24:10 67:22

MDS 29:15,21
  38:16,17 46:18
meals 31:25
mean 7:6 9:7 10:25
  11:5 13:16 40:4
  49:5 50:21 68:11
Meaning 68:12
meant 13:20 32:19
medical 1:7,8 3:12
  3:12 6:17 21:5
  44:24 45:1,20
  53:13,14 54:6
  60:17
meet 16:25 20:6,13
  26:5 28:14,19,20
  28:22,22,24 29:4
  40:17,19,20,25
  44:11
meetings 25:24 26:2
memos 12:6,7,9,18
mentally 54:14
mentioned 24:14
  33:25 40:1 41:2
  47:10 49:25 58:18
  61:21 65:24
message 60:23
messages 6:6,7
  14:18
met 6:9 31:9
methods 10:23
Metro 58:8
Mexican 8:19,20
Michelle 3:9
mid 53:23
middle 40:25
Midwest 27:1
Mid-Atlantic 21:8
  21:16 22:11 23:7
  23:24 26:20 45:16
  45:18 46:20,22
  55:8 61:5 66:11
mileage 56:6,9,14
Milwaukee 19:21
  55:6
mind 17:19
Minneapolis 19:22
  55:6
minute 64:1
minutes 61:18
misunderstood
  36:12
model 58:25
mom 23:10 68:3
moment 65:4
Monday 43:4 64:8
  64:13

monitored 15:17
Monroeville 29:1
Monterey 8:16,18
  9:13 23:19,24
  24:2 29:2
month 15:22,24
  17:18 20:17,19
  67:6
monthly 50:18
months 7:2 49:3
  66:13 68:13
Moon 38:9
mother 47:6,20
  65:25
mother's 24:7,14
  47:7 48:2 67:13
  68:16
move 15:11 21:6
  28:18
moved 8:2,13 9:1
  24:1 46:9
moving 15:18 54:13

**N**

N 2:1,17 3:1 73:4
name 3:8,10 8:7,17
  8:21 24:22 32:17
  32:24 41:15 47:7
  47:24 48:2,21
  60:7
names 32:18
national 12:13 21:9
  29:11,19 49:6
nature 9:25 12:17
  12:19
need 40:9
needed 10:3 11:11
  12:7 17:15 25:4
  26:17 27:14 39:22
  42:21 55:8
negotiation 53:19
never 13:25 19:22
  28:9 31:9 32:18
  55:20 56:20 68:7
new 5:18,20 6:8,23
  7:12 9:10 12:22
  12:23 14:5,17,19
  18:4,16,17 20:7
  22:9 23:2,8 24:20
  25:1,14 27:18
  29:23 30:2 31:6
  33:9,18 34:18,25
  35:18 37:12,22
  40:2,16 42:2,7,9
  43:11,14 44:9,21
  45:8,20,25 46:3,4



46:22 51:5 52:6
52:16,21 53:3,8
54:22 55:11,17
61:24 62:4,10,14
62:21,24 63:6,16
65:15,22 66:22
67:1,9,23
**newness** 17:10
**nice** 55:16 58:8
**night** 32:1
**nodding** 5:25 47:12
**Nonny** 47:8
**non-account** 61:4
**normal** 64:11,12
**normally** 5:6
**North** 8:14,17
21:22 24:2 46:24
**Notary** 73:19
**note** 33:1
**noted** 6:11
**notes** 32:23
**notice** 6:5 60:25
66:24
**noticed** 4:19
**November** 19:18
26:24 30:12 53:4
67:4
**number** 13:8 34:3,4
34:4 50:10,11,15
51:12,19,21 57:24
59:2,3,8,14,15,16
59:18,22 60:10,11
60:18,20,21 61:2
61:2
**numbers** 51:13
59:24,24 60:24
61:8

**O**

**O** 3:1 73:4
**observation** 28:5
**observing** 39:17
**obviously** 7:17 21:6
45:3 49:2 54:23
57:24 58:16
**occasion** 20:6 27:20
27:22 32:14,16
55:6
**occurred** 53:20
63:3
**offered** 6:25
**office** 6:8 8:10,12
8:14,15 9:2,10,12
9:16 10:6 11:2
14:5,17,21 18:5
18:16,17 23:8,16

23:18,19,21,22,25
24:19,19,20 25:1
25:4,10,14,18,22
25:25 27:18,19,21
28:6,8,12,13,22
28:25 29:1,6
30:24 31:9 33:9
34:17,19,25 35:10
35:21 36:15 37:11
38:11,20,22 39:22
39:25 40:2,6,19
40:21 43:6,10
44:8,13,18 50:6
57:8 64:7,9,12,16
64:18,24 66:3,6
**offices** 1:16 9:3,5,23
10:14 11:7,12,21
13:15 14:4,11,17
18:7,8 22:1,2,3,12
22:15,21 23:1
27:23 28:1,4
34:20,22 35:1
40:11,16,23 41:4
41:5,8 42:13 44:7
46:1 64:25 66:4
67:21 69:4,6
**Oh** 65:19
**okay** 6:4,19 18:14
26:19 36:23,24
59:4
**once** 17:18 20:17,19
38:17 41:5 44:7
60:5
**ones** 5:10 25:17
55:24,25
**one-fourth** 68:14
**one-on-one** 64:19
**one-on-ones** 65:5
**operate** 48:5
**opinion** 69:16
**opposed** 37:4
**option** 58:22
**Orchard** 4:9 32:5
50:23 58:1
**organization** 57:1
**organizational** 21:5
**original** 35:24 36:1
37:6,7 50:5 56:1
**originally** 19:7
**outside** 27:13 32:13
**overseeing** 14:25
15:13
**owned** 24:20 62:16
63:2,4,19
**o'clock** 1:18 3:2
42:19,20 70:1

**P**

**P** 2:1,1 3:1
**PA** 2:7,13
**packet** 42:4
**page** 2:18 71:4,9,14
71:19 72:10
**pager** 22:16 51:21
59:2,5,8 60:21
61:2,2,14,16
**pagers** 10:17 16:21
**paid** 33:13,15,20,22
34:10 40:4 47:23
48:11,19,21
**paint** 34:22,22
39:23,24,24
**Panera** 9:22
**paperwork** 25:4
31:13,14 44:17
53:15,21 56:5
62:12
**part** 63:6,16
**particular** 10:10
11:3,24 57:3
58:19,21
**pasta** 55:19
**pay** 6:12 34:1,8
47:24 48:3,7 54:7
**paychecks** 6:12
29:7,15
**Pennsylvania** 1:2
1:16,18 3:14 4:9
5:14,16,20,22
35:17 47:2 56:18
56:21,21 62:21
64:16,18
**people** 12:2 14:1
15:19 16:1 22:13
32:15 40:22 41:8
44:5 59:10 60:5
61:7
**performance** 15:17
**performances**
13:23
**period** 17:20 18:12
18:15 58:17
**perishables** 55:18
**person** 10:13 11:24
13:24 17:1 38:4,8
**personal** 32:3,4,8
32:19 37:2 43:16
44:1 55:10 56:20
59:15
**personalized** 33:3
**pertaining** 32:13
**Philadelphia** 9:8

15:20 16:2,3,6
19:6,7,10,21
21:19,24 22:4,5,9
30:23 31:23 35:5
35:6,7 41:14,18
42:19 45:10 67:22
**Philly** 8:25 9:10
15:7,9 16:6,15,16
18:10,13 19:3,23
22:23 23:2 31:15
40:22,22,23 45:20
53:7 54:22 68:7
68:19 69:6
**phone** 10:5,7,10,11
10:13,19 13:23
22:16 25:6,8
33:17,20,22 42:7
42:9 47:23,24
48:3 49:25 50:7
50:10,10,13,14,19
51:18 59:12,15
60:15 65:3,4
**phones** 16:21
**photo** 65:15,17,19
**photocopier** 34:12
34:13
**physically** 20:4
**pick** 11:14 25:16
41:9 57:10
**picked** 57:11,11
69:2
**picking** 25:2
**pickup** 42:2
**Pittsburgh** 1:17 2:7
2:13 7:4 8:10,12
8:14,25 9:8,12
15:5,8,15 16:14
17:13 18:10,13,20
18:23 19:21,23,23
21:18,24 22:4,5
22:10,24,25 23:1
23:10,17,18 24:12
28:7,11,20 29:4
29:11,19 35:10,15
35:16 38:9 40:18
40:21,22 41:20
43:21 44:11,25
45:20 51:6 52:13
52:13 54:22 61:10
63:2,21 67:22,24
68:19,20 69:6
**place** 4:22,25 16:9
16:23 44:13 45:22
66:5
**placed** 7:12
**places** 50:20,21

55:4
**Plaintiff** 1:5 2:3
**plane** 54:24 55:2,5
**plates** 56:20
**point** 16:16,17
18:17 19:5,9,16
21:8 22:1,23
23:23 27:5 35:16
38:18 40:1,15
41:18 46:13 52:6
54:9,14 57:21
60:7,25
**points** 35:23
**policy** 12:25 13:2,5
13:10 28:8 36:19
37:8 58:8
**position** 7:1 8:3,5
13:12 45:15,17
46:10,12,16
**positive** 50:24
**possess** 6:14
**possession** 4:15
16:5 55:24
**possible** 10:8 17:22
**possibly** 35:8
**Pratt** 8:6,9 12:8
19:7 20:4
**Pratt's** 12:14
**preceding** 72:9
**preference** 24:9,16
**preferred** 23:9 66:2
**prepared** 5:6
**president** 21:7
**pretty** 53:23 55:14
**previous** 8:13
**primarily** 35:16
**primary** 18:19,21
**printer** 33:11
**printer/fax** 33:11
33:13,25 34:12
37:19 38:25
**prior** 52:17,20,21
**priorities** 19:4
**priority** 18:18
**probably** 16:5,7
37:15,16 42:11
53:4
**Procedure** 1:13
**procedures** 11:17
**produce** 6:11
**produced** 4:13 36:3
36:13 49:10
**progress** 27:17
**progression** 15:10
**promoted** 7:2,3
9:14 26:21

**promotion** 8:2,4
**property** 29:23,24
  30:2,5,9,11,13,16
  30:20,22 32:12,13
  51:2 62:16 63:2,4
  63:19
**prospects** 25:8
**provided** 9:4,5
  55:23
**proving** 15:10
**Public** 1:15 73:19
**purchase** 30:11,13
  34:17 67:4
**purchased** 14:12
  34:19,20 39:13
**purchasing** 30:15
  39:12 40:14 56:22
**purpose** 24:25
  25:10
**purposes** 30:14
  32:21 38:1 44:8
  62:8
**pursuant** 1:13 73:6
**put** 37:17 41:16
  54:17 57:23
**P-r-a-t-t** 8:8
**P.C** 2:5
**p.m** 70:1

**Q**

**quarter** 66:12
  68:10,23 69:11
**question** 3:19,23,24
  3:24,25 4:1,1 6:2
  36:11
**questions** 3:15,20
  3:21,22 4:12 5:24
  52:4 63:22 66:14
  66:16 69:18,19
**quick** 51:24
**quickly** 54:18
**quite** 55:20

**R**

**R** 2:1 3:1 73:4
**read** 63:25 69:21,22
  71:6,11,16,21
  72:6
**READS** 71:4,9,14
  71:19
**real** 16:7
**really** 11:15 24:9
  32:12 42:15
**Realtime** 1:14
**realtor** 52:18 54:13
**REASON** 71:8,13

71:18,23
**reasoning** 7:23
**reasons** 72:9
**recall** 5:12 8:15
  14:20 15:24 19:14
  19:24 32:13 33:7
  38:2 46:2 50:12
  52:22 53:17,22
  57:15,16 58:15
  67:25
**receipt** 36:4,5,7
  37:6,7
**receipts** 35:25 36:1
  36:2,15 48:13
  56:1
**receive** 5:7 9:24
  10:10,19 11:21
  12:3,18,19 13:14
  14:3,18 29:7,16
  31:19 32:3 41:22
  47:20 49:18 50:18
**received** 6:7 11:17
  11:19 14:3 29:21
  51:9
**receiving** 13:2
**Recess** 52:2 64:4
**recollect** 9:19
**recollection** 4:4
  21:20 39:5,11
**recommendation**
  62:5
**record** 3:8 4:8 20:3
  36:8,10 51:22
  61:17,19 72:11
  73:9
**records** 35:24 37:16
  51:18 61:15,22
  66:23
**Reed** 1:17 2:11
**referenced** 14:7
  37:19 38:4
**reflect** 38:11
**reflected** 57:25
**refrigerator** 55:19
**regarding** 4:12
**regards** 6:24 25:5
  38:23
**region** 19:19,20
  21:1,9,17 22:6,9
  23:7,24 28:11
  45:19 46:21,22
  54:25 61:5
**regional** 12:15 19:5
  21:10 26:16,20,21
  26:22 27:3,6,10
  29:3 45:15 46:11

46:12,13,16 56:13
  59:23 61:5 66:11
**regions** 21:21 22:14
  22:18,20
**regular** 20:9 43:15
**regularly** 20:13
**regulations** 11:4
**reimburse** 36:18,20
  37:1,7
**reimbursed** 35:21
  35:25 36:1,6,17
  38:21
**reimbursement**
  37:9 39:14 56:2
  56:14
**relevance** 24:15
**remained** 46:13
**remember** 13:2
  31:3 35:3 46:6
  57:21
**remove** 46:23
**rent** 29:24,25
**rep** 11:12,14 14:12
  17:11 18:19,21
  20:21 25:15,22
  26:12 27:4,15,17
  28:6,9,25 29:1
  31:17 34:21 35:15
  40:7 41:15 44:11
  55:7
**repair** 1:8 3:12 6:17
  6:24
**repairing** 25:3
**repairs** 25:5
**repeat** 3:25
**rephrase** 3:24
**replacement** 7:13
  7:19
**replacing** 27:14
**report** 13:9 45:11
  53:6 64:22
**reported** 13:11
**reporter** 5:24 73:13
**Reporter-Notary**
  1:15
**reporting** 13:24
  27:17 45:9
**reports** 39:10
**represent** 4:14 62:9
  63:5 66:25
**representation**
  62:13 63:8
**representative** 61:1
**representatives**
  14:24 15:13 16:20
  17:1 20:7 22:17

**representing** 3:11
**reproduction** 73:11
**reps** 9:4,6 13:4,22
  14:13 15:9 18:19
  18:24 23:4,22
  25:2,24 26:2
  27:12 28:19 29:4
  30:24 31:9,18
  35:2,4 37:4 40:10
  40:17 41:9,15,22
  42:19 43:5 45:11
  64:20,21 65:6
  69:4
**rep's** 13:23 40:20
**request** 4:16 6:5,9
  67:15
**reside** 47:5 62:10
**resided** 47:5 62:10
  62:14 63:6,15
**residence** 65:9,12
**Residential** 30:7
**resources** 12:5,18
**respect** 4:16 6:5
  10:18 11:17 14:2
  27:18 29:15 38:22
  40:5 45:15 56:6
  66:24 73:11
**response** 67:19
**responsibilities**
  16:6 18:19,22
**responsibility** 15:7
  15:8 67:23
**responsible** 7:10,18
  15:6,19 18:9,13
  31:18 40:14
**restaurant** 42:24
**restructured** 45:19
**restructuring** 69:3
**retain** 5:9
**retrieving** 48:15
**return** 25:21 60:15
**returns** 4:19,20
  5:13 38:5
**re-repairs** 17:24
**rid** 35:3
**ride** 28:7
**riding** 28:5
**right** 35:19 61:15
  62:18,19 63:24
  69:21
**road** 10:8 28:16
  31:3 40:25 42:13
  42:23
**room** 28:15 43:20
  43:22
**rotation** 17:4,8,10

**rules** 1:13 3:16
  11:16

**S**

**S** 2:1 3:1
**sale** 54:16
**sales** 12:13 21:9
**satellite** 6:8 9:3,5
  10:14 11:2,6,11
  13:15 14:4,11,17
  14:17 22:2,3,12
  22:14,21 23:1,19
  23:22,24 24:19
  25:1,10,14 27:23
  28:12 29:6 30:24
  34:20,25 35:10
  40:1,16 41:4,5,8
  42:13 43:6,10
  44:7,18 45:25
  64:25 66:4 69:4
**saw** 36:3 48:14 51:3
  59:2
**saying** 53:18 68:1
**says** 60:19 62:11
**schedule** 25:20 69:2
**scheduled** 18:1
**schedules** 17:24
  31:2
**scope** 1:8 3:12 6:17
  10:24,25 11:4,5
  13:21 26:9 41:14
  41:22
**scopes** 10:4 25:3,15
  25:17,22 41:9,10
**season** 48:24
**second** 36:9 45:14
**sedan** 58:20
**see** 4:20 7:16 24:4
  66:20,21 69:16
**seek** 37:10
**seen** 51:20
**selecting** 58:22
**selection** 58:25
**sell** 52:6,11 53:8
  54:13
**selling** 52:17,21
  54:8
**send** 10:23 12:24,25
  41:14 42:1,3
**sent** 11:25 12:9
  13:7,21 32:4
  45:12 50:24
**separate** 34:3 43:25
**series** 3:20 4:19
**served** 4:16
**serviced** 7:3

Exhibits I to M

# EXHIBIT "I"

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | ) | |
| | ) | ss: |
| County of Allegheny | ) | |

## AFFIDAVIT OF SHANNON M. CAIRNS

BEFORE ME, a Notary Public, in and for said County and State, on this day personally appeared Shannon M. Cairns, who, having been by me first duly sworn, upon her oath deposed and said:

1.    I am a female and a Pennsylvania resident who resides at 55 Orchard Street, Charleroi, PA 15022.

2.    I am a former employee of Defendants' Factory Authorized Medical Scope Repair ("FAMSR") and Medical Device Solutions ("MDS").

3.    I was born and raised in the Pittsburgh area.

4.    After graduating from Duquesne University, I began working for FAMSR in June 1998.

5.    FAMSR repairs, services, contracts, buys and sells medical devices.

6.    I was initially hired as an account representative in the Pittsburgh office. I was

promoted within six months to Territory Development Manager.

7. Within a few months of that promotion, I trained my replacement and was promoted to Regional Sales Manager.

8. In November 1999, I bought a house in New Jersey for tax purposes.

9. Despite this purchase, I retained close ties to Pittsburgh. I often worked out of my home in Charleroi during the workweek and stayed there on weekends.

10. My banking, direct deposit of my FAMSR paychecks, and all 401(k) Plan transactions remained at my Pittsburgh address.

11. In addition, any necessary postal communications between myself and FAMSR's corporate headquarters were sent to my Pittsburgh address or to FAMSR's Pittsburgh office.

12. The only work connection to the house in New Jersey was that MDS sent my MDS paychecks to that address for a couple of months.

13. In the Fall 2000, I began serving as a Regional Sales Manager for MDS.

14. On October 14, 2000, I attended a regional sales meeting in the state of Georgia at the vacation home of Jeff Trank, FAMSR's President.

15. During the evening of the meeting, Trank grabbed and kissed me.

16. When I protested Trank's unwanted and offensive touching, Trank told me I was "hot and sexy" and refused to release me.

17. Later that same evening, Trank told me he wanted to talk to me.

18. Trank then assaulted me again by picking me up, carrying me to a bed and pinning me down.

2

19. While he had me pinned down, Trank attempted to grope my breasts and rubbed his pelvis against me.

20. Despite my protests, Trank refused to dismount me and continued to proposition me for sex. Trank finally released me. He said everyone would think we had sex anyway.

21. I reported the incident the next day to my supervisor Gregg Constantino.

22. Constantino said that Trank had been drinking and had been having marital problems. Constantino also told me that Trank feared he was no longer attractive to younger women.

23. As of the date of this incident, I supervised a driver, a technician, and an account executive in Pittsburgh. I also supervised several account representatives including two who worked out of their "home" offices in Philadelphia, PA. The two account representatives and myself comprised the "Philadelphia" territory. I also supervised a driver and an account representative for New York/New Jersey, as well as a newly promoted account representative in Columbus, OH.

24. By this point, FAMSR had dissolved its satellite office in Philadelphia.

25. I mostly worked in the field with the account representatives.

26. When I was not in the field, I worked out of my "home" offices in New Jersey or Pittsburgh, depending on my travel schedule.

27. I left New Jersey permanently in December 2000 to live full time with my family in Charleroi.

28. My complete withdrawal from New Jersey was directly caused by the events of

October 14, 2000 in that I needed to be closer to my family for support reasons and closer to my health professionals located in the Pittsburgh area.

29. I continued to work for FAMSR and MDS out of my "home" office in Charleroi, PA.

30. Following my rejection of Trank's unwanted and offensive sexual advances and my complaint to Constantino, Defendants retaliated against me by changing the terms and conditions of my employment.

31. On or about December 1, 2000, my former attorneys Mary Roman and Kathleen J. Davies of Ogg Jones Cordes & Ignelzi, LLP attempted to resolve the matter by sending a letter to Defendants.

32. Defendants again retaliated against me by changing the terms and conditions of my employment.

33. FAMSR induced me to resign my position on March 3, 2001 based upon the misrepresentation that any possible litigation had been settled.

34. I returned to work on May 29, 2001.

35. FAMSR again constructively discharged me in June 2001.

36. During all of the incidents of retaliation from December 2000 through June 2001, I resided only in the Pittsburgh area, worked for FAMSR and MDS out of my home in the Pittsburgh area, and felt the effects of retaliation here in the Pittsburgh area.

37. I reside in the Pittsburgh, PA area.

38. Debbie Paolo attended the October 14, 2000 retreat at Trank's home in Georgia and she resides in Pittsburgh, PA.

39.     Kurt Cannon is a former manager who can testify about my work ethic and performance and he resides in Philadelphia, PA.

40.     Chet Galek attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in Newark, NJ.

41.     Gregg Constantino attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in GA.

42.     George Pratt is the manager who hired me as well as my direct supervisor who supported my promotions and he resides in GA.

43.     Vince Bertoloni is a former National Sales Manager who can testify about my performance and work ethic and he resides in GA.

44.     Debbie Paolo is a possible witness of the retaliation and as mentioned previously she resides in Pittsburgh, PA.

45.     Gregg Constantino is also a witness of the retaliation and as mentioned previously he resides in GA.

46.     Chet Galek is also a witness of the retaliation and as mentioned previously he resides in Newark, NJ.

47.     Charles Meadows is a FAMSR employee and he may testify about events of retaliation against me and he lives in Philadelphia, PA.

48.     Rich Morton is a FAMSR employee and he may testify about events of retaliation against me and he lives in Columbus, OH.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 27, 2003.


_Shannon M. Cairns_
Shannon M. Cairns

Sworn to and subcribed before me this 27th day of January, 2003.

_Margie Hammer_
Notary Public

Notarial Seal
Margie Hammer, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Mar. 20, 2003
Member, Pennsylvania Association of Notaries

**EXHIBIT "J"**

17.   State the beginning and end of the period in which Plaintiff's base office was

located in New Jersey and state whether the period was continuous or broken.

July 1999 through May 2000.  The period was continuous.

18.   State whether FAMSR is the same entity as Factory Authorized Medical Scope

Repairs, Inc., registered as a foreign business in the Bureau of Corporations of the

Department of State of the Commonwealth of Pennsylvania.

It is the same entity.

19.   State whether MDS has been registered as a foreign business in the Bureau of

Corporations of the Department of State of the Commonwealth of Pennsylvania.

Defendants are uncertain of the legal status of MDS in the Commonwealth of
Pennsylvania.

20.   State the extent to which FAMSR is responsible for the debts, including litigation

damages, of MDS that have accrued since June 1, 1998.

FAMSR is not responsible for any debts of MDS.

21.   State whether CT Corporation System was FAMSR's service agent in

Pennsylvania during the period January 1, 1998 and October 15, 2002, and if CT

Corporation System was not FAMSR's service agent in Pennsylvania for that

entire period, identify other service agents of FAMSR in Pennsylvania, their

mailing addresses and the dates of their tenure as service agents for FAMSR.

CT Corporation System was the service agent for this period.

_____

Representative of Defendants

Print Name:_____

**EXHIBIT "K"**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION, and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

The Honorable Gustave Diamond

## DEFENDANTS' REQUEST FOR DOCUMENTARY
## EVIDENCE PURSUANT TO COURT ORDER

Pursuant to the Order of Judge Gustave Diamond dated March 3, 2003, the Defendants',

by and through their undersigned attorneys, request the documentary evidence enumerated below.

These documents are to be provided to the Defendants' undersigned attorneys within ten (10)

days after service of this request. These document requests shall be deemed to be continuing up

to and during the time of the trial, and supplementary documents are to be supplied where

appropriate. Said documents should specify the particular document request to which they relate.

Please note that all words herein have their meaning in ordinary English usage except for

the words and phrases defined below which shall have the specific meaning given below in

addition to the meaning in ordinary English usage. If there is any difficulty in understanding the

scope or meaning of any words, please contact Defendants' attorney for an explanation.

For the purposes of these requests for documentary evidence the following definitions apply:

As used herein, the terms "document" and "documents" include but are not limited to all paper material of any kind, whether written, typed, printed, punched, filmed, or marked in any way; recording tape or wires, film, photographs, movies, or any graphic matter however produced or reproduced; and all mechanical or electronic sound recordings or transcripts thereof.

As used herein, "communication" or "communications" shall refer to any written, verbal, electronic, telephonic, or other transmission of information effectuated by the plaintiff or in which the plaintiff participated as sender or recipient, and includes, person-to-person discussions, correspondence, electronic messages or instant messages, telephone messages or telephone calls, and written or oral understandings and or agreements.

As used herein, "plaintiff" shall refer to Shannon M. Cairns ("Ms. Cairns"), and "defendant" or "defendants" shall refer jointly or individually, as the context requires, to Factory Authorized Medical Scope Repair ("FAMSR"), Medical Device Solution ("MDS"), and Jeff Trank ("Mr. Trank").

## **DOCUMENT REQUESTS**

1. Provide copies of all deeds or other title documents to all real property owned by the Plaintiff during the years 1998, 1999, 2000, and 2001, as well as, any closing documents that provide evidence of the dates of acquisition and disposition of said real property.

2.      Provide copies of all leases or rental agreements to which the Plaintiff was a party during the years 1998, 1999, 2000, and 2001, and provide copies of any other documents that provide evidence of the dates that the Plaintiff entered  into and terminated said leases and rental agreements, if the leases and rental agreements do not themselves clearly and accurately indicate such dates.

3.      Provide copies of the bank statements for the years 1998, 1999, 2000, 2001 for all bank accounts opened or held in the Plaintiff's name either solely or as joint owner during the years 1998, 1999, 2000, and 2001, as well as, any other document related to those bank accounts which indicate the name of the account holders, the name and location of the financial institution, and the date that each bank account was opened and closed.

4.      Provide copies of the credit card statements for all credit cards held and or paid by the Plaintiff during the years 1998, 1999, 2000, and 2001.

5.      Provide copies of all notes, correspondence, memoranda, or any other documentation that describes the nature and substance of all communications between the Plaintiff and any of the Defendants concerning the Plaintiff working from any "home" office.

6.      Provide copies of the Plaintiff's income tax returns, with attachments, for the years 1998, 1999, 2000, and 2001, as well as any other documents that will provide evidence of which regional Internal Revenue Service office the Plaintiff's income tax return was filed.

7.      Provide copies of any schedules or summary of expenses deducted from the Plaintiff's income for the years 1998, 1999, 2000, and 2001, if these schedules and or summaries are not provided in answering Document Request No. 6, along with copies of records or receipts for such expenses deducted.

8.      Provide copies of all agendas, daytimers, schedules, business diaries, or any other document which indicates the Plaintiff's daily schedule for all periods during the years 1998, 1999, 2000, and 2001.

9.      Provide copies of all statements of account or bills, monthly or otherwise, received by the and or paid by Plaintiff for any cellular telephone service subscribed to by the Plaintiff or to which she had use and control through any Defendant employer for the years 1998, 1999, 2000, and 2001.

10.     Provide copies of all statements of account or bills, monthly or otherwise, received by and or paid by the Plaintiff for any telephone or facsimile telephone lines subscribed to by the Plaintiff or to which she had use and control through any Defendant employer for the years 1998, 1999, 2000, and 2001.

11.     Provide copies of all statements of account or bills, monthly or otherwise, received by and or paid by the Plaintiff for any electrical service subscribed to by the Plaintiff or to which she had use or control through any Defendant employer for the years 1998, 1999, 2000, and 2001.

12.    Provide copies of all documents that provide proof of the Plaintiff's payment of any expense related to her employment with the Defendants during the years 1998, 1999, 2000, and 2001, for which she has never received reimbursement and that has not been provided in fulfilling any other document request herein.

13.    Provide copies of all travel logs or journals used by the Plaintiff during the course of her employment with the Defendants to document travel by motor vehicle or to keep record of mileage traveled during the years 1998, 1999, 2000, and 2001.

14.    Provide copies of all airline tickets or flight itineraries for all flights made by the Plaintiff during the course of her employment with the Defendant during the years 1998, 1999, 2000, and 2001.

15.    Provide copies of all business cards used by the Plaintiff during the course of her employment with the Defendants during the years 1998, 1999, 2000, 2001.

16.    Provide copies of all statements of account or bills, monthly or otherwise, received by the Plaintiff for any internet service subscribed to by the Plaintiff or to which she had use and control through any Defendant employer for the years 1998, 1999, 2000, and 2001.

17.    Provide copies of all documents that provide evidence of any newspaper or magazine subscriptions to which the Plaintiff subscribed for any period during the years 1998, 1999, 2000, and 2001.

18.     In the Plaintiff's Affidavit dated February 13, 2003, the Plaintiff, at paragraph 3, states

        "[d]uring the that I worked for FAMSR, FAMSR had a satellite office in New Jersey for a

        brief period." Please provide copies of all electronic mail messages, facsimile

        transmissions, telegraph messages received by the Plaintiff at the satellite referred to in

        paragraph 3 of her affidavit.


19.     Provide copies of paychecks or paycheck stubs received from the Defendants for all

        periods during the years 1998, 1999, 2000, and 2001.


## CERTIFICATE OF SERVICE

        I certify that a true copy of the foregoing Defendants' Request for Documentary Evidence

Pursuant to Court Order was served via facsimile and first class mail this _20_ day of March,

2003, upon the following:

                        James B. Lieber
                        LEIBER & HAMMER, P.C.
                        P.A.I.D. #21748
                        5528 Walnut Street
                        Pittsburgh, PA, 15232-2312
                        (412) 687-2231
                        (412) 687-3140 fax

GEORGE A. LANE, P.A.
FBN 7242
2929 E. Commercial Blvd., #205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 fax

_____
George A. Lane

**EXHIBIT "L"**

Record and Return To:
**SHANNON M CAIRNS**
**73 DORSET COURT**
**EVESHAM TOWNSHIP, NJ   08053**

Prepared By:   SHERYL MCNALLY

Loan No.: **600017557**

## DISCHARGE OF MORTGAGE

STATE OF NEW JERSEY     )
COUNTY OF **BURLINGTON**   )  KNOW ALL MEN BY THESE PRESENTS:

That in consideration of payment of the debt named therein, GMAC Mortgage Corporation, organized and existing under the laws of the United States, by these presents does hereby discharge land located in **BURLINGTON** County, State of NEW JERSEY.

from the lien of a certain mortgage made and executed by **SHANNON M CAIRNS**, to **TRIDENT MORTGAGE COMPANY LP**, on **November 19, 1999**, and recorded on Instrument No. --- in Book **MB7673**, Page **594**, Certificate ---,    in the Land Records of **BURLINGTON** County, State of NEW JERSEY, to the end that said mortgage shall cease to be a lien in the land above-described.

IN WITNESS WHEREOF, GMAC Mortgage Corporation has caused these presents to be signed in its name on **July 24, 2001**, by its duly authorized Assistant Vice President.

**GMAC Mortgage Corporation**

By: _____
   Jody Henson, Assistant Vice President

STATE OF IOWA
County of   Black Hawk

On **July 24, 2001**, before me, Gail H. Hintz, personally appeared **Jody Henson, Assistant Vice President**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal

_____
Notary's Signature
Gail H. Hintz    07/11/2003
2001-07-23

```
GAIL H. HINTZ
MY COMMISSION EXPIRES
JULY 11, 2003
```

(Notary's Seal)

**EXHIBIT "M"**

Form **1040**  Department of the Treasury — Internal Revenue Service
**U.S. Individual Income Tax Return  2000**  (9)  IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2000, or other tax year beginning , 2000, ending , 20   OMB. No. 1545-0074

**Label**
(See instructions on page 19.)
Use the IRS label.
Otherwise, please print or type.

Your first name and initial: SHANNON M   Last name: CAIRNS
Your social security number: 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

If a joint return, spouse's first name and initial   Last name
Spouse's social security number

Home address: 73 DORSET COURT   Apt. no

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.
MARLTON   NJ   08053

▲ **Important!** ▲
You **must** enter your SSN(s) above.

**Presidential Election Campaign** (See page 19.)
Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶
You: Yes [ ] No [ ]   Spouse: Yes [ ] No [ ]

**Filing Status**

Check only one box.

| | | |
|---|---|---|
| 1 | X | Single |
| 2 | | Married filing joint return (even if only one had income) |
| 3 | | Married filing separate return. Enter spouse's SSN above, full name here. ▶ |
| 4 | | Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶ |
| 5 | | Qualifying widow(er) with dependent child (year spouse died ▶ ). (See page 19.) |

**Exemptions**

| | | |
|---|---|---|
| 6 a | X | **Yourself.** If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a . . . . . . . . . . . . . . . . . . . |
| b | | **Spouse** |

No. of boxes checked on 6a and 6b: 1

c **Dependents:**

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) Check if qualifying child for child tax credit |
|---|---|---|---|
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |

No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 20)
Dependents on 6c not entered above

If more than six dependents, see page 20.

d Total number of exemptions claimed. . . . . . . . . . . . . . . . . . .

Add numbers entered on lines above ▶ 1

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| | | | |
|---|---|---|---|
| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2  FB | 7 | 98,959 |
| 8 a | Taxable interest. Attach Schedule B if required . . . . . . . . . | 8a | |
| b | Tax-exempt interest. **Do not** include on line 8a . . . | 8b | |
| 9 | Ordinary dividends. Attach Schedule B if required . . . . . . . . | 9 | |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 22) . . . . . | 10 | |
| 11 | Alimony received . . . . . . . . . . . . . . . . . . . | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ . . . . . | 12 | |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 . . . . . . . . . | 14 | |
| 15a | Total IRA distributions  15a  | b Taxable amount (see page 23) | 15b | |
| 16a | Total pensions & annuities  16a  | b Taxable amount (see page 23) | 16b | 118 |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E . | 17 | |
| 18 | Farm income or (loss). Attach Schedule F . . . . . . . . . | 18 | |
| 19 | Unemployment compensation . . . . . . . . . . . . . . | 19 | |
| 20a | Social security benefits  20a  | b Taxable amount (see page 25) | 20b | |
| 21 | Other income. | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | 99,077 |

**Adjusted Gross Income**

| | | | |
|---|---|---|---|
| 23 | IRA deduction (see page 27) . . . . . . . | 23 | |
| 24 | Student loan interest deduction (see page 27) . . . . | 24 | |
| 25 | Medical savings account deduction. Attach Form 8853 . | 25 | |
| 26 | Moving expenses. Attach Form 3903 . . . . . | 26 | |
| 27 | One-half of self-employment tax. Attach Schedule SE . | 27 | |
| 28 | Self-employed health insurance deduction (see page 29) . | 28 | |
| 29 | Self-employed SEP, SIMPLE, and qualified plans . . . | 29 | |
| 30 | Penalty on early withdrawal of savings . . . . . . | 30 | |
| 31a | Alimony paid  b Recipient's SSN | 31a | |
| 32 | Add lines 23 through 31a . . . . . . . . . . . . . . . | 32 | |
| 33 | Subtract line 32 from line 22. This is your **adjusted gross income** ▶ | 33 | 99,077 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 56.   EEA   Form **1040** (2000)

Case 0:03-cv-61832-WPD  Document 2  Entered on FLSD Docket 10/06/2003  Page 133 of 487

SHANNON M CAIRNS                                              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

## Tax and Credits

| | | | |
|---|---|---|---|
| 34 | Amount from line 33 (adjusted gross income) | 34 | 99,077 |

35a Check if: You were 65 or older, ☐ Blind; Spouse was 65 or older, ☐ Blind.
Add the number of boxes checked above and enter the total here . . . . . . ▶ 35a

b If you are married filing separately and your spouse itemizes deductions, or
you were a dual-status alien, see page 31 and check here . . . . . . . . . ▶ 35b ☐

**Standard Deduction for Most People**

Single: $4,400

Head of household: $6,450

Married filing jointly or Qualifying widow(er): $7,350

Married filing separately: $3,675

| | | | |
|---|---|---|---|
| 36 | Enter your **Itemized deductions** from Schedule A, line 28, **or standard deduction** shown on the left. **But** see page 31 to find your standard deduction if you checked any box on line 35a or 35b **or** if someone can claim you as a dependent | 36 | 28,941 |
| 37 | Subtract line 36 from line 34 . . . . . . . . . . . . . . . . . . . . . | 37 | 70,136 |
| 38 | If line 34 is $96,700 or less, multiply $2,800 by the total number of exemptions claimed on line 6d. If line 34 is over $96,700, see the worksheet on page 32 for the amount to enter | 38 | 2,800 |
| 39 | **Taxable income.** Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | 67,336 |
| 40 | **Tax** (see page 32). Check if any tax is from   a ☐ Form(s) 8814   b ☐ Form 4972 | 40 | 15,552 |
| 41 | Alternative minimum tax. Attach Form 6251 . . . . . . . . . . . . . . | 41 | |
| 42 | Add lines 40 and 41 . . . . . . . . . . . . . . . . . . . . . . . ▶ | 42 | 15,552 |

| | | | | |
|---|---|---|---|---|
| 43 | Foreign tax credit. Attach Form 1116 if required . . . . . | 43 | | |
| 44 | Credit for child & dependent care expenses. Attach Form 2441 | 44 | | |
| 45 | Credit for the elderly or the disabled. Attach Schedule R . . . | 45 | | |
| 46 | Education credits. Attach Form 8863 . . . . . . . . . | 46 | | |
| 47 | Child tax credit (see page 36). . . . . . . . . . . | 47 | | |
| 48 | Adoption credit. Attach Form 8839 . . . . . . . . . | 48 | | |
| 49 | Other. Check if from   a ☐ Form 3800   b ☐ Form 8396   c ☐ Form 8801   d ☐ Form (specify) | 49 | | |

| | | | |
|---|---|---|---|
| 50 | Add lines 43 through 49. These are your **total credits** . . . . . . . . . | 50 | |
| 51 | Subtract line 50 from line 42. If line 50 is more than line 42, enter -0- . . . . ▶ | 51 | 15,552 |

## Other Taxes

| | | | |
|---|---|---|---|
| 52 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . | 52 | |
| 53 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 53 | |
| 54 | Tax on IRAs, other retirement plans, and MSAs. Attach Form 5329 if required . . . . . | 54 | |
| 55 | Advance earned income credit payments from Form(s) W-2 . . . . . . . . . | 55 | |
| 56 | Household employment taxes. Attach Schedule H . . . . . . . . . . . | 56 | |
| 57 | Add lines 51 through 56. This is your **total tax** . . . . . . . . . . . ▶ | 57 | 15,552 |

## Payments

If you have a qualifying child, attach Schedule EIC.

| | | | | |
|---|---|---|---|---|
| 58 | Federal income tax withheld from Forms W-2 and 1099 . . | 58 | 23,334 | |
| 59 | 2000 estimated tax payments and amount applied from 1999 return . . . | 59 | | |
| 60a | **Earned income credit (EIC)** . . . . . . . . . | 60a | | |
| b | Nontaxable earned income: amount ▶      and type ▶ | | | |
| 61 | Excess social security and RRTA tax withheld (see page 50). . . . . . . . | 61 | | |
| 62 | Additional child tax credit. Attach Form 8812 . . . . . . | 62 | | |
| 63 | Amount paid with request for extension to file (see page 50). . | 63 | | |
| 64 | Other payments. Check if from   a ☐ Form 2439   b ☐ Form 4136. | 64 | | |

| | | | |
|---|---|---|---|
| 65 | Add lines 58, 59, 60a, and 61 through 64. These are your **total payments** . . . . . . ▶ | 65 | 23,334 |

## Refund

Have it directly deposited! See page 50 and fill in 67b, 67c, and 67d.

| | | | |
|---|---|---|---|
| 66 | If line 65 is more than line 57, subtract line 57 from line 65. This is the amount you **overpaid** . . . . . | 66 | 7,782 |
| 67a | Amount of line 66 you want **refunded to you** . . . . . . . . . . . . . ▶ | 67a | 7,782 |

▶ b Routing number | 0 | 4 | 3 | 0 | 0 | 0 | 1 | 2 | 2 | ▶c Type: ☒ Checking ☐ Savings

▶ d Account number | 5 | 4 | 9 | 6 | 0 | 5 | 6 | 2 | 1 |

| | | | |
|---|---|---|---|
| 68 | Amount of line 66 you want applied to your 2001 estimated tax ▶ | 68 | |

## Amount You Owe

| | | | |
|---|---|---|---|
| 69 | If line 57 is more than line 65, subtract line 65 from line 57. This is the **amount you owe.** For details on how to pay, see page 51 . . . . . . . . . . . . . ▶ | 69 | |
| 70 | Estimated tax penalty. Also include on line 69 . . | 70 | |

## Sign Here

Joint return? See page 19.

Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Your signature | Date | Your occupation   SALES | Daytime phone number

▶ Spouse's signature. If joint return, **both** must sign. | Date | Spouse's occupation | May the IRS discuss this return with the preparer shown below? ☒ Yes ☐ No

## Paid Preparer's Use Only

| | | |
|---|---|---|
| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN   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 |

Firm's name (or yours if self-employed), address, and ZIP code ▶

KEN DWYER INCOME TAX
280 MOON CLINTON ROAD
MOON TOWNSHIP          PA    15108-2415

EIN 25-1528434

Phone no. 412-269-0499

| | | | | OMB No. 1545-0074 |
|---|---|---|---|---|
| **SCHEDULES A&B** **(Form 1040)** | | **Schedule A – Itemized Deductions** | | **2000** |
| Department of the Treasury Internal Revenue Service    (99) | ▶ **Attach to Form 1040.**   ▶ **See Instructions for Schedules A and B (Form 1040).** | | | Attachment Sequence No.  **07** |

Name(s) shown on Form 1040

SHANNON M CAIRNS

Your social security number

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

| **Medical and Dental Expenses** | | **Caution.** Do not include expenses reimbursed or paid by others. | | | |
|---|---|---|---|---|---|
| | 1 | Medical and dental expenses (see page A-2) . . . . . . . . . . . | 1 | | |
| | 2 | Enter amount from Form 1040, line 34 . . . | 2 | | | |
| | 3 | Multiply line 2 above by 7.5% (.075) . . . . . . . . . . . | 3 | | |
| | 4 | Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- . . . . . . . | | 4 | |
| **Taxes You Paid** (See page A-2.) | 5 | State and local income taxes . . . . . . . . . . . . . . . . | 5 | 3,740 | |
| | 6 | Real estate taxes (see page A-2) . . . . . . . . . . . . . | 6 | 2,759 | |
| | 7 | Personal property taxes  . . . . . . . . . . . . . . . . | 7 | | |
| | 8 | Other taxes. List type and amount   ▶ _____ OCCUPATION                    10 | 8 | 10 | |
| | 9 | Add lines 5 through 8 . . . . . . . . . . . . . . . . . . . | | 9 | 6,509 |
| **Interest You Paid** (See page A-3.) Note. Personal interest is not deductible. | 10 | Home mortgage interest and points reported to you on Form 1098. . . . . . . | 10 | 7,459 | |
| | 11 | Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see page A-3 and show that person's name, identifying no., and address  . . . . . . .  ▶ _____ _____ _____ _____ | 11 | | |
| | 12 | Points not reported to you on Form 1098. See page A-3 for special rules  . . . . . . . . . . . . . . | 12 | | |
| | 13 | Investment interest. Attach Form 4952 if required. (See page A-3.) . . . . . . . . . . . . . . . . | 13 | | |
| | 14 | Add lines 10 through 13 . . . . . . . . . . . . . . . . . | | 14 | 7,459 |
| **Gifts to Charity** If you made a gift and got a benefit for it, see page A-4. | 15 | Gifts by cash or check. If you made any gift of $250 or more, see page A-4 . . . . . . . . . . . . . . | 15 | | |
| | 16 | Other than by cash or check. If any gift of $250 or more, see page A-4. You **must** attach Form 8283 if over $500  . . . . | 16 | 1,000 | |
| | 17 | Carryover from prior year . . . . . . . . . . . . . . . . | 17 | | |
| | 18 | Add lines 15 through 17 . . . . . . . . . . . . . . . . . | | 18 | 1,000 |
| **Casualty and Theft Losses** | 19 | Casualty or theft loss(es). Attach Form 4684. (See page A-5.) . . . . . . . . . . . . | | 19 | |
| **Job Expenses and Most Other Miscellaneous Deductions** (See page A-5 for expenses to deduct here.) | 20 | Unreimbursed employee expenses – job travel, union dues, job education, etc. You **must** attach Form 2106 or 2106-EZ if required. (See page A-5.)  ▶ _____ STATEMENT # 1 | 20 | 15,830 | |
| | 21 | Tax preparation fees . . . . . . . . . . . . . . . . | 21 | 125 | |
| | 22 | Other expenses – investment, safe deposit box, etc. List type and amount  ▶ _____ _____ _____ | 22 | | |
| | 23 | Add lines 20 through 22 . . . . . . . . . . . | 23 | 15,955 | |
| | 24 | Enter amount from Form 1040, line 34 . . . | 24 | 99,077 | | |
| | 25 | Multiply line 24 above by 2% (.02) . . . . . | 25 | 1,982 | |
| | 26 | Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- . . . . . . . . . . . | | 26 | 13,973 |
| **Other Miscellaneous Deductions** | 27 | Other – from list on page A-6. List type and amount   ▶ _____ _____ | | 27 | |
| **Total Itemized Deductions** | 28 | Is Form 1040, line 34, over $128,950 (over $64,475 if married filing separately)? [X] **No.** Your deduction is not limited. Add the amounts in the far right column for lines 4 through 27. Also, enter this amount on Form 1040, line 36. [ ] **Yes.** Your deduction may be limited. See page A-6 for the amount to enter. | . ▶ | 28 | 28,941 |

For Paperwork Reduction Act Notice, see Form 1040 Instructions.              EEA                    Schedule A (Form 1040) 2000

# Employee Business Expenses

Form **2106**

▶ See separate Instructions.

▶ Attach to Form 1040.

Department of the Treasury
Internal Revenue Service  (99)

OMB No. 1545-0139

**2000**

Attachment
Sequence No. **54**

| Your name | Occupation in which you incurred expenses | Social security number |
|---|---|---|
| SHANNON M CAIRNS | SALES | 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 |

**Part I**   Employee Business Expenses and Reimbursements

## STEP 1  Enter Your Expenses

| | | Column A<br>Other Than Meals<br>and Entertainment | Column B<br>Meals and<br>Entertainment |
|---|---|---|---|
| 1 | Vehicle expense from line 22 or line 29. (Rural mail carriers:  See instructions.) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **1** | 6,332 | |
| 2 | Parking fees, tolls, and transportation, including train, bus, etc., that **did not** involve overnight travel or commuting to and from work  . . . .  **2** | 1,011 | |
| 3 | Travel expense while away from home overnight, including lodging, airplane, car rental, etc. **Do not** include meals and entertainment  . . . . .  **3** | 8,885 | |
| 4 | Business expenses not included on lines 1 through 3. **Do not** include meals and entertainment  . . . . . . . . . . . . . . .  **4** | 126 | |
| 5 | Meals and entertainment expenses (see instructions)  . . . . . . . . . . .  **5** | | 9,120 |
| 6 | **Total expenses.**  In Column A, add lines 1 through 4 and enter the result.  In Column B, enter the amount from line 5 . . . . . . . . . . . .  **6** | 16,354 | 9,120 |

**Note:** If you were not reimbursed for any expenses in Step 1, skip line 7 and enter the amount from line 6 on line 8.

## STEP 2  Enter Reimbursements Received From Your Employer for Expenses Listed in step 1

| | | | |
|---|---|---|---|
| 7 | Enter reimbursements received from your employer that were **not** reported to you in box 1 of Form W-2.  Include any reimbursements reported under code "L" in box 13 of your Form W-2 (see instructions)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **7** | 8,113 | |

## STEP 3  Figure Expenses To Deduct on Schedule A (Form 1040)

| | | | |
|---|---|---|---|
| 8 | Subtract line 7 from line 6. If zero or less, enter –0–. However, if line 7 is greater than line 6 in Column A, report the excess as income on Form 1040, line 7. . . . . . . . . . . . . . . . . . . .  **8** | 8,241 | 9,120 |
| | **Note:** If **both columns** of line 8 are zero, you cannot deduct employee business expenses. Stop here and attach Form 2106 to your return. | | |
| 9 | In Column A, enter the amount from line 8.  In Column B, multiply line 8 by 50% (.50). (Employees subject to Department of Transportation (DOT) hours of service limits:  Multiply meal expenses by 60% (.60) instead of 50%. For details, see instructions.)  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **9** | 8,241 | 4,560 |
| 10 | Add the amounts on line 9 of both columns and enter the total here.  **Also, enter the total on Schedule A (Form 1040), line 20.**  (Fee-basis state or local government officials, qualified performing artists, and individuals with disabilities:  See the instructions for special rules on where to enter the total.)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶  **10** | 12,801 | |

For Paperwork Reduction Act Notice, see Instructions.

EEA

Form **2106** (2000)

**Part II** | **Vehicle Expenses**

**Section A – General Information** (You must complete this section if you are claiming vehicle expenses.)

| | | | (a) Vehicle 1 | (b) Vehicle 2 |
|---|---|---|---|---|
| 11 | Enter the date the vehicle was placed in service . . . . . . . . . . | 11 | 01-01-1999 | 09-01-2000 |
| 12 | Total miles the vehicle was driven during 2000 . . . . . . . . . . | 12 | 25,000 miles | 15,500 miles |
| 13 | Business miles included on line 12 . . . . . . . . . . | 13 | 20,000 miles | 12,000 miles |
| 14 | Percent of business use. Divide line 13 by line 12 . . . . . . . | 14 | 80.00 % | 77.42 % |
| 15 | Average daily roundtrip commuting distance . . . . . . . . . . . | 15 | 40 miles | 4 miles |
| 16 | Commuting miles included on line 12 . . . . . . . . . . | 16 | miles | miles |
| 17 | Other miles. Add lines 13 and 16 and subtract the total from line 12 . | 17 | 5,000 miles | 3,500 miles |

| | | |
|---|---|---|
| 18 | Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . . . | ☒ Yes ☐ No |
| 19 | If your employer provided you with a vehicle, is personal use during off-duty hours permitted? . | ☒ Yes ☐ No ☐ Not applicable |
| 20 | Do you have evidence to support your deduction? . . . . . . . . . . . . . . . . . . . . | ☒ Yes ☐ No |
| 21 | If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☒ Yes ☐ No |

**Section B – Standard Mileage Rate** (See the instructions for Part II to find out whether to complete this section or Section C.)

| | | | |
|---|---|---|---|
| 22 | Multiply line 13 by 32 1/2 cents (.325) . . . . . . . . . . . . . . . . . . . . . . . . . . | 22 | 3,900 |

**Section C – Actual Expenses**

| | | | (a) Vehicle 1 | (b) Vehicle 2 |
|---|---|---|---|---|
| 23 | Gasoline, oil, repairs, vehicle insurance, etc. . . . . . . . . . . | 23 | 3,040 | |
| 24 a | Vehicle rentals . . . . . . . . . . | 24a | | |
| b | Inclusion amount (see instructions) . | 24b | | |
| c | Subtract line 24b from line 24a . . . | 24c | | |
| 25 | Value of employer-provided vehicle (applies only if 100% of annual lease value was included on Form W-2 – see instructions). . . | 25 | | |
| 26 | Add lines 23, 24c, and 25 . . . . . | 26 | 3,040 | |
| 27 | Multiply line 26 by the percentage on line 14 . . . . . . . | 27 | 2,432 | |
| 28 | Depreciation. Enter amount from line 38 below . . . . . . . . | 28 | | |
| 29 | Add lines 27 and 28. Enter total here and on line 1 . . . . . . | 29 | 2,432 | |

**Section D – Depreciation of Vehicles** (Use this section only if you owned the vehicle and are completing Section C for the vehicle.)

| | | | (a) Vehicle 1 | (b) Vehicle 2 |
|---|---|---|---|---|
| 30 | Enter cost or other basis (see instructions) . . . . . . . . . . | 30 | | |
| 31 | Enter amount of section 179 deduction (see instructions) . . . . . | 31 | | |
| 32 | Multiply line 30 by line 14 (see instructions if you elected the section 179 deduction) . . . . . . . | 32 | | |
| 33 | Enter depreciation method and percentage (see instructions) . . . | 33 | | |
| 34 | Multiply line 32 by the percentage on line 33 (see instructions) . . . . . | 34 | | |
| 35 | Add lines 31 and 34 . . . . . . . . | 35 | | |
| 36 | Enter the limit from the table in the line 36 instructions . . . . . . | 36 | | |
| 37 | Multiply line 36 by the percentage on line 14 . . . . . . . | 37 | | |
| 38 | Enter the **smaller** of line 35 or line 37. Also enter this amount on line 28 above . . . . . . . . | 38 | | |

Form **8283**
(Rev. October 1998)

Department of the Treasury
Internal Revenue Service

## Noncash Charitable Contributions

▶ Attach to your tax return If you claimed a total deduction
of over $500 for all contributed property.
▶ See separate instructions.

OMB No. 1545-0908

Attachment
Sequence No. **55**

Name(s) shown on your income tax return

SHANNON M CAIRNS

Identifying number

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

**Note:** Figure the amount of your contribution deduction before completing this form. See your tax return instructions.

**Section A –** List in this section **only** items (or groups of similar items) for which you claimed a deduction of $5,000 or less. Also, list certain publicly traded securities even if the deduction is over $5,000 (see instructions).

**Part I** Information on Donated Property— If you need more space, attach a statement.

| 1 | (a) Name and address of the donee organization | (b) Description of donated property |
|---|---|---|
| A | GOODWILL INDUSTRIES | 1992 CHEVY GEO |
| B | | |
| C | | |
| D | | |
| E | | |

**Note:** If the amount you claimed as a deduction for an item is $500 or less, you do not have to complete columns (d), (e), and (f).

| | (c) Date of the contribution | (d) Date acquired by donor (mo./yr.) | (e) How acquired by donor | (f) Donor's cost or adjusted basis | (g) Fair market value | (h) Method used to determine the fair market value |
|---|---|---|---|---|---|---|
| A | 01-21-2000 | 06-1998 | PURCHASED | 5,000 | 1,000 | RESALE VALUE |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |

**Part II** Other Information — Complete line 2 if you gave less than an entire interest in property listed in Part I.
Complete line 3 if conditions were attached to a contribution listed in Part I.

**2** If, during the year, you contributed less than the entire interest in the property, complete lines a – e.

  **a** Enter the letter from Part I that identifies the property ▶_____. If Part II applies to more than one property, attach a separate statement.

  **b** Total amount claimed as a deduction     **(1)** For this tax year        ▶_____.
  for the property listed in Part 1:            **(2)** For any prior tax years   ▶_____.

  **c** Name and address of each organization to which any such contribution was made in a prior year (complete only if different from the donee organization above):

  Name of charitable organization (donee)

  _____

  Address (number, street, and room or suite no.)

  _____

  City or town, state, and ZIP code

  _____

  **d** For tangible property. enter the place where the property is located or kept ▶_____

  **e** Name of any person, other than the donee organization, having actual possession of the property ▶_____

**3** If conditions were attached to any contribution listed in Part I, answer questions a – c and attach the required statement (see instructions).

| | | Yes | No |
|---|---|---|---|
| **a** | Is there a restriction, either temporary or permanent, on the donee's right to use or dispose of the donated property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| **b** | Did you give to anyone (other than the donee organization or another organization participating with the donee organization in cooperative fundraising) the right to the income from the donated property or to the possession of the property, including the right to vote donated securities, to acquire the property by purchase or otherwise, or to designate the person having such income, possession, or right to acquire? . . . . . . . . . . . . . . . | | |
| **c** | Is there a restriction limiting the donated property for a particular use? . . . . . . . . . . . | | |

For Paperwork Reduction Act Notice, see separate Instructions.          EEA          Form **8283** (Rev. 10-98)

PLEASE
DO NOT USE YOUR
LABEL

0000114124

2000

PA-40
PAGE 1 OF 2

```
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  CA                                    EX    0    RS    P
CAIRNS              SHANNON        M                A     0    FS
                                                   FY    0
73 DORSET COURT                                    SC
MARLTON      NJ  08053                             PN  724-483-0461
   1A    18819.00        1B   13335.00        1C      5484.00
   2         0.00        3        0.00        4          0.00
   5         0.00        6        0.00        7          0.00
   8         0.00        9     5484.00       10          0.00
  11      5484.00       12      154.00
```

— — — — — — — — — — — — — — — PLEASE FOLD PAGE ALONG THIS LINE — — — — — — — — — — — — —

**Local Information.** Enter where you lived as of 12/31/00

School District:
School Code:
County:        **BURLINGTON**
Municipality:

**Residency Status. (Mark the Correct Space)**

| | | |
|---|---|---|
| R | | Resident |
| NR | X | Nonresident |
| P | | Part Year Resident |
| From: | 01/01/00 | MM/DD/YY |
| To: | 03/15/00 | MM/DD/YY |

**Extension,** (Mark This Space.)
**Amended Return,** (Mark This Space.)
**Fiscal Year Filer,** (Mark This Space.)

**Type Filer.** Fill-in only one choice.

| | | |
|---|---|---|
| S | X | Single |
| J | | Married, Filing Jointly |
| M | | Married, Filing Separately |
| F | | Final |
| D | | Deceased |

Date of Death                    MM/DD/YY

| | | | |
|---|---|---|---|
| 1a | Gross Compensation, from PA Schedule W-2S, or your Forms W-2 or other statements . . . . . . . . . . . . . | 1a | 18819.00 |
| 1b | Unreimbursed Employee Business Expenses, from PA Schedule UE . . . . . . . . . . . . . . . . . . . . . | 1b | 13335.00 |
| 1c | Net Compensation. Subtract Line 1b from Line 1a . . . . . . . . . . . . . . . . . . . . . | 1c | 5484.00 |
| 2 | Interest Income. Complete and enclose PA Schedule A if over $2,500 . . . . . . . . . . . . . . . . . | 2 | 0.00 |
| 3 | Dividend Income. Complete and enclose PA Schedule B if over $2,500 . . . . . . . . . . . . . . . . . | 3 | 0.00 |
| 4 | Net Income or Loss from the Operation of Business, Profession, or Farm . . . . . . . . . . . . . . . . | 4 | 0.00 |
| 5 | Net Gain or Loss from the Sale, Exchange, or Disposition of Property . . . . . . . . . . . . . . . . | 5 | 0.00 |
| 6 | Net Income or Loss from Rents, Royalties, Patents, or Copyrights . . . . . . . . . . . . . . . . | 6 | 0.00 |
| 7 | Estate or Trust Income: Complete and enclose PA Schedule J. . . . . . . . . . . . . . . . . . . . | 7 | 0.00 |
| 8 | Gambling and Lottery Winnings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 | 0.00 |
| 9 | **Total PA Taxable Income.** Add only the positive income amounts from Lines 1c, 2, 3, 4, 5, 6, 7, and 8. | | |
| | DO NOT ADD any losses reported on Lines 4, 5, or 6. . . . . . . . . . . . . . . . . . . . . | 9 | 5484.00 |
| 10 | **Contributions To Your Medical Savings Account.** See the instructions. . . . . . . . . . . . . . | 10 | 0.00 |
| 11 | **Adjusted PA Taxable Income.** Subtract Line 10 from Line 9. . . . . . . . . . . . . . . . . . | 11 | 5484.00 |
| 12 | **PA Tax Liability.** Multiply Line 11 by 2.8% (0.028). Also enter on Line 13, Side 2 . . . . . . . . . | 12 | 154.00 **R** |

EC                    FC

0000114124                                              0000114124

0000214122

**2000**

PA-40
PAGE 2 OF 2

| CAIRNS | | SHANNON | M | | 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 | |
|---|---|---|---|---|---|---|
| 13 | 154.00 | 14 | 476.00 | 15 | | 0.00 |
| 16 | 0.00 | 17 | 0.00 | 18 | | 0.00 |
| 19 | 0.00 | 20A | | 20B | | |
| 21 | 0.00 | 22 | 0.00 | 23 | | 0.00 |
| 24 | 0.00 | 25 | 0.00 | 26 | | 0.00 |
| 27 | 0.00 | 28 | 476.00 | 29 | | 0.00 |
| 30 | 322.00 | 31 | 322.00 | 32 | | 0.00 |
| 33 | 0.00 | 34 | 0.00 | 35 | | 0.00 |
| 36 | 0.00 | 37 | 0.00 | | | |

| | | | |
|---|---|---|---|
| 13 | **Total PA Tax Liability** | | |
| | Enter your tax liability from Line 12 on the Side 1 . . . . . . . . . . . . . . . . . . . . | 13 | 154.00 |
| 14 | Total PA Tax Withheld, from W-2, PA Schedule W-2S, or your Forms W-2 other statements . . . . | 14 | 476.00 |
| 15 | Credit from your 1999 PA Income Tax Return . . . . . . . . . . . . . . . 15 | 0.00 | |
| 16 | 2000 Estimated Installment Payments . . . . . . . . . . . . . . . . . 16 | 0.00 | |
| 17 | 2000 Extension Payment . . . . . . . . . . . . . . . . . . . . . 17 | 0.00 | |
| 18 | Nonresident Tax Withheld on your PA Schedule(s) NRK-1 . . . . . . . . . . 18 | 0.00 | |
| 19 | **Total Estimated Payments and Credits.** Add Lines 15, 16, 17, and 18 . . . . . . . . . . | 19 | 0.00 |
| | Tax forgiveness Credit. Complete lines 20a, 20b, 21, and 22. Read instructions. | | |
| 20a | Filing Status:     UnMarried or Separated     Married     Deceased . . . . . . . . . . | 20a | |
| 20b | Dependents, Part B, Line 2 PA Schedule SP . . . . . . . . . . . . . . . . . . . . . | 20b | |
| 21 | Total Eligibility Income, Part C, Line 11, PA Schedule SP . . . . . . . . . . . . . . . . | 21 | 0.00 |
| 22 | Tax Forgiveness Credit from Part D, Line 16, PA Schedule SP . . . . . . . . . . . . . . | 22 | 0.00 |
| 23 | Total Credit for Taxes Paid to Other States or Countries. Enclose your PA Schedule G or RK-1 . . . . . . | 23 | 0.00 |
| 24 | PA Employment Incentive Payments Credit. | | |
| | Enclose your PA Schedule W, RK-1 or NRK-1. . . . . . . . . . . . . . . . . . . . . . | 24 | 0.00 |
| 25 | PA Jobs Creation Tax Credit, from enclosed certificate or PA Schedule RK-1 or NRK-1. . . . . . . . . | 25 | 0.00 |
| 26 | PA Waste Tire Recycling Investment Tax Credit, from enclosed certificate or | | |
| | PA Schedule RK-1 or NRK-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 26 | 0.00 |
| 27 | PA Research and Development Tax Credit, from enclosed certificate | | |
| | or PA Schedule RK-1 or NRK-1. . . . . . . . . . . . . . . . . . . . . . . . . | 27 | 0.00 |
| 28 | **TOTAL PAYMENTS and CREDITS.** Add lines 14, 19 and 22 through 27 . . . . . . . . . . . . . | 28 | 476.00 |
| 29 | **TAX DUE.** If Line 13 is more than Line 28, enter the difference here . . . . . . . . . . . . . . | 29 | 0.00 |
| 30 | **OVERPAYMENT.** If Line 28 is more than Line 13, enter the difference here . . . . . . . . . . . | 30 | 322.00 |
| 31 | **Refund** – Amount of Line 30 you want as a check mailed to you . . . . . . . . . . . . . .**Refund** | 31 | 322.00 |
| 32 | **Credit** – Amount of Line 30 you want as a credit to your 2001 estimated tax account . . . . . . . . . . | 32 | 0.00 |
| 33 | **Donation** – Amount of Line 30 you want to donate to the **Wild Resource Conservation Fund** . . . . . | 33 | 0.00 |
| 34 | **Donation** – Amount of Line 30 you want to donate to the **United States Olympic Committee, PA Division** | 34 | 0.00 |
| 35 | **Donation** – Amount of Line 30 you want to donate to the **Organ Donor Awareness Trust Fund** . . . . . | 35 | 0.00 |
| 36 | **Donation** – Amount of Line 30 you want to donate to the **Korea/Vietnam Memorial, Inc** . . . . . . . . | 36 | 0.00 |
| 37 | **Donation** – Amount of Line 30 you want to donate to the **Breast and Cervical Cancer Research**. . . . . | 37 | 0.00 |
| | The total of Lines 31 through 37 must equal Line 30. | | |

Under penalties of perjury, I (we) declare that I (we) have examined this return, including all accompanying schedules and statements, and to the best of my (our) belief they are true, correct and complete.

| Your Signature | Date | Your Occupation SALES |
|---|---|---|
| Spouse's Signature, if filing jointly | Date | Spouse's Occupation |

**Preparer or Company Name, other than taxpayer(s)**

| Preparer or Company Name (Please Print) SHARON LADICK | Date | Telephone Number 412-269-0499 |
|---|---|---|
| | Signature of the Preparer (Optional) | |

# PA SCHEDULE UE
**Allowable Employee Business Expenses**
PA-40 UE (09/00)
PA DEPARTMENT OF REVENUE **2000**

0001714120

OFFICIAL USE ONLY

You must complete a separate PA Schedule UE for each job if you incur expenses from more than one job. You may make photocopies of this schedule or make your own schedules in this format.

| Name of Taxpayer Claiming Expenses: SHANNON M CAIRNS | Social Security Number: 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 |
|---|---|

| Employer's Name: FACTORY AUTHORIZED ME | Employer's Address: 2859 WEST MCNAB RO POMPANO BEACH    FL 33069 | Employer's Federal ID Number: 59-3198089 |
|---|---|---|

| Describe the duties of the job in which you incurred these expenses: SALES | Employer's Telephone Number: |
|---|---|

## Part A. Employee Business Expenses.

**Caution.** You may not use Line 4 of Form 2106 or Form 2106EZ. You must itemize these expenses in Part G of this schedule.

**Vehicle Expenses.** Standard Mileage Rate.

**Filing Tip.** If you do not file Form 2106 or 2106EZ, enter your total business miles _____ 20000 _____ and multiply by the federal standard mileage rate $0. _____ 0.325 _____ Enter the result on Line 1.

| | | | |
|---|---|---|---|
| 1. | Enter the amount from your Form 2106 or Line 1 of Form 2106EZ | 1. | |
| | **Vehicle Expenses. Actual Travel and Mileage Expenses.** | | |
| 2. | Enter the amount from your Form 2106. Make the following adjustments: | 2. | 2432 |
| 3. | Add back the Inclusion amount. This adjustment does not apply for PA purposes | 3. | |
| 4. | Depreciation. You may use any generally accepted method. If not using your Form 2106, enter your depreciation expense and complete Line 5 | 4. | |
| 5. | Depreciation Method. | | |
| 6. | **Actual Travel and Mileage Expenses for PA Purposes.** Total Lines 2, 3, and 4 | 6. | 2432 |
| 7. | Parking Fees, Tolls, and Transportation. Enter the amount from your Form 2106 or Form 2106EZ | 7. | 1011 |
| 8. | Away From Home Overnight. Enter the amount from your Form 2106 or Form 2106EZ | 8. | 8885 |
| 9. | Meals and Entertainment Expenses. Enter the amount from your Form 2106 or Form 2106EZ | 9. | 9120 |
| 10. | **Total Expenses for Part A.** Add Lines 1 or 6 and 7, 8, and 9 | 10. | 21448 |

## Part B. Direct Employee Business Expenses.

| | | | |
|---|---|---|---|
| 11. | **Union Dues.** List Union name(s) and amount(s) paid. Enter total. Attach additional sheets, if needed. Name of Union(s) and amount(s). | 11. | |
| 12. | **Work Clothes and Uniforms.** Required as a condition of employment and not suitable for everyday use. Description: | 12. | |
| 13. | **Small Tools and Supplies.** Required as a condition of employment and not provided by your employer. Description: | 13. | |
| 14. | **Professional License Fees, Malpractice Insurance, and Fidelity Bond Premiums.** Required as a condition of your employment. Description: | 14. | |
| 15. | **Total Expenses for Part B.** Add Lines 11, 12, 13, and 14 | 15. | |

## Part C. Office Or Work Area Expenses. You must answer **ALL** three questions or the Department will disallow your expenses.

| | | |
|---|---|---|
| C1. Does your employer require you to maintain a suitable work area away from the employer's premises? | C1. [X] 1. YES | [ ] 2. NO |
| C2. Is this work area the principal place where you perform the duties of your employment? | C2. [X] 1. YES | [ ] 2. NO |
| C3. Do you use this work area regularly and exclusively to perform the duties of your employment? | C3. [X] 1. YES | [ ] 2. NO |

If you answered **YES** to **ALL** three questions, continue. If you answer **NO** to **ANY** question, you may not claim at home expenses.

**Actual Office or Work Area Expenses.** Enter expenses for the entire year and then calculate the business portion.

| | | | |
|---|---|---|---|
| a. | Depreciation Expense (Homeowners only) | a. | |
| b. | Real Estate Taxes | b. | |
| c. | Mortgage Interest (Homeowners only) | c. | |
| d. | Utilities | d. | |
| e. | Property Insurance | e. | |
| f. | Property Maintenance. Itemize the type and amount of maintenance expenses incurred: | f. | |
| g. | Other Apportionable Expenses. Itemize the type and amount of these expenses: | g. | |
| h. | Rent (Renters only) | h. | |
| i. | Total. Add Lines a through h. Enter the total here | i. | |
| j. | Business Percentage of Property. Divide the total square footage of your work area by the total square footage of your entire property. Round to 2 decimal places | j. | 100 % |
| k. | Apportioned Expenses. Multiply Line i by the decimal on Line j | k. | |
| l. | Total Office Supplies. Itemize supplies you purchased exclusively for use in your office or work area. Total. | l. | |
| 16. | **Total Expenses for Part C.** Add Lines k and l | 16. | |

0001714120

**Side 1**

0001714120

**PA SCHEDULE UE**
Allowable Employee Business Expenses
PA-UE (09/00)
PA DEPARTMENT OF REVENUE                **2000**

0001814128

OFFICIAL USE ONLY

Name of Taxpayer Claiming Expenses:                                    Social Security Number

SHANNON M CAIRNS                                             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

## Part D. Moving Expenses.

| | | |
|---|---|---|
| a. | Enter the number of miles from your old home to your new workplace. . . . . . . . . . . . . . . . . . . . . . . | a. _____ miles |
| b. | Enter the number of miles from your old home to your old workplace . . . . . . . . . . . . . . . . . . . . . . | b. _____ miles |
| c. | Subtract Line b from Line a and enter the difference . . . . . . . . . . . . . . . . . . . . . . . . . . . . | c. _____ miles |

If Line c is 50 miles or more, continue. If not at least 50 miles, you may not claim moving expenses.

| | | |
|---|---|---|
| 17. | Transportation expenses in moving household goods and personal effects . . . . . . . . . . . . . . . . . . . . | 17. |
| 18. | Travel, meals, and lodging expenses during the actual move from your old home to your new home . . . . . . . | 18. |
| 19. | **Total Expenses for Part D.** Add Lines 17 and 18. . . . . . . . . . . . . . . . . . . . . . . . . . . . | 19. |

## Part E. Education Expenses. You must answer ALL three questions or the Department will disallow your expenses.

| | | |
|---|---|---|
| E1. | Did your employer or a law require that you obtain this education to retain your present position or job? . . . . . . | ☐ 1. YES  ☐ 2. NO |

If you answer YES, continue. If you answer NO, you may not claim education expenses.

| | | |
|---|---|---|
| E2. | Did you need this education to meet the entry level or minimum requirements to obtain your job? . . . . . . . . | ☐ 1. YES  ☐ 2. NO |
| E3. | Will this education program or course of study qualify you for a new business or profession? . . . . . . . . . . . | ☐ 1. YES  ☐ 2. NO |

If you answer NO to both questions, continue. If you answer YES to either question, you may not claim education expenses.

| | | |
|---|---|---|
| 20. | Name of college, university or educational institution. _____ | |
| 21. | Course of study. _____ | |
| 22. | Tuition or fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 22. |
| 23. | Course materials . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 23. |
| 24. | Travel expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 24. |
| 25. | **Total Expenses for Part E.** Add Lines 22, 23, and 24. . . . . . . . . . . . . . . . . . . . . . . | 25. |

## Part F. Depreciation Expenses. Do not include vehicles (use Part A) and office or work area (use Part C) expenses.

| (a) Description of property | (b) Cost or other basis | (c) Depreciation method | (d) Depreciation deduction | (e) Section 179 expense | (f) Expense Add (d) + (e) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

| | | |
|---|---|---|
| 26. | **Total Expenses for Part F.** Add column f . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 26. |

## Part G. Miscellaneous Expenses. Itemize the type and amount of your additional expenses, including expenses from Form 2106 or Form 2106EZ.

| | | |
|---|---|---|
| a. | _____ | a. |
| b. | _____ | b. |
| c. | _____ | c. |
| d. | _____ | d. |
| e. | _____ | e. |
| 27. | **Total Miscellaneous Expenses for Part G.** Add Lines a through e . . . . . . . . . . . . . . . . . | 27. |

**Total Allowable PA Employee Business Expenses.** You must also account for reimbursements, if any.

| | | |
|---|---|---|
| 28. | **Total expenses.** Add Lines 10, 15, 16, 19, 25, 26, and 27. . . . . . . . . . . . . . . . . . | 28. | 21448 |
| 29. | **Reimbursements.** Enter reimbursements that your employer DID NOT report as taxable wages on your Form W-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 29. | 8113 |
| 30. | **Net Expense or Reimbursement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 30. | 13335 |

If Line 28 is MORE than Line 29, enter the difference on Line 30 and include on Line 1b, Unreimbursed Employee Business Expenses, on your PA-40.

If Line 29 is MORE than Line 28, enter the difference on Line 30 and include the excess in Line 1a, Gross PA Compensation, on your PA-40.

| a Control number | | OMB No. 1545-0008 | |
|---|---|---|---|

| b Employer's identification number<br>59-3198089 | 1 Wages, tips, other compensation<br>98,959 | 2 Federal income tax withheld<br>23,334 |
|---|---|---|

| c Employer's name, address, and ZIP code<br>FACTORY AUTHORIZED MEDICAL<br><br>2859 WEST MCNAB ROAD<br>POMPANO BEACH          FL   33069 | 3 Social security wages<br>76,200 | 4 Social security tax withheld<br>4,724 |
|---|---|---|
| | 5 Medicare wages and tips<br>109,459 | 6 Medicare tax withheld<br>1,587 |
| | 7 Social security tips | 8 Allocated tips |

| d Employee's social security number<br>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 | 9 Advance EIC payment | 10 Dependent care benefits |
|---|---|---|

| e Employee's name, address, and ZIP code<br><br>SHANNON M          CAIRNS<br>73 DORSET COURT<br>MARLTON          NJ   08053 | 11 Nonqualified plans | 12 Benefits included in box 1<br>897 |
|---|---|---|
| | 13 See Instrs. for box 13<br>D          10,500 | 14 Other |

| 15 | Statutory employee | Deceased | Pension Plan [X] | Legal rep. | Deferred compensation [X] |
|---|---|---|---|---|---|

| 16 State | Employer's state I.D. no. | 17 State wages, tips, etc. | 18 State income tax | 19 Locality name | 20 Local wages, tips, etc | 21 Local income tax |
|---|---|---|---|---|---|---|
| NJ | 593-198-089 | 81,944 | 3,264 | | | |
| PA | 1885 7359 | 18,819 | 476 | | | |

**Form W-2** **Wage and Tax Statement** **2000**

This information is being furnished to the Internal Revenue Service.

Department of the Treasury--Internal Revenue Service

Copy B To Be Filed With Employee's FEDERAL Tax Return

EEA

☐ **CORRECTED (if checked)**

| PAYER'S name, street address, city, state, and ZIP code | 1 Gross distribution | OMB No. 1545-0119 | **Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.** |
|---|---|---|---|
| AMERICAN UNITED LIFE   RPS | $          118 | | |
| ONE AMERICAN SQUARE | 2a Taxable amount | **2000** | |
| INDIANAPOLIS          IN 46204 | $          118 | Form **1099-R** | |

| 2b Taxable amount not determined ☐ | Total distribution ☐ | **Copy B** |
|---|---|---|

| PAYER'S Federal identification number | RECIPIENT'S identification number | 3 Capital gain (included in box 2a) | 4 Federal income tax withheld | **Report this Income on your Federal tax return. If this form shows Federal Income tax withheld in box 4, attach this copy to your return.** |
|---|---|---|---|---|
| 35-0145825 | 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 | $ | $ | |

| RECIPIENT'S name | 5 Employee contributions or insurance premiums | 6 Net unrealized appreciation in employer's securities | |
|---|---|---|---|
| SHANNON M CAIRNS | $ | $ | |

| Street address (including apt. no.) | 7 Distribution Code | IRA/ SEP/ SIMPLE | 8 Other | **This information is being furnished to the Internal Revenue Service.** |
|---|---|---|---|---|
| 73 DORSET COURT | 8 | | $                % | |

| City, state, and ZIP code | 9a Your percentage of total distribution | 9b Total employee contrib's |
|---|---|---|
| MARLTON          NJ 08053 | % | $ |

| Account number (optional) | 10 State tax withheld | 11 State/Payer's state no. | 12 State distribution |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |

| | 13 Local tax withheld | 14 Name of locality | 15 Local distribution |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |

Form **1099-R**

Department of the Treasury – Internal Revenue Service

EEA

| Form **1040** | Department of the Treasury — Internal Revenue Service **U.S. Individual Income Tax Return** | **2001** | (99) | IRS Use Only—Do not write or staple in this space. |
|---|---|---|---|---|

For the year Jan. 1–Dec. 31, 2001, or other tax year beginning _____, 2001, ending _____, 20____   OMB. No. 1545-0074

**Label**

(See instructions on page 19.)

Use the IRS label. Otherwise, please print or type.

Your first name and initial: SHANNON M    Last name: CAIRNS    Your social security number: 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

If a joint return, spouse's first name and initial ____ Last name ____   Spouse's social security number

Home address: 55 ORCHARD STREET

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.
CHARLEROI    PA   15022

▲ **Important!** ▲
You **must** enter your SSN(s) above.

**Presidential Election Campaign** (See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ....... ▶
You: [ ] Yes [ ] No    Spouse: [ ] Yes [ ] No

**Filing Status**

Check only one box.

| | | |
|---|---|---|
| 1 | [X] | Single |
| 2 | [ ] | Married filing joint return (even if only one had income) |
| 3 | [ ] | Married filing separate return. Enter spouse's SSN above, full name here. ▶ |
| 4 | [ ] | Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶ |
| 5 | [ ] | Qualifying widow(er) with dependent child (year spouse died ▶ ____ ). (See page 19.) |

**Exemptions**

| 6 a | [X] | **Yourself.** If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a | No. of boxes checked on 6a and 6b: **1** |
|---|---|---|---|
| b | [ ] | **Spouse** | |

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) Check if qualifying child for child tax credit (see p.20) |
|---|---|---|---|
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |
| | | | [ ] |

If more than six dependents, see page 20.

No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 20)

Dependents on 6c not entered above

Add numbers entered on lines above ▶ **1**

| d | Total number of exemptions claimed. | **1** |
|---|---|---|

**Income**

Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

| 7 | Wages, salaries, tips, etc. Attach Form(s) W-2 | 7 | 24,878 |
|---|---|---|---|
| 8a | Taxable interest. Attach Schedule B if required | 8a | 10 |
| b | Tax-exempt interest. **Do not** include on line 8a ..... | 8b | |
| 9 | Ordinary dividends. Attach Schedule B if required | 9 | 1 |
| 10 | Taxable refunds, credits, or offsets of state and local income taxes (see page 22) ..... | 10 | 717 |
| 11 | Alimony received | 11 | |
| 12 | Business income or (loss). Attach Schedule C or C-EZ | 12 | (3,973) |
| 13 | Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ [ ] | 13 | |
| 14 | Other gains or (losses). Attach Form 4797 | 14 | |
| 15a | Total IRA distributions 15a | b Taxable amount (see page 23) | 15b | |
| 16a | Total pensions and annuities 16a | b Taxable amount (see page 23) | 16b | |
| 17 | Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 | |
| 18 | Farm income or (loss). Attach Schedule F | 18 | |
| 19 | Unemployment compensation | 19 | |
| 20a | Social security benefits 20a | b Taxable amount (see page 25) | 20b | |
| 21 | Other income. | 21 | |
| 22 | Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 | 21,633 |

**Adjusted Gross Income**

| 23 | IRA deduction (see page 27) ......... | 23 | |
|---|---|---|---|
| 24 | Student loan interest deduction (see page 28) | 24 | |
| 25 | Archer MSA deduction. Attach Form 8853 ...... | 25 | |
| 26 | Moving expenses. Attach Form 3903 ...... | 26 | 809 |
| 27 | One-half of self-employment tax. Attach Schedule SE | 27 | |
| 28 | Self-employed health insurance deduction (see page 30) | 28 | |
| 29 | Self-employed SEP, SIMPLE, and qualified plans | 29 | |
| 30 | Penalty on early withdrawal of savings ...... | 30 | |
| 31a | Alimony paid b Recipient's SSN ▶ | 31a | |
| 32 | Add lines 23 through 31a | 32 | 809 |
| 33 | Subtract line 32 from line 22. This is your **adjusted gross income** ▶ | 33 | 20,824 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 72.    EEA    Form **1040** (2001)

Form 1040 (2001)  Page 2

SHANNON M CAIRNS                                                                        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

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) . . . . . . . . . . . . . . . | 34 | 20,824 |
| | 35a | Check if: **You** were 65 or older, ☐ Blind; **Spouse** was 65 or older, ☐ Blind. | | |
| **Standard Deduction for—** | | Add the number of boxes checked above and enter the total here . . . . . . ▶ 35a | | |
| | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here . . . . . . . . ▶ 35b ☐ | | |
| • People who checked any box on line 35a or 35b or who can be claimed as a dependent, see page 31. | 36 | **Itemized deductions** (from Schedule A) **or** your **standard deduction** (see left margin) ▶ | 36 | 17,100 |
| | 37 | Subtract line 36 from line 34 . . . . . . . . . . . . . . . . . . . | 37 | 3,724 |
| | 38 | If line 34 is $99,725 or less, multiply $2,900 by the total number of exemptions claimed on line 6d. If line 34 is over $99,725, see the worksheet on page 32 . . . . . . | 38 | 2,900 |
| • All others: | 39 | **Taxable income.** Subtract line 38 from line 37.  If line 38 is more than line 37, enter -0- . | 39 | 824 |
| Single, $4,550 | 40 | **Tax** (see page 33). Check if any tax is from **a** ☐ Form(s) 8814  **b** ☐ Form 4972 . . | 40 | 122 |
| Head of household, $6,650 | 41 | **Alternative minimum tax** (see page 34). Attach Form 6251 . . . . . . . | 41 | |
| | 42 | Add lines 40 and 41 . . . . . . . . . . . . . . . . . . . . ▶ | 42 | 122 |
| Married filing jointly or Qualifying widow(er), $7,600 | 43 | Foreign tax credit. Attach Form 1116 if required  . . . . . . | 43 | |
| | 44 | Credit for child and dependent care expenses. Attach Form 2441 . . . | 44 | |
| | 45 | Credit for the elderly or the disabled. Attach Schedule R . . . | 45 | |
| Married filing separately, $3,800 | 46 | Education credits. Attach Form 8863 . . . . . . . . | 46 | |
| | 47 | Rate reduction credit. See the worksheet on page 36  . . . . | 47 | |
| | 48 | Child tax credit (see page 37) . . . . . . . . . . | 48 | |
| | 49 | Adoption credit. Attach Form 8839 . . . . . . . . . | 49 | |
| | 50 | Other credits from:  **a** ☐ Form 3800  **b** ☐ Form 8396  **c** ☐ Form 8801  **d** ☐ Form (specify) | 50 | |
| | 51 | Add lines 43 through 50. These are your **total credits**. . . . . . . . . . | 51 | |
| | 52 | Subtract line 51 from line 42. If line 51 is more than line 42, enter -0- . . . . ▶ | 52 | 122 |
| **Other Taxes** | 53 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . . . . | 53 | |
| | 54 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 . . | 54 | |
| | 55 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required  . . | 55 | |
| | 56 | Advance earned income credit payments from Form(s) W-2 . . . . . . . . . | 56 | |
| | 57 | Household employment taxes. Attach Schedule H . . . . . . . . . . . | 57 | |
| | 58 | Add lines 52 through 57. This is your **total tax** . . . . . . . . . . . . ▶ | 58 | 122 |
| **Payments** | 59 | Federal income tax withheld from Forms W-2 and 1099 . . . | 59 | 4,508 | | |
| If you have a qualifying child, attach Schedule EIC. | 60 | 2001 estimated tax payments and amount applied from 2000 return . . | 60 | | | |
| | 61a | **Earned income credit (EIC)** . . . . . . . . . . | 61a | | | |
| | b | Nontaxable earned income . . . | 61b | | | | |
| | 62 | Excess social security and RRTA tax withheld (see page 51). . . . | 62 | | | |
| | 63 | Additional child tax credit. Attach Form 8812 . . . . . . | 63 | | | |
| | 64 | Amount paid with request for extension to file (see page 51). . . | 64 | | | |
| | 65 | Other payments. Check if from  **a** ☐ Form 2439  **b** ☐ Form 4136. | 65 | | | |
| | 66 | Add lines 59, 60, 61a, and 62 through 65.  These are your **total payments** . . . . . . ▶ | 66 | 4,508 |
| **Refund** | 67 | If line 66 is more than line 58, subtract line 58 from line 66. This is the amount you **overpaid** . . . . . | 67 | 4,386 |
| Direct deposit? See page 51 and fill in 68b, 68c, and 68d. | 68a | Amount of line 67 you want **refunded to you** . . . . . . . . . . . . ▶ | 68a | 4,386 |
| | ▶ b | Routing number | 0 4 3 0 0 0 1 2 2 | ▶c Type: ☒ Checking  ☐ Savings |
| | ▶ d | Account number | 5 4 9 6 0 5 6 2 1 | |
| | 69 | Amount of line 67 you want applied to your 2002 estimated tax . . . . ▶ | 69 | |
| **Amount You Owe** | 70 | **Amount you owe.** Subtract line 66 from line 58. For details on how to pay, see page 52 ▶ | 70 | |
| | 71 | Estimated tax penalty. Also include on line 70 . . . . . . . | 71 | | | |

| | |
|---|---|
| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see page 53)?  ☒ **Yes.** Complete the following.  ☐ **No** |
| | Designee's name ▶SHARON LADICK   Phone no. ▶412-269-0499   Personal identification number (PIN) ▶ 0 0 0 8 9 |

| | |
|---|---|
| **Sign Here** | Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. |
| Joint return? See page 19. Keep a copy for your records. | Your signature  20958   Date  2002-04-10   Your occupation  SALES   Daytime phone number |
| | Spouse's signature. If a joint return, **both** must sign.   Date   Spouse's occupation |

| | |
|---|---|
| **Paid Preparer's Use Only** | Preparer's signature ▶   Date 03-31-2003   Check if self-employed ☐   Preparer's SSN or PTIN 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 |
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ KEN DWYER INCOME TAX  280 MOON CLINTON ROAD  MOON TOWNSHIP  PA  15108-2415   EIN 25-1528434   Phone no. 412-269-0499 |

EEA                                                                                         Form **1040** (2001)

**SCHEDULES A&B**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service   (99)

## Schedule A – Itemized Deductions

OMB No. 1545-0074

**2001**

Attachment
Sequence No.   **07**

► **Attach to Form 1040.** ► **See Instructions for Schedules A and B (Form 1040).**

Name(s) shown on Form 1040
SHANNON M CAIRNS

Your social security number
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

| | | | | | |
|---|---|---|---|---|---|
| **Medical and Dental Expenses** | **Caution.** Do not include expenses reimbursed or paid by others. | | | | |
| | 1 Medical and dental expenses (see page A-2) . . . . . . . . . . | 1 | | | |
| | 2 Enter amount from Form 1040, line 34 | **2** | | | |
| | 3 Multiply line 2 above by 7.5% (.075) . . . . . . . . . . . | 3 | | | |
| | 4 Subtract line 3 from line 1. If line 3 is more than line 1, enter -0- | | | 4 | |
| **Taxes You Paid** (See page A-2.) | 5 State and local income taxes . . . . . . . . . . . . . | 5 | 708 | | |
| | 6 Real estate taxes (see page A-2) . . . . . . . . . . . | 6 | 2,758 | | |
| | 7 Personal property taxes . . . . . . . . . . . . . | 7 | | | |
| | 8 Other taxes. List type and amount ► | | | | |
| | OCCUPATION                                        10 | 8 | 10 | | |
| | 9 Add lines 5 through 8 . . . . . . . . . . . . . . . | | | 9 | 3,476 |
| **Interest You Paid** (See page A-3.) **Note.** Personal interest is not deductible. | 10 Home mortgage interest and points reported to you on Form 1098. . . . . . | 10 | 6,216 | | |
| | 11 Home mortgage interest not reported to you on Form 1098. If paid to the person from whom you bought the home, see page A-3 and show that person's name, identifying no., and address ► | | | | |
| | | 11 | | | |
| | 12 Points not reported to you on Form 1098. See page A-3 for special rules . . . . . . . . . . . . . | 12 | | | |
| | 13 Investment interest. Attach Form 4952 if required. (See page A-3.) | 13 | | | |
| | 14 Add lines 10 through 13 . . . . . . . . . . . . . . | | | 14 | 6,216 |
| **Gifts to Charity** If you made a gift and got a benefit for it, see page A-4. | 15 Gifts by cash or check. If you made any gift of $250 or more, see page A-4 . . . . . . . . . . . . | 15 | 260 | | |
| | 16 Other than by cash or check. If any gift of $250 or more, see page A-4. You **must** attach Form 8283 if over $500 | 16 | 500 | | |
| | 17 Carryover from prior year . . . . . . . . . . . . . | 17 | | | |
| | 18 Add lines 15 through 17 . . . . . . . . . . . . . . | | | 18 | 760 |
| **Casualty and Theft Losses** | 19 Casualty or theft loss(es). Attach Form 4684. (See page A-5.) . . . . . | | | 19 | |
| **Job Expenses and Most Other Miscellaneous Deductions** (See page A-5 for expenses to deduct here.) | 20 Unreimbursed employee expenses – job travel, union dues, job education, etc. You **must** attach Form 2106 or 2106-EZ if required. (See page A-5.) ► | | | | |
| | FORM 2106                                       6,884 | 20 | 6,884 | | |
| | 21 Tax preparation fees . . . . . . . . . . . . . . | 21 | 180 | | |
| | 22 Other expenses – investment, safe deposit box, etc. List type and amount ► | | | | |
| | | 22 | | | |
| | 23 Add lines 20 through 22 . . . . . . . . . . . . . | 23 | 7,064 | | |
| | 24 Enter amount from Form 1040, line 34 | **24** | 20,824 | | |
| | 25 Multiply line 24 above by 2% (.02) . . . . . . . . . | 25 | 416 | | |
| | 26 Subtract line 25 from line 23. If line 25 is more than line 23, enter -0- | | | 26 | 6,648 |
| **Other Miscellaneous Deductions** | 27 Other – from list on page A-6. List type and amount ► | | | | |
| | | | | 27 | |
| **Total Itemized Deductions** | 28 Is Form 1040, line 34, over $132,950 (over $66,475 if married filing separately)? | | | | |
| | [X] **No.** Your deduction is not limited. Add the amounts in the far right column for lines 4 through 27. Also, enter this amount on Form 1040, line 36. | | ► | 28 | 17,100 |
| | [ ] **Yes.** Your deduction may be limited. See page A-6 for the amount to enter. | | | | |

For Paperwork Reduction Act Notice, see Form 1040 Instructions.            EEA            Schedule A (Form 1040) 2001

**SCHEDULE C**
**(Form 1040)**

Department of the Treasury
Internal Revenue Service  (99)

# Profit or Loss From Business

**(Sole Proprietorship)**

▶ **Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.**

▶ **Attach to Form 1040 or Form 1041.**     ▶ **See Instructions for Schedule C (Form 1040).**

OMB No. 1545-0074

**2001**

Attachment
Sequence No. **09**

| Name of proprietor | Social security number (SSN) |
|---|---|
| SHANNON M CAIRNS | 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 |

| A | Principal business or profession, including product or service (see page C-1 of the instructions) | B | Enter code from pages C-7 & 8 |
|---|---|---|---|
| | SALES | | ▶ 454390 |

| C | Business name. If no separate business name, leave blank. | D | Employer ID number (EIN), if any |
|---|---|---|---|

**E** Business address (including suite or room no.) ▶
City, town or post office, state, and ZIP code

**F** Accounting method:   (1) [X] Cash   (2) [ ] Accrual   (3) [ ] Other (specify) ▶

**G** Did you "materially participate" in the operation of this business during 2001? If "No," see page C-2 for limit on losses   [X] Yes   [ ] No

**H** If you started or acquired this business during 2001, check here   ▶ [X]

## Part I   Income

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales. **Caution:** If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-2 and check here   ▶ [ ] | 1 | 889 |
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | 889 |
| 4 | Cost of goods sold (from line 42 on page 2) | 4 | 4,000 |
| 5 | **Gross profit.** Subtract line 4 from line 3 | 5 | (3,111) |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3) | 6 | |
| 7 | **Gross income.** Add lines 5 and 6   ▶ | 7 | (3,111) |

## Part II   Expenses.   Enter expenses for business use of your home **only** on line 30.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | | 19 | Pension and profit-sharing plans | 19 | |
| 9 | Bad debts from sales or services (see page C-3) | 9 | | 20 | Rent or lease (see page C-4): | | |
| 10 | Car and truck expenses (see page C-3) | 10 | 662 | a | Vehicles, machinery, and equipment | 20a | |
| 11 | Commissions and fees | 11 | | b | Other business property | 20b | |
| 12 | Depletion | 12 | | 21 | Repairs and maintenance | 21 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-3) | 13 | | 22 | Supplies (not included in Part III) | 22 | |
| | | | | 23 | Taxes and licenses | 23 | |
| 14 | Employee benefit programs (other than on line 19) | 14 | | 24 | Travel, meals, and entertainment: | | |
| 15 | Insurance (other than health) | 15 | | a | Travel | 24a | |
| 16 | Interest: | | | b | Meals and entertainment | | |
| a | Mortgage (paid to banks, etc.) | 16a | | c | Enter nondeductible amount included on line 24b (see page C-5) | | |
| b | Other | 16b | | d | Subtract line 24c from line 24b | 24d | |
| 17 | Legal and professional services | 17 | | 25 | Utilities | 25 | |
| | | | | 26 | Wages (less employment credits) | 26 | |
| 18 | Office expense | 18 | | 27 | Other expenses (from line 48 on page 2) | 27 | 200 |

| | | | |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27 in columns   ▶ | 28 | 862 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | 29 | (3,973) |
| 30 | Expenses for business use of your home. Attach **Form 8829** | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. | | |
| | • If a profit, enter on **Form 1040, line 12,** and also on **Schedule SE, line 2** (statutory employees, see page C-5). Estates and trusts, enter on **Form 1041, line 3.** | 31 | (3,973) |
| | • If a loss, you **must** go on to line 32. | | |
| 32 | If you have a loss, check the box that describes your investment in this activity (see page C-6). | | |
| | • If you checked 32a, enter the loss on **Form 1040, line 12,** and **also** on **Schedule SE, line 2** (statutory employees, see page C-5). Estates and trusts, enter on **Form 1041, line 3.** | 32a [ ] | All investment is at risk. |
| | • If you checked 32b, you **must** attach **Form 6198.** | 32b [ ] | Some investment is not at risk. |

**For Paperwork Reduction Act Notice, see Form 1040 Instructions.**     EEA     **Schedule C (Form 1040) 2001**

Schedule C (Form 1040) 2001   SALES   .390

Page **2**

**Name(s)**
SHANNON M CAIRNS

SSN
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

| **Part III** | **Cost of Goods Sold** (see page C-6) | | |
|---|---|---|---|

**33** Method(s) used to
value closing inventory:   a [X] Cost   b [ ] Lower of cost or market   c [ ] Other (attach explanation)

**34** Was there any change in determining quantities, costs, or valuations between opening and closing inventory? If
"Yes," attach explanation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [ ] Yes   [ ] No

| | | | |
|---|---|---|---|
| **35** | Inventory at beginning of year.  If different from last year's closing inventory, attach explanation  .  .  .  . | **35** | 4,000 |
| **36** | Purchases less cost of items withdrawn for personal use  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **36** | |
| **37** | Cost of labor.  Do not include any amounts paid to yourself  .  .  .  .  .  .  .  .  .  .  .  .  . | **37** | |
| **38** | Materials and supplies  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **38** | |
| **39** | Other costs  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **39** | |
| **40** | Add lines 35 through 39  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **40** | 4,000 |
| **41** | Inventory at end of year  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **41** | |
| **42** | **Cost of goods sold.**  Subtract line 41 from line 40. Enter the result here and on page 1, line 4 .  .  .  .  . | **42** | 4,000 |

| **Part IV** | **Information on Your Vehicle.**   Complete this part **only** if you are claiming car or truck expenses on line 10 and are not required to file Form 4562 for this business.  See the instructions for line 13 on page C-3 to find out if you must file. |
|---|---|

**43** When did you place your vehicle in service for business purposes? (month, day, year)   ▶ 02-01-2001

**44** Of the total number of miles you drove your vehicle during 2001, enter the number of miles you used your vehicle for:

**a** Business   1,920   **b** Commuting _____   **c** Other   10,080

**45** Do you (or your spouse) have another vehicle available for personal use?  .  .  .  .  .  .  .  .  .  .  .  .  . [ ] Yes   [X] No

**46** Was your vehicle available for personal use during off-duty hours?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . [ ] Yes   [ ] No

**47 a** Do you have evidence to support your deduction?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . [X] Yes   [ ] No

   **b** If "Yes," is the evidence written?  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . [X] Yes   [ ] No

| **Part V** | **Other Expenses.**   List below business expenses not included on lines 8-26 or line 30. |
|---|---|

| | |
|---|---|
| WEB SITE | 200 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| | | |
|---|---|---|
| **48** | **Total other expenses.** Enter here and on page 1, line 27 .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  . | **48** | 200 |

EEA

| Form **2106**<br>(Rev. March 2002)<br>Department of the Treasury<br>Internal Revenue Service | **Employee Business Expenses**<br><br>▶ See separate Instructions.<br>▶ Attach to Form 1040. | OMB No. 1545-0139<br><br>**2001**<br>Attachment<br>Sequence No. **54** |

| Your name | Occupation in which you incurred expenses | Social security number |
|---|---|---|
| SHANNON M CAIRNS | SALES | 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 |

**Part I**   Employee Business Expenses and Reimbursements

### Step 1   Enter Your Expenses

| | | Column A<br>Other Than Meals<br>and Entertainment | Column B<br>Meals and<br>Entertainment |
|---|---|---|---|
| 1 | Vehicle expense from line 22 or line 29. (Rural mail carriers: See instructions.) . . . . . . . . . . . . . . . . . . . . . . **1** | 2,760 | |
| 2 | Parking fees, tolls, and transportation, including train, bus, etc., that **did not** involve overnight travel or commuting to and from work . . . . . **2** | 1,515 | |
| 3 | Travel expense while away from home overnight, including lodging, airplane, car rental, etc. **Do not** include meals and entertainment . . . . . **3** | 1,419 | |
| 4 | Business expenses not included on lines 1 through 3. **Do not** include meals and entertainment . . . . . . . . . . . . . . . . . **4** | 490 | |
| 5 | Meals and entertainment expenses (see instructions) . . . . . . . . . . **5** | | 1,399 |
| 6 | **Total expenses.** In Column A, add lines 1 through 4 and enter the result. In Column B, enter the amount from line 5 . . . . . . . . . . . . . **6** | 6,184 | 1,399 |

**Note:** If you were not reimbursed for any expenses in Step 1, skip line 7 and enter the amount from line 6 on line 8.

### Step 2   Enter Reimbursements Received From Your Employer for Expenses Listed in Step 1

| | | |
|---|---|---|
| 7 | Enter reimbursements received from your employer that were **not** reported to you in box 1 of Form W-2. Include any reimbursements reported under code "L" in box 12 of your Form W-2 (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . **7** | |

### Step 3   Figure Expenses To Deduct on Schedule A (Form 1040)

| | | | |
|---|---|---|---|
| 8 | Subtract line 7 from line 6. If zero or less, enter –0–. However, if line 7 is greater than line 6 in Column A, report the excess as income on Form 1040, line 7 . . . . . . . . . . . . . . . . . **8** | 6,184 | 1,399 |
| | **Note:** If **both columns** of line 8 are zero, you cannot deduct employee business expenses. Stop here and attach Form 2106 to your return. | | |
| 9 | In Column A, enter the amount from line 8. In Column B, multiply line 8 by 50% (.50). (Employees subject to Department of Transportation (DOT) hours of service limits: Multiply meal expenses by 60% (.60) instead of 50%. For details, see instructions.) . . . . . . . . . . . . . . . . . . . . **9** | 6,184 | 700 |
| 10 | Add the amounts on line 9 of both columns and enter the total here. **Also, enter the total on Schedule A (Form 1040), line 20.** (Fee-basis state or local government officials, qualified performing artists, and individuals with disabilities: See the instructions for special rules on where to enter the total.) . . . . . . . . . . . . . . . . . . . . . . ▶ **10** | | 6,884 |

For Paperwork Reduction Act Notice, see Instructions.          EEA          Form **2106** (2001) (Rev. 3-2002)

Form 2106 (2001) (Rev. 3-2002)

## Part II  Vehicle Expenses

### Section A – General Information (You must complete this section if you are claiming vehicle expenses.)

| | | (a) Vehicle 1 | (b) Vehicle 2 |
|---|---|---|---|
| 11 | Enter the date the vehicle was placed in service . . . . . . . . . .  **11** | 08-01-2001 | |
| 12 | Total miles the vehicle was driven during 2001 . . . . . . . . . .  **12** | 12,000 miles | miles |
| 13 | Business miles included on line 12 . . . . . . . .  **13** | 8,000 miles | miles |
| 14 | Percent of business use. Divide line 13 by line 12 . . . . . . . .  **14** | 66.67 % | % |
| 15 | Average daily roundtrip commuting distance  . . . . . . . . . . .  **15** | miles | miles |
| 16 | Commuting miles included on line 12 . . . . . . . .  **16** | miles | miles |
| 17 | Other miles. Add lines 13 and 16 and subtract the total from line 12 .  **17** | 4,000 miles | miles |
| 18 | Do you (or your spouse) have another vehicle available for personal use? . . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☒ No |
| 19 | Was your vehicle available for personal use during off-duty hours? . . . . . . . . . . . . . . . . . . . . | ☐ Yes | ☐ No |
| 20 | Do you have evidence to support your deduction? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☒ Yes | ☐ No |
| 21 | If "Yes," is the evidence written? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | ☒ Yes | ☐ No |

### Section B – Standard Mileage Rate (See the instructions for Part II to find out whether to complete this section or Section C.)

| | | | |
|---|---|---|---|
| 22 | Multiply line 13 by 34 1/2 cents (.345) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | **22** | 2,760 |

### Section C – Actual Expenses

| | | | (a) Vehicle 1 | (b) Vehicle 2 |
|---|---|---|---|---|
| 23 | Gasoline, oil, repairs, vehicle insurance, etc. . . . . . . . . . . | **23** | | |
| 24 a | Vehicle rentals . . . . . . . . | **24a** | | |
| b | Inclusion amount (see instructions) . | **24b** | | |
| c | Subtract line 24b from line 24a . . . | **24c** | | |
| 25 | Value of employer-provided vehicle (applies only if 100% of annual lease value was included on Form W-2 – see instructions). . . | **25** | | |
| 26 | Add lines 23, 24c, and 25 . . . . . . | **26** | | |
| 27 | Multiply line 26 by the percentage on line 14 . . . . . . | **27** | | |
| 28 | Depreciation. Enter amount from line 38 below . . . . . . . . | **28** | | |
| 29 | Add lines 27 and 28. Enter total here and on line 1 . . . . . . . | **29** | | |

### Section D – Depreciation of Vehicles (Use this section only if you owned the vehicle and are completing Section C for the vehicle.)

| | | | (a) Vehicle 1 | (b) Vehicle 2 |
|---|---|---|---|---|
| 30 | Enter cost or other basis (see instructions) . . . . . . . . . . . | **30** | | |
| 31 | Enter section 179 deduction and special allowance (see instructions) . | **31** | | |
| 32 | Multiply line 30 by line 14 (see instructions if you claimed the section 179 deduction or special allowance) . | **32** | | |
| 33 | Enter depreciation method and percentage (see instructions) . . . | **33** | | |
| 34 | Multiply line 32 by the percentage on line 33 (see instructions) . . . . . | **34** | | |
| 35 | Add lines 31 and 34 . . . . . . . . | **35** | | |
| 36 | Enter the limit from the table in the line 36 instructions . . . . . . . | **36** | | |
| 37 | Multiply line 36 by the percentage on line 14 . . . . . . | **37** | | |
| 38 | Enter the **smaller** of line 35 or line 37. Also enter this amount on line 28 above . . . . . . . . . | **38** | | |

EEA

Form **2106** (2001) (Rev. 3-2002)

| Form **3903** | **Moving Expenses** | OMB No. 1545-0062 |
|---|---|---|

(Rev. October 2001)
Department of the Treasury
Internal Revenue Service

▶ **Attach to Form 1040**

Attachment
Sequence No. **62**

Name(s) shown on Form 1040

SHANNON M CAIRNS

Your social security number

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

**Before you begin:** See the Distance Test and Time Test in the instructions to find out if you can deduct your moving expenses.
If you are a member of the armed forces, see the instructions to find out how to complete this form.

| | | | |
|---|---|---|---|
| 1 | Enter the amount you paid for transportation and storage of household goods and personal effects (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | 716 |
| 2 | Enter the amount you paid for travel and lodging expenses in moving from your old home to your new home. **Do not** include the cost of meals (see instructions) . . . . . . . . . | 2 | 93 |
| 3 | Add lines 1 and 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 | 809 |
| 4 | Enter the total amount your employer paid you for the expenses listed on lines 1 and 2 that is **not** included in the wages box (box 1) of your W-2 form. This amount should be identified with code **P** in box 12 of your W-2 form . . . . . . . . . . . . . . . . . . . | 4 | |
| 5 | Is line 3 **more than** line 4? | | |

☐ **No.** You **cannot** deduct your moving expenses. If line 3 is less than line 4, subtract line 3 from line 4 and include the result on the "Wages, salaries, tips, etc." line of Form 1040.

☒ **Yes.** Subtract line 4 from line 3. Enter the result here and on the "Moving expenses" line of Form 1040. This is your moving **expense deduction** . . . . . . . . . . . . . . . | 5 | 809 |

# General Instructions

## A Change To Note

Beginning in 2001, the standard mileage rate for using your vehicle to move to a new home is 12 cents a mile.

## Purpose of Form

Use Form 3903 to figure your moving expense deduction for a move related to the start of work at a new principal place of work (workplace) that is either:

● Within the United States or its possessions or

● Outside the United States or its possessions and you are a U.S. citizen or resident alien.

If you qualify to deduct expenses for more than one move, use a separate Form 3903 for each move.

For more details, see Pub. 521, Moving Expenses.

## Who May Deduct Moving Expenses

If you move to a new home because of a new principal workplace, you may be able to deduct your moving expenses whether you are self-employed or an employee. But you must meet both of the tests explained next.

## Distance Test

Your new principal workplace must be at least 50 miles farther from your old home than your old workplace was. For example, if your old workplace was 3 miles from your old home, your new workplace must be at least 53 miles from that home. If you did not have an old workplace, your new workplace must be at least 50 miles from your old home. The distance between the two points is the shortest of the more commonly traveled routes between them.

**TIP:** To see if you meet the distance test, use the worksheet on this page.

## Time Test

If you are an employee, you must work full time in the general area of your new workplace for at least 39 weeks during the 12 months right after you move. If you are self-employed, you must work full time in the general area of your new workplace for at least 39 weeks during the first 12 months and a total of at least 78 weeks during the 24 months right after you move.

**What If You Do Not Meet the Time Test Before Your Return Is Due?** If you expect to meet the time test, you may deduct your moving expenses in the year you move. Later, if you do not meet the time test, you must either:

● Amend your tax return for the year you claimed the deduction by filing **Form 1040X**, Amended U.S. Individual Income Tax Return **or**

● For the year you cannot meet the time test, report as income the amount of your moving expense deduction that reduced your income tax for the year you moved.

| **Distance Test Worksheet** (Keep for Your Records) | | |
|---|---|---|
| 1. Enter the number of miles from your **old home** to your **new workplace** . . . . . . . . . . . . . . . . . . | 1. | 300 miles |
| 2. Enter the number of miles from your **old home** to your **old workplace** . . . . . . . . . . . . . . . . . . | 2. | 25 miles |
| 3. Subtract line 2 from line 1. If zero or less, enter –0– . . . . . . . . . | 3. | 275 miles |

**Is line 3 at least 50 miles?**
☒ **Yes.** You meet this test.
☐ **No.** You do not meet this test. You **cannot** deduct your moving expenses. **Do not** complete Form 3903.

Form **8879**

Department of the Treasury
Internal Revenue Service

## IRS e-file Signature Authorization

OMB No. 1545-1758

**2001**

Declaration Control Number (DCN) ▶ 00250292083952

| Taxpayer's name | Social security number |
|---|---|
| SHANNON M CAIRNS | 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 |
| Spouse's name | Spouse's social security number |

| Part I | Tax Return Information – Tax Year Ending December 31, 2001 (Whole Dollars Only) | | |
|---|---|---|---|
| 1 | Adjusted gross income (Form 1040, line 33; 1040A, line 19; 1040EZ, line 4) . . . . . . . . . . . . . . . . . . | 1 | 20,824 |
| 2 | Total tax (Form 1040, line 58; 1040A, line 36; 1040EZ, line 11) . . . . . . . . . . . . . . . . . . . . . . | 2 | 122 |
| 3 | Federal income tax withheld (Form 1040, line 59; 1040A, line 37; 1040EZ, line 8) . . . . . . . . . | 3 | 4,508 |
| 4 | Refund (Form 1040, line 68a; 1040A, line 43a; 1040EZ, line 12a) . . . . . . . . . . . . . . . . . | 4 | 4,386 |
| 5 | Amount you owe (Form 1040, line 70; 1040A, line 45; 1040EZ, line 13) . . . . . . . . . . . . . . . | 5 | |

| Part II | Declaration and Signature Authorization of Taxpayer |
|---|---|

Under penalties of perjury, I declare that I have examined a copy of my electronic individual income tax return and accompanying schedules and statements for the tax year ending December 31, 2001, and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of my electronic income tax return. I acknowledge that I have read the Consent to Disclosure and, if applicable, Electronic Funds Withdrawal Consent included on the copy of my electronic income tax return and I agree to the provisions contained therein. I have selected a personal identification number (PIN) as my signature for my electronic income tax return and, if applicable, my Electronic Funds Withdrawal Consent.

**Taxpayer's PIN: check one box only**

[X] I authorize KEN DWYER _____ to enter my PIN 20958 as my signature
on my tax year 2001 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2001 electronically filed income tax return.

Your signature ▶ _____   Date ▶ _____

**Spouse's PIN: check one box only**

[ ] I authorize _____ to enter my PIN _____ as my signature
on my tax year 2001 electronically filed income tax return.

[ ] I will enter my PIN as my signature on my tax year 2001 electronically filed income tax return.

Spouse's signature ▶ _____   Date ▶ _____

### Practitioner PIN Program Participants Only – continue below

| Part III | Certification and Authentication – Practitioner PIN Program Participants |
|---|---|

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.   25029200089

As a participant in the Practitioner PIN Program, I certify that the above numeric entry is my PIN, which is my signature on the tax year 2001 electronically filed income tax return for the taxpayer(s) indicated above. I confirm that I am participating in the Practitioner PIN Program in accordance with the requirements established for this program.

ERO's signature ▶ _____   Date ▶ _____

**ERO Must Retain This Document. – See Instructions**
**Do Not Submit This Document To the IRS Unless Requested To Do So**
**See Privacy Act and Paperwork Reduction Act Notice**

For Privacy Act and Paperwork Reduction Act Notice, see instructions.        EEA        Form **8879** (2001)

**PLEASE
DO NOT USE YOUR
LABEL**

0100115120

**2001**    **PA–40
PAGE 1 OF 2**

```
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   CA
CAIRNS                    SHANNON        M    EX   0   RS   P
                                              A    0   FS   S
                                              FY   0
                                              XX
55 ORCHARD STREET                             SC   63700
CHARLEROI          PA   15022                 PN   412-302-1718

    1A   23696.00    1B    7093.00    1C   16603.00
    2       10.00    3        1.00     4   -3973.00
    5        0.00    6        0.00     7       0.00
    8        0.00    9    16614.00    10       0.00
   11    16614.00   12      465.00
```

---

### PLEASE FOLD PAGE ALONG THIS LINE

**Local Information.** Enter where you lived as of 12/31/01

School District:  **RINGGOLD**
School Code:  **63700**
County:  **WASHINGTON**
Municipality:

**Extension,** (Mark This Space)
**Amended Return,** (Mark This Space)
**Fiscal Year Filer,** (Mark This Space)

**Type Filer. Fill-in only one choice.**

| | | |
|---|---|---|
| S | X | **Single** |
| J | | **Married, Filing Jointly** |
| M | | **Married, Filing Separately** |
| F | | **Final Return. Indicate Reason:** |

**Residency Status. (Mark the Correct Space)**

| | | |
|---|---|---|
| R | | Pennsylvania Resident |
| NR | | Nonresident |
| P | X | Part Year Resident |
| From: | 07/15/01 | MM/DD/2001 |
| To: | 12/31/01 | MM/DD/2001 |

| | | |
|---|---|---|
| D | | **Deceased** |
| Date of Death | | **MM/DD/2001** |

Do not use cents. Enter whole dollar

| | | | |
|---|---|---|---|
| 1a. | Gross Compensation. See the instructions. | 1a. | 23696.00 |
| 1b. | Unreimbursed Employee Business Expenses. See the instructions. | 1b. | 7093.00 |
| 1c. | Net Compensation. Subtract Line 1b from Line 1a. | 1c. | 16603.00 |
| 2. | Interest Income.  Complete and submit **PA Schedule A**, if over $2,500. | 2. | 10.00 |
| 3. | Dividend Income.  Complete and submit **PA Schedule B**, if over $2,500. | 3. | 1.00 |
| 4. | Net Income or Loss from the Operation of a Business, Profession, or Farm. | 4. | -3973.00 |
| 5. | Net Gain or Loss from the Sale, Exchange, or Disposition of Property. | 5. | 0.00 |
| 6. | Net Income or Loss from Rents, Royalties, Patents, or Copyrights. | 6. | 0.00 |
| 7. | Estate or Trust Income.  Complete and submit **PA Schedule J.** | 7. | 0.00 |
| 8. | Gambling and Lottery Winnings. | 8. | 0.00 |
| 9. | **Total PA Taxable Income.** Add only the positive income amounts from Lines 1c, 2, 3, 4, 5, 6, 7, and 8. DO NOT ADD any losses reported on Lines 4, 5, or 6. | 9. | 16614.00 |
| 10. | **Deduct payments to Medical Savings Account.** | 10. | 0.00 |
| 11. | **Adjusted PA Taxable Income.** Subtract Line 10 from Line 9. | 11. | 16614.00 |
| 12. | **PA Tax Liability.  Multiply Line 11 by 2.8% (0.028). Also enter on Line 13, Page 2** | 12. | 465.00 |

R

EC    OFFICIAL USE ONLY    FC

0100115120    0100115120

0100215128

PA-40
**2001**   PAGE 2 OF 2

CAIRNS                         SHANNON              M   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

| | | | | | |
|---|---|---|---|---|---|
| 13 | 465.00 | 14 | 663.00 | 15 | 0.00 |
| 16 | 0.00 | 17 | 0.00 | 18 | 0.00 |
| 19 | 0.00 | 20A | | 20B | |
| 21 | 0.00 | 22 | 0.00 | 23 | 0.00 |
| 24 | 0.00 | 25 | 0.00 | 26 | 0.00 |
| 27 | 663.00 | 28 | 0.00 | 29 | 198.00 |
| 30 | 198.00 | 31 | 0.00 | 32 | 0.00 |
| 33 | 0.00 | 34 | 0.00 | 35 | 0.00 |
| 36 | 0.00 | | | | |

| | | | |
|---|---|---|---|
| 13 | **Total PA Tax Liability** Enter your PA Tax Liability from Line 12 on Page 1 . . . . . . . . . . . . . . | 13 | 465.00 |
| 14 | Total PA Tax Withheld. See the instructions . . . . . . . . . . . . . . . . . . . . . | 14 | 663.00 |
| 15 | Credit from your 2000 PA Income Tax Return . . . . . . . . . . . . . . . . . . . . . | 15 | 0.00 |
| 16 | 2001 Estimated Installment Payments . . . . . . . . . . . . . . . . . . . . . . . | 16 | 0.00 |
| 17 | 2001 Extension Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 17 | 0.00 |
| 18 | Nonresident Tax Withheld on your PA Schedule(s) NRK-1. (Nonresidents only) . . . . . . . | 18 | 0.00 |
| 19 | **Total Estimated Payments and Credits.** Add Lines 15, 16, 17, and 18 . . . . . . . . . | 19 | 0.00 |
| | **Tax Forgiveness Credit.** Complete lines 20a, 20b, 21, and 22. Read instructions. | | |
| 20a | Filing Status:   **UnMarried or Separated     Married     Deceased** . . . . . . . . . . | 20a | |
| 20b | Dependents, Part B, Line 2 PA Schedule SP . . . . . . . . . . . . . . . . . . . . | 20b | |
| 21 | Total Eligibility Income, Part C, Line 11, PA Schedule SP . . . . . . . . . . . . . . | 21 | 0.00 |
| 22 | Tax Forgiveness Credit from Part D, Line 16, PA Schedule SP . . . . . . . . . . . . . | 22 | 0.00 |
| 23 | Total Credit for Taxes Paid to Other States or Countries. Submit your PA Schedule G or RK-1 . . . . . | 23 | 0.00 |
| 24 | PA Employment Incentive Payments Credit. Submit your PA Schedule W, RK-1 or NRK-1 . . . . . . . . | 24 | 0.00 |
| 25 | PA Jobs Creation Tax Credit. Submit your certification or PA Schedule RK-1 or NRK-1 . . . . . . . . | 25 | 0.00 |
| 26 | PA Research and Development Tax Credit. Submit your certification or PA Schedule RK-1 or NRK-1 . . . . | 26 | 0.00 |
| 27 | **TOTAL PAYMENTS and CREDITS.** Add lines 14 and 19 and 22 through 26 . . . . . . . . . . . . . | 27 | 663.00 |
| 28 | **TAX DUE.** If Line 13 is more than Line 27, enter the difference here . . . . . . . . . . | 28 | 0.00 |
| 29 | **OVERPAYMENT.** If Line 28 is more than Line 13, enter the difference here . . . . . . . . | 29 | 198.00 |
| | **The total of Lines 30 through 36 must equal Line 29.** | | |
| 30 | **Refund** – Amount of Line 29 you want as a check mailed to you . . . . . . . . . . . . . . **Refund** | 30 | 198.00 |
| 31 | **Credit** – Amount of Line 29 you want as a credit to your 2002 estimated tax account . . . . . . . . . | 31 | 0.00 |
| 32 | **Donation** – Amount of Line 29 you want to donate to the **Wild Resource Conservation Fund** . . . . . . | 32 | 0.00 |
| 33 | **Donation** – Amount of Line 29 you want to donate to the **United States Olympic Committee** . . . . . . | 33 | 0.00 |
| 34 | **Donation** – Amount of Line 29 you want to donate to the **Governor Robert P. Casey Memorial Organ and Tissue Donation Awareness Trust Fund** . . . . . . . . . . . . . . . . . . | 34 | 0.00 |
| 35 | **Donation** – Amount of Line 29 you want to donate to the **Korea/Vietnam Memorial Inc** . . . . . . . . | 35 | 0.00 |
| 36 | **Donation** – Amount of Line 29 you want to donate to the **Breast and Cervical Cancer Research Fund.** | 36 | 0.00 |

Under penalties of perjury, I (we) declare that I (we) have examined this return, including all accompanying schedules and statements, and to the best of my (our) belief they are true, correct and complete.

| | | Date: | Your Occupation: |
|---|---|---|---|
| Your Signature: | | 03-31-2003 | SALES |
| Spouse's Signature, if filing jointly: | | Date: 03-31-2003 | Spouse's Occupation: |
| Preparer or Company Name, other than taxpayer, based on all information of which the preparer has any knowledge. | | | |
| Preparer or Company Name (Please Print):   SHARON LADICK | Signature (Optional): | Date: 03-31-2003 | Telephone Number: 412-269-0499 |

**PA Schedule C**
**Profit or Loss From Business or Profession**
(SOLE PROPRIETORSHIP)
PA-40 C (09-01)
PA DEPARTMENT OF REVENUE

0103115127

OFFICIAL USE ONLY

**20** 01

**SCHEDULE C**
**C**

Attach to form PA-40, PA-20S/PA-65, or PA-41

| Name of Owner as shown on PA tax return. | Owner's |
|---|---|
| SHANNON M CAIRNS | Social Security Number  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 |

A Main business activity ▶ SALES ; product or service ▶

B Business Name ▶

| | C Taxpayer Identification Number   **C** |

D Business address (number and street)

City, State, and ZIP Code ▶

E Method(s) used to value closing inventory, check the appropriate box:    **C**
(1) [X] Cost    (2) [ ] Lower of cost or market    (3) [ ] Other (if other, attach explanation)

F Accounting method, mark the appropriate box: 1) [X] Cash    (2) [ ] Accrual    (3) [ ] Other (specify) ▶

| | Yes | No |
|---|---|---|
| G Was there any change in determining quantities, costs, or valuations between opening and closing inventory? . . . . . . . . . . | | |
| If "Yes," attach explanation. | | |
| H Did you deduct expenses for an office in your home? . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |

## PART I  Income

| | | | | |
|---|---|---|---:|---:|
| 1 | a Gross receipts or sales . . . . . . . . . . . . . . | 1a | 889 | |
| | b Returns and allowances . . . . . . . . . . . | 1b | | |
| | c Balance (subtract Line 1b from Line 1a). . . . . . . . . . . . . . . . | 1c | | 889 |
| 2 | Cost of goods sold and/or operations (Schedule C-1, Line 8) . . . . . . . . . . . . | 2 | | 4000 |
| 3 | Gross profit (subtract Line 2 from Line 1c). . . . . . . . . . . . . . . . . . | 3 | | -3111 |
| 4 | Other income (attach schedule) Include interest from accounts receivable, business checking accounts, and other business accounts. Also include sales of operational assets. See Instructions Booklets. . . . . . . | 4 | | |
| 5 | Total income (add Lines 3 and 4) . . . . . . . . . . . . . . . . . . . . . . ▶ | 5 | | -3111 |

## PART II  Deductions

| | | | | | | |
|---|---|---:|---|---|---|---:|
| 6 | Advertising . . . . . . . . . . . . . . | | | 31 | Wages . . . . . . . . . . . . . . | |
| 7 | Amortization . . . . . . . . . . . . | | | 32 | Other expenses (specify): | |
| 8 | Bad debts from sales or services . . . . . | | | a | WEB SITE | 200 |
| 9 | Bank charges . . . . . . . . . . . . | | | b | | |
| 10 | Car and truck expenses . . . . . | | 662 | c | | |
| 11 | Commissions . . . . . . . . . . . | | | d | | |
| 12 | Depletion . . . . . . . . . . . . | | | e | | |
| 13 | Depreciation (explain on Schedule C-2) . . | | | f | | |
| 14 | Dues and publications . . . . . . | | | g | | |
| 15 | Employee benefit programs other than on Line 22 . | | | h | | |
| 16 | Freight (not included on Schedule C-1) . . | | | i | | |
| 17 | Insurance . . . . . . . . . . | | | j | | |
| 18 | Interest on business indebtedness . . . . | | | k | | |
| 19 | Laundry and cleaning . . . . . . | | | l | | |
| 20 | Legal and professional services . . . . | | | m | | |
| 21 | Office supplies . . . . . . . . | | | n | | |
| 22 | Pension and profit-sharing plans for employees . | | | o | | |
| 23 | Postage . . . . . . . . . . | | | p | | |
| 24 | Rent on business property . . . . . . | | | q | | |
| 25 | Repairs . . . . . . . . . . | | | r | | |
| 26 | Supplies (not included on Schedule C-1). | | | | Reduce expenses by the total business cred- | |
| 27 | Taxes . . . . . . . . . . . | | | 33 | its claimed (for example, Employment Incen- | |
| 28 | Telephone . . . . . . . . . . | | | | tive Payments Credit) on your PA-40. | |
| 29 | Travel and entertainment . . . . . . | | | | | |
| 30 | Utilities . . . . . . . . . . | | | | | |

| | | | |
|---|---|---|---:|
| 34 | Total deductions (add amounts in columns for Lines 6 through 32r) and deduct Line 33. . . . . . . . ▶ 34 | | 862 |
| 35 | Net profit or loss (subtract Line 34 from Line 5). Enter total here and on the PA tax return. | Loss | |
| | If a net loss, check the box and enter the loss on the PA tax return. . . . . . . . . . . [X] 35 | | -3973 |

**PA Schedule C**
PA-40C (09-01)
**PA DEPARTMENT OF REVENUE**

0103215125

OFFICIAL USE ONLY

Social Security Number

Name of Proprietor as shown on PA tax return.

SHANNON M CAIRNS                                            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

## SCHEDULE C-1 — Cost of Goods Sold and/or Operations

| | | | |
|---|---|---|---|
| 1 Inventory at beginning of year (if different from last year's closing inventory, attach explanation) . . . . . | | 1 | 4000 |
| 2 a Purchases . . . . . . . . . . . . . . . . . . . . . . | 2a | | |
| b Cost of items withdrawn for personal use . . . . . . . . . . . . . . | 2b | | |
| c Balance (subtract Line 2b from Line 2a) . . . . . . . . . . . . . . . . . | | 2c | |
| 3 Cost of labor (do not include salary paid to yourself) . . . . . . . . . . . . . . . . | | 3 | |
| 4 Materials and supplies . . . . . . . . . . . . . . . . . . . . . . . . | | 4 | |
| 5 Other costs (attach schedule) . . . . . . . . . . . . . . . . . . . | | 5 | |
| 6 Add Lines 1, 2c, 3, 4, and 5 . . . . . . . . . . . . . . . . . . . . | | 6 | 4000 |
| 7 Inventory at end of year . . . . . . . . . . . . . . . . . . . . . | | 7 | |
| 8 Cost of goods sold and/or operations (subtract Line 7 from Line 6) Enter here and on Part I, Line 2 . . . ▶ | | 8 | 4000 |

## SCHEDULE C-2 — Depreciation

| Description of property (a) | Date acquired (b) | Cost or other basis (c) | Depreciation allowed or allowable in prior years (d) | Method of computing depreciation (e) | Life or rate (f) | Depreciation for this year (g) |
|---|---|---|---|---|---|---|
| 1 Total additional first-year depreciation (do not include in items below) ──────────────────▶ | | | | | | |
| 2 Other depreciation: | | | | | | |
| Buildings . . . . . . . . | | | | | | |
| Furniture and fixtures . . . . | | | | | | |
| Transportation equipment . . | | | | | | |
| Machinery & other equipment | | | | | | |
| Other (specify) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| 3 Totals . . . . . . . . . | | | | | 3 | |
| 4 Depreciation claimed in Schedule C-1 . . . . . . . . . . . . . . . . | | | | | 4 | |
| 5 Balance (subtract Line 4 from Line 3). Enter here and on Part II, Line 13 . . . . . . . . . . . ▶ | | | | | 5 | |

## SCHEDULE C-3 — Expense Information

If you incur any of the expenses described below, enter the amount of the expense and describe the kinds of costs incurred and the business purpose.

| Expenses | Amount |
|---|---|
| A. Entertainment facility (boat, resort, ranch, etc.) | |
| | $ |
| B. Living accommodations (except employees on business) | |
| | $ |
| C. Vacations for yourself, your employees, or their families. | |
| | $ |

# PA SCHEDULE UE
**Allowable Employee Business Expenses**
PA-40 UE (09/ 1)
PA DEPARTMENT OF REVENUE

0101715126

OFFICIAL USE ONLY

You must complete a separate PA Schedule UE for each job if you incur expenses from more than one job. You may make photocopies of this schedule or make your own schedules in this format.

| | |
|---|---|
| Name of Taxpayer Claiming Expenses:<br>SHANNON M CAIRNS | Social Security Number:<br>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 |
| Employer's Name:<br>INFINITY BROADCASTING | Employer's Address:1201 PEACHTREESTNE ATLANTA      GA 30361 | Employer's Federal ID Number:<br>58-1576546 |
| Describe the duties of the job in which you incurred these expenses:<br>SALES | Employer's Telephone Number: |

## Part A. Employee Business Expenses.

**Caution.** You may not use Line 4 of Form 2106 or Form 2106EZ. You must itemize these expenses in Part G of this schedule.

**Vehicle Expenses. Standard Mileage Rate.**

**Filing Tip.** If you do not file Form 2106 or 2106EZ, enter your total business miles ____8000____ and multiply by the federal standard mileage rate $0.  0.345   Enter the result on Line 1.

1. Enter the amount from your Form 2106 or Line 1 of Form 2106EZ. . . . . . . . . . 1. | 2760

**Vehicle Expenses. Actual Travel and Mileage Expenses.**

2. Enter the amount from your Form 2106. Make the following adjustments: . . . . . . . 2. | 
3. Add back the Inclusion amount. This adjustment does not apply for PA purposes . . . 3. | 
4. Depreciation. You may use any generally accepted method. If not using your Form 2106, enter your depreciation expense and complete Line 5. 4. | 
5. Depreciation Method.
6. **Actual Travel and Mileage Expenses for PA Purposes.** Total Lines 2, 3, and 4. . . . 6. | 
7. Parking Fees, Tolls, and Transportation. Enter the amount from your Form 2106 or Form 2106EZ. 7. | 1515
8. Away From Home Overnight. Enter the amount from your Form 2106 or Form 2106EZ. . . 8. | 1419
9. Meals and Entertainment Expenses. Enter the amount from your Form 2106 or Form 2106EZ. 9. | 1399
10. **Total Expenses for Part A.** Add Lines 1 or 6 and 7, 8, and 9. . . . . . . . . . . 10. | 7093

## Part B. Direct Employee Business Expenses.

11. **Union Dues.** List Union name(s) and amount(s) paid. Enter total. Attach additional sheets, if needed.<br>Name of Union(s) and amount(s). 11. | 
12. **Work Clothes and Uniforms.** Required as a condition of employment and not suitable for everyday use.<br>Description: 12. | 
13. **Small Tools and Supplies.** Required as a condition of employment and not provided by your employer.<br>Description: 13. | 
14. **Professional License Fees, Malpractice Insurance, and Fidelity Bond Premiums.** Required as a condition of your employment. Description: 14. | 
15. **Total Expenses for Part B.** Add Lines 11, 12, 13, and 14. . . . . . . . . . . . 15. | 

## Part C. Office Or Work Area Expenses. You must answer ALL three questions or the Department will disallow your expenses.

| | | |
|---|---|---|
| C1. Does your employer require you to maintain a suitable work area away from the employer's premises? . . . . . C1. | 1. YES | 2. NO |
| C2. Is this work area the principal place where you perform the duties of your employment? . . . . . . . . . . . C2. | 1. YES | 2. NO |
| C3. Do you use this work area regularly and exclusively to perform the duties of your employment? . . . . . C3. | 1. YES | 2. NO |

If you answered YES to ALL three questions, continue. If you answer NO to ANY question, you may not claim at home expenses.

**Actual Office or Work Area Expenses.** Enter expenses for the entire year and then calculate the business portion.

a. Depreciation Expense (Homeowners only). . . . . . . . . . . . . . . . . . . . a. | 
b. Real Estate Taxes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . b. | 
c. Mortgage Interest (Homeowners only). . . . . . . . . . . . . . . . . . . . . . c. | 
d. Utilities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . d. | 
e. Property Insurance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . e. | 
f. Property Maintenance. Itemize the type and amount of maintenance expenses incurred: f. | 
g. Other Apportionable Expenses. Itemize the type and amount of these expenses: g. | 
h. Rent (Renters only). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . h. | 
i. Total. Add Lines a through h. Enter the total here. . . . . . . . . . . . . . . . i. | 
j. Business Percentage of Property. Divide the total square footage of your work area by the total square footage of your entire property. Round to 2 decimal places. j. | %
k. Apportioned Expenses. Multiply Line i by the decimal on Line j. . . . . . . . . . k. | 
l. Total Office Supplies. Itemize supplies you purchased exclusively for use in your office or work area.                                        Total. l. | 
16. **Total Expenses for Part C.** Add Lines k and l. . . . . . . . . . . . . . . . . 16. | 

0101715126                                                                 0101715126

| a Control number | | OMB No. 1545-0008 | Safe, accurate, FAST! Use | irs e-file | Visit the IRS Web Site at www.irs.gov. |
|---|---|---|---|---|---|

| b Employer identification number 58-1576546 | | 1 Wages, tips, other compensation 22,211 | 2 Federal income tax withheld 4,096 |
|---|---|---|---|
| c Employer's name, address, and ZIP code INFINITY BROADCASTING CORP OF GEORGIA 1201 PEACHTREESTNE-STE800 ATLANTA          GA   30361 | | 3 Social security wages 23,710 | 4 Social security tax withheld 1,470 |
| | | 5 Medicare wages and tips 23,711 | 6 Medicare tax withheld 344 |
| | | 7 Social security tips | 8 Allocated tips |
| d Employee's social security number 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 | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial      Last name | | 11 Nonqualified plans | 12a See instructions for box 12 C          15 |
| SHANNON M      CAIRNS 55 ORCHARD STREET CHARLEROI              PA  15022 | | 13 Statutory employee ☐  Retmnt. plan ☐  Third-party sick pay ☒ | 12b D          1,500 |
| | | 14 Other | 12c |
| | | | 12d |
| f Employee's address and ZIP code | | | |

| 15 State PA | Employer's state I.D. no. 9098 5112 | 16 State wages, tips, etc. 23,696 | 17 State income tax 663 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| | | | | | | |

Form **W-2** Wage and Tax Statement        **2001**        Department of the Treasury—Internal Revenue Service
Copy B To Be Filed With Employee's FEDERAL Tax Return.
This information is being furnished to the Internal Revenue Service.

---

| a Control number | | OMB No. 1545-0008 | Safe, accurate, FAST! Use | irs e-file | Visit the IRS Web Site at www.irs.gov. |
|---|---|---|---|---|---|

| b Employer identification number 59-3667848 | | 1 Wages, tips, other compensation 2,667 | 2 Federal income tax withheld 412 |
|---|---|---|---|
| c Employer's name, address, and ZIP code MEDICAL DEVICE SOLUTIONS INC 1291-AS POWERLINE RD P.O. BOX POMPANO BEACH        FL  33069 | | 3 Social security wages 2,667 | 4 Social security tax withheld 165 |
| | | 5 Medicare wages and tips 2,667 | 6 Medicare tax withheld 39 |
| | | 7 Social security tips | 8 Allocated tips |
| d Employee's social security number 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 | | 9 Advance EIC payment | 10 Dependent care benefits |
| e Employee's first name and initial      Last name | | 11 Nonqualified plans | 12a See instructions for box 12 |
| SHANNON M      CAIRNS 55 ORCHARD STREET CHARLEROI              PA  15022 | | 13 Statutory employee ☐  Retmnt. plan ☐  Third-party sick pay ☐ | 12b |
| | | 14 Other | 12c |
| | | | 12d |
| f Employee's address and ZIP code | | | |

| 15 State NJ | Employer's state I.D. no. | 16 State wages, tips, etc. 2,667 | 17 State income tax 45 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| | | | | | | |

Form **W-2** Wage and Tax Statement        **2001**        Department of the Treasury—Internal Revenue Service
Copy B To Be Filed With Employee's FEDERAL Tax Return.
This information is being furnished to the Internal Revenue Service.

EEA

| | | CORRECTED (if checked) | |

| PAYER'S name, street address, city, state, and ZIP code | **1** Gross distribution $ | OMB No. 1545-0119 | **Distributions from Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc.** |
|---|---|---|---|
| AMERICAN UNITED LIFE  RPS  ONE AMERICAN SQUARE INDIANAPOLIS            IN 46204 | **2a** Taxable amount $ | **2001** Form **1099-R** | |
| | **2b** Taxable amount not determined ☐   Total distribution ☐ | | **Copy B** |
| PAYER'S Federal identification number   35-0145825 | RECIPIENT'S identification number   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 | **3** Capital gain (included in box 2a) $ | **4** Federal income tax withheld $ | **Report this income on your Federal tax return. If this form shows Federal income tax withheld in box 4, attach this copy to your return.** |
| RECIPIENT'S name  SHANNON M CAIRNS | | **5** Employee contributions or insurance premiums $ | **6** Net unrealized appreciation in employer's securities $ | |
| Street address (including apt. no.)  55 ORCHARD STREET | | **7** Distribution Code   8 | IRA/ SEP/ SIMPLE | **8** Other $          % | **This information is being furnished to the Internal Revenue Service.** |
| City, state, and ZIP code  CHARLEROI            PA 15022 | | **9a** Your percentage of total distribution        % | **9b** Total employee contrib's $ | |
| Account number (optional) | | **10** State tax withheld $ $ | **11** State/Payer's state no. | **12** State distribution $ $ |
| | | **13** Local tax withheld $ $ | **14** Name of locality | **15** Local distribution $ $ |

Form  **1099-R**

Department of the Treasury – Internal Revenue Service

EEA



## The Walt Disney Company

P.O. Box 11447
Burbank, California 91510-1447
818-553-7200

☐ **CORRECTED (if checked)**

| PAYER'S name, street address, city, state, ZIP code and telephone no. | 1 Ordinary dividends | OMB No. 1545-0110 | **Dividends and Distributions** |
|---|---|---|---|
| THE WALT DISNEY COMPANY<br>SHAREHOLDER SERVICES<br>P O BOX 11447<br>BURBANK CA 91510-1447<br>PHONE : 1-818-553-7200 | $        0.63 | **2000** | |
| | 2a Total capital gain distr.<br>$ 0.00 | Form 1099-DIV | |

| PAYER'S Federal identification number | RECIPIENT'S identification number | 2b 28% rate gain | 2c Unrecap. sec. 1250 gain | Copy B |
|---|---|---|---|---|
| 95 - 4545390 | 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 | $ 0.00 | $ 0.00 | **For Recipient** |

| RECIPIENT'S name, address, and ZIP code | 2d Section 1202 gain | 3 Nontaxable distributions | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty and other sanction may be imposed on you if this dividend income taxable and the IRS determines that it has not been reported. |
|---|---|---|---|
| SHANNON M CAIRNS<br>55 ORCHARD ST<br>CHARLEROI PA 15022-2526 | $ 0.00 | $ 0.00 | |
| | 4 Federal income tax withheld<br>$        0.00 | 5 Investment expenses<br>$ 0.00 | |
| | 6 Foreign tax paid<br>$ 0.00 | 7 Foreign country or U.S. possession<br>$ 0.00 | |

| Account number (optional) | 8 Cash liquidation distr. | 9 Noncash liquidation distr. | |
|---|---|---|---|
| 0000988898 | $ 0.00 | $ 0.00 | |

Form 1099-DIV                    (Keep for your records.)                    Department of the Treasury - Internal Revenue Service

## IMPORTANT INFORMATION FROM SHAREHOLDER SERVICES

- Attached is your year-end dividend information. Please retain for tax reporting purposes. If you are a foreign shareholder, you will receive IRS Form 1042S in a separate mailing.
- We encourage you to access your shareholder information on-line at www.disney.go.com/investors. You have access to your account 24 hours a day, 7 days a week for review and requesting changes. You can also elect to receive all Annual Meeting related materials electronically, rather than by postal delivery. Please access www.icsdelivery.com/disney to suppress written information.
- Keep us updated with your current address. Visit www.disney.go.com/investors to change your address on-line, or mail your request directly to Shareholder Services. You can also change your address by calling us at 1-818-553-7200.
- There are abandoned-property laws that require companies to remit dividends and stock holdings to each respective state for dormant accounts. You can keep your account active by voting your proxy each year.
- Your dividend check is attached. Please deposit your check as soon as possible. If you are interested in having your dividend directly deposited into your bank account, visit www.disney.go.com/investors to enroll, or call Shareholder Services at 1-818-553-7200.

Dividend Rate:  $0.21                    3  Shares held at Record Date

**0001 0265 000005117** ☐ CORRECTED   OMB No. 1545-0119

PAYER'S name, street address, city, state, and ZIP code
AMERICAN UNITED LIFE INS. CO.
RPS CONTRACT        1-800-249-6269
ONE AMERICAN SQUARE
INDIANAPOLIS, IN  46204

| 1 Gross distribution $ 118.09 | 2b Taxable amount not determined ☐ | **2000** Distributions From Pensions, Annuities, Retirement or Profit–Sharing Plans, IRAs, Insurance Contracts, etc |
|---|---|---|
| 2a Taxable amount $ 118.09 | Total distribution ☐ | |
| 3 Capital gain (included in box 2a) $ | 4. Federal income tax withheld $ | This information is being furnished to the Internal Revenue Service |
| 5 Employee contributions or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | |
| 7 Distribution Code 8   IRA/SEP/ ☐ SIMPLE | 8 Other $         % | **COPY C** For Recipient's Records |
| 9a Your percentage of total distribution   % | 9b Tot. employee contr. $ | |

PAYER'S Federal identification number
35-0145825

RECIPIENT'S identification number
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

RECIPIENT'S name, street address, city, state, and ZIP code
SHANNON M CAIRNS
55 ORCHARD STREET
CHARLEROI   PA         15022

| 10 State tax withheld $ | 11 State/Payer's state no. PA | 12 State distribution $ |
|---|---|---|
| $ | | $ |
| 13 Local tax withheld $ | 14 Name of locality | 15 Local distribution $ |
| $ | | $ |

Account number (optional)
0265  GA99105    0000

FORM 1099R   Department of the Treasury - Internal Revenue Service

---

**0001 0265 000005117** ☐ CORRECTED   OMB No. 1545-0119

PAYER'S name, street address, city, state, and ZIP code
AMERICAN UNITED LIFE INS. CO.
RPS CONTRACT        1-800-249-6269
ONE AMERICAN SQUARE
INDIANAPOLIS, IN  46204

| 1 Gross distribution $ 118.09 | 2b Taxable amount not determined ☐ | **2000** Distributions From Pensions, Annuities, Retirement or Profit–Sharing Plans, IRAs, Insurance Contracts, etc |
|---|---|---|
| 2a Taxable amount $ 118.09 | Total distribution ☐ | |
| 3 Capital gain (included in box 2a) $ | 4. Federal income tax withheld $ | This information is being furnished to the Internal Revenue Service |
| 5 Employee contributions or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | Report this income on your Federal tax return. If this form shows Federal income tax withheld in Box 4, attach this copy to your return. |
| 7 Distribution Code 8   IRA/SEP/ ☐ SIMPLE | 8 Other $         % | **COPYB** |
| 9a Your percentage of total distribution   % | 9b Tot. employee contr. $ | |

PAYER'S Federal identification number
35-0145825

RECIPIENT'S identification number
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

RECIPIENT'S name, street address, city, state, and ZIP code
SHANNON M CAIRNS
55 ORCHARD STREET
CHARLEROI   PA         15022

| 10 State tax withheld $ | 11 State/Payer's state no. PA | 12 State distribution $ |
|---|---|---|
| $ | | $ |
| 13 Local tax withheld $ | 14 Name of locality | 15 Local distribution $ |
| $ | | $ |

Account number (optional)
0265  GA99105    0000

FORM 1099R   Department of the Treasury - Internal Revenue Service

---

**0001 0265 000005117** ☐ CORRECTED   OMB No. 1545-0119

PAYER'S name, street address, city, state, and ZIP code
AMERICAN UNITED LIFE INS. CO.
RPS CONTRACT        1-800-249-6269
ONE AMERICAN SQUARE
INDIANAPOLIS, IN  46204

| 1 Gross distribution $ 118.09 | 2b Taxable amount not determined ☐ | **2000** Distributions From Pensions, Annuities, Retirement or Profit–Sharing Plans, IRAs, Insurance Contracts, etc |
|---|---|---|
| 2a Taxable amount $ 118.09 | Total distribution ☐ | |
| 3 Capital gain (included in box 2a) $ | 4. Federal income tax withheld $ | This information is being furnished to the Internal Revenue Service |
| 5 Employee contributions or insurance premiums $ | 6 Net unrealized appreciation in employer's securities $ | |
| 7 Distribution Code 8   IRA/SEP/ ☐ SIMPLE | 8 Other $         % | **COPY 2** File this copy with your state, city or local income tax return, when required. |
| 9a Your percentage of total distribution   % | 9b Tot employee contr. $ | |

PAYER'S Federal identification number
35-0145825

RECIPIENT'S identification number
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

RECIPIENT'S name, street address, city, state, and ZIP code
SHANNON M CAIRNS
55 ORCHARD STREET
CHARLEROI   PA         15022

| 10 State tax withheld $ | 11 State/Payer's state no. PA | 12 State distribution $ |
|---|---|---|
| $ | | $ |
| 13 Local tax $ | 14 Name of locality | 15 Local distribution $ |
| $ | | $ |

Account number (optional)
0265  GA99105    0000

FORM 1099R   Department of the Treasury - Internal Revenue Service

*Exhibits N to R*

# EXHIBIT "N"

**South Jersey Gas**
*Where we put all of our energy™*

00100011
 Service Location
SHANNON MCAIRNS
73 DORSET CT
MARLTON, NJ    08053

Account Number
2 05 06 2110 5 9

Payments received  (Thank You)          $23.59

**South Jersey Gas**

Billing Month
December

 Current Gas Bill                        17.33
 Previous Gas                            26.59

**Pay This Amount To South Jersey Gas Company        $43.92**
**Current Charges Past Due After Jan  6 2001**

Current Gas Bill Information
Customer Charge                    7.43
Delivery Charge $ .3080  Per Therm  3.18
BGSS                               6.72
  Actual Reading
Current Gas Bill            $17.33

Rate - Residential Service Gas Heat
Price to compare $ .6306  Per Therm
Next Meter Reading Date Jan 24 2001

Gas Usage
☒=est ■=act



| Meter | Service | Service | Num | Pres. - | Prev. = | Cu Ft x | Therm = | Therms |
| Number | From | To | Day | Read | Read | Used | Fact | Used |
|---|---|---|---|---|---|---|---|---|
| 387006 | 11/21/00 | 12/20/00 | 29 | 872 | 862 | 10 | 1.035 | 10.35 |

www.southjerseygas.com   AOL keyword: South Jersey Gas
Return This Section With Your Payment

**South Jersey Gas**

20506211059      4392715

☐ YES! I want pipe
   protection at
   $1.50 per month

************ AUTOCR **C020

SHANNON MCAIRNS
73 DORSET CT
MARLTON, NJ  08053-2866

☐ Check for name
   address, phone
   corrections

PO Box 6000
Folsom, NJ 08037-6000

Past Due After Jan  6 2001    Please Pay        $43.92



*South Jersey Gas*
*Where we put all of our energy™*

00100011

Service Location
SHANNON MCAIRNS
73 DORSET CT
MARLTON, NJ   08053

Account Number
2 05 06 2110 5 9

---

As of Dec 21, 2000, we have not received your payment for the
previous charges listed above.  We will discontinue your
service if we do not receive payment or have satisfactory
payment arrangements with you by Jan  6, 2001.  We will charge
$20.00 for service restoration and may require a deposit.
We may also assess a field collection fee of $12.00.  This
notice does not supersede prior notices issued.
 *** See back of bill for statement of customer rights ***



**EXHIBIT "O"**

0018
300003338


**conectiv**
*Power Delivery*

**Dec 2000**      17

| | Please pay this amount by Jan 15 |
|---|---|
| | $         94.48 |

Place "X" in the box for address corrections.
Print corrections on reverse side.

**FILL IN AMOUNT PAID**

```
*AUTO**5-DIGIT 08053
1417  7939  9999
SHANNON M CAIRN
73 DORSET CT
MARLTON NJ 08053-2866
```

$ [  ] [  ] . [  ] [  ]

**PO Box 4875**
**Trenton, NJ 08650**

Please return this portion with
your payment made payable
to Conectiv Power Delivery.

IIlllulludlluuuludulladlllaludlludluuludllludll

0114177939999900000000000000000015000049000000003078700000000073.8:

---

## Electric Delivery Summary

PAGE 1

**Account Number:**
1417  7939  9999

*Make Checks Payable To:*
*Conectiv Power Delivery*
PO Box 4875
Trenton, NJ 08650

*Business Phone:*
§**1-800-642-3780**
*Emergency Phone 24hrs:*
§**1-800-833-7476**

21

*Keep this portion of the bill for your records.*

Service Location:
73 DORSET CT
MARLTON NJ 08053

**Billing Period:**
from: Nov 22, 2000
to:   Dec 21, 2000

| | | |
|---|---|---|
| Previous Balance Last Bill | $ | 76.57 |
| Payment Nov 28, Thank You | $ | 38.70- |
| **Remaining Balance as of Dec 21** | $ | 37.87 |
| Electric Charges (Residential Service) | $ | 56.61 |
| ▶**TOTAL PAYMENT DUE** | $ | **94.48** |

Past due after Jan 15

---

## For Your Information

Your calculated savings from Conectiv Power Delivery due to Electric Restructuring in NJ is $2.98.

Your annual class average KWH price to compare is 5.70 cents.

¿TIENE PROBLEMAS CON LA FACTURA? LLAME AL 1-800-642-3780.

Your current bill may reflect an increase due to temperatures which may have been lower than the same bill period last year.

**conectiv**
*Power Delivery*
Please See Back For Further Details

This Bill Prints 1.6

**conectiv**
Power Delivery

300003339

PAGE 2
Account Number:
1417  7939  9999

SHANNON M CAIRN
73 DORSET CT
MARLTON NJ 08053-2866

Service Location:
73 DORSET CT
MARLTON NJ 08053

## Electric Meter Information

Meter Number  28066349
Current Meter Reading, Dec 21 (actual)              072291
Last Meter Reading   Nov 22 (actual)                072186
Total KWHs Used                                        113

Your Next Scheduled Meter Reading is Jan 12 2001

## Electric Delivery Charges

Current charges for 29 days - Residential Service

Delivery Charges:

| | |
|---|---|
| Customer Charge  $0.082758  each day | $        2.40 |
| Distribution Charge: First     448 kWhs X   $0.031607  each kWh | $       14.16 |
| Market Transition: First     448 kWhs X   $0.007544  each kwh | $        3.38 |
| Net Non-Utility Generation Charge  $0.017834  each kWh | $        7.99 |
| Societal Benefits Charge  $0.002209  each kWh | $        0.99 |
| Regulatory Assets Recovery  $0.004799  each kWh | $        2.15 |
| **Total Electric Delivery Charges** | $       **31.07** |

Supply Charges(This Month's Price To Compare):

| | |
|---|---|
| Transmission Service Charge  $0.006160  each kWh | $        2.76 |
| Basic Generation Service  $0.050848  each kWh | $       22.78 |
| **Total Electric Supply Charges** | $       **25.54** |

| | |
|---|---|
| **Total Electric Charges** | $       **56.61** |

## Your Electric Energy Comparison

Daily Averages:

| | Dec 99 | Dec 00 |
|---|---|---|
| Temp: | 47° | 36° |
| KWH: | 11.5 | 15.4 |

Letters above graph
denote reading type
A - Actual
E - Estimated
C - Corrected

Monthly Usage in KWH's



**conectiv**
Power Delivery



Please See Back For Further Details              This Bill Printed On Recycled

**EXHIBIT "P"**

# National City®

**National City Bank of Pennsylvania**
116 Allegheny Center Mall • Pittsburgh, PA 15212 5356

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI   PA   15022-2526

                                                                    00000
                    PAGE    1  OF     5                          549605621

PAY YOURSELF FIRST. CHECK OUT NATIONAL CITY'S NEW SAVINGS
BUILDER ACCOUNT. IT PAYS A COMPETITIVE INTEREST RATE. GREAT
FOR DISCIPLINED SAVERS OR ANYONE SAVING FOR SOMETHING
SPECIAL. STOP BY OR CALL YOUR BRANCH OFFICE AND START
SAVING TODAY!

FOR ACCOUNT INQUIRIES, PLEASE CALL 1-800-352-0186.

## SELF-SERVE CHECKING

| ACCOUNT NUMBER | 549605621 | BEGINNING BALANCE | 6,739.46 |
|---|---|---|---|
| BEGINNING DATE | SEPTEMBER 27, 2000 | DEPOSITS/CREDITS | 5,769.52 |
| ENDING DATE | OCTOBER 24, 2000 | CHECKS/DEBITS | 6,393.40 |
| | | ENDING BALANCE | 6,115.58 |

### DEPOSITS/CREDITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 10/06 | 5,767.52 | 4933 FACTORY AUT NET=PAY |
| | | 2770          001006 |
| 10/24 | 2.00 | ACCOUNT MAINTENANCE FEE REFUND |

### CHECKS

| DATE | CHECK NO. | AMOUNT | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|---|---|
| 10/13 | 00275 | 145.00 | 10/17 | 00317 | 44.75 |
| 10/17 | 00294* | 1,300.00 | | 00318 | 1,000.00 |
| 10/19 | 00314* | 20.29 | 10/18 | 00319 | 179.81 |
| 10/18 | 00315 | 64.20 | 10/17 | 00320 | 253.65 |
| 10/16 | 00316 | 91.79 | | | |

(* INDICATES A GAP IN CHECK SEQUENCE)

### DEBITS/CHARGES

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 09/27 | 8.36 | GNC #7314, WASHINGTON, PA |
| | | NC CHECKCARD     TRANS. |
| | | 447935890048561 000926 |
| 09/28 | 88.90 | WAL-MART STORE, EVERETT,PA |
| | | POINT OF SALE PURCHASE |
| 09/29 | 25.76 | QUAKER STEAK AND LUBE, PITTSBURGH, PA |
| | | NC CHECKCARD     TRANS. |
| | | 447935890048561 000928 |
| | 15.85 | GNC #3697, LEECHBURG, PA |
| | | NC CHECKCARD     TRANS. |
| | | 447935890048561 000928 |

- CONTINUED -

                                                                    9525



# National City ®

**National City Bank of Pennsylvania**
116 Allegheny Center Mall • Pittsburgh, PA 15212-5356

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI   PA   15022-2526

                                                                    00000
                                                               549605621

| DATE | AMOUNT | DESCRIPTION |
|------|--------|-------------|
| 09/29 | 15.59 | BP OIL        20741112, WASHINGTON, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 000928 |
| 10/02 | 102.00 | 2004 GREENSPRING D, TIMONIUM,MD<br>PLUS SYSTEM CASH WITHDRAWAL |
|  | 20.05 | EXXON 2595568, TIMONIUM,MD<br>POINT OF SALE PURCHASE |
|  | 71.58 | Hollywood Video  00383, WASHINGTON, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 000929 |
|  | 20.00 | CITG00569 BARRY KELLEY'S, DELMONT, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 000929 |
| 10/03 | 620.58 | CIRCUIT CITY SS #3617, W MIFFLIN, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 001002 |
|  | 19.00 | J & G SVC S   91436873, PITTSBURG, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 001002 |
| 10/04 | 61.50 | FLEET BANK, HOBOKEN,NJ<br>PLUS SYSTEM CASH WITHDRAWAL |
|  | 131.20 | NIKE #43, PERRYVILLE, MD<br>NC CHECKCARD      TRANS.<br>447935890048561 001003 |
|  | 76.27 | THOMPSON BMW, NEW BRITAIN, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 001003 |
|  | 19.54 | BOB EVANS RESTAURANT #325, TIMONIUM, MD<br>NC CHECKCARD      TRANS.<br>447935890048561 001003 |
|  | 6.56 | BOB EVANS RESTAURANT #325, TIMONIUM, MD<br>NC CHECKCARD      TRANS.<br>447935890048561 001003 |
| 10/05 | 53.52 | GNC #6746, FLANDERS, NJ<br>NC CHECKCARD      TRANS.<br>447935890048561 001004 |
|  | 20.00 | PERKINS FAMILY REST, DOYLESTOWN, PA<br>NC CHECKCARD      TRANS.<br>447935890048561 001004 |
|  | 10.05 | COUNTRY SUDSOR CAR WASH, FLANDERS, NJ<br>NC CHECKCARD      TRANS.<br>447935890048561 001004 |
| 10/06 | 22.84 | APPLEBEES     24100513, WATCHUNG, NJ<br>NC CHECKCARD      TRANS.<br>447935890048561 001005 |
|  | 12.15 | DRUG FAIR    00100164, UNION, NJ<br>NC CHECKCARD      TRANS.<br>447935890048561 001005 |
| 10/10 | 61.00 | SIDELING HILL PLZ, FULTON CNTY 1,PA<br>MAC ATM CASH WITHDRAWAL |

- CONTINUED -

                                                                    9526



# National City®

**National City Bank of Pennsylvania**
116 Allegheny Center Mall • Pittsburgh, PA 15212-5356

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI   PA   15022-2526

00000
PAGE   4 OF   5                                          549605621

| DATE | AMOUNT | DESCRIPTION |
|------|--------|-------------|
| 10/17 | 110.17 | SPIRIT HALLOWEEN #6527, CHERRY, NJ<br>NC CHECKCARD     TRANS.<br>447935890048561 001016 |
|  | 30.99 | MATTHEW'S HALLMARK #24, MOORESTOWN, NJ<br>NC CHECKCARD     TRANS.<br>447935890048561 001016 |
|  | 24.35 | DICK'S CLOTHING&SPORTING, MT LAUREL, NJ<br>NC CHECKCARD     TRANS.<br>447935890048561 001016 |
|  | 18.03 | MR. BULKY, MOORESTOWN, NJ<br>NC CHECKCARD     TRANS.<br>447935890048561 001016 |
|  | 3.75 | PRESS RELAY, PHILADELPHIA, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001016 |
| 10/18 | 21.00 | MOBIL        09675083, CHRYHILL, NJ<br>NC CHECKCARD     TRANS.<br>447935890048561 001017 |
|  | 19.50 | CPS PHIL ARPRT00100024, PHILADELPHIA, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001017 |
| 10/19 | 100.00 | EXPRS HOUSE SHPS, PITTSBURGH,PA<br>NAT CITY ATM CASH WITHDRAWAL |
|  | 18.85 | 331 WASHINGTON RD, WASHINGTON,PA<br>POINT OF SALE PURCHASE |
|  | 22.87 | BLUE MTN SERVI19000132, NEWBURY, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001018 |
| 10/20 | 130.00 | EVA SZABO EROPN SKIN/C, MC MURRAY, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001019 |
| 10/23 | 61.00 | PLAINFIELD SER PLZ, PLAINFIELD  1,PA<br>MAC ATM CASH WITHDRAWAL |
|  | 50.00 | TGI FRIDAYS #1509, WASHINGTON, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001022 |
|  | 23.40 | EXPRESS        00000062, PITTSBURGH, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001020 |
|  | 18.98 | BP OIL        20761417, WASHINGTON, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001020 |
|  | 5.32 | BP OIL        20761417, WASHINGTON, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001020 |
| 10/24 | 64.98 | POLO FACTORY STRE #62, GROVE CITY, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001023 |
|  | 44.18 | ESPRIT #806, GROVE CITY, PA<br>NC CHECKCARD     TRANS.<br>447935890048561 001023 |

- CONTINUED -

9528



Telephone Banking Center
1-800-352-0186

Member FDIC




# National City.

**National City Bank of Pennsylvania**
116 Allegheny Center Mall • Pittsburgh, PA 15212-5356

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI  PA  15022-2526

|  |  |  |  | 00000 |
|---|---|---|---|---|
| **PAGE** | **5 OF** | **5** |  | **549605621** |

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 10/24 | 17.74 | BP OIL        20718318, GROVE CITY, PA |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001023 |
|  | 14.99 | AMERICAN OUTPOST #903, GROVE CITY, PA |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001023 |
|  | 3.83 | BP OIL        20718318, GROVE CITY, PA |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001023 |
|  | 3.00 | ACCT MAINT FEE - SEE REFUND |
|  | 3.00 | ATM PLUS ACTIVITY FEE |
|  | 4.50 | ATM MAC ACTIVITY FEE |

## DAILY BALANCE

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|---|---|
| 09/27 | 6,731.10 | 10/04 | 5,436.72 | 10/12 | 10,658.23 | 10/19 | 6,558.50 |
| 09/28 | 6,642.20 | 10/05 | 5,353.15 | 10/13 | 10,423.23 | 10/20 | 6,428.50 |
| 09/29 | 6,585.00 | 10/06 | 11,085.68 | 10/16 | 9,790.71 | 10/23 | 6,269.80 |
| 10/02 | 6,371.37 | 10/10 | 10,964.93 | 10/17 | 7,005.02 | 10/24 | 6,115.58 |
| 10/03 | 5,731.79 | 10/11 | 10,681.99 | 10/18 | 6,720.51 |  |  |

9529




# National City.

National City Bank of Pennsylvania
116 Allegheny Center Mall • Pittsburgh, PA 15212-5266

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI  PA  15022-2526

|ₗₗ|ₗ|ₗ|ₗ|ₗₗₗₗ|ₗ|ₗ|ₗ|ₗ|ₗ|ₗ|ₗₗ|ₗ|ₗ|ₗₗ|ₗ|ₗₗₗ|ₗₗₗ|ₗₗ|

```
                                                          00000
              PAGE     1 OF      5              549605621
```

FOR INSURANCE THAT MEETS YOUR NEEDS, GO WITH WHO YOU KNOW.
AT NATIONAL CITY, WE'VE SELECTED NATIONALLY KNOWN PROVIDERS
TO OFFER QUALITY INSURANCE PROGRAMS AND OTHER SERVICES. FOR
A NO OBLIGATION QUOTE ON AUTO, HOME AND TERM LIFE INSURANCE,
PRESCRIPTION DRUG, DENTAL CARE DISCOUNTS AND MORE, CALL
NATIONAL CITY INSURANCE GROUP TOLL FREE AT 1-877-452-5242.

FOR ACCOUNT INQUIRIES, PLEASE CALL 1-800-352-0186.

## SELF-SERVE CHECKING

| ACCOUNT NUMBER | 549605621 | BEGINNING BALANCE | 9,631.85 |
|---|---|---|---|
| BEGINNING DATE | NOVEMBER 23, 2000 | DEPOSITS/CREDITS | 3,663.98 |
| ENDING DATE | DECEMBER 22, 2000 | CHECKS/DEBITS | 5,752.72 |
| | | ENDING BALANCE | 7,543.11 |

### DEPOSITS/CREDITS

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 12/01 | 3,661.98 | 4933 FACTORY AUT NET=PAY |
| | | 2770        001201 |
| 12/22 | 2.00 | ACCOUNT MAINTENANCE FEE REFUND |

### CHECKS

| DATE | CHECK NO. | AMOUNT | DATE | CHECK NO. | AMOUNT |
|---|---|---|---|---|---|
| 12/01 | 00301 | 2,000.00 | 11/29 | 00304 | 38.70 |
| 11/29 | 00302 | 222.31 | 12/04 | 00305 | 86.31 |
| 12/01 | 00303 | 23.59 | 12/01 | 00306 | 116.61 |

### DEBITS/CHARGES

| DATE | AMOUNT | DESCRIPTION |
|---|---|---|
| 11/24 | 186.98 | ILLUMINATIONS 156, 707-7763420, NJ |
| | | NC CHECKCARD        TRANS. |
| | | 447935890048561 001122 |
| | 39.99 | 9 WEST #7334, NEW YORK, NY |
| | | NC CHECKCARD        TRANS. |
| | | 447935890048561 001122 |
| 11/27 | 22.01 | SUNOCO, SECAUCUS, NJ |
| | | NC CHECKCARD        TRANS. |
| | | 447935890048561 001124 |
| | 16.20 | SUNOCO, HARRISBURG, PA |
| | | NC CHECKCARD        TRANS. |
| | | 447935890048561 001126 |
| 11/28 | 114.29 | CAFE VICTORIA, PITTSBURGH, PA |
| | | NC CHECKCARD        TRANS. |
| | | 447935890048561 001127 |

- CONTINUED -

9546



# National City

**National City Bank of Pennsylvania**
116 Allegheny Center Mall • Pittsburgh, PA 15212-5966

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI   PA   15022-2526

|ₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗₗ|

**PAGE     2 OF     5**

00000
549605621

| DATE | AMOUNT | DESCRIPTION |
|------|--------|-------------|
| 11/28 | 107.00 | COST CUTTERS #18, BELLE VERNON, PA<br>NC CHECKCARD       TRANS.<br>447935890048561 001127 |
| 11/29 | 60.00 | WAWA 401 BRICK BLD, MARLTON      1,NJ<br>MAC ATM CASH WITHDRAWAL |
|  | 20.79 | SUNOCO, BEDFORD, PA<br>NC CHECKCARD       TRANS.<br>447935890048561 001128 |
|  | 5.13 | SUNOCO, BEDFORD, PA<br>NC CHECKCARD       TRANS.<br>447935890048561 001128 |
|  | 4.12 | TRAVEL PLAZA  23000078, MIDDLETOWN, PA<br>NC CHECKCARD       TRANS.<br>447935890048561 001128 |
| 12/01 | 16.13 | ZAGARA'S, MARLTON,NJ<br>POINT OF SALE PURCHASE |
|  | 22.01 | SUNOCO, HAMILTON TWP, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001130 |
| 12/04 | 101.50 | CHASE, N.Y.C.,NY<br>PLUS SYSTEM CASH WITHDRAWAL |
|  | 101.00 | RAMBLEWOOD SHP. CT, MOUNT LAUREL,,NJ<br>PLUS SYSTEM CASH WITHDRAWAL |
|  | 35.44 | 240 ROUTE 22, SPRINGFIELD,NJ<br>POINT OF SALE PURCHASE |
|  | 16.99 | PAYLESS SHOESO, CHERRY HILL,NJ<br>POINT OF SALE PURCHASE |
|  | 11.47 | GENUARDI'S FAM, MARLTON,NJ<br>POINT OF SALE PURCHASE |
|  | 194.15 | MICHELE MICHELE, MARLTON, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001201 |
|  | 90.69 | IKEA-ELIZABETH, ELIZABETH, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001201 |
| 12/05 | 148.00 | BEBE #144, CHERRY HILL, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001204 |
|  | 62.50 | POTTERY BARN    432, MARLTON, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001204 |
|  | 19.99 | BANANA REPUBLIC #8117, CHERRY HILL, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001204 |
|  | 18.90 | MEXICAN FOOD FACTORY, MARLTON, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001204 |
|  | 14.99 | RAVE - CHERRY 00051458, CHERRY HILL, NJ<br>NC CHECKCARD       TRANS.<br>447935890048561 001204 |

- CONTINUED -

9547



# National City.

National City Bank of Pennsylvania
116 Allegheny Center Mall • Pittsburgh, PA 15212-5356

# THE MONEY STATEMENT™

**SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI  PA  15022-2526**

| DATE | AMOUNT | DESCRIPTION |
|------|--------|-------------|
| 12/06 | 89.64 | BARNES & NOBLE #1884, SPRINGFIELD, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001205 |
|  | 69.00 | 9 WEST #6015, CHERRY HILL, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001205 |
|  | 39.99 | ANN TAYLOR #105, CHERRY HILL, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001205 |
|  | 25.42 | OLIVE GARDEN  00011999, SPRINGFIELD, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001205 |
|  | 15.99 | HECHT'S    JR CAREER SEP, CHERRY HILL, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001205 |
| 12/07 | 201.50 | 2137 RT. 38, CHERRY HILL,,NJ |
|  |  | PLUS SYSTEM CASH WITHDRAWAL |
|  | 117.56 | PETSMART, CHERRY HILL,NJ |
|  |  | POINT OF SALE PURCHASE |
|  | 76.30 | THE BODY SHOP #034, CHERRY HILL, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001206 |
|  | 22.24 | THE WALL #1520, CHERRY HILL, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001206 |
| 12/08 | 27.50 | LOTUS ORIENTAL, MARLTON, NJ |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001207 |
| 12/11 | 61.80 | GENUARDI'S FAM, MARLTON,NJ |
|  |  | POINT OF SALE PURCHASE |
|  | 4.87 | GENUARDI'S FAM, MARLTON,NJ |
|  |  | POINT OF SALE PURCHASE |
| 12/12 | 101.00 | 2 E. MAIN ST., MARLTON,,NJ |
|  |  | PLUS SYSTEM CASH WITHDRAWAL |
| 12/15 | 31.28 | GENUARDI'S FAM, MARLTON,NJ |
|  |  | POINT OF SALE PURCHASE |
|  | 98.00 | SAM & LIBBY #125, NEWARK, DE |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001214 |
|  | 41.49 | CLAIRE'S BOUTIQUES 6487, NEWARK, DE |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001214 |
|  | 33.00 | VICTORIAS SECR00000456, NEWARK, DE |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001214 |
|  | 26.14 | DON PABLO'S #156, NEWARK, DE |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001214 |
|  | 23.98 | HECHT'S      FRAMES, NEWARK, DE |
|  |  | NC CHECKCARD     TRANS. |
|  |  | 447935890048561 001214 |

- CONTINUED -

9548



# National City

**National City Bank of Pennsylvania**
116 Allegheny Center Mall • Pittsburgh, PA 15212-5359

# THE MONEY STATEMENT™

SHANNON M CAIRNS
55 ORCHARD ST
CHARLEROI   PA   15022-2526

IIııllıllıllıııılılıılılılılılılıılılılıılıılılılıl

|  |  |  | 00000 |
|--|--|--|-------|
| | | **PAGE   4 OF   5** | **549605621** |

| DATE | AMOUNT | DESCRIPTION |
|------|--------|-------------|
| 12/15 | 20.99 | HECHT'S       NECKWEAR, NEWARK, DE |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001214 |
| 12/18 | 100.00 | WAWA 401 BRICK BLD, MARLTON     1,NJ |
| | | MAC ATM CASH WITHDRAWAL |
| | 31.51 | GENUARDI'S FAM, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 29.42 | ROUTES 70 & 73, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 21.70 | JVC INC, MARLETON,NJ |
| | | POINT OF SALE PURCHASE |
| | 16.03 | GENUARDI'S FAM, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 11.12 | CVS PHARMACY I, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 7.41 | CVS PHARMACY I, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 5.50 | ROUTES 70 & 73, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 2.38 | GENUARDI'S FAM, MARLTON,NJ |
| | | POINT OF SALE PURCHASE |
| | 113.53 | JOE CANAL S DISCOUNT L, MARLTON, NJ |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001217 |
| | 106.18 | MOUNT LAUREL ANIMAL HOSP, MT LAUREL, NJ |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001215 |
| | 46.64 | LIMITED STORES00000190, KING OF PRUSS, PA |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001217 |
| | 40.00 | 9 WEST #2011, KNG OF PRUSSA, PA |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001217 |
| | 20.00 | TEXACO INC 14598220243, DEEPWATER, NJ |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001215 |
| 12/19 | 26.50 | M.A.C KING OF PRUSSIA, KING OF PRUSS, PA |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001218 |
| | 21.90 | CVS #2122, MARLTON, NJ |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001218 |
| 12/21 | 35.59 | TGI FRIDAYS #091, MARLTON, OH |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001220 |
| | 20.01 | MOBIL       07760267, CAMDEN, NJ |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001220 |
| 12/22 | 20.31 | SUNOCO, WHITEHALL, PA |
| | | NC CHECKCARD       TRANS. |
| | | 447935890048561 001221 |

- CONTINUED -

9549

 MAC

Telephone Banking Center
1-800-352-0728

Member FDIC

▲▲PLUS

**EXHIBIT "Q"**

## Stephanie Lord

| | |
|---|---|
| **From:** | "Stephanie Lord" <slord@bwmedical.com> |
| **To:** | "davidcohen" <dcohen@bwmedical.com>; "greggcostantino" <gregg_c@famsr.com>: "timwelbes" <fams@bellsouth.net>; "suzetterhoden" <srhoden@bwmedical.com>; "shannoncunningham" <scunningham@bwmedical.com>: "roseannsullivan" <rsullivan@bwmedical.com>; "ritawright" <rwright@bwmedical.com>; "richardgurka" <rgurka@bwmedical.com>; "ninajohnson" <njohnson@bwmedical.com>; "nicoleduncanson" <nduncanson@bwmedical.com>; "mikewood" <mbjwood@aol.com>; "markthiel" <mthiel@bwmedical.com>; "lorrainemanweiler" <lmanweiler@bwmedical.com>; "laurahoward" <lhoward@bwmedical.com>; "jenniferbrancazio" <jbrancazio@bwmedical.com>; "jefffrank" <jtrank@mdsi.ms>; "cherrymotzko" <cmotzko@bwmedical.com>; "brigittelivingstone" <blivingstone@bwmedical.com>, "alainvallee" <avallee@bwmedical.com>; "david sargeant" <dsargeant@bwmedical.com> |
| **Sent:** | Friday, March 09, 2001 12:03 PM |
| **Subject:** | 3/9/01 |

As you are aware Shannon Cairns has been on a leave of absence. Her leave has ended and she will not be returning to FAMSR. Her termination is effective immediately. If Shannon contacts you, please direct her to the Human Resources Department for information.

3/12/01

**EXHIBIT "R"**

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| Commonwealth of Pennsylvania | ) |
| | ) ss: |
| County of Allegheny | ) |

## AFFIDAVIT OF SHANNON M. CAIRNS

BEFORE ME, a Notary Public, in and for said County and State, on this day personally appeared Shannon M. Cairns, who, having been by me first duly sworn, upon her oath deposed and said:

1.    I am a female and a Pennsylvania resident who resides at 55 Orchard Street, Charleroi, PA 15022.

2.    I am a former employee of Defendants' Factory Authorized Medical Scope Repair ("FAMSR") and Medical Device Solutions ("MDS").

3.    During the time that I worked for FAMSR, FAMSR had a satellite office in New Jersey for a brief period. That satellite office was for the benefit of the account representatives and the technician who worked in the area. They used the office for dropping off, repairing, and picking up of Defendants' medical devices.

4.      FAMSR never provided me with a base office in New Jersey or anywhere else for that matter.

5.      In particular, FAMSR never provided me with any space for an office, desk, telephone, computer, etc. Nor did FAMSR ever pay any fees or rent for any office space on my behalf.

6.      I paid for all expenses associated with maintaining my home offices in New Jersey and Charleroi, Pennsylvania. Those expenses included telephone bills, electric bills, bills associated with my use of a facsimile (fax) machine, etc.

7.      FAMSR induced me to resign my position on March 3, 2001 based upon the misrepresentation that any possible litigation had been settled. This constituted a constructive discharge.

8.      I returned to work on May 29, 2001.

9.      FAMSR again constructively discharged me in June 2001.

10.      During my constructive discharges of March and June 2001, I resided only in the Pittsburgh area, worked for FAMSR and MDS out of my home in the Pittsburgh area, and felt the effects of retaliation here in the Pittsburgh area.

11.      Had I not been constructively discharged by FAMSR and MDS, I would have continued working out of my home office in the Pittsburgh area.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February __13__, 2003.

Sworn to and subscribed
before me this 13th
day of February 2003

_____

Shannon M. Cairns

## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

        Plaintiff,

        vs

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR, MEDICAL DEVICE
SOLUTION; AND JEFF TRANK,

        Defendants.

Civil Action No. 02-1236

The Honorable Gustave Diamond

### DEFENDANT'S MOTION FOR LEAVE FOR DISCOVERY AND TO FILE RESPONSE TO PLAINTIFF'S SURREPLY

Defendant's, through undersigned counsel, file this Motion for leave of this Court to obtain evidence, and following which leave to file a response to plaintiff's surreply, and say as follows:

1.     Defendant's motion to dismiss for lack of jurisdiction and alternative motion to transfer this case to the U.S. District Court for the Southern District of Florida is currently before this Court.

2.     January 28, 2003 plaintiff filed a brief in opposition. A reply brief was filed by defendants on February 6, 2003.

3.     On February 13, 2003 plaintiff served by mail a Motion for leave to file a surreply brief.

4.     This Court granted the plaintiff's motion on February 20, 2003, prior to expiry of the time for response to the motion by defendants.

5.     The Plaintiff's Surreply Brief based key elements of its argument on an affidavit of Shannon M. Cairns, the plaintiff herein.

6. Defendants seriously dispute the allegations made by the plaintiff in her affidavit, and request leave of this Court to depose the plaintiff on her affidavit. Defendants specifically dispute plaintiff's statements about her connection to Pennsylvania, rather than her New York and New Jersey territorial work assignments.

7. Defendants further request leave to obtain certain documents in plaintiff's possession, which would contradict her affidavit.

8. Defendant's request the opportunity to respond to the Surreply Brief granted and filed on February 20, 2003.

9. Subject to Plaintiff's availability for deposition, Defendants would ask for thirty days from the date of this Court's order to conduct the deposition of Plaintiff. Defendants request a further twenty days following the deposition to file a response to the Surreply brief.

10. As this matter has proceeded expeditiously, there is no prejudice in permitting this limited discovery. Plaintiff was permitted extensive discovery by this court prior to filing its initial response brief and defendants request the same privilege. The granting of this motion will serve the interests of justice and the correct resolution of the motion before the Court.

DEFENDANTS therefore respectfully move this Honorable Court to grant Defendants leave to take a deposition of plaintiff, obtain limited documentary discovery, and file a response to the Surreply.

A draft Order is attached.

GEORGE A. LANE, P.A.

George A. Lane
Florida Bar No. 7242
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, FL 33308
(954) 776-8284

Cathy Bissoon
PA I.D. No. 70371
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3268

Counsel for Defendants

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                                    Civil Action No. 02-1236

        Plaintiff,

vs                                                    The Honorable Gustave Diamond

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR, MEDICAL DEVICE
SOLUTION; AND JEFF TRANK,

        Defendants.

## ORDER OF COURT

AND NOW, to wit, this ___3rd___ day of ___March___ , 2003, upon

consideration of the Defendants Motion for Leave for Discovery and to File Response to

Plaintiff's Surreply, IT IS HEREBY ORDERED that the motion is GRANTED and Defendants

shall have 30 days from the date of this Order to conduct a deposition of Plaintiff on her affidavit

dated February 13, 2003, request documentary evidence, and shall have 20 days after the conduct

of the deposition to file a response to the Surreply granted on February 20, 2003.

_____
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served this _26_ day of
February, upon the following by first class mail, postage prepaid:

James B. Lieber
Lieber & Hammer, P.C.
5528 Walnut St.
Pittsburgh, PA 15232-2312

George A. Lane
FL Bar No. 7242
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308
(954) 776-8284

LAW OFFICES

# George A. Lane, P.A.

**Attorney at Law**
Wachovia Bank Tower
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, Florida 33308
Tel.(954) 776-8284
Fax (954) 771-9393

February 26, 2003

Mr. Robert Varth, Jr.
Clerk of Court
United States District Court
8th floor, U.S. Courthouse
Pittsburgh, PA 15219

Re: Cairns v. Factory Authorized Medical Scope Repair, et al. , Civil Action 02-1236

Dear Sir:

Enclosed please find Defendants Motion, which we kindly request be filed with the Court.

Sincerely,

George A. Lane P.A.

George A. Lane

GAL/st
Encl.

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SURREPLY BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS WITH MEMORANDUM OF LAW

Plaintiff Shannon M. Cairns, by and through her counsel, Lieber & Hammer, P.C., files the following Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law.

## I. JURISDICTION

Contrary to Defendants' argument, this Court without question has general personal jurisdiction over Defendant Factory Authorized Medical Scope Repair ("FAMSR"). As stated in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact with the Commonwealth to serve as the basis for the assertion of general personal jurisdiction.  42 P.S. § 5301(a)(2)(i).  Under 42 P.S. § 5301(a)(2)(i), the Third Circuit has held that a foreign corporation is subject to suit in Pennsylvania even its only contact with the Commonwealth is the authorization to do business in Pennsylvania. *Bane v. Netlink, Inc.*, 925 F.2d 637, 640-41 (3d Cir. 1991).

In the present case, FAMSR is a foreign corporation that is authorized by the Commonwealth to do business in Pennsylvania.  By registering to do business in Pennsylvania, FAMSR "'purposefully avail[ed] itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.'" *Bane*, 925 F.2d at 640.  As a result of FAMSR's qualification as a foreign corporation under Pennsylvania law, this Court has general personal jurisdiction over FAMSR.  *See Bane*, 925 F.2d at 640-41 (personal jurisdiction existed because defendant was authorized to do business in Pennsylvania).

In their Reply to Plaintiff's Brief in Opposition, Defendants mistakenly argue that this Court does not have general personal jurisdiction over FAMSR based on concerns of "fair play and substantial justice" addressed by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 465 (1985) and *WorldWide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  Defendants' reliance on *Burger King* and *WorldWide Volkswagen* is severely misplaced given that those cases addressed **specific jurisdiction** only and **not general jurisdiction**.  As stated by Wright & Miller: "The Supreme Court never has commented on the role of fair play and substantial justice factors in the context of **general jurisdiction**.  In WorldWide Volkswagen Corporation v. Woodson, Burger King Corporation v. Rudzewicz, and Asahi Metal Industry Company v. Superior Court of California, the Court was addressing **specific jurisdiction**; . . ." Wright & Miller 4 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure 3d § 1067.5 (emphasis added).  In this case, Plaintiff asserts that this Court has **general jurisdiction** over FAMSR and, therefore, the factors of fair play and substantial justice are not relevant.

2

Defendants also mistakenly argue that the jurisdictional issue in this case is governed by the Eastern District's decision in *Romann v. Geissenberger Mfg. Corp.*, 865 F. Supp. 255 (E.D. Pa. 1994), *abrogated by Eagle Traffic Control, Inc. v. James Julian, Inc.*, 933 F. Supp. 1251, 1256 (E.D. Pa. 1996). In *Romann*, the Court held that although the defendant corporation was a foreign corporation qualified to do business in Pennsylvania it did not have the required "systematic and continuous contacts" with the Commonwealth for the Court to exercise general personal jurisdiction. *Romann*, 865 F. Supp. at 260. That holding since has been rejected and is no longer good law. *See Eagle Traffic Control*, 933 F. Supp. at 1256.

In *Eagle Traffic Control*, the Eastern District abrogated the holding of *Romann* as follows:

> Eagle bases general personal jurisdiction over JJID on the ground that it is qualified to do business within this state as a foreign corporation. Pennsylvania's personal jurisdiction statute expressly grants jurisdiction in such an instance. JJID nonetheless contests personal jurisdiction by pointing to one of this Court's previous rulings, *Romann v. Geissenberger Mfg. Corp.*, 865 F.Supp. 255 (E.D.Pa.1994).
>
> There, we held that although a foreign corporation was qualified to do business in Pennsylvania, we had no jurisdiction over that corporation because it did not otherwise have "systematic and continuous contacts" with the Commonwealth. *Id.* at 260. **We have re-examined that particular holding and find that it is in conflict with Third Circuit precedent and therefore, is not controlling in this instance.**
>
> The Third Circuit has ruled that based on Pennsylvania's jurisdiction statute, a foreign corporation is subject to suit in Pennsylvania even if its only contact with the state is its authorization to do business in Pennsylvania. *Bane v. Netlink, Inc.*, 925 F.2d 637 (3d Cir.1991). In the alternative, the Court held that pursuant to the then-current authorization statute, being authorized to do business in Pennsylvania carried with it consent to be sued in

3

> Pennsylvania because all authorized corporations had to designate the Secretary of State as their registered service agent. *Id.* at 640.
>
> By the time we decided *Romann*, the authorization statute had been amended to make designation of an in-state registered agent optional. 15 Pa.Cons.Stat.Ann. § 4124(a)(4) (1995). **We held that the statute's change was significant enough to affect Bane's precedential value. Upon re-examination, we do not find this to be so. The bottom line is that Pennsylvania's long-arm statute provides for personal jurisdiction when a foreign corporation takes the particular action of becoming authorized to do business in Pennsylvania.**
>
> The statute complies with due process because becoming authorized is an affirmative act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1240. Further, it paves the path for a situation in which the defendant "should reasonably anticipate being haled into court." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. For these reasons, we find that JJID is subject to personal jurisdiction pursuant to 42 Pa.Cons.Stat.Ann. § 5301(a)(2)(i).

*Eagle Traffic Control, Inc.*, 933 F. Supp. at 1256 (emphasis added). As a result of the abrogation of the jurisdictional holding in *Romann*, Plaintiff respectfully submits that Defendants' arguments relying on *Romann* are completely without merit and should be disregarded by the Court.

Finally, Defendants mistakenly argue that because there is no jurisdiction over Jeff Trank there is no jurisdiction over FAMSR. (Defts' Reply Brief, at p. 13). While Plaintiff concedes that this Court does not have jurisdiction over Jeff Trank, the fact is that this Court does have jurisdiction over FAMSR and Plaintiff respectfully requests this Court to exercise general personal jurisdiction over FAMSR and dismiss *without prejudice* Plaintiff's common law battery claim against Jeff Trank. *See e.g., Perry v. Markman Capital Mgmt., Inc.*, 2002 WL 31248038 at *5 (E.D. Pa. Oct. 4, 2002) (finding jurisdiction over corporate defendant but not individual defendant

4

and refusing to transfer case to alternative venue and dismissing individual defendant without prejudice); *United Products Corp. v. Admiral Tool & Mfg. Co.*, 122 F. Supp. 2d 560, 562-63 (E.D. Pa. 2000) (finding jurisdiction over corporate defendant but not individual defendants and refusing to transfer case to alternative venue and dismissing individual defendants without prejudice).

Based on the foregoing reasons and the reasons stated in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff respectfully submits that this Court has general personal jurisdiction over FAMSR and, therefore, this Court should deny Defendants' Motion to Dismiss with respect to FAMSR.

## II. VENUE

Under 42 U.S.C. § 2000e-5(f)(3), there are four judicial districts where a Title VII employment discrimination action may be brought:

(1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,"

(2) "in the judicial district in which the employment records relevant to such practice are maintained and administered,"

(3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,"

(4) "but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

42 U.S.C. § 2000e-5(f)(3).

5

A.    **Hostile Work Environment Claim (Count I)**

Defendants argue for the first time in their Reply Brief that venue is proper for Plaintiff's Title VII hostile work environment claim (Count I) in the Southern District of Florida under the second prong of 42 U.S.C. § 2000e-5(f)(3) because Plaintiff's employment records are maintained and administered in Florida. (Defts' Reply Brief, at pp. 17-18). The second prong states that venue is proper "in the judicial district in which the employment records **relevant** to [the unlawful employment] practice are maintained and administered." 42 U.S.C. § 2000e-5(f)(3) (emphasis added).

Contrary to Defendants' assertions, Plaintiff's employment records are not relevant to the sexual assaults that make up Plaintiff's hostile work environment claim. Defendants have not produced from Plaintiff's employment records a single document which relates in any way to the incidents of sexual harassment, such as a written investigation of the incidents, a verification that Plaintiff received a copy of any company sexual harassment policy, or the like. There simply is nothing in Plaintiff's employment records that relates to the sexual harassment suffered by Plaintiff. As a result, the second prong can not support a finding that venue is proper in the Southern District of Florida.

Venue is proper in the Western District of Pennsylvania for Plaintiff's hostile work environment claim (Count I), however, because Cairns felt the effects of the hostile work environment in the Western District of Pennsylvania because she worked out of a home office in this district as of the date of the incidents and the period that followed. (*See* Pltf's Opp. Brief, at

pp. 12-18).[1]

Defendants attempt to distort this reality by stating without any record support whatsoever that "FAMSR provided the Plaintiff with a base office in New Jersey." (*See* Defts' Reply Brief, at p. 17). FAMSR did have a satellite office for a brief period in New Jersey. However, that office was not provided for the Plaintiff but rather for the account representatives and the technician covering that territory to use for the dropping off, repair, and picking up of Defendants' medical devices FAMSR. (Second Aff. of Cairns, at ¶ 3, attached hereto).

Simply put, FAMSR **never** provided Plaintiff with a base office in New Jersey. (*Id.* at ¶ 4). In particular, FAMSR never provided Plaintiff with any space for an office nor did it ever pay any fees or rent on her behalf. (*Id.* at ¶ 5). In contrast, Plaintiff herself supported her home offices in Pittsburgh and New Jersey by paying all necessary expenses, including all phone bills, electric bills, bills associated with her use of a facsimile (fax) machine, mortgage, etc. (*Id.* at ¶ 6). As a result, the fact remains that Plaintiff had two home offices at the time of the sexual harassment -- one in Charleroi, Pennsylvania and one in New Jersey -- and she felt the effects of the sexual harassment in this District and, therefore, venue is proper in this District.

**B.    Retaliation (Count II)**

With respect to Plaintiff's retaliation claim, Defendants argue unconvincingly that venue is not proper in this District because although Plaintiff worked out of her home in this District during the relevant time period her territory included several states in addition to Pennsylvania and that the Defendants "provided the Plaintiff with a base office in New Jersey." As mentioned

---

[1]In the alternative, venue is proper in the Western District of Pennsylvania for Plaintiff's hostile work environment claim (Count I) under the doctrine of "pendent venue," as set forth previously in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at pages 13-18.

above, Defendants' assertion that they provided Plaintiff with a base office in New Jersey is neither accurate nor supported by record evidence.

In addition, under the Ninth Circuit's rationale in *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th cir. 2000), Plaintiff undeniably felt the effects of the retaliation in this District because she was working only out of her home office in Pennsylvania and not the one in New Jersey during the relevant time period and, therefore, venue is proper in this District for that reason alone. (*See* Pltf's Opp. Brief, at pp. 10-11).

Finally, on an alternative basis, venue is proper in this District for Plaintiff's retaliation claim under the third prong of 42 U.S.C. § 2000e-5(f)(3). Under that prong, venue is proper "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." In this case, Plaintiff would have continued working out of her home office in this District had she not been constructively discharged by Defendants in retaliation for her complaints of a hostile work environment. (Second Cairns Aff., at ¶ 7-11). As a result, venue is proper in this District for Plaintiff's retaliation claim (Count II) under the third prong of 42 U.S.C. § 2000e-5(f)(3).

8

Based on the foregoing reasons and the reasons stated in Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff respectfully submits that venue is proper in this District for the Title VII claims in Counts I and II and therefore this Court should deny Defendants' Motion to Transfer Venue.

Respectfully submitted,

LIEBER & HAMMER, P.C.

James B. Lieber
PA I.D. # 21748

Thomas M. Huber
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | ) | |
| | ) | ss: |
| County of Allegheny | ) | |

## AFFIDAVIT OF SHANNON M. CAIRNS

BEFORE ME, a Notary Public, in and for said County and State, on this day personally appeared Shannon M. Cairns, who, having been by me first duly sworn, upon her oath deposed and said:

1.  I am a female and a Pennsylvania resident who resides at 55 Orchard Street, Charleroi, PA 15022.

2.  I am a former employee of Defendants' Factory Authorized Medical Scope Repair ("FAMSR") and Medical Device Solutions ("MDS").

3.  During the time that I worked for FAMSR, FAMSR had a satellite office in New Jersey for a brief period. That satellite office was for the benefit of the account representatives and the technician who worked in the area. They used the office for dropping off, repairing, and picking up of Defendants' medical devices.

4.  FAMSR never provided me with a base office in New Jersey or anywhere else for that matter.

5.  In particular, FAMSR never provided me with any space for an office, desk, telephone, computer, etc.  Nor did FAMSR ever pay any fees or rent for any office space on my behalf.

6.  I paid for all expenses associated with maintaining my home offices in New Jersey and Charleroi, Pennsylvania.  Those expenses included telephone bills, electric bills, bills associated with my use of a facsimile (fax) machine, etc.

7.  FAMSR induced me to resign my position on March 3, 2001 based upon the misrepresentation that any possible litigation had been settled.  This constituted a constructive discharge.

8.  I returned to work on May 29, 2001.

9.  FAMSR again constructively discharged me in June 2001.

10. During my constructive discharges of March and June 2001, I resided only in the Pittsburgh area, worked for FAMSR and MDS out of my home in the Pittsburgh area, and felt the effects of retaliation here in the Pittsburgh area.

11. Had I not been constructively discharged by FAMSR and MDS, I would have continued working out of my home office in the Pittsburgh area.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February __13__, 2003.

Sworn to and subscribed before me this 13th day of February 2003

_Shannon M. Cairns_
Shannon M. Cairns

Notarial Seal
Margie Hamman, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Mar. 20, 2003
Member, Pennsylvania Association of Notaries

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief in Opposition to

Defendant's Motion to Dismiss with Memorandum of Law was served this *13* day of February,

2003, upon the following by first class mail, postage prepaid:


    Cathy Bissoon, Esquire
    Reed Smith LLP
    435 Sixth Street
    Pittsburgh, PA 15219-1886

    George A. Lane, Esquire
    George A. Lane, P.A.
    2929 E. Commercial Blvd.
    Suite 205
    Fort Lauderdale, FL 33308

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                )        Civil Action No. 02-1236
                                  )
            Plaintiff,            )
                                  )
      vs.                         )        The Honorable Gustave Diamond
                                  )
FACTORY AUTHORIZED MEDICAL        )
SCOPE REPAIR; MEDICAL DEVICE      )
SOLUTION; AND JEFF TRANK,         )        **JURY TRIAL DEMANDED**
                                  )
            Defendants.           )

## PLAINTIFF'S MOTION FOR LEAVE OF COURT
## TO FILE A SURREPLY BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS WITH MEMORANDUM OF LAW

Plaintiff Shannon M. Cairns, by and through her counsel, Lieber & Hammer, P.C., files the following Motion for Leave of Court to file a Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law and in support thereof avers as follows:

1.      Currently pending before this Court is the Defendants' motion to dismiss for lack of jurisdiction over the out-of-state defendants and an alternative motion to transfer the case to the United States District Court for the Southern District of Florida.

2.      On January 28, 2003, Plaintiff filed a Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law.

3.      In the Opposition Brief, Plaintiff asserted that this Court has personal jurisdiction over Defendant Factory Authorized Medical Scope Repair and that venue is appropriate in the Western District of Pennsylvania for Plaintiff's claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

4.      In response, Defendants filed on February 6, 2003 a Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law.

5.      In their Reply Brief, Defendants raise new and different issues from the ones raised in their initial Motion to Dismiss with Memorandum of Law.

6.      For example, Defendants raise for the first time the issue that venue is proper for Plaintiff's Title VII hostile work environment claim (Count I) in the Southern District of Florida under the second prong of Title VII's venue provision (42 U.S.C. § 2000e-5(f)(3)) because Plaintiff's employment records are maintained and administered in Florida.  (Defts' Reply Brief, at pp. 17-18).

7.      Likewise, Defendants raise for the first time the issue that because this Court does not have personal jurisdiction over individual defendant Jeff Trank it also does not have personal jurisdiction over co-defendant Factory Authorized Medical Scope Repair.  (Defts' Reply Brief, at p. 13).

8.      In order to address these issues that were not raised in Defendants' initial Motion to Dismiss but were raised in Defendants' Reply Brief, Plaintiff respectfully requests leave of Court to file the attached Surreply Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law.

9.      Plaintiff also requests leave of Court to file the attached Surreply Brief in order to address a confusion of certain issues in Defendants' Reply Brief.

10.      For example, contrary to Defendants' assertion, the factors of fair play and substantial justice addressed by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S.

2

462, 465 (1985) are not at issue in this case because that case dealt with specific jurisdiction and this case deals with general jurisdiction.

11.     Moreover, contrary to Defendants' assertion, the Eastern District's decision in *Romann v. Geissenberger Mfg. Corp.*, 865 F. Supp. 255 (E.D. Pa. 1994), is neither controlling nor persuasive on the issue of personal jurisdiction because its holding was rejected and abrogated by the Eastern District itself in *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 933 F. Supp. 1251, 1256 (E.D. Pa. 1996).

12.     Finally, Plaintiff contests the Defendants' allegation raised for the first time in Defendants' Reply Brief that "FAMSR provided the Plaintiff with a base office in New Jersey." (Defts' Reply Brief, at p. 17).  The New Jersey office, which was open for a brief period, was provided not to the Plaintiff but to the sales representatives and the technician in the area for the dropping off, repair, and picking up of Defendants' medical devices.

13.     Plaintiff respectfully submits that her Surreply Brief will aid the Court in deciding the Defendants' Motion to Dismiss and Alternative Motion to Transfer.

14.     Plaintiff also respectfully submits that the Defendants will not be prejudiced by the granting of this motion and that the granting of this motion will serve the interests of justice.

WHEREFORE, Plaintiff respectfully moves this Honorable Court to grant Plaintiff leave of Court to file the attached Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law.

An appropriate Order is attached.

Respectfully submitted,

LIEBER & HAMMER, P.C

James B. Lieber
PA I.D. # 21748

Thomas M. Huber
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

Counsel for Plaintiff

4

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## ORDER OF COURT

AND NOW, to wit, this _20th_ day of _February_, 2003, upon

consideration of the within Motion for Leave of Court to file a Surreply Brief in Opposition to

Defendant's Motion to Dismiss with Memorandum of Law, IT IS HEREBY ORDERED that the

motion is GRANTED and Plaintiff's Surreply Brief in Opposition to Defendants' Motion to

Dismiss and Memorandum of Law attached to Plaintiff's motion is hereby deemed filed.


_Gustave Diamond, J._

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Leave of Court to file a Surreply Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law was served this ___13___ day of February, 2003, upon the following by first class mail, postage prepaid:

Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.
_____/

Civil Action No. 02-1236

Honorable Gustave Diamond



**DEFENDANTS' REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS WITH MEMORANDUM OF LAW**

COMES NOW, Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR ("FAMSR"), MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by undersigned counsel, and file this Reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law.

**FACTUAL BACKGROUND**

On or about June 15, 1998, Plaintiff, SHANNON M. CAIRNS ("Plaintiff"), commenced employment with FAMSR, a Florida corporation headquartered in Pompano Beach, Florida. (Cairns Aff., ¶ 4, attached as Exhibit A). Plaintiff was initially employed as a sales representative to cover the Pittsburgh territory. (*See* Plaintiff's letter of offer of employment in Defendants' Response to Cairns' Interrogatories, at ¶ 16, attached as Exhibit B). No office was located in Pittsburgh or in any other location in the State of Pennsylvania at that time. (*See* list of Defendants' facilities in Defendants' Response to Cairns' Interrogatories, at ¶¶ 10 & 11). All negotiations, communications and agreements relating to the Plaintiff's hire were, at that time

and at all material times thereafter, made through the FAMSR's office in Pompano Beach, Florida. (Id.)  All employment records relating to the Plaintiff were at all material times maintained and administered by FAMSR's corporate headquarters in Pompano Beach, Florida.

On or about July 1, 1999, the Plaintiff became a Regional Sales Manager with FAMSR (Cairns Aff., ¶ 4), based in New Jersey (Trank Aff. ¶ 8, attached as Ex. C).  The Plaintiff's base territory covered the states of New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania.  (Id).  The Plaintiff's base office was located in New Jersey for a continuous period from July 1999 to May 2000. (Defendants' Response to Cairns' Interrogatories, at ¶ 17). In November 1999, Plaintiff bought a house located in New Jersey (Cairns Aff. ¶ 8).  The Plaintiff used the New Jersey house as her "home" office (Cairns Aff. ¶ 26) until December 2000. (Cairns Aff. ¶ 27).   The Plaintiff also stayed at the home of her parents in Charleroi, Pennsylvania during the course of covering her territory.   Plaintiff's decision to work out of her parents' home in Charleroi, Pennsylvania, was a unilateral decision and not a condition of employment. (Trank Aff. ¶ 10). None of the defendants provided any monies or services related to any home office Plaintiff may have maintained in Pennsylvania.  (Id).

At all material times, Plaintiff's sales territory covered multiple states. (Trank Aff. ¶ 8). As regional manager, Plaintiff supervised subordinate FAMSR employees in several states, including employees in New York/New Jersey, Ohio and Pennsylvania (Cairns Aff. ¶ 23). Plaintiff was at all material times reported to and was supervised by Gregg Constantino (Cairns Aff. ¶ 23), who worked FAMSR's corporate headquarters in Pompano Beach, Florida. .

FAMSR maintained an office in Huntington, Pennsylvania for less than year at the end of 1999 and the beginning of 2000.  (*See* list of Defendants' facilities in Defendants' Response to Cairns' Interrogatories, at ¶¶ 10 & 11, showing Philadelphia area handled by Marlton, New Jersey office).   At no other material time did the defendants maintain an office in Pennsylvania. All other sales and repairs relating to any possible customers located in Pennsylvania were handled by an office located in the State of New Jersey. (<u>Id</u>). At all material times, all employment decisions were and are made at the head office of FAMSR in Pompano Beach, Florida.   (Trank Aff. ¶ 11)  No employment decisions have been ever made by the company or its executive staff at any other location. (<u>Id</u>).

On or about October 14, 2000, Plaintiff attended a FAMSR regional sales meeting near Atlanta, Georgia at the vacation home of FAMSR president and co-defendant, Jeff Trank.  As a result of events that are alleged by the Plaintiff to have occurred at this meeting, the Plaintiff commenced a lawsuit.  Count I of the Plaintiff's lawsuit is grounded in discrimination in the terms and conditions of Plaintiff's employment because of her gender in violation of the Civil Rights Act of 1964, U.S.C. §2000e-2(a)(1).  (*See* Complaint ¶ 34. attached as Ex. D).   The alleged sex discrimination is based on allegations of sexual harassment that occurred at the meeting in Georgia.   Count II of the Plaintiff's Complaint alleges retaliation for opposing discriminatory employment practices.  (*See* Complaint ¶¶ 42 & 43).  The retaliatory acts are based on the Florida-based Defendants' alleged constructive discharge of the Plaintiff for protesting discriminatory conduct that alleged to have occurred in Georgia.  Finally, Count III alleges battery. (*See* Complaint ¶¶ 45).  The unwanted and offensive touching is alleged by the Plaintiff to have occurred in the State of Georgia.   At the date of this incident, Plaintiff worked

in the field covering her entire multiple-state territory. (Cairns Aff. ¶ 25).  When she was not in the field she worked out of two "home" offices depending on her travel schedule. (Cairns Aff. ¶ 26).  Plaintiff unilaterally left New Jersey permanently in December 2000 to live with her family.  (Cairns Aff. ¶ 27).  From the time of Plaintiff's move, FAMSR's revenues in Plaintiff's territory dropped by over sixty percent.  (*See* revenues generated in Cairns' territory #835, Defendants' Response to Cairns' Interrogatories, at ¶ 6).  In or about June, 2001, with revenues continuing to drop, the Plaintiff unilaterally terminated her employment with FAMSR.  From the date of the alleged material events in October 2000 until her termination Plaintiff's employment covered a multiple-state territory.

Defendant MDS is an inactive Florida corporation, which previously had its head office in Pompano Beach, Florida. (*See* Trank Aff. ¶ 2 and *see also* Defendants' Response to Cairns' Interrogatories, at ¶ 13).  MDS never sought or obtained authority to transact business in the State of Pennsylvania nor has it ever maintained an office there.  Defendant FAMSR is headquartered in Pompano Beach, Florida. (Id).  At the time of the alleged events from which the lawsuit derives and at no time since then has FAMSR maintained an office in the State of Pennsylvania.  (*See* list of Defendants' facilities in Defendants' Response to Cairns' Interrogatories, at ¶¶ 10 & 11).  Defendant, Jeff Trank resides in Florida.

The majority of the crucial witnesses reside in close proximity to Florida and do not therefore live in close proximity to Pennsylvania.  Jeff Trank resides in Florida.  Gregg Constantino, Plaintiff's overall supervisor resides in Deerfield Beach, Florida while also maintaining a residence in Georgia.  George Pratt, the manager who hired the Plaintiff and her

immediate supervisor resides in Georgia.   Vince Bertoloni, a former National Sales Manager with FAMSR, resides in Georgia.   All FAMSR human resource representatives reside and are located in Florida.   Besides herself, Plaintiff only names three other potential witnesses, Chet Galek (New Jersey), Debbie Paolo (Pennsylvania) and Kurt Cannon (Pennsylvania) who live in or anywhere near the State of Pennsylvania.

## STANDARD OF LAW

### Jurisdiction

In considering a Rule 12(b)(2) motion to Dismiss, the court must construe all allegations of the complaint as true, and any conflict in affidavits must be viewed in favor of the non-moving party.   Bucks County Playhouse v. Bradshaw, 577 F.Supp. 1203 (E.D. Pa. 1983). Because personal jurisdiction is a waivable defense under Federal Rule of Civil Procedure 12(h)(1), the defendant bears the initial burden of raising lack of personal jurisdiction.   Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1064 (M.D. Pa. 1993).   Once the defense is raised, however, the burden shifts to the plaintiff to prove that exercise of jurisdiction is permissible and that sufficient contacts to support jurisdiction exist between the defendant and the forum state. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3rd Cir. 1992).

A defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).   The contacts must be such that the defendant could reasonably anticipate being haled into court in the forum state.   Romann v.

Geissenberger Mfg. Corp., 865 F.Supp. 255 (E.D. Pa. 1994).   Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits.   Time Share Vacation Club v. Atlantic Resorts. Ltd., 735 F.2d 61, 63 (3ʳᵈ Cir. 1984).   Within these boundaries defined by the Due Process Clause, Pennsylvania courts may exercise either general or specific jurisdiction over a defendant pursuant to its long-arm statutes.   42 Pa. Cons. Stat. Sect 5301; 42 Pa. Cons. Stat. Sect. 5322.   The relevant parts of the two sections are as follows:

1.    Specific Jurisdiction

"A tribunal of this Commonwealth may exercise personal jurisdiction over a person [including corporations] who acts directly or by an agent, as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth . . . (3) Causing harm or tortuous injury by an act or omission in this Commonwealth. . . (4) Causing harm or tortuous injury in this Commonwealth by an act or omission outside this Commonwealth." [42 Pa. Cons. Stat. Sect. 5322(a).]

2.    General Jurisdiction

"The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative: (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth. . . (ii) Consent, to the extent authorized by the consent. . . (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth." [42 Pa. Cons. Stat. Sect. 5301].

## DISCUSSION

**1.    Specific Jurisdiction**

The alleged activities for which this suit is based occurred in Georgia or Florida, not in Pennsylvania.  Plaintiff states in her complaint that the events for which she filed suit occurred in a sales meeting at Mr. Trank's vacation home.  Plaintiff, however, did not include in her suit that

Mr. Trank's vacation home was located in Georgia. Thus, the alleged activities for which Plaintiff filed suit occurred in Georgia. Plaintiff also makes a claim for retaliation, more specifically, that FAMSR changed the terms and conditions of Plaintiff's employment and thus, constructively discharging her. Yet, all of FAMSR's employment decisions, including the hiring and terminating of employees, occur at FAMSR's home office in Florida. Therefore, even if Plaintiff's allegations were remotely meritorious, which they are not, this court located in Pennsylvania still cannot exercise personal jurisdiction over FAMSR. Under the Pennsylvania long-arm statute, specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be "related" in some way to the defendant's contact with the forum. Romann v. Geissenberger Mfg. Corp., 865 F.Supp. 255 (E.D. Pa. 1994); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

Here, Plaintiff's cause of action is unrelated to any contact FAMSR may have in Pennsylvania. FAMSR does not maintain an office in Pennsylvania. Plaintiff employment at the relevant times was as a traveling sales manager based out of New Jersey, but thereafter moved on her own accord and convenience to work out of her home in Pennsylvania. Furthermore, FAMSR did not provide monies or services for Plaintiff's home office in Pennsylvania. Most importantly, Plaintiff's claims are based upon alleged events that took place in Georgia and Florida, not Pennsylvania. Consequently, since it is clear that Plaintiff's claims did not arise out of any contact FAMSR may have had with Pennsylvania, this court cannot exercise specific personal jurisdiction over FAMSR.

## 2. General Jurisdiction

When a controversy does not arise out of the defendant's contacts with the forum, as is the case here, the court may exercise jurisdiction if the defendant has "continuous and systematic business contacts" with the forum. Helicopeteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984). These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." International Shoe, 326 U.S. at 318. In other words, in order to satisfy due process requirements, a corporation's contacts must be "extensive and pervasive," amounting to a purposeful availment of the "privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Romann, at 260. (citing Fields v. Ramada Inn, Inc., 816 F.Supp. 1033, 1035 (E.D. Pa. 1993)).

Pursuant to 42 Pa. Cons. Stat.Sect. 5301(a)(2)(i), the qualification to do business is sufficient contact with the Commonwealth to serve as the basis for the assertion of general personal jurisdiction. The United States Court of Appeals for the Third Circuit has ruled that the qualification of a foreign corporation to do business is sufficient contact with the Commonwealth to fulfill the "purposeful availment" criteria. Bane v. Netlink, Inc., 925 F. 2d 637, 640 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 465 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

According to decisions of the Supreme Court of the United States, however, establishment of minimum contacts through the "purposeful availment" standard, or otherwise, is not necessarily the final determining factor to be considered in asserting personal jurisdiction.

8

As stated by the Court in <u>Burger King</u> , 471 U.S. 476, "[o]nce it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts May be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (quoting <u>International Shoe Co. v. Washington</u>, 326 U.S., at 320). Thus courts may consider "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of the controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" <u>Id.</u>, at 478. (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292 (1980)). The Court in <u>Burger King</u> further added that "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. <u>Id.</u>, at 477-78 (quoting <u>Woodson</u>, supra, at 292). In addition, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." <u>Id.</u>, at 478.

Applying the principles of the <u>Burger King</u> case, the assertion of personal jurisdiction on the defendants would be "gravely difficult and inconvenient" and would unfairly put the defendants at a "severe disadvantage" in comparison to their opponent. Defendant MDS is now defunct, but was formerly headquartered in Pompano Beach, Florida. It never maintained an office in Pennsylvania and did very little business there. The facts upon which the cause of action against it are based occurred in Georgia. No facts have been raised in the pleadings or in

discovery regarding jurisdiction and venue to demonstrate that it had any minimum contacts with Pennsylvania.

Jeff Trank resides in Florida and the act upon which the allegations against him are based occurred in Georgia. There are no facts in the pleadings or in discovery regarding jurisdiction and venue to demonstrate that he is personally subject to specific or general jurisdiction of Pennsylvania.

FAMSR's minimal business contacts and activity in Pennsylvania are not significant to meet the standard of 'extensive and pervasive' as required by this Court. At the time of the event from which this matter arises, none of the defendants maintained offices in Pennsylvania. Plaintiff's sales territory incorporated up to six states and her sales production as well as FAMSR's overall sales production in Pennsylvania is minimal. The Plaintiff worked at times form her "home" office in New Jersey. Her base office was in New Jersey for most of the time that the Plaintiff was employed by FAMSR and she supervised subordinate employees in several different states.

The fact that Plaintiff worked out of her residence in Pennsylvania while employed by FAMSR does not in itself establish jurisdiction over FAMSR. *See* Romann v. Geissenberger Mfg. Corp., 865 F. Supp 255 (E.D. Pa. 1994). *See also* Charlesworth v. Marco Mfg Co., 878 F.Supp. 1196 (N.D. Ind. 1995). The facts and discussion of the Romann case are instructive although the case was partially abrogated on grounds not relevant to the facts in this dispute. In Romann, the plaintiff salesman, a resident of Pennsylvania who worked out of his home, sued his

employer, a New Jersey corporation, in the eastern district of Pennsylvania. The court denied personal jurisdiction over the Defendant corporation because, *inter alia*, only two to four percent of the defendant's sales occurred in Pennsylvania. Id. at 261. The court noted that "such a figure is hardly reflective of the type of 'extensive and pervasive' contact required by the personal jurisdiction standard."

More importantly, the Romann court opined that although the plaintiff resided and worked out his home in Pennsylvania, "there is no evidence to suggest that [defendant] either required or encouraged [plaintiff] to reside in Pennsylvania as a condition of employment. [Thus], the unilateral decisions of [the plaintiff] . . . to reside in Pennsylvania and receive paychecks there do not constitute purposeful contacts by [the defendant], and cannot serve as the basis for the exercise of personal jurisdiction over [the plaintiff's] employer." Id. at 261-262. *See Also* Rodale Press, Inc. v. Submatic Irrigation Systems, Inc., 651 F.Supp. 208 (E.D. Pa. 1986)(unilateral activity of those who claim some relationship with non-resident defendant cannot satisfy the requirement of contact with the forum state.)(cited in Romann).

In another similar case, the plaintiff sales manager who resided and worked in Indiana sued his employer, a California corporation, under an age discrimination theory in Indiana federal court. Charlesworth v. Marco Mfg. Co., 878 F.Supp. 1196 (N.D. Ind. 1995). The Court ultimately held that it lacked personal jurisdiction over the defendant because, *inter alia*, the amount of sales produced by the plaintiff and the corporation in Indiana was not significant enough to allow jurisdiction. In addition, the Court agreed with Romann's Court opinion and provided that "the law clearly states that 'the unilateral activity of those who claim some

relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' Thus, [the plaintiff] may not rely on his own contacts within the state of Indiana in his attempt to establish that this court has jurisdiction over [the defendant]. Nor may [the plaintiff] rely on the fact that he resides in Indiana." Id. at 1202 (citing Nu-Way Systems v. Belmont Marketing, 635 F.2d 617, 620 (7th Cir. 1980).

The assertion of personal jurisdiction over the Defendants by the State of Pennsylvania would put them at a severe disadvantage. The alleged employment violation, the majority of the witnesses thereto and all employment related communications and records occurred outside Pennsylvania. Assertion of jurisdiction by Pennsylvania would reward the Plaintiff for having unilaterally decided to choose Pennsylvania as her main place of employment, when the Defendants had never purposely availed themselves of that fact.

Even if this Court may exercise jurisdiction over FAMSR and MDS, it cannot exercise personal jurisdiction over Jeff Trank. Count III of the Plaintiff's Complaint alleges that Defendant Jeff Trank caused unwanted and offensive touching constituting battery. This claim seeks judgment and damages against Jeff Trank personally. Before a court may take personal jurisdiction over an individual, it must satisfy certain criteria connecting the defendant to the forum state. Courts have traditionally considered such criteria as presence in the forum state (See Burnham v. Superior Court, 495 U.S. 604, 110 S.Ct. 2105 (1990)), domicile or residence (See Milliken v Meyer, 311 U.S. 457, 61 S.Ct. 339 (1940)), consent (See Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632 (1927)), acts done in the state (See Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97 (1919)), as well as, driving a car in the forum state, ownership of property, conducting

12

business and being married in the forum state.  None of these criteria is available to this Court in the present instance.

The facts supporting Count III are based on acts that allegedly occurred in the State of Georgia.  Jeff Trank resides permanently in Florida and maintains a vacation home in Georgia, but had at no material time and has now no contacts with Pennsylvania.  At all material times Jeff Trank was not present in and did not travel to or in Pennsylvania and no part of the cause of action is based in Pennsylvania.  Mr. Trank has not consented to assertion of personal jurisdiction over him and owns no property in Pennsylvania.

The Plaintiff, however, admits that she employed by a Florida based company and that, at all times material to Count III, voluntarily traveled to Georgia.  There are no facts to suggest that any part of the alleged battery or any evidence related thereto may be found in Pennsylvania.  As such, Pennsylvania cannot assert jurisdiction over Jeff Trank as jurisdiction relates to Count III of the Complaint.

Since this Court cannot lawfully assert jurisdiction over Jeff Trank, the Court does not have jurisdiction over all named Defendants for the purposes of hearing all three Counts of the Plaintiff's Complaint in the same action.

13

## Venue

## ALTERNATIVE MOTION TO TRANSFER

In the alternative to FAMSR's Motion to Dismiss this Court may transfer this matter in the interest of justice to the Southern District of Florida, the district in which FAMSR is located. Pursuant to 28 U.S.C. Sect. 1404 and 1406, this Court has broad discretion and power to transfer this case to another district when this court cannot exercise jurisdiction over a particular defendant or when venue is improper 28 U.S.C. Sect. 1391.

The Plaintiff's action against FAMSR asserts claims for sexual harassment and retaliation under Title VII. Pursuant to 42 U.S.C. § 2000e-5(f)(3), there are four judicial districts where a Title VII claim may be brought:

> (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have beed committed,"
>
> (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered,"
>
> (3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,"
>
> (4) "but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

14

**1.     The Western District of Pennsylvania is not Proper Venue for the Plaintiff's Sexual Harassment Claim Because the Alleged Unlawful Employment Practice occurred in Georgia, thus, outside Pennsylvania.**

Under the first basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue is proper in the judicial district in which the unlawful employment practice is alleged to have been committed. Count I of the Plaintiff's Complaint alleges that she was sexually harassed, by having been subjected to repeated and unwelcome, sexually derogatory language and touching. The facts upon which Count I are based, relate to events that the Plaintiff alleges occurred while at a FAMSR meeting in Georgia. Clearly, the alleged sexual harassment, (i.e the alleged unlawful employment practice) occurred outside of Pennsylvania. The United States Court of Appeals for the Ninth Circuit has held that, in general, the effect of Title VII's venue provision is to allow suit in the judicial district in which the Plaintiff worked or would have worked. Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 504-05 (9th Cicuit 2000). In applying that principle to the determination of a sex discrimination action, the Court ruled that venue was proper in the judicial district where the Plaintiff. In that case, a Washington based female regional sales representative for a nationally operating company based in New Jersey alleged that the company purposely failed to promote her due to her gender. The Court rejected the company's argument that the unlawful employment activity occurred in New Jersey where all decisions relating to promotions were made. Instead, the Court held that venue was proper in Washington, the state for which the sales representative was responsible. The Court reasoned that to accept the company's "[CPI's] theory would require us to draw a distinction between promotion claims and other types of Title VII claims – which allow venue where the plaintiff is employed." Passantino, 212 F.3d, at 505.

The Passantino case and the Court's rational therein, however, is clearly distinguishable from the case at hand, by its facts.   The Passantino case did not involve one specific, isolated event or occurrence upon which the Plaintiff's claim was based.   In Passantino the company had an ongoing and repeated practice of overlooking female employees for promotion.   In instances, such as, failure to promote, refusal of pension credits (*See e.g*, Varsic v. United States District Court, 607 F.2d 245 (9th Cir. 1979), wrongful discharge and being subject to a hostile work environment, there is no particular defining event from which a claim arises, but rather, the unlawful employment activity is derived from a systematic practice which is void of precise time and acts.

Count I of the Plaintiff's complaint, however, alleges sexual harassment based on two alleged incidences of "unwelcome sexually derogatory language and touching" (Complaint ¶ 29) that occurred at a vacation home in Georgia.   Thus, unlike Passantino, where the Court held that venue was proper in both the forum where the employment **decision** is made and the forum in which that **decision** is implemented or its effects are felt, Count I of the Plaintiff complaint points to a specific, unlawful employment activity that, in no way, occurred in Pennsylvania. Consequently, venue in Pennsylvania regarding the sexual harassment claim cannot support the first prong of 42 U.S.C. § 2000e-5(f)(3).

Under the third basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue may be proper in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.   Once again the Passantino case, upon which the Plaintiff relies heavily, provides insight, which demonstrates why Count I of the Complaint also fails on this basis.   In

Passantino the Court ruled venue for a sex discrimination claim was proper in the judicial district where the Plaintiff worked. In describing the history of the case leading up to trial, however, the Court pints out that CPI, the Plaintiff's employer, consented to the Plaintiff's relocation to Tacoma, Washington *(See* Passantino, 212 F.3d, at 499-500), and requested that she maintain a home office. (Id., at 500.)   As a result of its approval of the location of its employee's office, the employer could not then rightfully contest that judicial district as being proper for the purposes of venue.

In the present action, at all material times, the Plaintiff was a Regional Sales Manager for a six-state territory.   Accordingly, all six states are the where the Plaintiff worked and thus the Plaintiff did not work for FAMSR or MDS in Pennsylvania any more than she did in New York, New Jersey, Ohio, West Virginia or North Carolina.   The Plaintiff maintained "home" offices" in two different states.   FAMSR provided the Plaintiff with a base office in New Jersey.   None of the Defendants authorized, or encouraged or explicitly approved of the Plaintiff's unilateral decision to restrict her office to a home office in Pennsylvania.   As per the guidance offered in Passantino, to now qualify and restrict the Plaintiff's place of work as and to Pennsylvania for the purposes of determining proper venue under the third prong of 42 U.S.C. § 2000e-5(f)(3) would be to deny the Defendants of due process of the law.

The second prong of 42 U.S.C. § 2000e-5(f)(3) is more clearly met in this case.   This prong provides that venue is proper in the judicial district in which the employment records relevant to such practice are maintained and administered.   Based on undisputable facts, the Plaintiff's employment records are both maintained and administered at the Defendants

17

headquarters in Pompano Beach, Florida. Proper venue lies therefore with the United States District Court For the Western District of Pennsylvania.

**2.     The Western District of Pennsylvania is not the Proper Venue for Plaintiff's Retaliation Claim under Title VII Because at all Times of Alleged Retaliation Plaintiff Worked in Several Different Districts and Allegedly Felt the Effects of Retaliation in Several Different Districts**

Under the first basis for venue 42 U.S.C. § 2000e-5(f)(3), venue is proper in the judicial district in which the unlawful employment practice is alleged to have been committed. According to the decision in Passantino, 212 F.3d 493, venue is proper under this basis "in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects felt." Id., at 506. In other words, venue is found "where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented." Id., at 505.

As discussed above, the Plaintiff's place of work was not exclusively Pennsylvania. The Plaintiff's decision to work from a home office made unilaterally and without consultation with the Defendants. The Defendants required the Plaintiff to work in several states and provided the Defendant with a base office in New Jersey. A determination that the Plaintiff worked in Pennsylvania for the purpose of deciding venue would be contrary to the facts and unjust and unfair to the Defendants.

### 3. The Western District is not the Proper Venue Because Count III of the Complaint is based on State Law other than Pennsylvania State Law

Count III of the Plaintiff's Complaint alleges that Defendant Jeff Trank caused unwanted and offensive touching constituting battery. This claim seeks judgment and damages against Jeff Trank personally. The facts supporting Count III are based on acts that allegedly occurred in the State of Georgia. The Plaintiff's battery cause of action for this Count is therefore based on Georgia state common law. Jeff Trank resides permanently in Florida and maintains a vacation home in Georgia, but has no personal contacts with Pennsylvania. FAMSR's offices, majority of employees and most importantly, witnesses for both parties are all located at FAMSR's headquarters in South Florida.

The Plaintiff, however, alleges that she resides in Pennsylvania, and was employed by a Florida based company. The facts show that the Plaintiff voluntarily traveled to Georgia. There are no facts to suggest that any part of the alleged battery or any evidence related thereto may be found in Pennsylvania. As such, Pennsylvania is not proper venue for Count III of the Complaint.

### 4. The Western District is not the Proper Venue Because Count III of the Complaint is based on State Law as Thus Pendent Venue has No Application

Although courts have been more willing to recognize the doctrine of "pendent venue" derived from the concept of pendent jurisdiction, the doctrine has no application to Count III of the Complaint.

Under the doctrine of pendent venue, when two or more federal claims are brought and venue is properly laid as to one claim, that venue will support adjudication of the other related claim. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Sect. 3808 (1986) (collecting cases); *see also*, <u>Reuber v. U.S.</u>, 750 F.2d 1039 (D.C. Cir. 1984) (court applied pendent venue theory because of existence of common facts, common issues of proof and common witnesses demonstrating nexus between various counts), <u>cert. den.</u> 501 U.S. 1212, 111S.CT. 2814, 115 L.Ed.2d 986 (1991).

In the present case, the Plaintiff alleges at Count III of her Complaint that Defendant Jeff Trank caused unwanted and offensive touching constituting battery. The facts supporting Count III are based on acts that allegedly occurred in the State of Georgia. The Plaintiff's cause of action for this Count are based on Georgia state common law. In light of the fact that Count III of Plaintiff's claim is not based on a federal claim, pendent venue has no application.

## CONCLUSION

Based on the foregoing, The Defendants respectfully request this Court to dismiss the Plaintiff's action for lack of jurisdiction and improper venue. Alternatively, if this Court finds that it may lawfully take jurisdiction over the parties, then in the interest of justice and in the alternative to dismissing this matter, FAMSR admits that it is subject to personal jurisdiction in

the state of Florida and requests that this case be transferred to the Southern District of Florida.

ALL OF WHICH IS RESPECTFULLY SUBMITTED THIS 6TH DAY O FEBRUARY, 2003.

> Cathy Bissoon
> PA I.D. No. 70371
> REED SMITH LLP
> 435 Sixth Avenue
> Pittsburgh, PA 15219-1886
> (412) 288-3268
>
> George A. Lane
> GEORGE A. LANE, P.A.
> 2929 E. Commercial Blvd.
> Suite 205
> Fort Lauderdale, FL, 33308
> (954) 776-8284
> Counsel for the Defendants
>
> _____
> George A. Lane
> FBN 7242

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )          Civil Action No. 02-1236
                                      )
      Plaintiff,                     )
                                      )
    vs.                             )          The Honorable Gustave Diamond
                                      )
FACTORY AUTHORIZED MEDICAL            )
SCOPE REPAIR; MEDICAL DEVICE          )
SOLUTION; AND JEFF TRANK,             )          **JURY TRIAL DEMANDED**
                                      )
      Defendants.                    )


Commonwealth of Pennsylvania      )
                                  )   ss:
County of Allegheny               )

### AFFIDAVIT OF SHANNON M. CAIRNS

BEFORE ME, a Notary Public, in and for said County and State, on this day personally appeared Shannon M. Cairns, who, having been by me first duly sworn, upon her oath deposed and said:

1.     I am a female and a Pennsylvania resident who resides at 55 Orchard Street, Charleroi, PA 15022.

2.     I am a former employee of Defendants' Factory Authorized Medical Scope Repair ("FAMSR") and Medical Device Solutions ("MDS").

3.     I was born and raised in the Pittsburgh area.

4.     After graduating from Duquesne University, I began working for FAMSR in June 1998.

5.     FAMSR repairs, services, contracts, buys and sells medical devices.

6.     I was initially hired as an account representative in the Pittsburgh office.  I was

promoted within six months to Territory Development Manager.

7.  Within a few months of that promotion, I trained my replacement and was promoted to Regional Sales Manager.

8.  In November 1999, I bought a house in New Jersey for tax purposes.

9.  Despite this purchase, I retained close ties to Pittsburgh.  I often worked out of my home in Charleroi during the workweek and stayed there on weekends.

10. My banking, direct deposit of my FAMSR paychecks, and all 401(k) Plan transactions remained at my Pittsburgh address.

11. In addition, any necessary postal communications between myself and FAMSR's corporate headquarters were sent to my Pittsburgh address or to FAMSR's Pittsburgh office.

12. The only work connection to the house in New Jersey was that MDS sent my MDS paychecks to that address for a couple of months.

13. In the Fall 2000, I began serving as a Regional Sales Manager for MDS.

14. On October 14, 2000, I attended a regional sales meeting in the state of Georgia at the vacation home of Jeff Trank, FAMSR's President.

15. During the evening of the meeting, Trank grabbed and kissed me.

16. When I protested Trank's unwanted and offensive touching, Trank told me I was "hot and sexy" and refused to release me.

17. Later that same evening, Trank told me he wanted to talk to me.

18. Trank then assaulted me again by picking me up, carrying me to a bed and pinning me down.

2

19. While he had me pinned down, Trank attempted to grope my breasts and rubbed his pelvis against me.

20. Despite my protests, Trank refused to dismount me and continued to proposition me for sex. Trank finally released me. He said everyone would think we had sex anyway.

21. I reported the incident the next day to my supervisor Gregg Constantino.

22. Constantino said that Trank had been drinking and had been having marital problems. Constantino also told me that Trank feared he was no longer attractive to younger women.

23. As of the date of this incident, I supervised a driver, a technician, and an account executive in Pittsburgh. I also supervised several account representatives including two who worked out of their "home" offices in Philadelphia, PA. The two account representatives and myself comprised the "Philadelphia" territory. I also supervised a driver and an account representative for New York/New Jersey, as well as a newly promoted account representative in Columbus, OH.

24. By this point, FAMSR had dissolved its satellite office in Philadelphia.

25. I mostly worked in the field with the account representatives.

26. When I was not in the field, I worked out of my "home" offices in New Jersey or Pittsburgh, depending on my travel schedule.

27. I left New Jersey permanently in December 2000 to live full time with my family in Charleroi.

28. My complete withdrawal from New Jersey was directly caused by the events of

3

October 14, 2000 in that I needed to be closer to my family for support reasons and closer to my health professionals located in the Pittsburgh area.

29.   I continued to work for FAMSR and MDS out of my "home" office in Charleroi, PA.

30.   Following my rejection of Trank's unwanted and offensive sexual advances and my complaint to Constantino, Defendants retaliated against me by changing the terms and conditions my employment.

31.   On or about December 1, 2000, my former attorneys Mary Roman and Kathleen J. Davies of Ogg Jones Cordes & Ignelzi, LLP attempted to resolve the matter by sending a letter to Defendants.

32.   Defendants again retaliated against me by changing the terms and conditions of my employment.

33.   FAMSR induced me to resign my position on March 3, 2001 based upon the misrepresentation that any possible litigation had been settled.

34.   I returned to work on May 29, 2001.

35.   FAMSR again constructively discharged me in June 2001.

36.   During all of the incidents of retaliation from December 2000 through June 2001, I resided only in the Pittsburgh area, worked for FAMSR and MDS out of my home in the Pittsburgh area, and felt the effects of retaliation here in the Pittsburgh area.

37.   I reside in the Pittsburgh, PA area.

38.   Debbie Paolo attended the October 14, 2000 retreat at Trank's home in Georgia and she resides in Pittsburgh, PA.

4

39.    Kurt Cannon is a former manager who can testify about my work ethic and performance and he resides in Philadelphia, PA.

40.    Chet Galek attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in Newark, NJ.

41.    Gregg Constantino attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in GA.

42.    George Pratt is the manager who hired me as well as my direct supervisor who supported my promotions and he resides in GA.

43.    Vince Bertoloni is a former National Sales Manager who can testify about my performance and work ethic and he resides in GA.

44.    Debbie Paolo is a possible witness of the retaliation and as mentioned previously she resides in Pittsburgh, PA.

45.    Gregg Constantino is also a witness of the retaliation and as mentioned previously he resides in GA.

46.    Chet Galek is also a witness of the retaliation and as mentioned previously he resides in Newark, NJ.

5

47.     Charles Meadows is a FAMSR employee and he may testify about events of

retaliation against me and he lives in Philadelphia, PA.

48.     Rich Morton is a FAMSR employee and he may testify about events of retaliation

against me and he lives in Columbus, OH.

I verify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on January 27 , 2003.


Shannon M. Cairns

Sworn to and subcribed
before me this 27th
day of January, 2003.

Notary Public

Notarial Seal
Margie Hammer, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Mar. 20, 2003
Member, Pennsylvania Association of Notaries

6

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

     Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION, and JEFF TRANK,

     Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## DEFENDANTS' RESPONSE TO PLAINTIFF'S INTERROGATORIES
## AND DOCUMENT REQUESTS IN AID OF JURISDICTION

COMES NOW Defendants, Factory Authorized Medical Scope Repair and Jeff Trank in response to Plaintiff's Interrogatories say the following and through their undersigned counsel reply to the Plaintiff's Document Requests in Aid of Jurisdiction dated October 29, 2002, in the same numbered order as contained in the Request:

## INTERROGATORIES

1.   Identify all of the persons answering these Interrogatories and identify by Interrogatory

Number the Interrogatory or Interrogatories each such person has answered or has

participated in answering.        Nicole Duncanson - Interrogatories 1-21;
                                  Shannon Cunningham - Interrogatories 9 and 10.

2.   For each of the Defendant's fiscal years ending 1997, 1998, 1999, 2000 and 2001 and

2002 through August 29, 2002, state total Defendant's gross revenues from (a) all

locations world-wide, (b) all United States locations and (c) all Pennsylvania locations.  If

the Defendant had no revenues in any year outside the fifty states of the United States, use

"0" for that year for world-wide revenues.  If the Defendant's operations in any year were

restricted to fewer than fifty states of the United States, state how many states were

included for that year.

| (a) | 1997 | - | 0 | |
|-----|------|---|---|---|
| | 1998 | - | 0 | |
| | 1999 | - | 0 | |
| | 2000 | - | 0 | |
| | 2001 | - | 0 | |
| | 2002 thru 8/29 - | | 0 | |
| | | | | |
| (b) | 1997 | - | $ 8,019,568.00 | in 21 states |
| | 1998 | - | $11,656,248.00 | in 26 states |
| | 1999 | - | $13,854,170.00 | in 27 states |
| | 2000 | - | $11,561,612.00 | in 23 states |
| | 2001 | - | $10,055,727.00 | in 24 states |
| | 2002 thru 8/29- | | $ 6,493,833.00 | in 19 states |
| | | | | |
| *(c) | 1997 | - | $   697,463.00 | |
| | 1998 | - | $ 1,228,851.00 | |
| | 1999 | - | $ 1,565,256.00 | |
| | 2000 | - | $   934,003.00 | |
| | 2001 | - | $   910,654.00 | |
| | 2002 thru 8/29 - | | $   684,788.00 | |

*The Defendants have no locations in Pennsylvania.  Revenues indicated are attributed to sales
and repairs generated in Pennsylvania

3.    For each of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000, 2001

and 2002 through August 29, 2002, state total revenues (a) world-wide, (b) from

the fifty states of the United States and (c) from Pennsylvania from equipment and

system repair, system and equipment modification, and all other instances of

service performed by the Defendant's employees and agents.  If any such instance

was performed at no cost to the customer, please list each such instance, its date,

and the reason for an absence of cost to the customer.  If the Defendant had no

such revenues in any year outside the fifty states of the United States, use "0" for

that year for world-wide revenues.  If the Defendant's operations in any year were

restricted to fewer than the fifty states of the United States, state how many states

were included for that year.

See response to number 2 above as to revenues.  Any repairs at no cost to the customer
were effected by way of the Defendant's uniform and general practice throughout all states due to
courtesy, warranty, no repairs, capped agreements, or scope purchases.  Any items relating to
scope purchases were included in above figures.  Any capped agreements would also be included
in above figures due to overages/credits on the contract were billed/credited to arrive in sales
figures.

4.    State the Defendant's breakeven point in total gross revenues for each of the

Defendant's fiscal years ending in 1996, 1997, 1998, 1999, 2000 and 2001.
Defendants are uncertain as to what is meant by "breakeven point" but has provided
financial statements attached hereto in an effort to respond to this Interrogatory.

5.    State the contribution to net profit before taxes of Pennsylvania revenues for each

of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000 and 2001.

| 1997 | - | $ 111,134.00 |
| 1998 | - | $ 182,830.00 |
| 1999 | - | $  44,345.00 |
| 2000 | - | ($ 324,109.00) |
| 2001 | - | ($  21,622.00) |

6.    If Pennsy._nia's total gross revenues changed by more than ten percent from one

      year to the next in any of the Defendant's fiscal years ending in 1997, 1998, 1999,

      2000 and 2001 and 2002 through August 29, 2002, state the reason for any such

      increase or decrease.

In 1997, 1998, and 1999, Pennsylvania's total gross revenues increased by more than te
percent from one year to the next. In 2000, Pennsylvania's total gross revenues
decreased by more than ten percent from 1999. In 2001, Pennsylvania's total gross
revenues decreased by less than ten percent from 2000. The Defendants are uncertain
about what is meant by "the reason for any such increase or decrease" as many factors
may be simultaneously involved. The revenues steadily decreased during the period fron
June 1, 1999 to June 12, 2001, when the Plaintiff was the sales manager. The Defendant
provide the following information in an effort to respond to this Interrogatory:

| | Territory | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|---|
| | 410 | $150,943 | - | - | - | $ 51,757 |
| | 420 | $371,645 | - | - | - | $ 110,666 |
| | 430 | $ 81,385 | - | - | - | - |
| | 815 | $ 19,795 | $300,050 | $ 353,508 | $265,959 | $ 382,454 |
| | 820 | $ 26,810 | $311,860 | $ 211,177 | $ 95,380 | $ 256,403 |
| | 825 | $ 46,885 | $453,426 | $ 578,653 | $433,839 | $ 109,374 |
| (Cairns)* | 835 | - | $163,515 | $ 373,156 | $104,711 | - |
| | 845 | - | - | $ 48,762 | $ 34,114 | - |
| Total | | $697,463 | $1,228,851 | $1,565,256 | $934,003 | $ 910,654 |

7.    For each of the years 1999, 2000 and 2001 state the Pennsylvania gross revenues,

      if any, that were wholly attributable to employees and/or agents of the Defendants

      other than the Plaintiff.

Plaintiff became manager on 6/1/99. The individual sales representatives, at that time
were fully in control of their accounts and were self-maintained. In that respect, all sales
from 6/1/99 - 2001 were attributed to other employees. Since the plaintiff became a
manager, sales dropped in that territory.

8.    State how and on what date the Defendant notified Plaintiff of each change in the

      terms and conditions of her employment with the Defendant during the period

      January 1, 1998 through August 29, 2002.

Not applicable. Defendants have no knowledge of any notification.

Defendant tl was either opened, closed or moved in ᴘennsylvania during the period January 1, 1997 through August 29, 2002, giving the date and nature of each such opening, closing or move. For this and the next Interrogatory, opening, closing and moving facilities includes moves from and/or into Pennsylvania.

The Defendant leased a small office at 11532 Parkway D, in Huntington, Pennsylvania for a short time in 1999-2000, but closed this office due to very infrequent use.

10. State the location of each office, sales facility, repair facility or other facility of the Defendant that was neither opened nor closed nor moved in Pennsylvania during the period January 1, 1997 through August 29, 2002.

See listing of facilities by year attached.

11. State the business relationship between FAMSR and MDS during the period January 1, 1997 through October 15, 2002, and if the relationship changed at any time during the period January 1, 1997 through October 15, 2002, give the date and description of each change.

FAMSR outsourced and subcontracted some of its sales services to MDS.

12. State the status of MDS during the period January 1, 1997 through October 15, 2002, and if the status of MDS changed at any time during the period January 1, 1997 through October 15, 2002, give the date and description of each change.

FAMSR began outsourcing repairs to MDS during the last quarter of 2000. FAMSR stopped outsourcing with MDS in December 2001 when they ceased operations.

13. If it is not clear from the answer to the previous two Interrogatories, state the date on which MDS became a "defunct" entity as that term was used in Para. 2 of the Affidavit of Jeff Trank in Support of Motion to Dismiss and state how the change in MDS's status was brought about or came about.

The term "defunct" refers to MDS ceasing operations in December 2001

14. What is the name of the successor in interest to MDS?

    None.

15. State the date of each trip, both business and non-business, into Pennsylvania of

    Jeff Trank and all other officers and top-level managers of the Defendant during

    the period January 1, 1997 through October 15, 2002, and for each trip, state the

    purpose of the visit, the location or locations visited, and the total length of time of

    the trip.

    Defendants have no knowledge of any travel for top-level managers going into
    Pennsylvania during this time period.

16. Describe what negotiations, if any, concerning the employment of Plaintiff by the

    Defendant occurred in Pennsylvania, and describe what negotiations, if any,

    occurred by telephone, e-mail, postal mail or other non-in-person means of

    communication between the Plaintiff in Pennsylvania and any other agent or

    employee of the Defendant, whether located in Pennsylvania or not at the time of

    the communication, giving the date of each communication and identifying all of

    the employees and agents of the Defendant involved in the communication.

Defendants not aware of any negotiations which occurred in Pennsylvania. The
Defendants are only aware of negotiations which occurred outside of Pennsylvania as part
of the initial hiring process. See Plaintiff's resume, offer letter, and application for
employment attached which identify all communications concerning the employment of
Plaintiff.

17.   State the beginning and end of the period in which plaintiff's base office was located in New Jersey and state whether the period was continuous or broken.

July 1999 through May 2000. The period was continuous.

18.   State whether FAMSR is the same entity as Factory Authorized Medical Scope Repairs, Inc., registered as a foreign business in the Bureau of Corporations of the Department of State of the Commonwealth of Pennsylvania.

It is the same entity.

19.   State whether MDS has been registered as a foreign business in the Bureau of Corporations of the Department of State of the Commonwealth of Pennsylvania.

Defendants are uncertain of the legal status of MDS in the Commonwealth of Pennsylvania.

20.   State the extent to which FAMSR is responsible for the debts, including litigation damages, of MDS that have accrued since June 1, 1998.

FAMSR is not responsible for any debts of MDS.

21.   State whether CT Corporation System was FAMSR's service agent in Pennsylvania during the period January 1, 1998 and October 15, 2002, and if CT Corporation System was not FAMSR's service agent in Pennsylvania for that entire period, identify other service agents of FAMSR in Pennsylvania, their mailing addresses and the dates of their tenure as service agents for FAMSR.

CT Corporation System was the service agent for this period.

_____

Representative of Defendants

Print Name: _____

STATE OF FLORIDA        )
                        )ss:
COUNTY OF BROWARD        )

The foregoing instrument was acknowledged before me this _30TH_ day of December,

2002, by _Nicole Duncanson_____, who is personally known to me or who has

produced _driver's license # D525-636-69-685-0_____, identification and who did (did

not) take an oath.

Dennis O'Connor
My Commission DD030819
Expires June 03, 2005

_____
NOTARY PUBLIC
State of Florida-at-large

MY COMMISSION EXPIRES:

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1997 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 8,019,567.57 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 2,357,192.91 | 29.39% |
| GROSS PROFIT | 5,662,374.66 | 70.61% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 2,956,029.40 | 36.86% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 1,425,530.39 | 17.78% |
| OPERATING EXPENSES | 4,381,559.79 | 54.64% |
| OPERATING INCOME | 1,280,814.87 | 15.97% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (2,975.19) | -0.04% |
| NET INCOME | 1,277,839.68 | 15.93% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1998 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,656,248.73 | 100.00% |
| | | |
| TOTAL REVENUE | | |
| COST OF SALES | 3,539,850.35 | 30.37% |
| GROSS PROFIT | 8,116,398.38 | 69.63% |
| | | |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 4,013,431.86 | 34.43% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,297,079.32 | 19.71% |
| OPERATING EXPENSES | 6,310,511.18 | 54.14% |
| OPERATING INCOME | 1,805,887.20 | 15.49% |
| OTHER INCOME / (EXPENSES) | | |
| | (71,659.60) | -0.61% |
| NET INCOME | 1,734,227.60 | 14.88% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1999 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 13,854,169.83 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,388,501.79 | 31.68% |
| GROSS PROFIT | 9,465,668.04 | 68.32% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 5,291,279.64 | 38.19% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 3,229,257.48 | 23.31% |
| OPERATING EXPENSES | 8,520,537.12 | 61.50% |
| OPERATING INCOME | 945,130.92 | 6.82% |
| OTHER INCOME / (EXPENSES) | (552,630.27) | -3.99% |
| NET INCOME | 392,500.65 | 2.83% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

| | YTD thru 12/31/2000 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,561,612.42 | 100.00% |
| | | |
| TOTAL REVENUE | | |
| COST OF SALES | 4,326,046.00 | 37.42% |
| GROSS PROFIT | 7,235,566.42 | 62.58% |
| | | |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 4,285,615.86 | 37.07% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 3,557,303.81 | 30.77% |
| OPERATING EXPENSES | 7,842,919.67 | 67.84% |
| OPERATING INCOME | (607,353.25) | -5.25% |
| | | |
| OTHER INCOME / (EXPENSES) | (3,404,649.44) | -29.45% |
| NET INCOME | (4,012,002.69) | -34.70% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|                                      | YTD thru 12/31/2001 | YTD as % of Sales |
|--------------------------------------|--------------------:|------------------:|
| REPAIR REVENUE                       | 10,055,727.01       | 100.00%           |
| TOTAL REVENUE                        |                     |                   |
| COST OF SALES                        | 4,214,866.75        | 41.92%            |
| GROSS PROFIT                         | 5,840,860.26        | 58.08%            |
| OPERATING EXPENSES:                  |                     |                   |
| SELLING EXPENSES                     | 3,419,473.44        | 34.01%            |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,828,175.40        | 28.13%            |
| OPERATING EXPENSES                   | 6,247,648.84        | 62.13%            |
| OPERATING INCOME                     | (406,788.58)        | -4.05%            |
| OTHER INCOME / (EXPENSES)            | 168,033.81          | 1.67%             |
| NET INCOME                           | (238,754.77)        | -2.37%            |

## DOCUMENT REQUESTS

Because the volume of documents is massive, Defendants require Plaintiff to arrange for copying by an independent copying service, at Plaintiff's expense. Defendants will cooperate with Plaintiff in reviewing the documents for copying at its premises on a date mutually agreed upon by the parties.

1.      All responsive documents in defendants' possession will be produced.

2.      All responsive documents in defendants' possession will be produced.

3.      All responsive documents in defendants' possession will be produced.

4.      Financial Statements attached.

5.      All responsive documents in defendants' possession will be produced.

6.      All responsive documents in defendants' possession will be produced.

7.      All responsive documents in defendants' possession will be produced.

8.      See listing of facilities by year attached. All other responsive documents relied upon in defendants' possession will be produced.

9.      See listing of facilities by year attached. All other responsive documents relied upon in defendants' possession will be produced.

10.     This request is vague and the Defendants are uncertain exactly what is sought by plaintiff.

11.     This request is vague and the Defendants are uncertain exactly what is sought by plaintiff.

12.     No known documents exist at this time, but should any such documents become known they will be produced.

13.     Copy of Application for Certificate of Authority as stamped by the Pennsylvanaia Department of State on July 16, 1997 bearing Entity number 2765654, attached.

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1997 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 8,019,567.57 | 100.00% |
| TOTAL REVENUE | | |
| COST OF SALES | 2,357,192.91 | 29.39% |
| GROSS PROFIT | 5,662,374.66 | 70.61% |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 2,956,029.40 | 36.86% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 1,425,530.39 | 17.78% |
| OPERATING EXPENSES | 4,381,559.79 | 54.64% |
| OPERATING INCOME | 1,280,814.87 | 15.97% |
| OTHER INCOME / (EXPENSES) | | |
|  | (2,975.19) | -0.04% |
| NET INCOME | 1,277,839.68 | 15.93% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1998 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,656,248.73 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 3,539,850.35 | 30.37% |
| GROSS PROFIT | 8,116,398.38 | 69.63% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,013,431.86 | 34.43% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,297,079.32 | 19.71% |
| OPERATING EXPENSES | 6,310,511.18 | 54.14% |
| OPERATING INCOME | 1,805,887.20 | 15.49% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (71,659.60) | -0.61% |
| NET INCOME | 1,734,227.60 | 14.88% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|                                       | YTD thru 12/31/1999 | YTD as % of Sales |
|---------------------------------------|--------------------:|------------------:|
| REPAIR REVENUE                        |       13,854,169.83 |           100.00% |
|                                       |                     |                   |
| TOTAL REVENUE                         |                     |                   |
| COST OF SALES                         |        4,388,501.79 |            31.68% |
| GROSS PROFIT                          |        9,465,668.04 |            68.32% |
|                                       |                     |                   |
| OPERATING EXPENSES:                   |                     |                   |
| SELLING EXPENSES                      |        5,291,279.64 |            38.19% |
| GENERAL AND  ADMINISTRATIVE EXPENSES  |        3,229,257.48 |            23.31% |
| OPERATING EXPENSES                    |        8,520,537.12 |            61.50% |
| OPERATING INCOME                      |          945,130.92 |             6.82% |
|                                       |                     |                   |
| OTHER INCOME / (EXPENSES)             |        (552,630.27) |            -3.99% |
| NET INCOME                            |          392,500.65 |             2.83% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2000 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,561,612.42 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,326,046.00 | 37.42% |
| GROSS PROFIT | 7,235,566.42 | 62.58% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,285,615.86 | 37.07% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 3,557,303.81 | 30.77% |
| OPERATING EXPENSES | 7,842,919.67 | 67.84% |
| OPERATING INCOME | (607,353.25) | -5.25% |
| OTHER INCOME / (EXPENSES) | (3,404,649.44) | -29.45% |
| NET INCOME | (4,012,002.69) | -34.70% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2001 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 10,055,727.01 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,214,866.75 | 41.92% |
| GROSS PROFIT | 5,840,860.26 | 58.08% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 3,419,473.44 | 34.01% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,828,175.40 | 28.13% |
| OPERATING EXPENSES | 6,247,648.84 | 62.13% |
| OPERATING INCOME | (406,788.58) | -4.05% |
| OTHER INCOME / (EXPENSES) | 168,033.81 | 1.67% |
| NET INCOME | (238,754.77) | -2.37% |

| 1997 | 1998 | 1999 |
|---|---|---|
| **Location** **CORPORATE OFC-Rprs/Sales** | **CORPORATE OFC-Rprs/Sales** | **CORPORATE OFC-Rprs/Sales** |
| Payee Keith Collins-Moved Out 5/97 | Thomas Lester | Thomas Lester |
| address 2001 Blount Road | 637 N.W. 12th Avenue | 637 N.W. 12th Avenue |
| address Pompano Beach, Fl 33069 | Deerfield Beach, FL 33342 | Deerfield Beach, FL 33342 |
| **Location** **CORPORATE OFC-Rprs/Sales** | **BOSTON OFC-Rprs/Sales** | **ATLANTA REP OFC-Sales** |
| Payee Thomas Lester-Moved in 6/97 | Bramson Associates | Dr.Mclarnon / Dr.Richard Bunt |
| address 637 N.W. 12th Avenue | 24 Crescent Street # 106 | 3155 Presidential Dr. #104 |
| address Deerfield Beach, FL 33342 | Waltham, MA 02154 | Atlanta, GA 30340 |
| **Location** **CHICAGO-Repairs/Sales** | **CHICAGO-Repairs/Sales** | **ATLANTA MGR OFC-Sales** |
| Payee Gary Soloman & Co. | Gary Soloman & Co. | Keystone Commercial Group |
| address 3166 N. Lincoln Ave #312 | 3166 N. Lincoln Ave #312 | 533 Johnson Ferry Road # 450 |
| address Chicago, IL 60657 | Chicago, IL 60657 | Marietta, GA 30068 |
| **Location** **CLEVELAND-Repairs/Sls** | **CLEVELAND-Repairs/Sls** | **ATLANTA MGR OFC-2-Sales** |
| Payee Detroit Cook Building | Detroit Cook Building | Keystone Commercial Group |
| address 14900 Detroit Ave #205 | 14900 Detroit Ave #205 | 533 Johnson Ferry Road # 400 |
| address Lakewood, OH 44107 | Lakewood, OH 44107 | Marietta, GA 30068 |
| **Location** **COLUMBUS-Rprs/Sls** | **COLUMBUS-Rprs/Sls** | **BOSTON OFC-Rprs/Sales** |
| Payee 513 Limited Partnership | 513 Limited Partnership | Bramson Associates |
| address 513 East Rich Street | 513 East Rich Street | 24 Crescent Street # 106 |
| address Columbus, OH 43215 | Columbus, OH 43215 | Waltham, MA 02154 |
| **Location** **DALLAS OFC-Rprs/Sls** | **DALLAS OFC-Rprs/Sls** | **BUFFALO OFC-Sales** |
| Payee Plaza Tower | Plaza Tower | Mike Cutting |
| address 2121 W. Airport Freeway Suite #225 | 2121 W. Airport Freeway Suite #225 | 2671 Harlem Road |
| address Irving, TX 75062 | Irving, TX 75062 | Cheektowaga, NY 14225 |
| **Location** **DETROIT OFC-Repairs/Sales** | **DETROIT OFC-Repairs/Sales** | **CHICAGO-Repairs/Sales** |
| Payee Lathrup Office Center | Lathrup Office Center | Gary Soloman & Co. |
| address 27260 Southfield Road #3 | 27260 Southfield Road #3 | 3166 N. Lincoln Ave #312 |
| address Latrhup, MI 48076 | Latrhup, MI 48076 | Chicago, IL 60657 |
| **Location** **LOS ANGELES-Repairs/Sales** | **HARTFORD OFC-Rprs/Sales** | **CINCINNATI OFC-Rps/Sls** |
| Payee Harbour Gateway LLC | Smith Street Development | George Robinson |
| address 19401 S. Vermont Ave #A205A | 460 Smith  Street # B-1 | 327 West 34th Street |
| address Torrence, CA 90503 | Middletown, CT 06547 | Covington, KY 41015 |
| **Location** **ST. LOUIS OFC-Repairs/Sales** | **HOUSTON OFC-Rprs/Sls** | **CLEVELAND-Repairs/Sls** |
| Payee Rafael Fournier | 10p10lp Ltd. Partnership/Boxer Prop. | Detroit Cook Building |
| address 2249 S. Brentwood Blvd #6 | 11999 Katy Freeway Suite #150-0 | 14900 Detroit Ave #205 |
| address St. Louis, MO 63144 | Houston, TX 77079 | Lakewood, OH 44107 |
| **Location** **NEW ORLEANS-Repairs/Sls** | **INDIANAPOIS-Repairs/Sls** | **COLUMBUS-Rprs/Sls** |
| Payee Preferred Realty | Kirby Co. of Northside | 513 Limited Partnership |
| address 4300 S  I-10 Service Road #103U | 10085 Allisonville Road #103 | 513 East Rich Street |
| address Metairie, LA 70001 | Fishers, IN 46038 | Columbus, OH 43215 |
| cation | **KANSAS CITY OFC-Sales** | **DALLAS OFC-Rprs/Sls** |
| yee | U.S. Properties | Plaza Tower |
| dress | 5846 Horton Street #212 | 2121 W. Airport Freeway Suite #225 |
| dress | Mission, KS 66202 | Irving, TX 75062 |

| | 1997 | 1998 | 1999 |
|---|---|---|---|

Location
Payee
address
address

**LOS ANGELES-Repairs/Sales**
Harbour Gateway LLC
19401 S. Vermont Ave #A205A
Torrence, CA 90503

**DETROIT OFC-Repairs/Sales**
Lathrup Office Center
27260 Southfield Road #3
Latrhup, MI 48076

Location
Payee
address
address

**LOUISVILLE -Repairs/Sales**
CGS Investments
4814 Preston Hwy # 21
Louisville, KY 40213

**HARTFORD OFC-Rprs/Sales**
Smith Street Development
460 Smith Street # B-1
Middletown, CT 06547

Location
Payee
address
address

**MILWAUKEE-Repairs/Sales**
Metro Investments Inc.
3610 N. Oakland Avenue
Shorewood, WI 53211

**HOUSTON OFC-Rprs/Sls**
10p10lp Ltd. Partnership/Boxer Pro
11999 Katy Freeway Suite #150-0
Houston, TX 77079

Location
Payee
address
address

**MINNEAPOLIS-Repairs/Sales**
PCOB Properties
3601 Park Center Blvd #136
St. Louis, MN 55416

**INDIANAPOIS-Repairs/Sls**
Kirby Co. of Northside
10085 Allisonville Road #103
Fishers, IN 46038

Location
Payee
address
address

**NEW ORLEANS-Repairs/Sls**
Preferred Realty
4300 S I-10 Service Road #103U
Metairie, LA 70001

**KANSAS CITY OFC-Sales**
U.S. Properties
5846 Horton Street #212
Mission, KS 66202

Location
Payee
address
address

**OKLAHOMA CITY-Sales**
OKC Ltd Partnership / Banta Realty
5909 NW Expresswy #307
Oklahoma City, OK 73132

**LOS ANGELES-Repairs/Sales**
Harbour Gateway LLC
19401 S. Vermont Ave #A205A
Torrence, CA 90503

Location
Payee
address
address

**SAN DIEGO-Repairs/Sales**
Mission Valley Terrace
3435 Camino Del Rio S #318
San Diego, CA 92108

**LOUISVILLE -Repairs/Sales**
CGS Investments
4814 Preston Hwy # 21
Louisville, KY 40213

Location
Payee
address
address

**SAN FRANSICO-Repairs/Sls**
PKD Properties Inc.
5200 Huntington Ave Suite # 330
Richmond, CA 94804

**MILWAUKEE-Repairs/Sales**
Metro Investments Inc.
3610 N. Oakland Avenue
Shorewood, WI 53211

Location
ayee
ddress
ddress

**SEATTTLE OFC-Repairs/Sls**
Del Mar Bldg.
1123 Maple Avenue SW #200
Renton, WA 98055

**MINNEAPOLIS-Repairs/Sales**
PCOB Properties
3601 Park Center Blvd #136
St. Louis, MN 55416

ocation
ayee
ddress
ddress

**ST. LOUIS OFC-Repairs/Sales**
Rafael Fournier
2249 S. Brentwood Blvd #6
St. Louis, MO 63144

**NEW ORLEANS-Repairs/Sls**
Preferred Realty
4300 S I-10 Service Road #103U
Metairie, LA 70001

cation
yee
dress
dress

**TAMPA-Repairs/Sales**
Westken / Kennedy West Bldg.
4601 W. Kennedy Blvd #234
Tampa, Fl 33609

**NEWARK OFC-Rprs/Sales**
Eugene Siciliano
#4 Chester Avenue
Bloomfield, NJ 07003

| | 1997 | 1998 | 1999 |
|---|---|---|---|

Location
Payee
address
address

**OKLAHOMA CITY-Sales**
OKC Ltd Partnership / Banta Realt
5909 NW Expresswy #307
Oklahoma City, OK 73132

Location
Payee
address
address

**PHILADELPHIA-Rprs/Sales**
Brandywine Realty
3002 Lincoln Drive Suite K
Marlton, NJ 08053

Location
Payee
address
address

**PITTSBURGH-Repairs/Sales**
William Bailey
11532 Parkway D
Huntington, PA 15642

Location
Payee
address
address

**SACRAMENTO-Repairs/Sls**
Sun Pacific Business Center
5777 Madison Ave #311
Sacramento. CA 95814

Location
Payee
address
address

**SAN ANTONIO OFC-Sales**
GNC Properties
1603 Babcock Road #144
San Antonio, TX 78229

Location
Payee
address
address

**SAN DIEGO-Repairs/Sales**
Mission Valley Terrace
3435 Camino Del Rio S #318
San Diego, CA 92108

Location
Payee
address
address

**SAN FRANSICO-Repairs/Sls**
PKD Properties Inc.
5200 Huntington Ave Suite # 330
Richmond, CA 94804

Location
Payee
address
address

**SEATTTLE OFC-Repairs/Sls**
Del Mar Bldg.
1123 Maple Avenue SW #200
Renton, WA 98055

Location
Payee
address
address

**ST. LOUIS OFC-Repairs/Sales**
Rafael Fournier
2249 S. Brentwood Blvd #6
St. Louis, MO 63144

Location
Payee
address
address

**TAMPA-Repairs/Sales**
Westken / Kennedy West Bldg.
4601 W. Kennedy Blvd #234
Tampa, Fl 33609

Location
Payee
address
address

| | **2000** | **2001** | **2002** |
|---|---|---|---|
| Location | **CORPORATE OFC-Rprs/Sales** | **CORPORATE OFC-Rprs/Sales** | **CORPORATE OFC-Rprs/Sales** |
| Payee | Lambda Novatronics | Lambda Novatronics | Invensys Building Systems Inc. |
| address | 2859 West McNab Road | 2859 West McNab Road | 2859 West McNab Road |
| address | Pompano Beach, Fl 33062 | Pompano Beach, Fl 33062 | Pompano Beach, Fl 33062 |
| | | | |
| Location | **ATLANTA REP OFC-Sales** | **ATLANTA MGR OFC-Sales** | **ATLANTA MGR OFC-Sales** |
| Payee | Dr.Mclarnon / Dr.Richard Bunt | Keystone Commercial Group | Keystone Commercial Group |
| address | 3155 Presidential Dr. #104 | 533 Johnson Ferry Road # 450 | 533 Johnson Ferry Road # 450 |
| address | Atlanta, GA 30340 | Marietta, GA 30068 | Marietta, GA 30068 |
| | | | |
| Location | **ATLANTA MGR OFC-Sales** | **BOSTON OFC-Rprs/Sales** | **BOSTON OFC-Rprs/Sales** |
| Payee | Keystone Commercial Group | Bramson Associates | Bramson Associates |
| address | 533 Johnson Ferry Road # 450 | 24 Crescent Street # 106 | 24 Crescent Street # 106 |
| address | Marietta, GA 30068 | Waltham, MA 02154 | Waltham, MA 02154 |
| | | | |
| Location | **ATLANTA MGR OFC-2-Sales** | **CHICAGO-Repairs/Sales** | **MINNEAPOLIS-Repairs/Sales** |
| Payee | Keystone Commercial Group | Gary Soloman & Co. | Park Avenue of Wayzata |
| address | 533 Johnson Ferry Road # 400 | 3166 N. Lincoln Ave #312 | 604-252 Twelve Oaks Ctr |
| address | Marietta, GA 30068 | Chicago, IL 60657 | 15500 Wayzata Blvd |
| | | | Wayzata , MN 55391 |
| Location | **BOSTON OFC-Rprs/Sales** | **CINCINNATI OFC-Rps/Sls** | **SAN FRANSICO-Repairs/Sls** |
| Payee | Bramson Associates | George Robinson | PKD Properties Inc. |
| address | 24 Crescent Street # 106 | 327 West 34th Street | 5200 Huntington Ave Suite # 330 |
| address | Waltham, MA 02154 | Covington, KY 41015 | Richmond, CA 94804 |
| | | | |
| Location | **BUFFALO OFC-Sales** | **DETROIT OFC-Repairs/Sales** | |
| Payee | Mike Cutting | Lathrup Office Center | |
| address | 2671 Harlem Road | 27260 Southfield Road #3 | |
| address | Cheektowaga, NY 14225 | Latrhup, MI 48076 | |
| | | | |
| Location | **CHICAGO-Repairs/Sales** | **MINNEAPOLIS-Repairs/Sales** | |
| Payee | Gary Soloman & Co. | Park Avenue of Wayzata | |
| address | 3166 N. Lincoln Ave #312 | 604-252 Twelve Oaks Ctr | |
| address | Chicago, IL 60657 | 15500 Wayzata Blvd | |
| | | Wayzata , MN 55391 | |
| Location | **CINCINNATI OFC-Rps/Sls** | **SAN FRANSICO-Repairs/Sls** | |
| Payee | George Robinson | PKD Properties Inc. | |
| address | 327 West 34th Street | 5200 Huntington Ave Suite # 330 | |
| address | Covington, KY 41015 | Richmond, CA 94804 | |
| | | | |
| Location | **CLEVELAND-Repairs/Sls** | | |
| Payee | Detroit Cook Building | | |
| address | 14900 Detroit Ave #205 | | |
| address | Lakewood, OH 44107 | | |
| | | | |
| Location | **COLUMBUS-Rprs/Sls** | | |
| Payee | 513 Limited Partnership | | |
| address | 513 East Rich Street | | |
| address | Columbus, OH 43215 | | |
| | | | |
| Location | **DALLAS OFC-Rprs/Sls** | | |
| Payee | Plaza Tower | | |
| address | 2121 W. Airport Freeway Suite #225 | | |
| address | Irving, TX 75062 | | |

| | **2000** | **2001** | **2002** |
|---|---|---|---|

Location   **DETROIT OFC-Repairs/Sales**
Payee      Lathrup Office Center
address    27260 Southfield Road #3
address    Latrhup, MI 48076

Location   **HARTFORD OFC-Rprs/Sales**
Payee      Smith Street Development
address    460 Smith  Street # B-1
address    Middletown, CT 06547

Location   **HOUSTON OFC-Rprs/Sls**
Payee      10p10lp Ltd. Partnership/Boxer Prop.
address    11999 Katy Freeway Suite #150-0
address    Houston, TX 77079

Location   **INDIANAPOIS-Repairs/Sls**
Payee      Kirby Co. of Northside
address    10085 Allisonville Road #103
address    Fishers, IN 46038

Location   **KANSAS CITY OFC-Sales**
Payee      U.S. Properties
address    5846 Horton Street #212
address    Mission, KS 66202

Location   **LOS ANGELES-Repairs/Sales**
Payee      Harbour Gateway LLC
address    19401 S. Vermont Ave #A205A
address    Torrence, CA 90503

Location   **LOUISVILLE -Repairs/Sales**
Payee      CGS Investments
address    4814 Preston Hwy # 21
address    Louisville, KY 40213

Location   **MILWAUKEE-Repairs/Sales**
ayee       Metro Investments Inc.
ddress     3610 N. Oakland Avenue
ddress     Shorewood, WI  53211

location   **MINNEAPOLIS-Repairs/Sales**
ayee       PCOB Properties
ldress     3601 Park Center Blvd #136
ldress     St. Louis, MN 55416
dress      **MN ofc moved see below**

cation     **MINNEAPOLIS-Repairs/Sales**
yee        Park Avenue of Wayzata
dress      604-252 Twelve Oaks Ctr
dress      15500 Wayzata Blvd
           Wayzata , MN 55391
ation      **NEW ORLEANS-Repairs/Sls**
ee         Preferred Realty
ress       4300 S  I-10 Service Road #103U
ress       Metairie, LA 70001

| **2000** | **2001** | **2002** |
|---|---|---|

Location **NEWARK OFC-Rprs/Sales**
Payee     Eugene Siciliano
address   #4 Chester Avenue
address   Bloomfield, NJ 07003

Location **OKLAHOMA CITY-Sales**
Payee     OKC Ltd Partnership / Banta Realty
address   5909 NW Expresswy #307
address   Oklahoma City, OK 73132

Location **PHILADELPHIA-Rprs/Sales**
Payee     Brandywine Realty
address   3002 Lincoln Drive Suite K
address   Marlton, NJ 08053

Location **PITTSBURGH-Repairs/Sales**
Payee     William Bailey
address   11532 Parkway D
address   Huntington, PA 15642

Location **SACRAMENTO-Repairs/Sls**
Payee     Sun Pacific Business Center
address   5777 Madison Ave #311
address   Sacramento. CA 95814

Location **SAN ANTONIO OFC-Sales**
Payee     GNC Properties
address   1603 Babcock Road #144
address   San Antonio, TX 78229

Location **SAN DIEGO-Repairs/Sales**
Payee     Mission Valley Terrace
address   3435 Camino Del Rio S #318
address   San Diego, CA 92108

Location **SAN FRANSICO-Repairs/Sls**
Payee     PKD Properties Inc.
address   5200 Huntington Ave Suite # 330
address   Richmond, CA 94804

Location **SEATTTLE OFC-Repairs/Sls**
Payee     Del Mar Bldg.
address   1123 Maple Avenue SW #200
address   Renton, WA 98055

Location **ST. LOUIS OFC-Repairs/Sales**
Payee     Rafael Fournier
address   2249 S. Brentwood Blvd #6
address   St. Louis, MO 63144

Location **TAMPA-Repairs/Sales**
Payee     Westken / Kennedy West Bldg.
address   4601 W. Kennedy Blvd #234
address   Tampa, Fl 33609

Brackin & Saye
ASSOCIATES

# Shannon M. Cairns

**OBJECTIVE**  A rewarding sales position with your company.

**EDUCATION**  DUQUESNE UNIVERSITY
Pittsburgh, PA
B.A. Liberal Arts; Minor: Biochemistry  May 1998
GPA 3.7/4.0 (Cum Laude)

**ADDITIONAL TRAINING**
Economics, Computers, Public Speaking, $A\Gamma\Delta$ Leadership Training

## FUND-RAISING & PROMOTIONAL EXPERIENCE

Planned and executed promotional programs. Staff Member: Carlow College's Women of Spirit Program.  Directed publicity efforts for Clairton City Pool, which included press releases and fliers along with verbal soliciting.

Designed and executed fund-raising campaigns. Developed innovative techniques- such as a Hot Legs contest, swim-a-thons, & auctions to promote interest in fundraising for the Make-a-Wish and Juvenile Diabetes foundations, which gained campus-wide attention. Panhellenic Officer: 97-98 & $A\Gamma\Delta$ Sorority.

## LEADERSHIP EXPERIENCE

Led the Duquesne SwimTeam as captain for two years from 1996 - 98

Coached swimming (White Oak, Clairton, & Spanish Club) and learned to deal with unhappy, irate customers and how to resolve conflict serving as Head Lifeguard at Clairton City Pools: 96-97

**EXTRACURRICULAR ACTIVITIES**
Varsity Swim Team: 94-98
Varsity Lacrosse Team: 97-98
Alpha Gamma Delta Sorority (Social, VP Member Recruitment): 94-98
Duquesne University Volunteer Council (Oxfam, Habitat for Humanity)

**AWARDS**
Omicron Delta Kappa National Honor Society
National Slovak Society Scholarship: 94-98
Dean's List & Director of Athletics Honor Roll: 94-98
MAAC Conference All Academic Team: 97
Atlantic -10 Conference All Academic Team: 96-98
Academic All American: 97
Catholic Women's Club & Italian Sports Hall of Fame Scholarship: 94-98
Swimming Scholarship (six time record holder, Division I program)
Atlantic-10 Conference finalist: 94-98 & Top 3 finisher: 98
Top point scorer/Team MVP & Student-Athlete of The Year Nominee 97- 98

**REFERENCES AVAILABLE UPON REQUEST**

# Factory Authorized
# Medical Scope Repair, Inc.

June 16, 1998

Shannon M. Cairns
55 Orchard Street
Charleroi, PA 15022

Dear Shannon:

Factory Authorized Medical Scope Repair, Inc. is pleased to extend to you an offer of employment as Sales Representative for the Pittsburgh territory. Your annual base salary will be $24,000. To help your "cash flow", during the first few months of employment you will be paid your base salary the 15th of each month and the last day of each month. After that your base pay will be paid each month on the last day of the month. Commission payments are made at the end of the following month in which the commission was earned.

This offer of employment is contingent upon the following criteria:

- Your ability to provide documentation of your identity and legal right to work in the United States in accordance with the 1986 Immigration Reform and Control Act. The attached sheet provides you with examples of documents you should bring with you on your first day of employment.

- Your signing of the company's Confidentiality and Non-competition Agreement (enclosure). Bring this form with you on your first day.

- During the first 12 months, should your employment terminate for any reason at either party's request, you agree to reimburse Factory Authorized half the amount of the recruiter's fee (50% of $5,000.00).

In accordance with our policy, all employment with FAMSR is for an indefinite duration and is not pursuant to any contract unless there is a separate written agreement signed by you and an Officer of FAMSR.

Should you accept our offer of employment, we would like you to start training on Monday, June 15, 1998. Please let us know your decision at your earliest convenience. Shannon, we look forward to a positive response from you as we feel you will contribute greatly to the success of our team. In the meantime, should you have any questions, please feel free to call me.

Sincerely,

Jo-Ann Orlando
Office Manager

accept your offer of employment _____
                                        Signature/Date

# APPLICATION FOR EMPLOYMENT

**PRE-EMPLOYMENT**
**QUESTIONAIRE**
**AN EQUAL**
**OPPORTUNITY EMPLOYER**

## PERSONAL INFORMATION

| NAME (LAST NAME FIRST) *Cairns, Shannon* | | | SOCIAL SECURITY NO. *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* | |
|---|---|---|---|---|
| PRESENT ADDRESS *55 Orchard St.* | APT. NO. | CITY *Charleroi* | STATE *Pa* | ZIP *15022* |
| PERMANENT ADDRESS | APT. NO. | CITY | STATE | ZIP |

ARE YOU 18 YEARS OR OLDER? ☑ YES ☐ NO    PHONE *(724) 483-0461*

## DESIRED EMPLOYMENT

POSITION *Pittsburgh Sales Rep*    DATE YOU CAN START *6-15-98*    SALARY DESIRED *24K base*

ARE YOU EMPLOYED NOW? ☐ YES ☑ NO    IF SO MAY WE INQUIRE OF YOUR PRESENT EMPLOYER? ☐ YES ☐ NO

EVER APPLIED TO THE COMPANY BEFORE? ☐ YES ☑ NO    WHERE?    WHEN?

EVER WORKED FOR THIS COMPANY BEFORE? ☐ YES ☑ NO    WHERE?    WHEN?

REASON FOR LEAVING

WHO REFERRED YOU TO THIS COMPANY?
☑ EMPLOYMENT AGENCY    ☐ NEWSPAPER ADVERTISING    ☐ FRIEND
☐ STATE EMPLOYMENT OFFICE    ☐ COLLEGE PLACEMENT SERVICE    ☐ WALK IN    ☐ OTHER

## EDUCATION

| SCHOOL LEVEL | NAME AND LOCATION OF SCHOOL | NO. OF YEARS ATTENDED | DID YOU GRADUATE? | SUBJECTS STUDIED |
|---|---|---|---|---|
| HIGH SCHOOL | Serra Catholic McKeesport, Pa. | 4 | yes | |
| COLLEGE | Duquesne University Pittsburgh, Pa. | 4 | yes | Biochemistry Liberal Arts |
| TRADE, BUSINESS OR CORRESPONENCE SCHOOL | | | | |

## GENERAL

SUBJECT OF SPECIAL STUDY OR RESEARCH WORK
*Biochemistry*

SPECIAL TRAINING
*Leardership training*

SPECIAL SKILLS
*Computers, French*

**REFERENCES**
BELOW, GIVE THE NAMES OF THREE PERSONS YOU ARE NOT RELATED TO, WHOM YOU HAVE KNOWN AT LEAST ONE YEAR.

| | NAME | ADDRESS | BUSINESS | YEARS ACQUAINTED |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |

**SERVICE RECORD**

| BRANCH OF SERVICE | DISCHARGE DATE |
|---|---|
| | RANK |

HAVE YOU BEEN CONVICTED OF A FELONY WITHIN THE LAST 5 YEARS?    ☐ YES   ☐ NO

IF YES, EXPLAIN. (WILL NOT NECESSARILY EXCLUDE YOU FROM CONSIDERATION)

**AUTHORIZATION**

"I CERTIFY THAT THE FACTS CONTAINED IN THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND UNDERSTAND THAT, IF EMPLOYED, FALSIFIED STATEMENTS ON THIS APPLICATION SHALL BE GROUNDS FOR DISMISSAL.

I AUTHORIZE INVESTIGATION OF ALL STATEMENTS CONTAINED HEREIN AND THE REFERENCES AND EMPLOYERS LISTED ABOVE TO GIVE YOU ANY AND ALL INFORMATION CONCERNING MY PREVIOUS EMPLOYMENT AND ANY PERTINENT INFORMATION THEY MAY HAVE, PERSONAL OR OTHERWISE AND RELEASE THE COMPANY FROM ALL LIABILITY FOR ANY DAMAGE THAT MAY RESULT FROM UTILIZATION OF SUCH INFORMATION.

I ALSO UNDERSTAND AND AGREE THAT NO REPRESENTATIVE OF THE COMPANY HAS ANY AUTHORITY TO ENTER INTO ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIED PERIOD OF TIME, OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING, UNLESS IT IS IN WRITING AND SIGNED BY AN AUTHORIZED COMPANY REPRESENTATIVE."

10/16/98
DATE

*Shannon M Cairo*
SIGNATURE

Microfilm Number _____

Entity Number  2265654

JUL 1 6 1997

Filed with the Department of State on _____

_Jodette Lawson_
Secretary of the Commonwealth

## APPLICATION FOR CERTIFICATE OF AUTHORITY
### DSCB:15-4124/6124 (Rev 90)

Indicate type of corporation (check one):

**X** Foreign Business Corporation  (15 Pa.C.S. § 4124)

___ Foreign Nonprofit Corporation (15 Pa.C.S. § 6124)

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. (relating to corporations and unincorporated associations) the undersigned association hereby states that:

1. The name of the corporation is:  Factory Authorized Medical Scope Repairs, Inc.

_____

2. The name which the corporation adopts for use in this Commonwealth is (complete only when the corporation must adopt a corporate designator for use in Pennsylvania):

_____

3. (If the name set forth in Paragraph 1 is not available for use in this Commonwealth, complete the following):

The fictitious name which the corporation adopts for use in transacting business in this Commonwealth is:

_____

This corporation shall do business in Pennsylvania only under such fictitious name pursuant to the attached resolution of the board of directors under the applicable provisions of 15 Pa.C.S (relating to corporations and unincorporated associations) and the attached form DSCB:54-311 (Application for Registration of Fictitious Name).

4. The name of the jurisdiction under the laws of which the corporation is incorporated is:

Florida

5. The address of its principal office under the laws of the jurisdiction in which it is incorporated is:

637 NW 12th Avenue, Deerfield Beach, Florida  33442, Broward
Number and Street          City          State          Zip          County

6. The (a) address of this corporation's proposed registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

(a) _____
Number and Street          City          State          Zip          County

(b) c/o: C T Corporation System                                Allegheny County
Name of Commercial Registered Office Provider                        County

PA - 404 - 10/1/92)

JUL 16 97

PA Dept. of State

CB:15-4124/6124 (Rev 90)-2

For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

(Check one of the following):

__X__ (Business corporation): The corporation is a corporation incorporated for a purpose or purposes involving pecuniary profit, incidental or otherwise.

_____ (Nonprofit corporation): The corporation is a corporation incorporated for a purpose or purposes not involving pecuniary profit, incidental or otherwise.

IN TESTIMONY WHEREOF, the undersigned corporation has caused this Application for a Certificate [ Authority to be signed by a duly authorized officer this __20th__ day of __June__, 19 __97__.

Factory Authorized Medical Scope Repairs,
(Name of Corporation)

BY: _____
        Jeff Trank (Signature)

TITLE: President

(P.A._404)

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Response to Plaintiff's Interrogatories and

Document Requests in Aid of Jurisdiction was served via facsimile and first class mail this 27th day

of December, 2002, upon the following:

James B. Lieber
LEIBER & HAMMER, P.C.
P.A.I.D. #21748
5528 Walnut Street
Pittsburgh, PA, 15232-2312
(412) 687-2231
(412) 687-3140 fax

GEORGE A. LANE, P.A.
FBN 7242
2929 E. Commercial Blvd., #205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 fax

George A. Lane

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA



SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## AFFIDAVIT OF JEFF TRANK IN SUPPORT OF MOTION TO DISMISS

STATE OF FLORIDA      )
                   )SS
COUNTY OF BROWARD    )

BEFORE ME, the undersigned authority, personally appeared JEFF TRANK, who, after being duly cautioned and sworn, stated upon oath as follows:

1.    I am the President of Factory Authorized Medical Scope Repair and I am personally named as a Defendant in the above-styled cause, and as such, am making this Affidavit of my own personal knowledge.

2.    Factory Authorized Medical Scope Repair and Medical Device Solutions are both Florida corporations, with head offices in Pompano Beach, Florida. Medical Device Solutions is a defunct company.

# EXHIBIT D

COPY

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

        Plaintiff,

    v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

        Defendant.

Civil Action No.

**02 1236**

Jury Trial Demanded

## CIVIL COMPLAINT

Plaintiff Shannon M. Cairns, by undersigned counsel, files this Complaint and in support thereof alleges as follows:

### I. Jurisdiction

1.    The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3); 28 U.S.C. §1331 and 1343(a) and 28 U.S.C. §1367.

2.    Cairns has satisfied all procedural and administrative prerequisites to suit under Title VII.

3.    Defendant Factory Authorized Medical Scope Repair (FAMSR) is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in that it employs more than 15 individuals.

4.    Defendant Medical Device Solutions (MDS) is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in that it employs more than 15 individuals.

### II. The Parties

5.    Plaintiff Shannon M. Cairns is a woman who resides at 55 Orchard Street, Charleroi, PA 15022.

6.    Defendant Factory Authorized Medical Scope Repair is located at 2859 West McNabb Road, Pompano Beach, FL 33069.

7.    Defendant Medical Device Solutions is located at 1291-A S. Powerline Road, Suite 185, Pompano Beach FL 33069.

1

8.      Defendant Jeff Trank is an individual who maintains a place of business at 2859 West McNabb Road, Pompano Beach, FL 33069. Trank is the President of both Defendant FAMSR and Defendant MDS.

9.      Defendant FAMSR and Defendant MDS were joint employers of Cairns.

### III. Factual Background

10.     Plaintiff incorporates paragraphs 1 through 9 as if fully restated.

11 .    In October 2000 Cairns was employed as a Regional Sales Manager for Defendant FAMSR and MDS.

12.     During the course of her employment Cairns was a good performer and her performance was never criticized.

13.     On October 14, 2000, Cairns attended a s regional sales meeting at Trank's home.

14.     During the evening of the meeting, Trank grabbed Cairns and kissed her.

15.     When Cairns protested Trank's unwanted and offensive touching, Trank told her she was "hot and sexy" and refused to release her.

16.     Later that same evening, Trank told Cairns he wanted to talk to her.

17.     Trank then assaulted Cairns again by picking her up, carrying her to a bed and pinning her down. While he had Cairns pinned down, Trank attempted to grope her breasts and rubbed his pelvis against her.

18.     Despite Cairns' protests, Trank refused to dismount her and continued to proposition her for sex.

19.     Trank finally released Cairns. He said everyone would think they had sex anyway.

20.     Cairns reported the incident the next day to her supervisor Greg Constantino.

21.     Constantino said that Trank had been drinking and had been having marital problems. Constantino also told Cairns that Trank feared he was no longer attractive to younger women.

22.     Following Cairns' rejection of Trank's unwanted and offensive sexual advances and her complaint to Constantino, Defendants retaliated against Cairns by changing the terms and

2

conditions of Cairns' employment.

23.    Cairns' attorneys' attempted to resolve the matter by sending a letter to Defendants.

24.    Defendants again retaliated against Cairns by changing the terms and conditions of her employment.

25.    Cairns was constructively discharged as a result of Defendants' actions.

## Count I
## Sexual Harassment
## Cairns v. Defendants FAMSR and MDS

26.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

27.    As set forth at length above, the actions of Defendants directed to Cairns created a hostile work environment.

28.    The aforesaid treatment of Cairns was intentional and was undertaken by Defendants because of Cairns' sex.

29.    The aforesaid treatment of Cairns as set forth above was pervasive and regular in that Cairns was subjected to repeated and unwelcome sexually derogatory language and touching.

30.    The aforesaid conduct of Defendant, through its agents, servants, and employees, detrimentally affected Cairns.

31.    The actions of Defendants, through their agents and servants, as set forth above, would detrimentally affect reasonable women in the position.

32.    Defendants either knew or should have known of the existence of a sexually hostile environment.

33.    Despite such knowledge, Defendants failed to take prompt and adequate remedial action to prevent and to stop the conduct.

34.    The actions of Defendants, as set forth above discriminated against Cairns in the terms and conditions of her employment because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1).

3

35.     The actions of Defendants were intentional and were taken in reckless indifference to Cairns' federally protected right to not be subjected to unwelcome and unwanted conduct of a sexual nature.

36.     As a direct and proximate result of Defendants' actions, Cairns was constructively discharged and suffered humiliation, inconvenience, mental distress, embarrassment, loss of income, and benefits.

WHEREFORE, Cairns demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

a.      That Defendants be ordered to reinstate Cairns into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.      That Defendants be required to compensate Cairns for the full value of wages she would have received had it not been for Defendants' illegal treatment of Cairns, with interest until the date Cairns is offered employment into a position substantially equivalent to the one which Cairns occupied at the time of her constructive discharge;

c.      That Defendants be.required to provide Cairns with front pay if the Court determines reinstatement is not feasible;

d.      That Defendants be required to compensate Cairns for lost benefits, including profit sharing and/or pension benefits until Cairns' normal retirement date;

e.      That Cairns be awarded compensatory damages in an amount to be determined at trial;

f.      That Defendants be ordered to pay Cairns punitive damages;

g.      That Defendants be enjoined from discriminating or retaliating against Cairns in any manner prohibited by Title VII;

h.      That Cairns be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee;

i.      That Cairns be granted such further legal and equitable relief as the Court may deem just and proper.

### Count II
### Title VII Retaliation
### Plaintiff v. Defendants FAMSR and Defendants MDS

37.     Plaintiff incorporates paragraphs 1 through 36 as if fully restated.

4

38.     Cairns' complaint to Constantino was in good faith opposition to discriminatory practices, which is protected activity under Title VII, 42 U.S.C. §2000e-3(a).

39.     Further, the letter from Cairns' counsel to Defendants FAMSR and MDS was also in good faith opposition to Defendants' discriminatory practices which is protected activity under Title VII, 42 U.S.C. §2000e-3(a).

40.     Following Cairns' complaint to Constantino and her attorney's letter protesting Defendants' discriminatory conduct, Defendants acting through their agents and employees, retaliated against Cairns by changing the terms and conditions of her employment.

41.     As a result of Defendants' retaliatory acts Defendants FAMSR and MDS constructively discharged Cairns.

42.     Defendants, acting through their agents and employees, thus retaliated against Cairns in violation of Title VII, 42 U.S.C. §2000e-3(a).

43.     Defendants' actions in constructively discharging Cairns because of her good faith complaints of gender discrimination were taken intentionally and with reckless indifference to Cairns' federally protected right to be free from retaliation for opposing discriminatory employment practices.

44.     As a result of Defendants' intentional discrimination against Cairns, Cairns has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Cairns demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

    a.    That Defendants be ordered to reinstate Cairns into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

    b.    That Defendants be required to compensate Cairns for the full value of wages she would have received had it not been for Defendants' illegal treatment of Cairns, with interest until the date Cairns is offered employment into a position substantially equivalent to the one which Cairns occupied at the time of her constructive discharge;

c.     That Defendants be required to provide Cairns with front pay if the Court determines reinstatement is not feasible;

d.     That Defendants be required to compensate Cairns for lost benefits, including profit sharing and/or pension benefits until Cairns' normal retirement date;

e.     That Cairns be awarded compensatory damages in an amount to be determined at trial;

f.     That Defendants be ordered to pay Cairns punitive damages;

g.     That Defendants be enjoined from discriminating or retaliating against Cairns in any manner prohibited by Title VII;

h.     That Cairns be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee;

i.     That Cairns be granted such further legal and equitable relief as the Court may deem just and proper.

## Count III
## Battery
## Plaintiff v. Jeff Trank

45.    As set for the above Trank repeatedly caused unwanted contact with Cairns during October 14, 2000. Such unwanted and offensive touching constitutes a battery.

46.    Cairns did not welcome Trank's contact, and was reasonably offended by such contact.

47.    As a result, Cairns suffered great pain of the body and anguish of mind and was otherwise damaged.

48.    The acts of Trank were done wantonly, recklessly, and with an absolute disregard for the health and welfare of Cairns.

WHEREFORE, Cairns demands judgment against Defendant Trank as follows:

a.     compensatory damages;

b.     punitive damages.

6

Respectfully submitted,

Ogg, Cordes, Murphy & Ignelzi

Samuel J. Cordes
Mary R. Roman

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 78099 (Roman)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendants' Reply to

Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of

Law was served this 6th day of February, 2003, upon the following by first class mail,

postage prepaid:


James B. Lieber
LIEBER & HAMMER, P.C.
PA. I.D. # 21748
Thomas M. Huber
PA. I.D.#83053
5528 Walnut Street
Pittsburgh, PA, 15232-2312


_____
George A. Lane, Esq.
FBN 7242

GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
#205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 (fax)

LAW OFFICES

# George A. Lane, P.A.
**Attorney at Law**
Wachovia Tower
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, Florida, 33308
Tel. (954) 776-8284
Fax. (954) 771-9393

February 7, 2003

Mr. Robert Varth Jr.
Clerk of the Court
United States District Court for
the Western District of Pennsylvania
8th Floor -U.S. Courthouse
Pittsburgh, PA, 15219

RE:    Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
        Civil Action No. 02-1236 (W.D. Pa.)

Dear Mr. Varth:

As our previously forwarded documents were incorrectly bound, we now enclose a second original Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law, which we kindly request be filed with the court.

Yours very truly,

GEORGE A. LANE, P.A.

George A. Lane

cc. Cathy Bissoon, Esq.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## DEFENDANTS' REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WITH MEMORANDUM OF LAW

COMES NOW, Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR ("FAMSR"), MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by undersigned counsel, and file this Reply to Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law.

### FACTUAL BACKGROUND

On or about June 15, 1998, Plaintiff, SHANNON M. CAIRNS ("Plaintiff"), commenced employment with FAMSR, a Florida corporation headquartered in Pompano Beach, Florida. (Cairns Aff., ¶ 4, attached as Exhibit A). Plaintiff was initially employed as a sales representative to cover the Pittsburgh territory. (*See* Plaintiff's letter of offer of employment in Defendants' Response to Cairns' Interrogatories, at ¶ 16, attached as Exhibit B). No office was located in Pittsburgh or in any other location in the State of Pennsylvania at that time. (*See* list of Defendants' facilities in Defendants' Response to Cairns' Interrogatories, at ¶¶ 10 & 11). All negotiations, communications and agreements relating to the Plaintiff's hire were, at that time

and at all material times thereafter, made through the FAMSR's office in Pompano Beach, Florida. (Id.)  All employment records relating to the Plaintiff were at all material times maintained and administered by FAMSR's corporate headquarters in Pompano Beach, Florida.

On or about July 1, 1999, the Plaintiff became a Regional Sales Manager with FAMSR (Cairns Aff., ¶ 4), based in New Jersey (Trank Aff. ¶ 8, attached as Ex. C).  The Plaintiff's base territory covered the states of New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania.  (Id).  The Plaintiff's base office was located in New Jersey for a continuous period from July 1999 to May 2000.  (Defendants' Response to Cairns' Interrogatories, at ¶ 17). In November 1999, Plaintiff bought a house located in New Jersey (Cairns Aff. ¶ 8).  The Plaintiff used the New Jersey house as her "home" office (Cairns Aff. ¶ 26) until December 2000. (Cairns Aff. ¶ 27).   The Plaintiff also stayed at the home of her parents in Charleroi, Pennsylvania during the course of covering her territory.   Plaintiff's decision to work out of her parents' home in Charleroi, Pennsylvania, was a unilateral decision and not a condition of employment. (Trank Aff. ¶ 10).  None of the defendants provided any monies or services related to any home office Plaintiff may have maintained in Pennsylvania.  (Id).

At all material times, Plaintiff's sales territory covered multiple states. (Trank Aff. ¶ 8). As regional manager, Plaintiff supervised subordinate FAMSR employees in several states, including employees in New York/New Jersey, Ohio and Pennsylvania (Cairns Aff. ¶ 23). Plaintiff was at all material times reported to and was supervised by Gregg Constantino (Cairns Aff. ¶ 23), who worked FAMSR's corporate headquarters in Pompano Beach, Florida.  .

2

FAMSR maintained an office in Huntington, Pennsylvania for less than year at the end of 1999 and the beginning of 2000. (*See* list of Defendants' facilities in Defendants' Response to Cairns' Interrogatories, at ¶¶ 10 & 11, showing Philadelphia area handled by Marlton, New Jersey office). At no other material time did the defendants maintain an office in Pennsylvania. All other sales and repairs relating to any possible customers located in Pennsylvania were handled by an office located in the State of New Jersey. (Id). At all material times, all employment decisions were and are made at the head office of FAMSR in Pompano Beach, Florida. (Trank Aff. ¶ 11) No employment decisions have been ever made by the company or its executive staff at any other location. (Id).

On or about October 14, 2000, Plaintiff attended a FAMSR regional sales meeting near Atlanta, Georgia at the vacation home of FAMSR president and co-defendant, Jeff Trank. As a result of events that are alleged by the Plaintiff to have occurred at this meeting, the Plaintiff commenced a lawsuit. Count I of the Plaintiff's lawsuit is grounded in discrimination in the terms and conditions of Plaintiff's employment because of her gender in violation of the Civil Rights Act of 1964, U.S.C. §2000e-2(a)(1). (*See* Complaint ¶ 34. attached as Ex. D). The alleged sex discrimination is based on allegations of sexual harassment that occurred at the meeting in Georgia. Count II of the Plaintiff's Complaint alleges retaliation for opposing discriminatory employment practices. (*See* Complaint ¶¶ 42 & 43). The retaliatory acts are based on the Florida-based Defendants' alleged constructive discharge of the Plaintiff for protesting discriminatory conduct that alleged to have occurred in Georgia. Finally, Count III alleges battery. (*See* Complaint ¶¶ 45). The unwanted and offensive touching is alleged by the Plaintiff to have occurred in the State of Georgia. At the date of this incident, Plaintiff worked

3

in the field covering her entire multiple-state territory. (Cairns Aff. ¶ 25). When she was not in the field she worked out of two "home" offices depending on her travel schedule. (Cairns Aff. ¶ 26). Plaintiff unilaterally left New Jersey permanently in December 2000 to live with her family. (Cairns Aff. ¶ 27). From the time of Plaintiff's move, FAMSR's revenues in Plaintiff's territory dropped by over sixty percent. (*See* revenues generated in Cairns' territory #835, Defendants' Response to Cairns' Interrogatories, at ¶ 6). In or about June, 2001, with revenues continuing to drop, the Plaintiff unilaterally terminated her employment with FAMSR. From the date of the alleged material events in October 2000 until her termination Plaintiff's employment covered a multiple-state territory.

Defendant MDS is an inactive Florida corporation, which previously had its head office in Pompano Beach, Florida. (*See* Trank Aff. ¶ 2 and *see also* Defendants' Response to Cairns' Interrogatories, at ¶ 13). MDS never sought or obtained authority to transact business in the State of Pennsylvania nor has it ever maintained an office there. Defendant FAMSR is headquartered in Pompano Beach, Florida. (Id). At the time of the alleged events from which the lawsuit derives and at no time since then has FAMSR maintained an office in the State of Pennsylvania. (*See* list of Defendants' facilities in Defendants' Response to Cairns' Interrogatories, at ¶¶ 10 & 11). Defendant, Jeff Trank resides in Florida.

The majority of the crucial witnesses reside in close proximity to Florida and do not therefore live in close proximity to Pennsylvania. Jeff Trank resides in Florida. Gregg Constantino, Plaintiff's overall supervisor resides in Deerfield Beach, Florida while also maintaining a residence in Georgia. George Pratt, the manager who hired the Plaintiff and her

immediate supervisor resides in Georgia.  Vince Bertoloni, a former National Sales Manager with FAMSR, resides in Georgia.   All  FAMSR human resource representatives reside and are located in Florida.  Besides herself, Plaintiff only names three other potential witnesses, Chet Galek (New Jersey), Debbie Paolo (Pennsylvania) and Kurt Cannon (Pennsylvania) who live in or anywhere near the State of Pennsylvania.

## STANDARD OF LAW

### Jurisdiction

In considering a Rule 12(b)(2) motion to Dismiss, the court must construe all allegations of the complaint as true, and any conflict in affidavits must be viewed in favor of the non-moving party.  Bucks County Playhouse v. Bradshaw, 577 F.Supp. 1203 (E.D. Pa. 1983). Because personal jurisdiction is a waivable defense under Federal Rule of Civil Procedure 12(h)(1), the defendant bears the initial burden of raising lack of personal jurisdiction.  Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1064 (M.D. Pa. 1993).  Once the defense is raised, however, the burden shifts to the plaintiff to prove that exercise of jurisdiction is permissible and that sufficient contacts to support jurisdiction exist between the defendant and the forum state.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3rd Cir. 1992).

A defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The contacts must be such that the defendant could reasonably anticipate being haled into court in the forum state.  Romann v.

Geissenberger Mfg. Corp., 865 F.Supp. 255 (E.D. Pa. 1994).  Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits.  Time Share Vacation Club v. Atlantic Resorts. Ltd., 735 F.2d 61, 63 (3rd Cir. 1984).  Within these boundaries defined by the Due Process Clause, Pennsylvania courts may exercise either general or specific jurisdiction over a defendant pursuant to its long-arm statutes.  42 Pa. Cons. Stat. Sect 5301; 42 Pa. Cons. Stat. Sect. 5322.  The relevant parts of the two sections are as follows:

1.    Specific Jurisdiction

"A tribunal of this Commonwealth may exercise personal jurisdiction over a person [including corporations] who acts directly or by an agent, as to a cause of action or other matter arising from such person:  (1) Transacting any business in this Commonwealth . . . (3) Causing harm or tortuous injury by an act or omission in this Commonwealth.  .  .  (4) Causing harm or tortuous injury in this Commonwealth by an act or omission outside this Commonwealth."  [42 Pa. Cons. Stat. Sect. 5322(a).]

2.    General Jurisdiction

"The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:  (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth. . . (ii) Consent, to the extent authorized by the consent. . . (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth."  [42 Pa. Cons. Stat. Sect. 5301].

## DISCUSSION

**1.    Specific Jurisdiction**

The alleged activities for which this suit is based occurred in Georgia or Florida, not in Pennsylvania.  Plaintiff states in her complaint that the events for which she filed suit occurred in a sales meeting at Mr. Trank's vacation home.  Plaintiff, however, did not include in her suit that

Mr. Trank's vacation home was located in Georgia. Thus, the alleged activities for which Plaintiff filed suit occurred in Georgia. Plaintiff also makes a claim for retaliation, more specifically, that FAMSR changed the terms and conditions of Plaintiff's employment and thus, constructively discharging her. Yet, all of FAMSR's employment decisions, including the hiring and terminating of employees, occur at FAMSR's home office in Florida. Therefore, even if Plaintiff's allegations were remotely meritorious, which they are not, this court located in Pennsylvania still cannot exercise personal jurisdiction over FAMSR. Under the Pennsylvania long-arm statute, specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be "related" in some way to the defendant's contact with the forum. Romann v. Geissenberger Mfg. Corp., 865 F.Supp. 255 (E.D. Pa. 1994); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

Here, Plaintiff's cause of action is unrelated to any contact FAMSR may have in Pennsylvania. FAMSR does not maintain an office in Pennsylvania. Plaintiff employment at the relevant times was as a traveling sales manager based out of New Jersey, but thereafter moved on her own accord and convenience to work out of her home in Pennsylvania. Furthermore, FAMSR did not provide monies or services for Plaintiff's home office in Pennsylvania. Most importantly, Plaintiff's claims are based upon alleged events that took place in Georgia and Florida, not Pennsylvania. Consequently, since it is clear that Plaintiff's claims did not arise out of any contact FAMSR may have had with Pennsylvania, this court cannot exercise specific personal jurisdiction over FAMSR.

## 2. General Jurisdiction

When a controversy does not arise out of the defendant's contacts with the forum, as is the case here, the court may exercise jurisdiction if the defendant has "continuous and systematic business contacts" with the forum.  Helicopeteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).  These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities."  International Shoe, 326 U.S. at 318.  In other words, in order to satisfy due process requirements, a corporation's contacts must be "extensive and pervasive," amounting to a purposeful availment of the "privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws."  Romann, at 260.  (citing Fields v. Ramada Inn, Inc., 816 F.Supp. 1033, 1035 (E.D. Pa. 1993)).

Pursuant to 42 Pa. Cons. Stat.Sect. 5301(a)(2)(i), the qualification to do business is sufficient contact with the Commonwealth to serve as the basis for the assertion of general personal jurisdiction.   The United States Court of Appeals for the Third Circuit has ruled that the qualification of a foreign corporation to do business is sufficient contact with the Commonwealth to fulfill the "purposeful availment" criteria.  Bane v. Netlink, Inc., 925 F. 2d 637, 640 (quoting Burger King v. Rudzewicz, 471 U.S. 462, 465 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

According to decisions of the Supreme Court of the United States, however, establishment of minimum contacts through the "purposeful availment" standard, or otherwise, is not necessarily the final determining factor to be considered in asserting personal jurisdiction.

As stated by the Court in Burger King , 471 U.S. 476, "[o]nce it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts May be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (quoting International Shoe Co. v. Washington, 326 U.S., at 320). Thus courts may consider "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of the controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" Id., at 478. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).  The Court in Burger King further added that "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities.  Id., at 477-78 (quoting Woodson, supra, at 292).  In addition, "jurisdictional rules may not be employed in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent." Id., at 478.

Applying the principles of the Burger King case, the assertion of personal jurisdiction on the defendants would be "gravely difficult and inconvenient" and would unfairly put the defendants at a "severe disadvantage" in comparison to their opponent.  Defendant MDS is now defunct, but was formerly headquartered in Pompano Beach, Florida.  It never maintained an office in Pennsylvania and did very little business there.  The facts upon which the cause of action against it are based occurred in Georgia.  No facts have been raised in the pleadings or in

discovery regarding jurisdiction and venue to demonstrate that it had any minimum contacts with Pennsylvania.

Jeff Trank resides in Florida and the act upon which the allegations against him are based occurred in Georgia. There are no facts in the pleadings or in discovery regarding jurisdiction and venue to demonstrate that he is personally subject to specific or general jurisdiction of Pennsylvania.

FAMSR's minimal business contacts and activity in Pennsylvania are not significant to meet the standard of 'extensive and pervasive' as required by this Court. At the time of the event from which this matter arises, none of the defendants maintained offices in Pennsylvania. Plaintiff's sales territory incorporated up to six states and her sales production as well as FAMSR's overall sales production in Pennsylvania is minimal. The Plaintiff worked at times form her "home" office in New Jersey. Her base office was in New Jersey for most of the time that the Plaintiff was employed by FAMSR and she supervised subordinate employees in several different states.

The fact that Plaintiff worked out of her residence in Pennsylvania while employed by FAMSR does not in itself establish jurisdiction over FAMSR. *See* Romann v. Geissenberger Mfg. Corp., 865 F. Supp 255 (E.D. Pa. 1994). *See also* Charlesworth v. Marco Mfg Co., 878 F.Supp. 1196 (N.D. Ind. 1995). The facts and discussion of the Romann case are instructive although the case was partially abrogated on grounds not relevant to the facts in this dispute. In Romann, the plaintiff salesman, a resident of Pennsylvania who worked out of his home, sued his

employer, a New Jersey corporation, in the eastern district of Pennsylvania. The court denied personal jurisdiction over the Defendant corporation because, *inter alia*, only two to four percent of the defendant's sales occurred in Pennsylvania. Id. at 261. The court noted that "such a figure is hardly reflective of the type of 'extensive and pervasive' contact required by the personal jurisdiction standard."

More importantly, the <u>Romann</u> court opined that although the plaintiff resided and worked out his home in Pennsylvania, "there is no evidence to suggest that [defendant] either required or encouraged [plaintiff] to reside in Pennsylvania as a condition of employment. [Thus], the unilateral decisions of [the plaintiff] . . . to reside in Pennsylvania and receive paychecks there do not constitute purposeful contacts by [the defendant], and cannot serve as the basis for the exercise of personal jurisdiction over [the plaintiff's] employer." Id. at 261-262. *See Also* <u>Rodale Press, Inc. v. Submatic Irrigation Systems, Inc.</u>, 651 F.Supp. 208 (E.D. Pa. 1986)(unilateral activity of those who claim some relationship with non-resident defendant cannot satisfy the requirement of contact with the forum state.)(cited in <u>Romann</u>).

In another similar case, the plaintiff sales manager who resided and worked in Indiana sued his employer, a California corporation, under an age discrimination theory in Indiana federal court. <u>Charlesworth v. Marco Mfg. Co.</u>, 878 F.Supp. 1196 (N.D. Ind. 1995). The Court ultimately held that it lacked personal jurisdiction over the defendant because, *inter alia*, the amount of sales produced by the plaintiff and the corporation in Indiana was not significant enough to allow jurisdiction. In addition, the Court agreed with <u>Romann's</u> Court opinion and provided that "the law clearly states that 'the unilateral activity of those who claim some

11

relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' Thus, [the plaintiff] may not rely on his own contacts within the state of Indiana in his attempt to establish that this court has jurisdiction over [the defendant]. Nor may [the plaintiff] rely on the fact that he resides in Indiana." Id. at 1202 (citing Nu-Way Systems v. Belmont Marketing, 635 F.2d 617, 620 (7th Cir. 1980).

The assertion of personal jurisdiction over the Defendants by the State of Pennsylvania would put them at a severe disadvantage. The alleged employment violation, the majority of the witnesses thereto and all employment related communications and records occurred outside Pennsylvania. Assertion of jurisdiction by Pennsylvania would reward the Plaintiff for having unilaterally decided to choose Pennsylvania as her main place of employment, when the Defendants had never purposely availed themselves of that fact.

Even if this Court may exercise jurisdiction over FAMSR and MDS, it cannot exercise personal jurisdiction over Jeff Trank. Count III of the Plaintiff's Complaint alleges that Defendant Jeff Trank caused unwanted and offensive touching constituting battery. This claim seeks judgment and damages against Jeff Trank personally. Before a court may take personal jurisdiction over an individual, it must satisfy certain criteria connecting the defendant to the forum state. Courts have traditionally considered such criteria as presence in the forum state (See Burnham v. Superior Court, 495 U.S. 604, 110 S.Ct. 2105 (1990)), domicile or residence (See Milliken v Meyer, 311 U.S. 457, 61 S.Ct. 339 (1940)), consent (See Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632 (1927)), acts done in the state (See Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97 (1919)), as well as, driving a car in the forum state, ownership of property, conducting

12

business and being married in the forum state.  None of these criteria is available to this Court in the present instance.

The facts supporting Count III are based on acts that allegedly occurred in the State of Georgia.  Jeff Trank resides permanently in Florida and maintains a vacation home in Georgia. but had at no material time and has now no contacts with Pennsylvania.  At all material times Jeff Trank was not present in and did not travel to or in Pennsylvania and no part of the cause of action is based in Pennsylvania.  Mr. Trank has not consented to assertion of personal jurisdiction over him and owns no property in Pennsylvania.

The Plaintiff, however, admits that she employed by a Florida based company and that, at all times material to Count III, voluntarily traveled to Georgia.  There are no facts to suggest that any part of the alleged battery or any evidence related thereto may be found in Pennsylvania.  As such, Pennsylvania cannot assert jurisdiction over Jeff Trank as jurisdiction relates to Count III of the Complaint.

Since this Court cannot lawfully assert jurisdiction over Jeff Trank, the Court does not have jurisdiction over all named Defendants for the purposes of hearing all three Counts of the Plaintiff's Complaint in the same action.

## Venue

## ALTERNATIVE MOTION TO TRANSFER

In the alternative to FAMSR's Motion to Dismiss this Court may transfer this matter in the interest of justice to the Southern District of Florida, the district in which FAMSR is located. Pursuant to 28 U.S.C. Sect. 1404 and 1406, this Court has broad discretion and power to transfer this case to another district when this court cannot exercise jurisdiction over a particular defendant or when venue is improper 28 U.S.C. Sect. 1391.

The Plaintiff's action against FAMSR asserts claims for sexual harassment and retaliation under Title VII. Pursuant to 42 U.S.C. § 2000e-5(f)(3), there are four judicial districts where a Title VII claim may be brought:

(1) "in any judicial district in the State in which the unlawful employment practice is alleged to have beed committed,"

(2) "in the judicial district in which the employment records relevant to such practice are maintained and administered,"

(3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,"

(4) "but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

1.     **The Western District of Pennsylvania is not Proper Venue for the Plaintiff's Sexual Harassment Claim Because the Alleged Unlawful Employment Practice occurred in Georgia, thus, outside Pennsylvania.**

Under the first basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue is proper in the judicial district in which the unlawful employment practice is alleged to have been committed. Count I of the Plaintiff's Complaint alleges that she was sexually harassed, by having been subjected to repeated and unwelcome, sexually derogatory language and touching. The facts upon which Count I are based, relate to events that the Plaintiff alleges occurred while at a FAMSR meeting in Georgia. Clearly, the alleged sexual harassment, (i.e the alleged unlawful employment practice) occurred outside of Pennsylvania. The United States Court of Appeals for the Ninth Circuit has held that, in general, the effect of Title VII's venue provision is to allow suit in the judicial district in which the Plaintiff worked or would have worked. Passantino v. Johnson & Johnson Consumer Products, Inc., 212 F.3d 493, 504-05 (9th Cicuit 2000). In applying that principle to the determination of a sex discrimination action, the Court ruled that venue was proper in the judicial district where the Plaintiff. In that case, a Washington based female regional sales representative for a nationally operating company based in New Jersey alleged that the company purposely failed to promote her due to her gender. The Court rejected the company's argument that the unlawful employment activity occurred in New Jersey where all decisions relating to promotions were made. Instead, the Court held that venue was proper in Washington, the state for which the sales representative was responsible. The Court reasoned that to accept the company's "[CPI's] theory would require us to draw a distinction between promotion claims and other types of Title VII claims – which allow venue where the plaintiff is employed." Passantino, 212 F.3d, at 505.

The <u>Passantino</u> case and the Court's rational therein, however, is clearly distinguishable from the case at hand, by its facts.   The <u>Passantino</u> case did not involve one specific, isolated event or occurrence upon which the Plaintiff's claim was based.  In <u>Passantino</u> the company had an ongoing and repeated practice of overlooking female employees for promotion.  In instances, such as, failure to promote, refusal of pension credits (*See e.g*, <u>Varsic v. United States District Court</u>, 607 F.2d 245 (9th Cir. 1979), wrongful discharge and being subject to a hostile work environment, there is no particular defining event from which a claim arises, but rather, the unlawful employment activity is derived from a systematic practice which is void of precise time and acts.

Count I of the Plaintiff's complaint, however, alleges sexual harassment based on two alleged incidences of "unwelcome sexually derogatory language and touching" (Complaint ¶ 29) that occurred at a vacation home in Georgia.  Thus, unlike <u>Passantino</u>, where the Court held that venue was proper in both the forum where the employment **decision** is made and the forum in which that **decision** is implemented or its effects are felt, Count I of the Plaintiff complaint points to a specific, unlawful employment activity that, in no way, occurred in Pennsylvania. Consequently, venue in Pennsylvania regarding the sexual harassment claim cannot support the first prong of 42 U.S.C. § 2000e-5(f)(3).

Under the third basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue may be proper in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice.  Once again the <u>Passantino</u> case, upon which the Plaintiff relies heavily, provides insight, which demonstrates why Count I of the Complaint also fails on this basis.   In

Passantino the Court ruled venue for a sex discrimination claim was proper in the judicial district where the Plaintiff worked.  In describing the history of the case leading up to trial, however, the Court pints out that CPI, the Plaintiff's employer, consented to the Plaintiff's relocation to Tacoma, Washington (See Passantino, 212 F.3d, at 499-500), and requested that she maintain a home office.  (Id., at 500.)  As a result of its approval of the location of its employee's office, the employer could not then rightfully contest that judicial district as being proper for the purposes of venue.

In the present action, at all material times, the Plaintiff was a Regional Sales Manager for a six-state territory.  Accordingly, all six states are the where the Plaintiff worked and thus the Plaintiff did not work for FAMSR or MDS in Pennsylvania any more than she did in New York, New Jersey, Ohio, West Virginia or North Carolina.  The Plaintiff maintained "home" offices" in two different states.  FAMSR provided the Plaintiff with a base office in New Jersey.  None of the Defendants authorized, or encouraged or explicitly approved of the Plaintiff's unilateral decision to restrict her office to a home office in Pennsylvania.   As per the guidance offered in Passantino, to now qualify and restrict the Plaintiff's place of work as and to Pennsylvania for the purposes of determining proper venue under the third prong of 42 U.S.C. § 2000e-5(f)(3) would be to deny the Defendants of due process of the law.

The second prong of 42 U.S.C. § 2000e-5(f)(3) is more clearly met in this case.   This prong provides that venue is proper in the judicial district in which the employment records relevant to such practice are maintained and administered.  Based on undisputable facts, the Plaintiff's employment records are both maintained and administered at the Defendants

headquarters in Pompano Beach, Florida.  Proper venue lies therefore with the United States

District Court For the Western District of Pennsylvania.

**2.      The Western District of Pennsylvania is not the Proper Venue for Plaintiff's Retaliation Claim under Title VII Because at all Times of Alleged Retaliation Plaintiff Worked in Several Different Districts and Allegedly Felt the Effects of Retaliation in Several Different Districts**

Under the first basis for venue 42 U.S.C. § 2000e-5(f)(3), venue is proper in the judicial

district in which the unlawful employment practice is alleged to have been committed.

According to the decision in Passantino, 212 F.3d 493, venue is proper under this basis "in both

the forum where the employment decision is made and the forum in which that decision is

implemented or its effects felt." Id., at 506.  In other words, venue is found "where the effect of

the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in

that practice is implemented." Id., at 505.

As discussed above, the Plaintiff's place of work was not exclusively Pennsylvania.  The

Plaintiff's decision to work from a home office made unilaterally and without consultation with

the Defendants.  The Defendants required the Plaintiff to work in several states and provided the

Defendant with a base office in New Jersey.  A determination that the Plaintiff worked in

Pennsylvania for the purpose of deciding venue would be contrary to the facts and unjust and

unfair to the Defendants.

### 3. The Western District is not the Proper Venue Because Count III of the Complaint is based on State Law other than Pennsylvania State Law

Count III of the Plaintiff's Complaint alleges that Defendant Jeff Trank caused unwanted and offensive touching constituting battery. This claim seeks judgment and damages against Jeff Trank personally. The facts supporting Count III are based on acts that allegedly occurred in the State of Georgia. The Plaintiff's battery cause of action for this Count is therefore based on Georgia state common law. Jeff Trank resides permanently in Florida and maintains a vacation home in Georgia, but has no personal contacts with Pennsylvania. FAMSR's offices, majority of employees and most importantly, witnesses for both parties are all located at FAMSR's headquarters in South Florida.

The Plaintiff, however, alleges that she resides in Pennsylvania, and was employed by a Florida based company. The facts show that the Plaintiff voluntarily traveled to Georgia. There are no facts to suggest that any part of the alleged battery or any evidence related thereto may be found in Pennsylvania. As such, Pennsylvania is not proper venue for Count III of the Complaint.

### 4. The Western District is not the Proper Venue Because Count III of the Complaint is based on State Law as Thus Pendent Venue has No Application

Although courts have been more willing to recognize the doctrine of "pendent venue" derived from the concept of pendent jurisdiction, the doctrine has no application to Count III of the Complaint.

Under the doctrine of pendent venue, when two or more federal claims are brought and venue is properly laid as to one claim, that venue will support adjudication of the other related claim. *See* 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Sect. 3808 (1986) (collecting cases); *see also*, Reuber v. U.S., 750 F.2d 1039 (D.C. Cir. 1984) (court applied pendent venue theory because of existence of common facts, common issues of proof and common witnesses demonstrating nexus between various counts), cert. den. 501 U.S. 1212, 111S.CT. 2814, 115 L.Ed.2d 986 (1991).

In the present case, the Plaintiff alleges at Count III of her Complaint that Defendant Jeff Trank caused unwanted and offensive touching constituting battery. The facts supporting Count III are based on acts that allegedly occurred in the State of Georgia. The Plaintiff's cause of action for this Count are based on Georgia state common law. In light of the fact that Count III of Plaintiff's claim is not based on a federal claim, pendent venue has no application.

## CONCLUSION

Based on the foregoing, The Defendants respectfully request this Court to dismiss the Plaintiff's action for lack of jurisdiction and improper venue. Alternatively, if this Court finds that it may lawfully take jurisdiction over the parties, then in the interest of justice and in the alternative to dismissing this matter, FAMSR admits that it is subject to personal jurisdiction in

the state of Florida and requests that this case be transferred to the Southern District of Florida.

ALL OF WHICH IS RESPECTFULLY SUBMITTED THIS 6TH DAY O FEBRUARY, 2003.

Cathy Bissoon
PA I.D. No. 70371
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3268

George A. Lane
GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL, 33308
(954) 776-8284
Counsel for the Defendants

_____
George A. Lane
FBN 7242

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,        )     Civil Action No. 02-1236
                        )
      Plaintiff,       )
                        )
     vs.              )     The Honorable Gustave Diamond
                        )
FACTORY AUTHORIZED MEDICAL  )
SCOPE REPAIR; MEDICAL DEVICE  )
SOLUTION; AND JEFF TRANK,    )   **JURY TRIAL DEMANDED**
                        )
      Defendants.    )

Commonwealth of Pennsylvania   )
                        ) ss:
County of Allegheny          )

## AFFIDAVIT OF SHANNON M. CAIRNS

BEFORE ME, a Notary Public, in and for said County and State, on this day personally appeared Shannon M. Cairns, who, having been by me first duly sworn, upon her oath deposed and said:

1.     I am a female and a Pennsylvania resident who resides at 55 Orchard Street, Charleroi, PA 15022.

2.     I am a former employee of Defendants' Factory Authorized Medical Scope Repair ("FAMSR") and Medical Device Solutions ("MDS").

3.     I was born and raised in the Pittsburgh area.

4.     After graduating from Duquesne University, I began working for FAMSR in June 1998.

5.     FAMSR repairs, services, contracts, buys and sells medical devices.

6.     I was initially hired as an account representative in the Pittsburgh office.  I was

promoted within six months to Territory Development Manager.

7.    Within a few months of that promotion, I trained my replacement and was promoted to Regional Sales Manager.

8.    In November 1999, I bought a house in New Jersey for tax purposes.

9.    Despite this purchase, I retained close ties to Pittsburgh.  I often worked out of my home in Charleroi during the workweek and stayed there on weekends.

10.    My banking, direct deposit of my FAMSR paychecks, and all 401(k) Plan transactions remained at my Pittsburgh address.

11.    In addition, any necessary postal communications between myself and FAMSR's corporate headquarters were sent to my Pittsburgh address or to FAMSR's Pittsburgh office.

12.    The only work connection to the house in New Jersey was that MDS sent my MDS paychecks to that address for a couple of months.

13.    In the Fall 2000, I began serving as a Regional Sales Manager for MDS.

14.    On October 14, 2000, I attended a regional sales meeting in the state of Georgia at the vacation home of Jeff Trank, FAMSR's President.

15.    During the evening of the meeting, Trank grabbed and kissed me.

16.    When I protested Trank's unwanted and offensive touching, Trank told me I was "hot and sexy" and refused to release me.

17.    Later that same evening, Trank told me he wanted to talk to me.

18.    Trank then assaulted me again by picking me up, carrying me to a bed and pinning me down.

19.     While he had me pinned down, Trank attempted to grope my breasts and rubbed his pelvis against me.

20.     Despite my protests, Trank refused to dismount me and continued to proposition me for sex. Trank finally released me. He said everyone would think we had sex anyway.

21.     I reported the incident the next day to my supervisor Gregg Constantino.

22.     Constantino said that Trank had been drinking and had been having marital problems. Constantino also told me that Trank feared he was no longer attractive to younger women.

23.     As of the date of this incident, I supervised a driver, a technician, and an account executive in Pittsburgh. I also supervised several account representatives including two who worked out of their "home" offices in Philadelphia, PA. The two account representatives and myself comprised the "Philadelphia" territory. I also supervised a driver and an account representative for New York/New Jersey, as well as a newly promoted account representative in Columbus, OH.

24.     By this point, FAMSR had dissolved its satellite office in Philadelphia.

25.     I mostly worked in the field with the account representatives.

26.     When I was not in the field, I worked out of my "home" offices in New Jersey or Pittsburgh, depending on my travel schedule.

27.     I left New Jersey permanently in December 2000 to live full time with my family in Charleroi.

28.     My complete withdrawal from New Jersey was directly caused by the events of

3

October 14, 2000 in that I needed to be closer to my family for support reasons and closer to my health professionals located in the Pittsburgh area.

29. I continued to work for FAMSR and MDS out of my "home" office in Charleroi, PA.

30. Following my rejection of Trank's unwanted and offensive sexual advances and my complaint to Constantino, Defendants retaliated against me by changing the terms and conditions of my employment.

31. On or about December 1, 2000, my former attorneys Mary Roman and Kathleen J. Davies of Ogg Jones Cordes & Ignelzi, LLP attempted to resolve the matter by sending a letter to Defendants.

32. Defendants again retaliated against me by changing the terms and conditions of my employment.

33. FAMSR induced me to resign my position on March 3, 2001 based upon the misrepresentation that any possible litigation had been settled.

34. I returned to work on May 29, 2001.

35. FAMSR again constructively discharged me in June 2001.

36. During all of the incidents of retaliation from December 2000 through June 2001, I resided only in the Pittsburgh area, worked for FAMSR and MDS out of my home in the Pittsburgh area, and felt the effects of retaliation here in the Pittsburgh area.

37. I reside in the Pittsburgh, PA area.

38. Debbie Paolo attended the October 14, 2000 retreat at Trank's home in Georgia and she resides in Pittsburgh, PA.

4

39. Kurt Cannon is a former manager who can testify about my work ethic and performance and he resides in Philadelphia, PA.

40. Chet Galek attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in Newark, NJ.

41. Gregg Constantino attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in GA.

42. George Pratt is the manager who hired me as well as my direct supervisor who supported my promotions and he resides in GA.

43. Vince Bertoloni is a former National Sales Manager who can testify about my performance and work ethic and he resides in GA.

44. Debbie Paolo is a possible witness of the retaliation and as mentioned previously she resides in Pittsburgh, PA.

45. Gregg Constantino is also a witness of the retaliation and as mentioned previously he resides in GA.

46. Chet Galek is also a witness of the retaliation and as mentioned previously he resides in Newark, NJ.

47.   Charles Meadows is a FAMSR employee and he may testify about events of

retaliation against me and he lives in Philadelphia, PA.

48.   Rich Morton is a FAMSR employee and he may testify about events of retaliation

against me and he lives in Columbus, OH.

I verify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on January  2-7 , 2003.


_Shannon M. Cairns_
Shannon M. Cairns

Sworn to and subcribed
before me this 27th
day of January, 2003.

_Margie Hammer_
Notary Public

Notarial Seal
Margie Hammer, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Mar. 20, 2003
Member, Pennsylvania Association of Notaries

6

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION, and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond


## DEFENDANTS' RESPONSE TO PLAINTIFF'S INTERROGATORIES
## AND DOCUMENT REQUESTS IN AID OF JURISDICTION


COMES NOW Defendants, Factory Authorized Medical Scope Repair and Jeff Trank in response to Plaintiff's Interrogatories say the following and through their undersigned counsel reply to the Plaintiff's Document Requests in Aid of Jurisdiction dated October 29, 2002, in the same numbered order as contained in the Request:

## INTERROGATORIES

1. Identify all of the persons answering these Interrogatories and identify by Interrogatory Number the Interrogatory or Interrogatories each such person has answered or has participated in answering.     Nicole Duncanson - Interrogatories 1-21;
Shannon Cunningham - Interrogatories 9 and 10.

2. For each of the Defendant's fiscal years ending 1997, 1998, 1999, 2000 and 2001 and 2002 through August 29, 2002, state total Defendant's gross revenues from (a) all locations world-wide, (b) all United States locations and (c) all Pennsylvania locations. If the Defendant had no revenues in any year outside the fifty states of the United States, use "0" for that year for world-wide revenues. If the Defendant's operations in any year were restricted to fewer than fifty states of the United States, state how many states were included for that year.

| (a) | 1997 | - | 0 | |
|-----|------|---|---|---|
| | 1998 | - | 0 | |
| | 1999 | - | 0 | |
| | 2000 | - | 0 | |
| | 2001 | - | 0 | |
| | 2002 thru 8/29 - | | 0 | |

| (b) | 1997 | - | $ 8,019,568.00 | in 21 states |
|-----|------|---|----------------|--------------|
| | 1998 | - | $11,656,248.00 | in 26 states |
| | 1999 | - | $13,854,170.00 | in 27 states |
| | 2000 | - | $11,561,612.00 | in 23 states |
| | 2001 | - | $10,055,727.00 | in 24 states |
| | 2002 thru 8/29- | | $ 6,493,833.00 | in 19 states |

| *(c) | 1997 | - | $   697,463.00 | |
|------|------|---|----------------|---|
| | 1998 | - | $ 1,228,851.00 | |
| | 1999 | - | $ 1,565,256.00 | |
| | 2000 | - | $   934,003.00 | |
| | 2001 | - | $   910,654.00 | |
| | 2002 thru 8/29 - | | $   684,788.00 | |

*The Defendants have no locations in Pennsylvania. Revenues indicated are attributed to sales and repairs generated in Pennsylvania

3.   For each of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000, 2001 and 2002 through August 29, 2002, state total revenues (a) world-wide, (b) from the fifty states of the United States and (c) from Pennsylvania from equipment and system repair, system and equipment modification, and all other instances of service performed by the Defendant's employees and agents.  If any such instance was performed at no cost to the customer, please list each such instance, its date, and the reason for an absence of cost to the customer.  If the Defendant had no such revenues in any year outside the fifty states of the United States, use "0" for that year for world-wide revenues.  If the Defendant's operations in any year were restricted to fewer than the fifty states of the United States, state how many states were included for that year.

See response to number 2 above as to revenues.  Any repairs at no cost to the customer were effected by way of the Defendant's uniform and general practice throughout all states due to courtesy, warranty, no repairs, capped agreements, or scope purchases.  Any items relating to scope purchases were included in above figures.  Any capped agreements would also be included in above figures due to overages/credits on the contract were billed/credited to arrive in sales figures.

4.   State the Defendant's breakeven point in total gross revenues for each of the Defendant's fiscal years ending in 1996, 1997, 1998, 1999, 2000 and 2001. Defendants are uncertain as to what is meant by "breakeven point" but has provided financial statements attached hereto in an effort to respond to this Interrogatory.

5.   State the contribution to net profit before taxes of Pennsylvania revenues for each of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000 and 2001.

| 1997 | - | $ 111,134.00 |
| 1998 | - | $ 182,830.00 |
| 1999 | - | $  44,345.00 |
| 2000 | - | ($ 324,109.00) |
| 2001 | - | ($  21,622.00) |

6.    If Pennsylvania's total gross revenues changed by more than ten percent from one

year to the next in any of the Defendant's fiscal years ending in 1997, 1998, 1999,

2000 and 2001 and 2002 through August 29, 2002, state the reason for any such

increase or decrease.

In 1997, 1998, and 1999, Pennsylvania's total gross revenues increased by more than ten
percent from one year to the next. In 2000, Pennsylvania's total gross revenues
decreased by more than ten percent from 1999. In 2001, Pennsylvania's total gross
revenues decreased by less than ten percent from 2000. The Defendants are uncertain
about what is meant by "the reason for any such increase or decrease" as many factors
may be simultaneously involved. The revenues steadily decreased during the period from
June 1, 1999 to June 12, 2001, when the Plaintiff was the sales manager. The Defendants
provide the following information in an effort to respond to this Interrogatory:

| | Territory | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|---|
| | 410 | $150,943 | - | - | - | $ 51,757 |
| | 420 | $371,645 | - | - | - | $ 110,666 |
| | 430 | $ 81,385 | - | - | - | - |
| | 815 | $ 19,795 | $300,050 | $ 353,508 | $265,959 | $ 382,454 |
| | 820 | $ 26,810 | $311,860 | $ 211,177 | $ 95,380 | $ 256,403 |
| | 825 | $ 46,885 | $453,426 | $ 578,653 | $433,839 | $ 109,374 |
| (Cairns)* | 835 | - | $163,515 | $ 373,156 | $104,711 | - |
| | 845 | - | - | $ 48,762 | $ 34,114 | - |
| Total | | $697,463 | $1,228,851 | $1,565,256 | $934,003 | $ 910,654 |

7.    For each of the years 1999, 2000 and 2001 state the Pennsylvania gross revenues,

if any, that were wholly attributable to employees and/or agents of the Defendants

other than the Plaintiff.

Plaintiff became manager on 6/1/99. The individual sales representatives, at that time
were fully in control of their accounts and were self-maintained. In that respect, all sales
from 6/1/99 - 2001 were attributed to other employees. Since the plaintiff became a
manager, sales dropped in that territory.

8.    State how and on what date the Defendant notified Plaintiff of each change in the

terms and conditions of her employment with the Defendant during the period

January 1, 1998 through August 29, 2002.

Not applicable. Defendants have no knowledge of any notification.

9.    State the location of each office, sales facility, repair facility or other facility of the

Defendant that was either opened, closed or moved in Pennsylvania during the

period January 1, 1997 through August 29, 2002, giving the date and nature of

each such opening, closing or move.  For this and the next Interrogatory, opening,

closing and moving facilities includes moves from and/or into Pennsylvania.

The Defendant leased a small office at 11532 Parkway D, in Huntington, Pennsylvania for
a short time in 1999-2000, but closed this office due to very infrequent use.

10.    State the location of each office, sales facility, repair facility or other facility of the

Defendant that was neither opened nor closed nor moved in Pennsylvania during

the period January 1, 1997 through August 29, 2002.

See listing of facilities by year attached.

11.    State the business relationship between FAMSR and MDS during the period

January 1, 1997 through October 15, 2002, and if the relationship changed at any

time during the period January 1, 1997 through October 15, 2002, give the date

and description of each change.

FAMSR outsourced and subcontracted some of its sales services to MDS.

12.    State the status of MDS during the period January 1, 1997 through October 15,

2002, and if the status of MDS changed at any time during the period January 1,

1997 through October 15, 2002, give the date and description of each change.

FAMSR began outsourcing repairs to MDS during the last quarter of 2000.
FAMSR stopped outsourcing with MDS in December 2001 when they ceased operations.

13.    If it is not clear from the answer to the previous two Interrogatories, state the date

on which MDS became a "defunct" entity as that term was used in Para. 2 of the

Affidavit of Jeff Trank in Support of Motion to Dismiss and state how the change

in MDS's status was brought about or came about.

The term "defunct" refers to MDS ceasing operations in December 2001.

14. What is the name of the successor in interest to MDS?

    None.

15. State the date of each trip, both business and non-business, into Pennsylvania of

    Jeff Trank and all other officers and top-level managers of the Defendant during

    the period January 1, 1997 through October 15, 2002, and for each trip, state the

    purpose of the visit, the location or locations visited, and the total length of time of

    the trip.

    Defendants have no knowledge of any travel for top-level managers going into
    Pennsylvania during this time period.

16. Describe what negotiations, if any, concerning the employment of Plaintiff by the

    Defendant occurred in Pennsylvania, and describe what negotiations, if any,

    occurred by telephone, e-mail, postal mail or other non-in-person means of

    communication between the Plaintiff in Pennsylvania and any other agent or

    employee of the Defendant, whether located in Pennsylvania or not at the time of

    the communication, giving the date of each communication and identifying all of

    the employees and agents of the Defendant involved in the communication.

Defendants not aware of any negotiations which occurred in Pennsylvania. The
Defendants are only aware of negotiations which occurred outside of Pennsylvania as part
of the initial hiring process. See Plaintiff's resume, offer letter, and application for
employment attached which identify all communications concerning the employment of
Plaintiff.

17. State the beginning and end of the period in which Plaintiff's base office was located in New Jersey and state whether the period was continuous or broken.

July 1999 through May 2000.  The period was continuous.

18. State whether FAMSR is the same entity as Factory Authorized Medical Scope Repairs, Inc., registered as a foreign business in the Bureau of Corporations of the Department of State of the Commonwealth of Pennsylvania.

It is the same entity.

19. State whether MDS has been registered as a foreign business in the Bureau of Corporations of the Department of State of the Commonwealth of Pennsylvania.

Defendants are uncertain of the legal status of MDS in the Commonwealth of Pennsylvania.

20. State the extent to which FAMSR is responsible for the debts, including litigation damages, of MDS that have accrued since June 1, 1998.

FAMSR is not responsible for any debts of MDS.

21. State whether CT Corporation System was FAMSR's service agent in Pennsylvania during the period January 1, 1998 and October 15, 2002, and if CT Corporation System was not FAMSR's service agent in Pennsylvania for that entire period, identify other service agents of FAMSR in Pennsylvania, their mailing addresses and the dates of their tenure as service agents for FAMSR.

CT Corporation System was the service agent for this period.

_____
Representative of Defendants

Print Name: _N̲i̲c̲o̲l̲e̲_ _D̲u̲n̲c̲a̲n̲s̲o̲r̲,̲_ _C̲F̲C̲_

STATE OF FLORIDA          )
                          )ss:
COUNTY OF BROWARD         )

    The foregoing instrument was acknowledged before me this _30ᵗʰ_ day of December,

2002, by _Nicole Duncanson_, who is personally known to me or who has

produced _driver's license #D525-636-69-685-0_, identification and who did (did

not) take an oath.

Dennis O'Connor
My Commission DD090511
Expires June 03, 2006

                                                    NOTARY PUBLIC
                                                    State of Florida-at-large

MY COMMISSION EXPIRES:

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1997 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 8,019,567.57 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 2,357,192.91 | 29.39% |
| GROSS PROFIT | 5,662,374.66 | 70.61% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 2,956,029.40 | 36.86% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 1,425,530.39 | 17.78% |
| OPERATING EXPENSES | 4,381,559.79 | 54.64% |
| OPERATING INCOME | 1,280,814.87 | 15.97% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (2,975.19) | -0.04% |
| NET INCOME | 1,277,839.68 | 15.93% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1998 | YTD as<br>% of Sales |
|---|---|---|
| EPAIR REVENUE | 11,656,248.73 | 100.00% |
|  |  |  |
| OTAL REVENUE |  |  |
| COST OF SALES | 3,539,850.35 | 30.37% |
| GROSS PROFIT | 8,116,398.38 | 69.63% |
|  |  |  |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,013,431.86 | 34.43% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 2,297,079.32 | 19.71% |
| OPERATING EXPENSES | 6,310,511.18 | 54.14% |
| OPERATING INCOME | 1,805,887.20 | 15.49% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (71,659.60) | -0.61% |
| NET INCOME | 1,734,227.60 | 14.88% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|                                        | YTD thru 12/31/1999 | YTD as % of Sales |
|----------------------------------------|--------------------:|------------------:|
| REPAIR REVENUE                         |       13,854,169.83 |           100.00% |
|                                        |                     |                   |
| TOTAL REVENUE                          |                     |                   |
| COST OF SALES                          |        4,388,501.79 |            31.68% |
| GROSS PROFIT                           |        9,465,668.04 |            68.32% |
|                                        |                     |                   |
| OPERATING EXPENSES:                    |                     |                   |
| SELLING EXPENSES                       |        5,291,279.64 |            38.19% |
| GENERAL AND ADMINISTRATIVE EXPENSES    |        3,229,257.48 |            23.31% |
| OPERATING EXPENSES                     |        8,520,537.12 |            61.50% |
| OPERATING INCOME                       |          945,130.92 |             6.82% |
|                                        |                     |                   |
| OTHER INCOME / (EXPENSES)              |        (552,630.27) |            -3.99% |
| NET INCOME                             |          392,500.65 |             2.83% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2000 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,561,612.42 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,326,046.00 | 37.42% |
| GROSS PROFIT | 7,235,566.42 | 62.58% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,285,615.86 | 37.07% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 3,557,303.81 | 30.77% |
| OPERATING EXPENSES | 7,842,919.67 | 67.84% |
| OPERATING INCOME | (607,353.25) | -5.25% |
| OTHER INCOME / (EXPENSES) | (3,404,649.44) | -29.45% |
| NET INCOME | (4,012,002.69) | -34.70% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2001 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 10,055,727.01 | 100.00% |
| TOTAL REVENUE | | |
| COST OF SALES | 4,214,866.75 | 41.92% |
| GROSS PROFIT | 5,840,860.26 | 58.08% |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 3,419,473.44 | 34.01% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 2,828,175.40 | 28.13% |
| OPERATING EXPENSES | 6,247,648.84 | 62.13% |
| OPERATING INCOME | (406,788.58) | -4.05% |
| OTHER INCOME / (EXPENSES) | 168,033.81 | 1.67% |
| NET INCOME | (238,754.77) | -2.37% |

## DOCUMENT REQUESTS

Because the volume of documents is massive, Defendants require Plaintiff to arrange for copying by an independent copying service, at Plaintiff's expense.  Defendants will cooperate with Plaintiff in reviewing the documents for copying at its premises on a date mutually agreed upon by the parties.

1.   All responsive documents in defendants' possession will be produced.

2.   All responsive documents in defendants' possession will be produced.

3.   All responsive documents in defendants' possession will be produced.

4.   Financial Statements attached.

5.   All responsive documents in defendants' possession will be produced.

6.   All responsive documents in defendants' possession will be produced.

7.   All responsive documents in defendants' possession will be produced.

8.   See listing of facilities by year attached.  All other responsive documents relied upon  in defendants' possession will be produced.

9.   See listing of facilities by year attached.  All other responsive documents relied upon  in defendants' possession will be produced.

10.  This request is vague and the Defendants are uncertain exactly what is sought by plaintiff.

11.  This request is vague and the Defendants are uncertain exactly what is sought by plaintiff.

12.  No known documents exist at this time, but should any such documents become known they will be produced.

13.  Copy of Application for Certificate of Authority as stamped by the Pennsylvanaia Department of State on July 16, 1997 bearing Entity number 2765654, attached.

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

| | YTD thru 12/31/1997 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 8,019,567.57 | 100.00% |
| TOTAL REVENUE | | |
| COST OF SALES | 2,357,192.91 | 29.39% |
| GROSS PROFIT | 5,662,374.66 | 70.61% |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 2,956,029.40 | 36.86% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 1,425,530.39 | 17.78% |
| OPERATING EXPENSES | 4,381,559.79 | 54.64% |
| OPERATING INCOME | 1,280,814.87 | 15.97% |
| OTHER INCOME / (EXPENSES) | | |
| | (2,975.19) | -0.04% |
| NET INCOME | 1,277,839.68 | 15.93% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1998 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,656,248.73 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 3,539,850.35 | 30.37% |
| GROSS PROFIT | 8,116,398.38 | 69.63% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,013,431.86 | 34.43% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,297,079.32 | 19.71% |
| OPERATING EXPENSES | 6,310,511.18 | 54.14% |
| OPERATING INCOME | 1,805,887.20 | 15.49% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (71,659.60) | -0.61% |
| NET INCOME | 1,734,227.60 | 14.88% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1999 | YTD as<br>% of Sales |
|---|---|---|
| REPAIR REVENUE | 13,854,169.83 | 100.00% |
|  |  |  |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,388,501.79 | 31.68% |
| GROSS PROFIT | 9,465,668.04 | 68.32% |
|  |  |  |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 5,291,279.64 | 38.19% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 3,229,257.48 | 23.31% |
| OPERATING EXPENSES | 8,520,537.12 | 61.50% |
| OPERATING INCOME | 945,130.92 | 6.82% |
|  |  |  |
| OTHER INCOME / (EXPENSES) | (552,630.27) | -3.99% |
| NET INCOME | 392,500.65 | 2.83% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2000 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,561,612.42 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,326,046.00 | 37.42% |
| GROSS PROFIT | 7,235,566.42 | 62.58% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,285,615.86 | 37.07% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 3,557,303.81 | 30.77% |
| OPERATING EXPENSES | 7,842,919.67 | 67.84% |
| OPERATING INCOME | (607,353.25) | -5.25% |
| OTHER INCOME / (EXPENSES) | (3,404,649.44) | -29.45% |
| NET INCOME | (4,012,002.69) | -34.70% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2001 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 10,055,727.01 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,214,866.75 | 41.92% |
| GROSS PROFIT | 5,840,860.26 | 58.08% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 3,419,473.44 | 34.01% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,828,175.40 | 28.13% |
| OPERATING EXPENSES | 6,247,648.84 | 62.13% |
| OPERATING INCOME | (406,788.58) | -4.05% |
| OTHER INCOME / (EXPENSES) | 168,033.81 | 1.67% |
| NET INCOME | (238,754.77) | -2.37% |

| | 1997 | 1998 | 1999 |
|---|---|---|---|
| Location / Payee / address / address | **CORPORATE OFC-Rprs/Sales** Keith Collins-Moved Out 5/97 2001 Blount Road Pompano Beach, Fl 33069 | **CORPORATE OFC-Rprs/Sales** Thomas Lester 637 N.W. 12th Avenue Deerfield Beach, FL 33342 | **CORPORATE OFC-Rprs/Sales** Thomas Lester 637 N.W. 12th Avenue Deerfield Beach, FL 33342 |
| Location / Payee / address / address | **CORPORATE OFC-Rprs/Sales** Thomas Lester-Moved in 6/97 637 N.W. 12th Avenue Deerfield Beach, FL 33342 | **BOSTON OFC-Rprs/Sales** Bramson Associates 24 Crescent Street # 106 Waltham, MA 02154 | **ATLANTA REP OFC-Sales** Dr.Mclarnon / Dr.Richard Bunt 3155 Presidential Dr. #104 Atlanta, GA 30340 |
| Location / Payee / address / address | **CHICAGO-Repairs/Sales** Gary Soloman & Co. 3166 N. Lincoln Ave #312 Chicago, IL 60657 | **CHICAGO-Repairs/Sales** Gary Soloman & Co. 3166 N. Lincoln Ave #312 Chicago, IL 60657 | **ATLANTA MGR OFC-Sales** Keystone Commercial Group 533 Johnson Ferry Road # 450 Marietta, GA 30068 |
| Location / Payee / address / address | **CLEVELAND-Repairs/Sls** Detroit Cook Building 14900 Detroit Ave #205 Lakewood, OH 44107 | **CLEVELAND-Repairs/Sls** Detroit Cook Building 14900 Detroit Ave #205 Lakewood, OH 44107 | **ATLANTA MGR OFC-2-Sales** Keystone Commercial Group 533 Johnson Ferry Road # 400 Marietta, GA 30068 |
| Location / Payee / address / address | **COLUMBUS-Rprs/Sls** 513 Limited Partnership 513 East Rich Street Columbus, OH 43215 | **COLUMBUS-Rprs/Sls** 513 Limited Partnership 513 East Rich Street Columbus, OH 43215 | **BOSTON OFC-Rprs/Sales** Bramson Associates 24 Crescent Street # 106 Waltham, MA 02154 |
| Location / Payee / address / address | **DALLAS OFC-Rprs/Sls** Plaza Tower 2121 W. Airport Freeway Suite #225 Irving, TX 75062 | **DALLAS OFC-Rprs/Sls** Plaza Tower 2121 W. Airport Freeway Suite #225 Irving, TX 75062 | **BUFFALO OFC-Sales** Mike Cutting 2671 Harlem Road Cheektowaga, NY 14225 |
| Location / Payee / address / address | **DETROIT OFC-Repairs/Sales** Lathrup Office Center 27260 Southfield Road #3 Latrhup, MI 48076 | **DETROIT OFC-Repairs/Sales** Lathrup Office Center 27260 Southfield Road #3 Latrhup, MI 48076 | **CHICAGO-Repairs/Sales** Gary Soloman & Co. 3166 N. Lincoln Ave #312 Chicago, IL 60657 |
| Location / Payee / address / address | **LOS ANGELES-Repairs/Sales** Harbour Gateway LLC 19401 S. Vermont Ave #A205A Torrence, CA 90503 | **HARTFORD OFC-Rprs/Sales** Smith Street Development 460 Smith Street # B-1 Middletown, CT 06547 | **CINCINNATI OFC-Rps/Sls** George Robinson 327 West 34th Street Covington, KY 41015 |
| Location / Payee / address / address | **ST. LOUIS OFC-Repairs/Sales** Rafael Fournier 2249 S. Brentwood Blvd #6 St. Louis, MO 63144 | **HOUSTON OFC-Rprs/Sls** 10p10lp Ltd. Partnership/Boxer Prop. 11999 Katy Freeway Suite #150-0 Houston, TX 77079 | **CLEVELAND-Repairs/Sls** Detroit Cook Building 14900 Detroit Ave #205 Lakewood, OH 44107 |
| Location / Payee / address / address | **NEW ORLEANS-Repairs/Sls** Preferred Realty 4300 S I-10 Service Road #103U Metairie, LA 70001 | **INDIANAPOIS-Rprs/Sls** Kirby Co. of Northside 10085 Allisonville Road #103 Fishers, IN 46038 | **COLUMBUS-Rprs/Sls** 513 Limited Partnership 513 East Rich Street Columbus, OH 43215 |
| Location / Payee / address / address | | **KANSAS CITY OFC-Sales** U.S. Properties 5846 Horton Street #212 Mission, KS 66202 | **DALLAS OFC-Rprs/Sls** Plaza Tower 2121 W. Airport Freeway Suite #225 Irving, TX 75062 |

| | 1997 | 1998 | 1999 |
|---|---|---|---|
| Location<br>Payee<br>address<br>address | | **LOS ANGELES-Repairs/Sales**<br>Harbour Gateway LLC<br>19401 S. Vermont Ave #A205A<br>Torrence, CA 90503 | **DETROIT OFC-Repairs/Sales**<br>Lathrup Office Center<br>27260 Southfield Road #3<br>Latrhup, MI 48076 |
| Location<br>Payee<br>address<br>address | | **LOUISVILLE -Repairs/Sales**<br>CGS Investments<br>4814 Preston Hwy # 21<br>Louisville, KY 40213 | **HARTFORD OFC-Rprs/Sales**<br>Smith Street Development<br>460 Smith Street # B-1<br>Middletown, CT 06547 |
| Location<br>Payee<br>address<br>address | | **MILWAUKEE-Repairs/Sales**<br>Metro Investments Inc.<br>3610 N. Oakland Avenue<br>Shorewood, WI 53211 | **HOUSTON OFC-Rprs/Sls**<br>10p10lo Ltd. Partnership/Boxer Prop.<br>11999 Katy Freeway Suite #150-0<br>Houston, TX 77079 |
| Location<br>Payee<br>address<br>address | | **MINNEAPOLIS-Repairs/Sales**<br>PCOB Properties<br>3601 Park Center Blvd #136<br>St. Louis, MN 55416 | **INDIANAPOIS-Repairs/Sls**<br>Kirby Co. of Northside<br>10085 Allisonville Road #103<br>Fishers, IN 46038 |
| Location<br>Payee<br>address<br>address | | **NEW ORLEANS-Repairs/Sls**<br>Preferred Realty<br>4300 S I-10 Service Road #103U<br>Metairie, LA 70001 | **KANSAS CITY OFC-Sales**<br>U.S. Properties<br>5846 Horton Street #212<br>Mission, KS 66202 |
| Location<br>Payee<br>address<br>address | | **OKLAHOMA CITY-Sales**<br>OKC Ltd Partnership / Banta Realty<br>5909 NW Expressway #307<br>Oklahoma City, OK 73132 | **LOS ANGELES-Repairs/Sales**<br>Harbour Gateway LLC<br>19401 S. Vermont Ave #A205A<br>Torrence, CA 90503 |
| Location<br>Payee<br>address<br>address | | **SAN DIEGO-Repairs/Sales**<br>Mission Valley Terrace<br>3435 Camino Del Rio S #318<br>San Diego, CA 92108 | **LOUISVILLE -Repairs/Sales**<br>CGS Investments<br>4814 Preston Hwy # 21<br>Louisville, KY 40213 |
| Location<br>Payee<br>address<br>address | | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 | **MILWAUKEE-Repairs/Sales**<br>Metro Investments Inc.<br>3610 N. Oakland Avenue<br>Shorewood, WI 53211 |
| Location<br>Payee<br>address<br>address | | **SEATTTLE OFC-Repairs/Sls**<br>Del Mar Bldg.<br>1123 Maple Avenue SW #200<br>Renton, WA 98055 | **MINNEAPOLIS-Repairs/Sales**<br>PCOB Properties<br>3601 Park Center Blvd #136<br>St. Louis, MN 55416 |
| Location<br>Payee<br>address<br>address | | **ST. LOUIS OFC-Repairs/Sales**<br>Rafael Fournier<br>2249 S. Brentwood Blvd #6<br>St. Louis, MO 63144 | **NEW ORLEANS-Repairs/Sls**<br>Preferred Realty<br>4300 S I-10 Service Road #103U<br>Metairie, LA 70001 |
| Location<br>Payee<br>address<br>address | | **TAMPA-Repairs/Sales**<br>Westken / Kennedy West Bldg.<br>4601 W. Kennedy Blvd #234<br>Tampa, Fl 33609 | **NEWARK OFC-Rprs/Sales**<br>Eugene Siciliano<br>#4 Chester Avenue<br>Bloomfield, NJ 07003 |

| 1997 | 1998 | 1999 |
|------|------|------|
| Location<br>Payee<br>address<br>address | | **OKLAHOMA CITY-Sales**<br>OKC Ltd Partnership / Banta Realty<br>5909 NW Expresswy #307<br>Oklahoma City, OK 73132 |
| Location<br>Payee<br>address<br>address | | **PHILADELPHIA-Rprs/Sales**<br>Brandywine Realty<br>3002 Lincoln Drive Suite K<br>Marlton, NJ 08053 |
| Location<br>Payee<br>address<br>address | | **PITTSBURGH-Repairs/Sales**<br>William Bailey<br>11532 Parkway D<br>Huntington, PA 15642 |
| Location<br>Payee<br>address<br>address | | **SACRAMENTO-Repairs/Sls**<br>Sun Pacific Business Center<br>5777 Madison Ave #311<br>Sacramento. CA 95814 |
| Location<br>Payee<br>address<br>address | | **SAN ANTONIO OFC-Sales**<br>GNC Properties<br>1603 Babcock Road #144<br>San Antonio, TX 78229 |
| Location<br>Payee<br>address<br>address | | **SAN DIEGO-Repairs/Sales**<br>Mission Valley Terrace<br>3435 Camino Del Rio S #318<br>San Diego, CA 92108 |
| Location<br>Payee<br>address<br>address | | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 |
| Location<br>Payee<br>address<br>address | | **SEATTLE OFC-Repairs/Sls**<br>Del Mar Bldg.<br>1123 Maple Avenue SW #200<br>Renton, WA 98055 |
| Location<br>Payee<br>address<br>address | | **ST. LOUIS OFC-Repairs/Sales**<br>Rafael Fournier<br>2249 S. Brentwood Blvd #6<br>St. Louis, MO 63144 |
| Location<br>Payee<br>address<br>address | | **TAMPA-Repairs/Sales**<br>Westken / Kennedy West Bldg.<br>4601 W. Kennedy Blvd #234<br>Tampa, Fl 33609 |
| Location<br>Payee<br>address<br>address | | |

| | 2000 | 2001 | 2002 |
|---|---|---|---|

| | **2000** | **2001** | **2002** |
|---|---|---|---|
| Location Payee address address | **CORPORATE OFC-Rprs/Sales**<br>Lambda Novatronics<br>2859 West McNab Road<br>Pompano Beach, Fl 33062 | **CORPORATE OFC-Rprs/Sales**<br>Lambda Novatronics<br>2859 West McNab Road<br>Pompano Beach, Fl 33062 | **CORPORATE OFC-Rprs/Sales**<br>Invensys Building Systems Inc.<br>2859 West McNab Road<br>Pompano Beach, Fl 33062 |
| Location Payee address address | **ATLANTA REP OFC-Sales**<br>Dr.Mclarnon / Dr.Richard Bunt<br>3155 Presidential Dr. #104<br>Atlanta, GA 30340 | **ATLANTA MGR OFC-Sales**<br>Keystone Commercial Group<br>533 Johnson Ferry Road # 450<br>Marietta, GA 30068 | **ATLANTA MGR OFC-Sales**<br>Keystone Commercial Group<br>533 Johnson Ferry Road # 450<br>Marietta, GA 30068 |
| Location Payee address address | **ATLANTA MGR OFC-Sales**<br>Keystone Commercial Group<br>533 Johnson Ferry Road # 450<br>Marietta, GA 30068 | **BOSTON OFC-Rprs/Sales**<br>Bramson Associates<br>24 Crescent Street # 106<br>Waltham, MA 02154 | **BOSTON OFC-Rprs/Sales**<br>Bramson Associates<br>24 Crescent Street # 106<br>Waltham, MA 02154 |
| Location Payee address address | **ATLANTA MGR OFC-2-Sales**<br>Keystone Commercial Group<br>533 Johnson Ferry Road # 400<br>Marietta, GA 30068 | **CHICAGO-Repairs/Sales**<br>Gary Soloman & Co.<br>3166 N. Lincoln Ave #312<br>Chicago, IL 60657 | **MINNEAPOLIS-Repairs/Sales**<br>Park Avenue of Wayzata<br>604-252 Twelve Oaks Ctr<br>15500 Wayzata Blvd<br>Wayzata , MN 55391 |
| Location Payee address address | **BOSTON OFC-Rprs/Sales**<br>Bramson Associates<br>24 Crescent Street # 106<br>Waltham, MA 02154 | **CINCINNATI OFC-Rps/Sls**<br>George Robinson<br>327 West 34th Street<br>Covington, KY 41015 | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 |
| Location Payee address address | **BUFFALO OFC-Sales**<br>Mike Cutting<br>2671 Harlem Road<br>Cheektowaga, NY 14225 | **DETROIT OFC-Repairs/Sales**<br>Lathrup Office Center<br>27260 Southfield Road #3<br>Latrhup, MI 48076 | |
| Location Payee address address | **CHICAGO-Repairs/Sales**<br>Gary Soloman & Co.<br>3166 N. Lincoln Ave #312<br>Chicago, IL 60657 | **MINNEAPOLIS-Repairs/Sales**<br>Park Avenue of Wayzata<br>604-252 Twelve Oaks Ctr<br>15500 Wayzata Blvd<br>Wayzata , MN 55391 | |
| Location Payee address address | **CINCINNATI OFC-Rps/Sls**<br>George Robinson<br>327 West 34th Street<br>Covington, KY 41015 | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 | |
| Location Payee address address | **CLEVELAND-Repairs/Sls**<br>Detroit Cook Building<br>14900 Detroit Ave #205<br>Lakewood, OH 44107 | | |
| Location Payee address address | **COLUMBUS-Rprs/Sls**<br>513 Limited Partnership<br>513 East Rich Street<br>Columbus, OH 43215 | | |
| Location Payee address address | **DALLAS OFC-Rprs/Sls**<br>Plaza Tower<br>2121 W. Airport Freeway Suite #225<br>Irving, TX 75062 | | |

| | **2000** | **2001** | **2002** |
|---|---|---|---|

Location **DETROIT OFC-Repairs/Sales**
Payee     Lathrup Office Center
address   27260 Southfield Road #3
address   Latrhup, MI 48076

Location **HARTFORD OFC-Rprs/Sales**
Payee     Smith Street Development
address   460 Smith  Street # B-1
address   Middletown, CT 06547

Location **HOUSTON OFC-Rprs/Sls**
Payee     10p10lp Ltd. Partnership/Boxer Prop.
address   11999 Katy Freeway Suite #150-0
address   Houston, TX 77079

Location **INDIANAPOIS-Repairs/Sls**
Payee     Kirby Co. of Northside
address   10085 Allisonville Road #103
address   Fishers, IN 46038

Location **KANSAS CITY OFC-Sales**
Payee     U.S. Properties
address   5846 Horton Street #212
address   Mission, KS 66202

Location **LOS ANGELES-Repairs/Sales**
Payee     Harbour Gateway LLC
address   19401 S. Vermont Ave #A205A
address   Torrence, CA 90503

Location **LOUISVILLE -Repairs/Sales**
Payee     CGS Investments
address   4814 Preston Hwy # 21
address   Louisville, KY 40213

Location **MILWAUKEE-Repairs/Sales**
Payee     Metro Investments Inc.
address   3610 N. Oakland Avenue
address   Shorewood, WI  53211

Location **MINNEAPOLIS-Repairs/Sales**
Payee     PCOB Properties
address   3601 Park Center Blvd #136
address   St. Louis, MN 55416
address   **MN ofc moved see below**

Location **MINNEAPOLIS-Repairs/Sales**
Payee     Park Avenue of Wayzata
address   604-252 Twelve Oaks Ctr
address   15500 Wayzata Blvd
          Wayzata , MN 55391

Location **NEW ORLEANS-Repairs/Sls**
Payee     Preferred Realty
address   4300 S  I-10 Service Road #103U
address   Metairie, LA 70001

| **2000** | **2001** | **2002** |
|----------|----------|----------|

Location   **NEWARK OFC-Rprs/Sales**
Payee      Eugene Siciliano
address    #4 Chester Avenue
address    Bloomfield, NJ 07003

Location   **OKLAHOMA CITY-Sales**
Payee      OKC Ltd Partnership / Banta Realty
address    5909 NW Expresswy #307
address    Oklahoma City, OK 73132

Location   **PHILADELPHIA-Rprs/Sales**
Payee      Brandywine Realty
address    3002 Lincoln Drive Suite K
address    Marlton, NJ 08053

Location   **PITTSBURGH-Repairs/Sales**
Payee      William Bailey
address    11532 Parkway D
address    Huntington, PA 15642

Location   **SACRAMENTO-Repairs/Sls**
Payee      Sun Pacific Business Center
address    5777 Madison Ave #311
address    Sacramento. CA 95814

Location   **SAN ANTONIO OFC-Sales**
Payee      GNC Properties
address    1603 Babcock Road #144
address    San Antonio, TX 78229

Location   **SAN DIEGO-Repairs/Sales**
Payee      Mission Valley Terrace
address    3435 Camino Del Rio S #318
address    San Diego, CA 92108

Location   **SAN FRANSICO-Repairs/Sls**
Payee      PKD Properties Inc.
address    5200 Huntington Ave Suite # 330
address    Richmond, CA 94804

Location   **SEATTTLE OFC-Repairs/Sls**
Payee      Del Mar Bldg.
address    1123 Maple Avenue SW #200
address    Renton, WA 98055

Location   **ST. LOUIS OFC-Repairs/Sales**
Payee      Rafael Fournier
address    2249 S. Brentwood Blvd #6
address    St. Louis, MO 63144

Location   **TAMPA-Repairs/Sales**
Payee      Westken / Kennedy West Bldg.
address    4601 W. Kennedy Blvd #234
address    Tampa, Fl 33609

Microfilm Number _____

Entity Number _2265654_

Filed with the Department of State on _____

JUL 16 97

~~Secretary of the Commonwealth~~

## APPLICATION FOR CERTIFICATE OF AUTHORITY
### DSCB:15-4124/6124 (Rev 90)

Indicate type of corporation (check one):

X Foreign Business Corporation (15 Pa.C.S. § 4124)

___ Foreign Nonprofit Corporation (15 Pa.C.S. § 6124)

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. (relating to corporations and unincorporated associations) the undersigned association hereby states that:

1. The name of the corporation is: Factory Authorized Medical Scope Repairs, Inc.

_____

. The name which the corporation adopts for use in this Commonwealth is (complete only when the corporation must adopt a corporate designator for use in Pennsylvania):

_____

3. (If the name set forth in Paragraph 1 is not available for use in this Commonwealth, complete the following):

The fictitious name which the corporation adopts for use in transacting business in this Commonwealth is:

_____

This corporation shall do business in Pennsylvania only under such fictitious name pursuant to the attached resolution of the board of directors under the applicable provisions of 15 Pa.C.S (relating to corporations and unincorporated associations) and the attached form DSCB:54-311 (Application for Registration of Fictitious Name).

4. The name of the jurisdiction under the laws of which the corporation is incorporated is:

Florida

5. The address of its principal office under the laws of the jurisdiction in which it is incorporated is:

637 NW 12th Avenue, Deerfield Beach, Florida  33442, Broward

| Number and Street | City | State | Zip | County |
|---|---|---|---|---|

6. The (a) address of this corporation's proposed registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

(a) _____

| Number and Street | City | State | Zip | County |
|---|---|---|---|---|

(b) c/o: C T Corporation System                          Allegheny County

| Name of Commercial Registered Office Provider | County |
|---|---|

(PA - 404 - 10/1/92)

JUL 16 97

PA Dept. of State

CB:15-4124/6124 (Rev 90)-2

For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

(Check one of the following):

__X__ (Business corporation):  The corporation is a corporation incorporated for a purpose or purposes involving pecuniary profit, incidental or otherwise.

____ (Nonprofit corporation):  The corporation is a corporation incorporated for a purpose or purposes not involving pecuniary profit, incidental or otherwise.


IN TESTIMONY WHEREOF, the undersigned corporation has caused this Application for a Certificate of Authority to be signed by a duly authorized officer this __24th__ day of ___June___, 19 __97__ .

Factory Authorized Medical Scope Repairs,

_____
(Name of Corporation)

BY: _____

Jeff Teank (Signature)

TITLE: President

(PA. 404)

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Response to Plaintiff's Interrogatories and

Document Requests in Aid of Jurisdiction was served via facsimile and first class mail this 27th day

of December, 2002, upon the following:

> James B. Lieber
> LEIBER & HAMMER, P.C.
> P.A.I.D. #21748
> 5528 Walnut Street
> Pittsburgh, PA, 15232-2312
> (412) 687-2231
> (412) 687-3140 fax

GEORGE A. LANE, P.A.
FBN 7242
2929 E. Commercial Blvd., #205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 fax

George A. Lane

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond


## AFFIDAVIT OF JEFF TRANK IN SUPPORT OF MOTION TO DISMISS

STATE OF FLORIDA        )
                             )SS
COUNTY OF BROWARD    )

      BEFORE ME, the undersigned authority, personally appeared JEFF TRANK, who, after being duly cautioned and sworn, stated upon oath as follows:

1.    I am the President of Factory Authorized Medical Scope Repair and I am personally named as a Defendant in the above-styled cause, and as such, am making this Affidavit of my own personal knowledge.

2.    Factory Authorized Medical Scope Repair and Medical Device Solutions are both Florida corporations, with head offices in Pompano Beach, Florida. Medical Device Solutions is a defunct company.

3.      Neither Factory Authorized Medical Scope Repair nor Medical Device Solutions maintains an office in Pennsylvania.

4.      I am a resident of the state of Florida.

5.      I am not, nor have I ever been a resident of Pennsylvania.

6.      On October 14, 2000 I hosted a regional sales meeting at my vacation residence in Georgia.

7.      Plaintiff SHANNON M. CAIRNS attended this meeting and has now filed this current suit based on events that allegedly occurred at this meeting at my vacation residence in Georgia and subsequently on events that allegedly occurred in our office in Florida.

8.      Factual statements in the Defendant's Motion to Dismiss with Memorandum of Law are correct.  Plaintiff was employed by FAMSR in June 1998 and in July 1999 became a sales manager with the company, based in New Jersey.  Her territory covered the states of New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania.

9.      Pennsylvania constitutes a minimal sales percentage of the company revenues, at a percentage that would be under ten percent.

10.     Plaintiff's decision to work out of her home in Pittsburgh was a unilateral decision and not a condition of employment.  None of the defendants provided any monies or services related to any home office Plaintiff may have maintained in Pennsylvania.

11.    All employment decisions are made at the head office of FAMSR in Pompano

Beach, Florida.  No employment decisions have been made by the company or its

executive staff at any other location.


FURTHER AFFIANT SAYETH NOT.

JEFF TRANK


SWORN TO AND SUBSCRIBED before me this 28 day of August, 2002.

NOTARY PUBLIC
MY COMMISSION EXPIRES:

G A Lane
My Commission CC807087
Expires February 7 2003

# EXHIBIT D

COPY

# IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

  v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

      Defendant.

Civil Action No.

**02  1236**

Jury Trial Demanded

## CIVIL COMPLAINT

Plaintiff Shannon M. Cairns, by undersigned counsel, files this Complaint and in support thereof alleges as follows:

### I. Jurisdiction

1.    The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3); 28 U.S.C. §1331 and 1343(a) and 28 U.S.C. §1367.

2.    Cairns has satisfied all procedural and administrative prerequisites to suit under Title VII.

3.    Defendant Factory Authorized Medical Scope Repair (FAMSR) is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in that it employs more than 15 individuals.

4.    Defendant Medical Device Solutions (MDS) is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in that it employs more than 15 individuals.

### II. The Parties

5.    Plaintiff Shannon M. Cairns is a woman who resides at 55 Orchard Street, Charleroi, PA 15022.

6.    Defendant Factory Authorized Medical Scope Repair is located at 2859 West McNabb Road, Pompano Beach, FL 33069.

7.    Defendant Medical Device Solutions is located at 1291-A S. Powerline Road, Suite 185, Pompano Beach FL 33069.

1

8.      Defendant Jeff Trank is an individual who maintains a place of business at 2859 West McNabb Road, Pompano Beach, FL 33069. Trank is the President of both Defendant FAMSR and Defendant MDS.

9.      Defendant FAMSR and Defendant MDS were joint employers of Cairns.

### III. Factual Background

10.     Plaintiff incorporates paragraphs 1 through 9 as if fully restated.

11 .    In October 2000 Cairns was employed as a Regional Sales Manager for Defendant FAMSR and MDS.

12.     During the course of her employment Cairns was a good performer and her performance was never criticized.

13.     On October 14, 2000, Cairns attended a s regional sales meeting at Trank's home.

14.     During the evening of the meeting, Trank grabbed Cairns and kissed her.

15.     When Cairns protested Trank's unwanted and offensive touching, Trank told her she was "hot and sexy" and refused to release her.

16.     Later that same evening, Trank told Cairns he wanted to talk to her.

17.     Trank then assaulted Cairns again by picking her up, carrying her to a bed and pinning her down. While he had Cairns pinned down, Trank attempted to grope her breasts and rubbed his pelvis against her.

18.     Despite Cairns' protests, Trank refused to dismount her and continued to proposition her for sex.

19.     Trank finally released Cairns. He said everyone would think they had sex anyway.

20.     Cairns reported the incident the next day to her supervisor Greg Constantino.

21.     Constantino said that Trank had been drinking and had been having marital problems. Constantino also told Cairns that Trank feared he was no longer attractive to younger women.

22.     Following Cairns' rejection of Trank's unwanted and offensive sexual advances and her complaint to Constantino, Defendants retaliated against Cairns by changing the terms and

2

conditions of Cairns' employment.

23.    Cairns' attorneys' attempted to resolve the matter by sending a letter to Defendants.

24.    Defendants again retaliated against Cairns by changing the terms and conditions of her employment.

25.    Cairns was constructively discharged as a result of Defendants' actions.

**Count I**
**Sexual Harassment**
**Cairns v. Defendants FAMSR and MDS**

26.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

27.    As set forth at length above, the actions of Defendants directed to Cairns created a hostile work environment.

28.    The aforesaid treatment of Cairns was intentional and was undertaken by Defendants because of Cairns' sex.

29.    The aforesaid treatment of Cairns as set forth above was pervasive and regular in that Cairns was subjected to repeated and unwelcome sexually derogatory language and touching.

30.    The aforesaid conduct of Defendant, through its agents, servants, and employees, detrimentally affected Cairns.

31.    The actions of Defendants, through their agents and servants, as set forth above, would detrimentally affect reasonable women in the position.

32.    Defendants either knew or should have known of the existence of a sexually hostile environment.

33.    Despite such knowledge, Defendants failed to take prompt and adequate remedial action to prevent and to stop the conduct.

34.    The actions of Defendants, as set forth above discriminated against Cairns in the terms and conditions of her employment because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1).

3

35.     The actions of Defendants were intentional and were taken in reckless indifference to Cairns' federally protected right to not be subjected to unwelcome and unwanted conduct of a sexual nature.

36.     As a direct and proximate result of Defendants' actions, Cairns was constructively discharged and suffered humiliation, inconvenience, mental distress, embarrassment, loss of income, and benefits.

WHEREFORE, Cairns demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

a.      That Defendants be ordered to reinstate Cairns into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.      That Defendants be required to compensate Cairns for the full value of wages she would have received had it not been for Defendants' illegal treatment of Cairns, with interest until the date Cairns is offered employment into a position substantially equivalent to the one which Cairns occupied at the time of her constructive discharge;

c.      That Defendants be required to provide Cairns with front pay if the Court determines reinstatement is not feasible;

d.      That Defendants be required to compensate Cairns for lost benefits, including profit sharing and/or pension benefits until Cairns' normal retirement date;

e.      That Cairns be awarded compensatory damages in an amount to be determined at trial;

f.      That Defendants be ordered to pay Cairns punitive damages;

g.      That Defendants be enjoined from discriminating or retaliating against Cairns in any manner prohibited by Title VII;

h.      That Cairns be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee;

i.      That Cairns be granted such further legal and equitable relief as the Court may deem just and proper.

## Count II
## Title VII Retaliation
## Plaintiff v. Defendants FAMSR and Defendants MDS

37.     Plaintiff incorporates paragraphs 1 through 36 as if fully restated.

38.     Cairns' complaint to Constantino was in good faith opposition to discriminatory practices, which is protected activity under Title VII, 42 U.S.C. §2000e-3(a).

39.     Further, the letter from Cairns' counsel to Defendants FAMSR and MDS was also in good faith opposition to Defendants' discriminatory practices which is protected activity under Title VII, 42 U.S.C. §2000e-3(a).

40.     Following Cairns' complaint to Constantino and her attorney's letter protesting Defendants' discriminatory conduct, Defendants acting through their agents and employees, retaliated against Cairns by changing the terms and conditions of her employment.

41.     As a result of Defendants' retaliatory acts Defendants FAMSR and MDS constructively discharged Cairns.

42.     Defendants, acting through their agents and employees, thus retaliated against Cairns in violation of Title VII, 42 U.S.C. §2000e-3(a).

43.     Defendants' actions in constructively discharging Cairns because of her good faith complaints of gender discrimination were taken intentionally and with reckless indifference to Cairns' federally protected right to be free from retaliation for opposing discriminatory employment practices.

44.     As a result of Defendants' intentional discrimination against Cairns, Cairns has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Cairns demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

a.     That Defendants be ordered to reinstate Cairns into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.     That Defendants be required to compensate Cairns for the full value of wages she would have received had it not been for Defendants' illegal treatment of Cairns, with interest until the date Cairns is offered employment into a position substantially equivalent to the one which Cairns occupied at the time of her constructive discharge;

5

c.   That Defendants be required to provide Cairns with front pay if the Court determines reinstatement is not feasible;

d.   That Defendants be required to compensate Cairns for lost benefits, including profit sharing and/or pension benefits until Cairns' normal retirement date;

e.   That Cairns be awarded compensatory damages in an amount to be determined at trial;

f.   That Defendants be ordered to pay Cairns punitive damages;

g.   That Defendants be enjoined from discriminating or retaliating against Cairns in any manner prohibited by Title VII;

h.   That Cairns be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee;

i.   That Cairns be granted such further legal and equitable relief as the Court may deem just and proper.

### Count III
### Battery
### Plaintiff v. Jeff Trank

45.   As set for the above Trank repeatedly caused unwanted contact with Cairns during October 14, 2000.  Such unwanted and offensive touching constitutes a battery.

46.   Cairns did not welcome Trank's contact, and was reasonably offended by such contact.

47.   As a result, Cairns suffered great pain of the body and anguish of mind and was otherwise damaged.

48.   The acts of Trank were done wantonly, recklessly, and with an absolute disregard for the health and welfare of Cairns.

WHEREFORE, Cairns demands judgment against Defendant Trank as follows:

a.   compensatory damages;

b.   punitive damages.

6

Respectfully submitted,

Ogg, Cordes, Murphy & Ignelzi

Samuel J. Cordes
Mary R. Roman

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 78099 (Roman)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

7

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendants' Reply to

Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of

Law was served this 6th day of February, 2003, upon the following by first class mail,

postage prepaid:


James B. Lieber
LIEBER & HAMMER, P.C.
PA. I.D. # 21748
Thomas M. Huber
PA. I.D.#83053
5528 Walnut Street
Pittsburgh, PA, 15232-2312


George A. Lane, Esq.
FBN 7242

GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
#205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 (fax)

LAW OFFICES

# George A. Lane, P.A.

**Attorney at Law**
Wachovia Tower
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, Florida, 33308
Tel. (954) 776-8284
Fax. (954) 771-9393

February 6, 2003

Mr. Robert Varth Jr.
Clerk of the Court
United States District Court for
the Western District of Pennsylvania
8th Floor -U.S. Courthouse
Pittsburgh, PA, 15219

RE:   Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
      Civil Action No. 02-1236 (W.D. Pa.)

Dear Mr. Varth:

We enclose the Defendants' Reply to Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss with Memorandum of Law, which we kindly request be filed with the court.

Yours very truly,

GEORGE A. LANE, P.A.

George A. Lane

cc. Cathy Bissoon, Esq.

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,        )    Civil Action No. 02-1236
                        )
      Plaintiff,        )
                        )
      vs.           )    The Honorable Gustave Diamond
                        )
FACTORY AUTHORIZED MEDICAL  )
SCOPE REPAIR; MEDICAL DEVICE  )
SOLUTION; AND JEFF TRANK,    )    **JURY TRIAL DEMANDED**
                        )
      Defendants.      )

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS WITH MEMORANDUM OF LAW

Plaintiff Shannon M. Cairns, by and through her counsel, Lieber & Hammer, P.C., files the

following Brief in Opposition to Defendant's Motion to Dismiss with Memorandum of Law.

## I. STATEMENT OF FACTS

Plaintiff Cairns, a female, is a Pennsylvania resident who resides at 55 Orchard Street,

Charleroi, PA 15022. She is a former employee of Defendants' Factory Authorized Medical

Scope Repair ("FAMSR") and Medical Device Solutions ("MDS"). (Cairns Aff., ¶¶ 1-2, attached

as Ex. A). Cairns brings this action under Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. 2000e *et seq.*, alleging that Defendants FAMSR and MDS discriminated against her on

the basis of her sex by subjecting her to a hostile work environment (Count I) and retaliated

against her for her complaints about Defendants' discriminatory conduct (Count II). Cairns also

brings this action under common law battery against Defendant Jeff Trank (Count III).

Cairns was born and raised in the Pittsburgh area. (Cairns Aff., ¶ 3). After graduating

from Duquesne University, Cairns began working for FAMSR in June 1998. (*Id.* at ¶ 4).

FAMSR repairs, services, contracts, buys and sells medical devices. (*Id.* at ¶ 5). Initially hired as

an account representative in the Pittsburgh office, Cairns was promoted within six months to Territory Development Manager.  (*Id.* at  ¶ 6).  Within a few months, Cairns trained her replacement and was promoted to Regional Sales Manager.  (*Id.* at  ¶ 7).

In November 1999, Cairns bought a house in New Jersey for tax purposes.  (*Id.* at  ¶ 8).  Despite this purchase, Cairns retained close ties to Pittsburgh.  She often worked out of her home in Charleroi during the work week and stayed there on weekends.  Her banking, direct deposit of her FAMSR paychecks, and all 401(k) Plan transactions remained at her Pittsburgh address.  In addition, any necessary postal communications between FAMSR's corporate headquarters and Cairns were sent to Cairns' Pittsburgh address or to FAMSR's Pittsburgh office and not to the New Jersey address. (Cairns Aff. ¶¶ 9-11).  The only work connection to the house in New Jersey was that MDS sent Cairns paychecks to that address for a couple of months.  (*Id.* at  ¶ 12).

Beginning in the Fall 2000, Cairns also served as Regional Sales Manager for MDS.  (*Id.* at  ¶ 13).

On October 14, 2000, Cairns attended a regional sales meeting in the state of Georgia at the vacation home of Jeff Trank, FAMSR's President.  (Compl., ¶ 13; Aff. of Jeff Trank in Supp. of Motion to Dismiss, ¶ 6).  During the evening of the meeting, Trank grabbed Cairns and kissed her. (Compl., ¶ 14).  When Cairns protested Trank's unwanted and offensive touching, Trank told Cairns she was "hot and sexy" and refused to release her.  (*Id.* at ¶ 15).

Later that same evening, Trank told Cairns he wanted to talk to her.  (*Id.* at ¶ 16).  Trank then assaulted Cairns again by picking her up, carrying her to a bed and pinning her down.  While he had Cairns pinned down, Trank attempted to grope her breasts and rubbed his pelvis against her.  (*Id.* at ¶ 17).  Despite Cairns's protests, Trank refused to dismount her and continued to

2

proposition her for sex.  (*Id.* at ¶ 18).  Trank finally released Cairns.  He said everyone would think they had sex anyway.  (*Id.* at ¶ 19).

Cairns reported the incident the next day to her supervisor Gregg Constantino.  (Compl., ¶ 20).  Constantino said that Trank had been drinking and had been having marital problems.  Constantino also told Cairns that Trank feared he was no longer attractive to younger women.  (*Id.* at ¶ 21).

As of the time of this incident, Cairns supervised a driver, a technician, and an account executive in Pittsburgh.  (Cairns Aff., ¶ 23).  She also supervised several account representatives, including two who worked out of their "home" offices in Philadelphia, PA.  The two account representatives and Cairns comprised the "Philadelphia" territory.  Cairns also supervised a driver and an account representative for New York/New Jersey, as well as a newly promoted account representative in Columbus, OH.  (*Id.*).

Cairns mostly worked in the field with these account representatives.  (Cairns Aff., ¶ 25).  When Cairns was not in the field, she worked out of her "home" offices in Pittsburgh or New Jersey, depending on her travel schedule.  (*Id.* at ¶ 26).

Cairns left New Jersey permanently in December 2000 to live full time with her family in Charleroi.  Cairns' complete withdrawal from New Jersey was directly caused by the events of October 14, 2000 in that Cairns needed to be closer to her family for support reasons and closer to her health professionals located in the Pittsburgh area.  (*Id.* at ¶¶ 27-28; *see also*, Def't's Mot. to Dismiss, at p. 7 (recognizing "that Plaintiff worked out of her residence while employed by FAMSR"); Aff. of Trank, at ¶ 10 (same)).

Following Cairns's rejection of Trank's unwanted and offensive sexual advances and her complaint to Constantino, Defendants retaliated against Cairns by changing the terms and conditions of her employment. (Compl., at ¶ 22). In December 2000, Cairns's former attorneys attempted to resolve the matter by sending a letter to Defendants. (Cairns Aff., ¶ 31). Defendants again retaliated against Cairns by changing the terms and conditions of her employment. (*Id.* at ¶ 32).

FAMSR induced Cairns to resign her position on March 3, 2001 based upon the misrepresentation that the case had been settled, which amounted to a constructive discharge. (*Id.* at ¶ 33). Cairns returned to work on May 29, 2001. (*Id.* at ¶ 34). FAMSR again constructively discharged Cairns in June 2001. (*Id.* at ¶ 35). During all of the incidents of alleged retaliation from December 2000 through June 2001, Cairns resided only in the Pittsburgh area, worked for Defendants out of her home in the Pittsburgh area, and felt the effects of Defendants' retaliation here in the Pittsburgh area. (*Id.* at ¶ 36).

The majority of the witnesses who attended the October 14, 2000 retreat at Trank's home in Georgia are located in close proximity to Pittsburgh:

- Cairns resides in the Pittsburgh, PA, (Cairns Aff. at ¶ 37);

- Debbie Paolo resides in the Pittsburgh, PA, (*Id.* at ¶ 38);

- Chet Galek resides in Newark, NJ, (*Id.* at ¶ 40);

- Gregg Constantino resides in GA, (*Id.* at ¶ 41) and;

- Jeff Trank resides in Florida.

Also, witnesses to incidents of retaliation are located in close proximity to Pittsburgh.

- Cairns resides in the Pittsburgh, PA, (*Id.* at ¶ 37);

4

- Debbie Paolo resides in the Pittsburgh, PA, (*Id.* at ¶ 44) and;

- Gregg Constantino resides in GA. (*Id.* at ¶ 45).

Other fact witnesses include:

- Kurt Cannon who is a former manager who can testify about Cairns' work ethic and performance and he resides in Philadelphia, PA. (Cairns Aff. at ¶ 39).

- George Pratt who is the manager who hired Cairns as well as her direct supervisor who supported her promotions and he resides in GA. (*Id.* at ¶ 42).

- Vince Bertoloni who is a former National Sales Manager who can testify about Cairns' performance and work ethic and he resides in GA. (*Id.* at ¶ 43).

## II. ARGUMENT

This Court should deny the Defendant's Motion to Dismiss as well as its alternative Motion to Transfer this case to the Southern District of Florida. Contrary to Defendant's assertions, this Court has jurisdiction over FAMSR because of the undisputed fact that FAMSR registered to do business in the Commonwealth of Pennsylvania and consented to jurisdiction in this Court. Also contrary to Defendant's assertions, venue is proper in this District under Title VII's specific venue provisions because Plaintiff Cairns felt the effects of both retaliation and sexual harassment while she was working out of her home office in this District. In the alternative, this Court should find that venue is proper as to Cairns' sexual harassment claim pursuant to the doctrine of pendent venue because of the relatedness of Cairns' Title VII claims, the avoidance of piecemeal litigation, and the convenience of the parties.

5

**A.** **This Court has general personal jurisdiction over FAMSR because FAMSR is authorized to do business as a foreign corporation in the Commonwealth of Pennsylvania.**

Federal courts in Pennsylvania look to Pennsylvania law to determine issues of personal jurisdiction. Fed. R. Civ. P. 4(e); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 150 (3d Cir. 1995). Pennsylvania law explicitly states that the qualification of a foreign corporation to do business is sufficient contact with the Commonwealth to serve as the basis for the assertion of general personal jurisdiction. 42 P.S. § 5301(a)(2)(i). In particular, 42 P.S. § 5301(a)(2)(i) provides as follows:

> (a) General rule.--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise **general personal jurisdiction** over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:
>
> (2) Corporations.--
>
> (i) **Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth**.

42 P.S. § 5301(a)(2)(i).

Based on this statute, Courts in the Third Circuit routinely hold that a foreign corporation is subject to suit in Pennsylvania even its only contact with the Commonwealth is the authorization to do business in Pennsylvania. *Bane v. Netlink, Inc.*, 925 F.2d 637, 640-41 (3d Cir. 1991); *Motorup Corp. v. Interpublic Group of Cos Inc.*, 1998 WL 237708, at *1 (E.D. Pa. May 11, 1998); *see also, RX Returns, Inc. v. PDI Enters., Inc.*, 1997 WL 330360, at *2 (E.D. Pa. Jun. 6, 1997) (stating that "[o]ur court of appeals has flatly held that when a foreign corporation registers to do business in Pennsylvania, a court may constitutionally exercise jurisdiction over the

6

defendant pursuant to 42 Pa.C.S.A. § 5301(a)(2)(i)"); *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 933 F. Supp. 1251, 1256 (E.D. Pa. 1996) (finding that the "bottom line is that Pennsylvania's long-arm statute provides for personal jurisdiction when a foreign corporation takes the particular action of becoming authorized to do business in Pennsylvania").

In the present case, FAMSR is a foreign corporation that is authorized by the Commonwealth to do business in Pennsylvania. (*See* Certificate of Authority permitting FAMSR to conduct business in Pennsylvania attached as Ex. B; Defendants' Response to Cairns's Interrogatories, at ¶ 18 attached as Ex. C). By registering to do business in Pennsylvania, FAMSR "'purposefully avail[ed] itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws.'" *Bane*, 925 F.2d at 640 (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 465 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). As a result of FAMSR's qualification as a foreign corporation under Pennsylvania law, this Court has general personal jurisdiction over FAMSR. *See Bane*, 925 F.2d at 640-41 (personal jurisdiction existed because defendant was authorized to do business in Pennsylvania); *Motorup Corp.*, 1998 WL 237708, at *1 (personal jurisdiction existed because defendants were qualified to do business in Pennsylvania according to certifications by the Secretary of State of Pennsylvania); *RX Returns, Inc.*, 1997 WL 330360, at *2 (subjecting defendant to personal jurisdiction where defendant registered to do business in Pennsylvania); *Eagle Traffic Control, Inc.*, 933 F. Supp. at 1256 (personal jurisdiction existed where defendant became authorized to do business in Pennsylvania).

Although not necessary, there is further evidence to justify this Court's jurisdiction over FAMSR. First, FAMSR contracted with CT Corporation System to act as its service agent in

7

Pennsylvania beginning in January 1998 and continuing to the present. (*See* Defendants'
Response to Cairns's Interrogatories, at ¶ 21). Thus, FAMSR consented to personal jurisdiction
in Pennsylvania courts. *Bane*, 925 F.2d at 641 (finding consent as alternative basis to exercise
general personal jurisdiction over corporation).

Second, from 1997 through 2001, FAMSR averaged over $1,000,000 in gross revenues
from the sales of its products and services in Pennsylvania. (*See* Defendants' Response to
Cairns's Interrogatories, at ¶ 2 (1997- $697,463: 1998- $1,228,851: 1999-$1,565,256: 2000-
$934,003: 2001-$910,654)). In addition, FAMSR maintained an office and repair location in the
Pittsburgh area at 11532 Parkway Drive, Huntington, PA. (*See* Defendants' Response to Cairns's
Interrogatories, at ¶ 9; Exhibit of Map of FAMSR Locations ("Pittsburgh"), attached as Ex. D).
Certainly, this type of continuous and systematic sales and service in Pennsylvania is sufficient
contact with the Commonwealth for this Court to exercise general personal jurisdiction over
FAMSR. *See* 42 P.S. § 5301(2)(a)(2)(ii)-(iii) (a non-resident corporation is subject to
Pennsylvania's general jurisdiction if it carries on a "continuous and systematic part of its general
business" within the state); *TJS Brokerage & Co., Inc. v. Mahoney*, 940 F.Supp. 784, 790
(E.D.Pa.1996) (finding general jurisdiction because of targeted advertising, the use of a
Pennsylvania-based trucking company to transport goods, and efforts to solicit Pennsylvania
business).

**B.      The Western District of Pennsylvania is the Proper Venue for Plaintiff's Title
         VII claims under 42 U.S.C. § 2000e-5(f)(3).**

In this case, Cairns filed an action against FAMSR asserting claims for sexual harassment
and retaliation under Title VII. Venue for Title VII actions is found at 42 U.S.C. § 2000e-5(f)(3).

8

*See EEOC v. Waffle House, Inc.*, 122 S.Ct. 754, 760 & n.6 (2002) (Title VII specifies the judicial districts in which claims may be brought); *Thurmon v. Martin Marietta Data Sys*, 596 F. Supp. 367, 368 (M.D. Pa. 1984) (quoting *Stebbins v. State Farm Mutual Automobile Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969)).

Under 42 U.S.C. § 2000e-5(f)(3), there are four judicial districts where a Title VII employment discrimination action may be brought:

(1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed,"

(2) "in the judicial district in which the employment records relevant to such practice are maintained and administered,"

(3) "or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice,"

(4) "but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."
42 U.S.C. § 2000e-5(f)(3).

Courts have noted that "this broad provision for alternative forums was necessary to support the desire of Congress to afford citizens full and easy redress of civil rights grievances." *Richardson v. Alabama State Bd. of Educ.*, 935 F.2d 1240, 1248 (11th Cir.1991). In fact, the only limitation contemplated by the provision is that it seeks to "limit venue to the judicial district concerned with the alleged discrimination." *Stebbins v. State Farm Mutual Auto Ins. Co.*, 413 F.2d 1100, 1102 (D.C.Cir.1969); *Ford v. Valmac Industries, Inc.*, 494 F.2d 330, 332 (10th Cir.1974). In general, the effect of Title VII's venue provision is to allow suit in the judicial

9

district in which the plaintiff worked or would have worked. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th cir. 2000).

> **1.    The Western District of Pennsylvania is Certainly the Proper Venue for Plaintiff's Retaliation Claim under Title VII Because at all Times of Retaliation Plaintiff Worked in this District and Felt the Effects of Retaliation in This District.**

Under the first basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue is proper in the judicial district in which the unlawful employment practice is alleged to have been committed. Venue is proper under this basis "in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506 (9th Cir. 2000). In other words, venue is found "where the effect of the unlawful employment practice is felt: where the plaintiff works, and the decision to engage in that practice is implemented." *Id.* at 505.

For example in *Passantino*, the plaintiff was a sales representative who worked out of her home office in Tacoma, Washington. Her employer was located in New Jersey. Plaintiff brought a Title VII failure to promote action against her employer in the District Court for the Western District of Washington. Following a verdict in plaintiff's favor, the employer appealed arguing, *inter alia*, that venue was not proper in that district because all of the decisions relating to plaintiff's claim were made in New Jersey.

The Ninth Circuit Court of Appeals rejected the employer's appeal and held that venue was proper in the Washington District Court because under the first basis of 42 U.S.C. § 2000e-5(f)(3) venue is proper "in both the forum where the employment decision is made and the forum in which that decision is implemented or its effects are felt." *Id.* at 506. The Ninth Circuit

rejected the employer's argument that allowing plaintiffs who work in far away home offices to bring in suit in their home districts leaves employers vulnerable to forum shopping and suit in distant fora. *Id.* at 505. According to the Ninth Circuit,

> It is of more concern that national companies with distant offices might try to force plaintiffs to litigate far away from their homes, . . . Forcing the plaintiff to litigate in a federal court on the other side of the country would significantly increase the plaintiff's costs of prosecuting her action. [This] theory would create a substantial burden on plaintiffs working for national sales companies, a burden inconsistent with the beneficent purposes of Title VII.

*Id.*

In this case, Cairns felt the effects of FAMSR's retaliation in the Western District of Pennsylvania. From December 2000 through June 2001, Cairns resided only in the Pittsburgh area and worked for Defendants FAMSR and MDS out of her home office in the Pittsburgh area. FAMSR retaliated against Cairns following her complaints of sexual harassment by changing the terms and conditions of her employment. The effects of that retaliation were felt by Cairns in the Western District of Pennsylvania where she was working out of her home office.

In addition, FAMSR retaliated against Cairns by constructively discharging her on two separate occasions: March 1, 2001 and June 2001. Like the previous retaliation, the effects of the retaliation which caused the successive constructive discharges were felt by Cairns in the Western District of Pennsylvania where she was working out of her home office. Because Cairns felt the effects of retaliation where she worked in the Western District of Pennsylvania, venue is undeniably proper for Cairns' retaliation claim in the Western District of Pennsylvania. *See Passantino*, 212 F.3d at 505-06.

     2.     **The Western District of Pennsylvania is the Proper Venue for Plaintiff's Sexual Harassment Claim Because Plaintiff Felt the Effects of that Harassment in this District.**

As mentioned above, under the first basis for venue in 42 U.S.C. § 2000e-5(f)(3), venue is proper in the judicial district in which the unlawful employment practice is alleged to have been committed and that includes where the effects of the unlawful employment practice are felt (*i.e.*, where the plaintiff works). *See Passantino*, 212 F.3d at 505-06. In the hostile work environment claim, Cairns alleges that she was sexually harassed when FAMSR President Jeff Trank sexually assaulted her on two separate occasions at a regional sales meeting in Georgia on October 14, 2000.

As discussed further below, Cairns felt the effects of that sexual harassment in the Western District of Pennsylvania because she worked out of a home office in this district as of the date of the incident and the period that followed. At all relevant times, Cairns often worked out of her home in Charleroi during the workweek and stayed there on weekends. Her banking, direct deposit of her FAMSR paychecks, and all 401(k) Plan transactions remained at her Pittsburgh address throughout her employment. In addition, any necessary postal communications between FAMSR's corporate headquarters and Cairns were sent to Cairns' Pittsburgh address or to FAMSR's Pittsburgh office.

As of October 2000, Cairns mostly worked in the field supervising account representatives. Those account representatives were located in Philadelphia, Pittsburgh, New York/New Jersey and Columbus, Ohio. In addition to account representatives, Cairns supervised a driver, a technician, and an account executive located in Pittsburgh and a driver for the New York/New Jersey territory. When Cairns was not in the field, she worked out of both "home"

12

offices in Pittsburgh and New Jersey, depending on her travel schedule.  Because felt the effects

of sexual harassment where she worked in the Western District of Pennsylvania, venue is proper

for Cairns' hostile work environment claim in the Western District of Pennsylvania.  *See*

*Passantino*, 212 F.3d at 505-06.

Also, Cairns continued to feel the effects of the sexual harassment incident in the Western

District of Pennsylvania because she left New Jersey permanently in December 2000 to live full

time with her family in Charleroi as a result of the events of October 14, 2000.  Cairns moved

permanently to this District  because she needed to be closer to her family for support reasons and

closer to her health professionals located in the Pittsburgh area.  Based on the foregoing, Cairns

felt the effects of the October 2000 sexual harassment in the Western District of Pennsylvania and

therefore venue for her sexual harassment claim is proper in this district.

    **3.**    **In the Alternative, The Western District is the Proper Venue for Plaintiff's Sexual Harassment Claim under the Doctrine of Pendent Venue.**

Generally, venue must be established for each separate claim in a complaint.  However,

courts have increasingly recognized the doctrine of "pendent venue," derived from the concept of

pendent jurisdiction. *See, e.g., Beattie v. United States*, 756 F.2d 91, 101 (D.C.Cir.1984).  Under

the doctrine of pendent venue, when two or more federal claims are brought and venue is properly

laid as to one claim, that venue will support adjudication of the other related claim.  *See* 15

Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure §

3808 (1986) (collecting cases); *see also, Reuber v. U.S.*, 750 F.2d 1039 (D.C.Cir.1984) (court

applied pendent venue theory because of existence of common facts, common issues of proof and

common witnesses demonstrating nexus between various counts), *cert. den.* 501 U.S. 1212, 111

S.Ct. 2814, 115 L.Ed.2d 986 (1991); *Jackson v. MCI Telecommunications Corp.*, 1993 WL 408332 (D. Kan.1993) (court heard claims under pendent venue theory after considering relatedness of claims, effect on judicial economy, convenience of the parties, and identity of damages); *Dooley v. United Technologies Corp.*, 786 F.Supp. 65 (D.D.C.1992) (court exercised pendent venue over all of plaintiff's claims after finding they arose out of same common nucleus of facts); *Christian Dalloz, S.A. v. Holden*, 1990 WL 121342 (E.D.Pa.1990) (pendent venue applied when parties and proof are identical, which factors were evidence of common nucleus of operative fact); *Rodriguez v. Chandler*, 641 F.Supp. 1292 (S.D.N.Y.1986) (pendent venue may be exercised when the claims are factually interrelated), *aff'd* 841 F.2d 1117 (2d Cir.1988).

The issue whether a court should exercise pendent venue over a claim is a matter of judicial discretion. *Lengacher v. Reno*, 75 F. Supp. 2d 515, 518 (E.D. Va. 1999). In deciding, a court should consider such matters as the relatedness of the claims, judicial economy, convenience, avoidance of piecemeal litigation, and fairness to litigants. *Id.*; *Jackson*, 1993 WL 408332 at *2 (D. Kan. 1993) (citing 1A Moore's Federal Practice § 0.342[4]). Pendent venue is appropriate in cases like the one at issue here "where the claims derive their grant of venue from the same statute" because "to hold otherwise would effectively bar the use of pendent venue in Title VII cases." *Jackson*, 1993 WL 408332 at *2.

In *Jackson*, the plaintiff brought two Title VII claims against her employer in the United States District Court for the District of Kansas. In the first count, the plaintiff alleged that she had been discharged from her position in the Kansas office because of her race and gender. In the second count, the plaintiff alleged that the employer had failed to hire her for a position in the Texas office because of her race and gender.

14

The parties did not dispute that venue was proper in the District of Kansas for the first count. As to the second count relating to the failure to hire plaintiff in the Texas office, the employer filed a motion to dismiss arguing that venue was not proper in the District of Kansas. *Id.* at *1. The District of Kansas Court denied the employer's motion finding that venue was proper for the second count in the District of Kansas under the doctrine of pendent venue. *Id.* at *3.

In so holding, the Court evaluated the relatedness of the claims, the effect on judicial economy, the convenience of the parties, as well as considerations of fairness. *Id.* The Court found that the two claims were related because one of the factual issues to be resolved was whether the plaintiff actually resigned her position in Kansas or tried to retain it until finding a favorable position in Texas. Thus, the issue whether the plaintiff's termination was voluntary depended in large part on the extent her resignation from the Kansas office was conditional upon her rehire in the Texas office. *Id.*

The Court also found significant the fact that the damages the plaintiff claimed in the first count were nearly identical to those claimed in the second count. According to the Court, "[e]xercising pendent venue over both counts will avoid the problem which could arise if plaintiff should prevail on her Kansas action first, and the defendant could assert that plaintiff could not again recover for the same damages in the Texas action." *Jackson*, 1993 WL 408332, at *3.

Finally, the Court rejected the employer's convenience argument that the second count should be litigated in Texas even though the plaintiff now resided in Texas and the witnesses to the second count also resided in Texas. In rejecting the employer's argument, the Court emphasized that the parties still had to litigate the first count in Kansas and that venue was proper

15

for that count in Kansas. *Id.* at *3. Based on the relatedness of the claims, the judicial economy in resolving both counts in one action, and to achieve fairness to the parties, the Court held based on the doctrine of pendent venue that venue for the second count was proper in the District of Kansas. *Id.*

Like the Court in *Jackson*, this Court should exercise pendent venue over Cairns' sexual harassment claim based on the relatedness of that claim to Cairns' retaliation claim, the judicial economy in resolving both counts in one action, and to achieve fairness for the parties.

As in *Jackson*, Cairns' two claims are closely related. In short, Cairns alleges that she was sexually assaulted by the President of the Company, that the next day she reported the assault to her supervisor, and that as a result of her complaint she suffered retaliation which culminated in a constructive discharge. An issue to be resolved in Cairns' retaliation claim is whether her complaint of harassment was in fact "good faith" opposition to a discriminatory practice of the employer. To determine whether her complaint was made in "good faith" will require a close examination of the events of October 14, 2000 and will include a determination whether Cairns was in fact subjected to a hostile work environment as a result of those events.

Also as in *Jackson*, the damages requested by Cairns in Count I (sexual harassment) are identical to those requested in Count II (retaliation). Thus, exercising pendent venue will avoid the problem noted by the Court in *Jackson* which could arise if Cairns should prevail on her sexual harassment action first, and FAMSR could assert that Cairns could not again recover for the same damages in the retaliation action. *See Jackson*, 1993 WL 408332, at *3.

Finally, convenience dictates that this Court exercise pendent venue over Cairns' sexual harassment claim. For the reasons set forth in II.B.1, *supra*, the parties must litigate Count II in

16

the Western District of Pennsylvania. In addition, Cairns is located here as are her family members and medical professionals who will testify in her case in chief. Forcing Cairns to litigate in a federal court in Florida or elsewhere would significantly increase her costs of prosecuting her action which is "a burden inconsistent with the beneficent purposes of Title VII." *Passantino*, 212 F.3d at 505-06.

Furthermore, this District is the most convenient district for the other witnesses likely to testify in this case. The witnesses to the events of October 14, 2000 in addition to Cairns include the following:

- Debbie Paolo who resides in the Pittsburgh, PA;

- Chet Galek who resides in Newark, NJ;

- Gregg Constantino who resides in GA, and;

- Jeff Trank who resides in Florida.

Also, witnesses to incidents of retaliation are located in close proximity to Pittsburgh.

- Cairns resides in the Pittsburgh, PA;

- Debbie Paolo resides in the Pittsburgh, PA, and;

- Gregg Constantino resides in GA.

Finally, other fact witnesses are located in close proximity to Pittsburgh:

- Kurt Cannon is a former manager who can testify about Cairns' work ethic and performance and he resides in Philadelphia, PA.

- George Pratt is the manager who hired Cairns as well as her direct supervisor who supported her promotions and he resides in GA.

- Vince Bertoloni is a former National Sales Manager who can testify about Cairns'

17

performance and work ethic and he resides in GA.

The foregoing clearly demonstrate that factors of convenience weigh heavily in favor of this Court exercising pendent venue over Cairns' sexual harassment claim.

In conclusion, based on the relatedness of the claims, the judicial economy in resolving both counts in one action, and to achieve fairness to the parties, Cairns respectfully submits that this Court should exercise pendent venue over Cairns' sexual harassment claim and hold that venue for that claim is proper in this Court.

### III. CONCLUSION

Based on the foregoing, Plaintiff Shannon M. Cairns respectfully requests this Court to deny Defendant's Motion to Dismiss and Alternative Motion to Transfer and to Exercise Jurisdiction over Defendant FAMSR and to find that venue is proper in this Court for Plaintiff's Title VII claims found at Counts I and II.

A proposed Order is attached.

Respectfully submitted,

LIEBER & HAMMER, P.C.

James B. Lieber
PA I.D. # 21748
Thomas M. Huber
PA I.D. # 83053
5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

18

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,         )     Civil Action No. 02-1236
                              )
       Plaintiff,         )
                              )
     vs.                )     The Honorable Gustave Diamond
                              )
FACTORY AUTHORIZED MEDICAL  )
SCOPE REPAIR; MEDICAL DEVICE  )
SOLUTION; AND JEFF TRANK,   )   **JURY TRIAL DEMANDED**
                              )
       Defendants.      )

## ORDER OF COURT

AND NOW, this _____ day of _____, 2003, upon consideration of Defendant's Motion to Dismiss with Memorandum of Law and Plaintiff's Brief in Opposition to Defendant's Motion, it is hereby ORDERED, ADJUDGED and DECREED that Defendant's Motion is denied with respect to Factory Authorized Medical Scope Repair ("FAMSR") in that this Court has jurisdiction over FAMSR and venue under Plaintiff's Title VII claims is proper in this Court.

It is also ORDERED, ADJUDGED and DECREED that Defendant's Motion is granted with respect to Defendants Medical Device Solutions and Jeff Trank in that this Court does not have jurisdiction over those two Defendants and Plaintiff's claims against those two are hereby dismissed without prejudice.

By the Court,

_____ J.

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | The Honorable Gustave Diamond |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| Commonwealth of Pennsylvania | ) |
| | ) ss: |
| County of Allegheny | ) |

### AFFIDAVIT OF SHANNON M. CAIRNS

BEFORE ME, a Notary Public, in and for said County and State, on this day personally appeared Shannon M. Cairns, who, having been by me first duly sworn, upon her oath deposed and said:

1. I am a female and a Pennsylvania resident who resides at 55 Orchard Street, Charleroi, PA 15022.

2. I am a former employee of Defendants' Factory Authorized Medical Scope Repair ("FAMSR") and Medical Device Solutions ("MDS").

3. I was born and raised in the Pittsburgh area.

4. After graduating from Duquesne University, I began working for FAMSR in June 1998.

5. FAMSR repairs, services, contracts, buys and sells medical devices.

6. I was initially hired as an account representative in the Pittsburgh office.  I was

promoted within six months to Territory Development Manager.

7.    Within a few months of that promotion, I trained my replacement and was promoted to Regional Sales Manager.

8.    In November 1999, I bought a house in New Jersey for tax purposes.

9.    Despite this purchase, I retained close ties to Pittsburgh.  I often worked out of my home in Charleroi during the workweek and stayed there on weekends.

10.   My banking, direct deposit of my FAMSR paychecks, and all 401(k) Plan transactions remained at my Pittsburgh address.

11.   In addition, any necessary postal communications between myself and FAMSR's corporate headquarters were sent to my Pittsburgh address or to FAMSR's Pittsburgh office.

12.   The only work connection to the house in New Jersey was that MDS sent my MDS paychecks to that address for a couple of months.

13.   In the Fall 2000, I began serving as a Regional Sales Manager for MDS.

14.   On October 14, 2000, I attended a regional sales meeting in the state of Georgia at the vacation home of Jeff Trank, FAMSR's President.

15.   During the evening of the meeting, Trank grabbed and kissed me.

16.   When I protested Trank's unwanted and offensive touching, Trank told me I was "hot and sexy" and refused to release me.

17.   Later that same evening, Trank told me he wanted to talk to me.

18.   Trank then assaulted me again by picking me up, carrying me to a bed and pinning me down.

2

19.   While he had me pinned down, Trank attempted to grope my breasts and rubbed his pelvis against me.

20.   Despite my protests, Trank refused to dismount me and continued to proposition me for sex.  Trank finally released me.  He said everyone would think we had sex anyway.

21.   I reported the incident the next day to my supervisor Gregg Constantino.

22.   Constantino said that Trank had been drinking and had been having marital problems.  Constantino also told me that Trank feared he was no longer attractive to younger women.

23.   As of the date of this incident, I supervised a driver, a technician, and an account executive in Pittsburgh.  I also supervised several account representatives including two who worked out of their "home" offices in Philadelphia, PA.  The two account representatives and myself comprised the "Philadelphia" territory.  I also supervised a driver and an account representative for New York/New Jersey, as well as a newly promoted account representative in Columbus, OH.

24.   By this point, FAMSR had dissolved its satellite office in Philadelphia.

25.   I mostly worked in the field with the account representatives.

26.   When I was not in the field, I worked out of my "home" offices in New Jersey or Pittsburgh, depending on my travel schedule.

27.   I left New Jersey permanently in December 2000 to live full time with my family in Charleroi.

28.   My complete withdrawal from New Jersey was directly caused by the events of

3

October 14, 2000 in that I needed to be closer to my family for support reasons and closer to my health professionals located in the Pittsburgh area.

29.    I continued to work for FAMSR and MDS out of my "home" office in Charleroi, PA.

30.    Following my rejection of Trank's unwanted and offensive sexual advances and my complaint to Constantino, Defendants retaliated against me by changing the terms and conditions of my employment.

31.    On or about December 1, 2000, my former attorneys Mary Roman and Kathleen J. Davies of Ogg Jones Cordes & Ignelzi, LLP attempted to resolve the matter by sending a letter to Defendants.

32.    Defendants again retaliated against me by changing the terms and conditions of my employment.

33.    FAMSR induced me to resign my position on March 3, 2001 based upon the misrepresentation that any possible litigation had been settled.

34.    I returned to work on May 29, 2001.

35.    FAMSR again constructively discharged me in June 2001.

36.    During all of the incidents of retaliation from December 2000 through June 2001, I resided only in the Pittsburgh area, worked for FAMSR and MDS out of my home in the Pittsburgh area, and felt the effects of retaliation here in the Pittsburgh area.

37.    I reside in the Pittsburgh, PA area.

38.    Debbie Paolo attended the October 14, 2000 retreat at Trank's home in Georgia and she resides in Pittsburgh, PA.

4

39.   Kurt Cannon is a former manager who can testify about my work ethic and performance and he resides in Philadelphia, PA.

40.   Chet Galek attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in Newark, NJ.

41.   Gregg Constantino attended the October 14, 2000 retreat at Trank's home in Georgia and he resides in GA.

42.   George Pratt is the manager who hired me as well as my direct supervisor who supported my promotions and he resides in GA.

43.   Vince Bertoloni is a former National Sales Manager who can testify about my performance and work ethic and he resides in GA.

44.   Debbie Paolo is a possible witness of the retaliation and as mentioned previously she resides in Pittsburgh, PA.

45.   Gregg Constantino is also a witness of the retaliation and as mentioned previously he resides in GA.

46.   Chet Galek is also a witness of the retaliation and as mentioned previously he resides in Newark, NJ.

47.   Charles Meadows is a FAMSR employee and he may testify about events of retaliation against me and he lives in Philadelphia, PA.

48.   Rich Morton is a FAMSR employee and he may testify about events of retaliation against me and he lives in Columbus, OH.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January _27_, 2003.


_____
Shannon M. Cairns


Sworn to and subcribed
before me this 27th
day of January, 2003.

_____
             Notary Public


Notary Seal
Margie Hammer, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Mar. 20, 2003
Member, Pennsylvania Association of Notaries

6

# EXHIBIT B

COMMONWEALTH   OF   PENNSYLVANIA

DEPARTMENT   OF   STATE

NOVEMBER 06, 2002

TO ALL WHOM THESE PRESENTS SHALL COME. GREETING:

FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS. INC.

I. C Michael Weaver. Secretary of the Commonwealth of

Pennsylvania do hereby certify that the foregoing and annexed is a true

and correct photocopy of Certificate of Authority

which appear of record in this department



IN TESTIMONY WHEREOF, I have
hereunto set my hand and caused
the Seal of the Secretary's
Office to be affixed, the day
and year above written.

C. Michael Weaver

------------------------------
Secretary of the Commonwealth

TCH1

JUL-15-1997  11:18      CT CORP-PLANTATION                          P.02/06

9752~ 881

JUL 16 1997

Microfilm Number _____          Filed with the Department of State on _____

Entity Number _2265654_                 _____
                                        Secretary of the Commonwealth

## APPLICATION FOR CERTIFICATE OF AUTHORITY
### DSCB:15-4124/6124 (Rev 90)

Indicate type of corporation (check one):

_X_ Foreign Business Corporation  (15 Pa.C.S. § 4124)

___ Foreign Nonprofit Corporation (15 Pa.C.S. § 6124)

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. (relating to corporations and unincorporated associations) the undersigned association hereby states that:

1. The name of the corporation is: Factory Authorized Medical Scope Repairs, Inc.

   _____

2. The name which the corporation adopts for use in this Commonwealth is (complete only when the corporation must adopt a corporate designator for use in Pennsylvania):

   _____

3. (If the name set forth in Paragraph 1 is not available for use in this Commonwealth, complete the following): The fictitious name which the corporation adopts for use in transacting business in this Commonwealth is:

   _____

   This corporation shall do business in Pennsylvania only under such fictitious name pursuant to the attached resolution of the board of directors under the applicable provisions of 15 Pa.C.S (relating to corporations and unincorporated associations) and the attached form DSCB:54-311 (Application for Registration of Fictitious Name).

4. The name of the jurisdiction under the laws of which the corporation is incorporated is:

   Florida_____

5. The address of its principal office under the laws of the jurisdiction in which it is incorporated is:

   637 NW 12th Avenue, Deerfield Beach, Florida  33442, Broward
   Number and Street        City           State        Zip        County

6. The (a) address of this corporation's proposed registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

   (a)_____
      Number and Street            City        State    Zip    County
   (b) c/o: C T Corporation System                    Allegheny County
      Name of Commercial Registered Office Provider              County

(PA. - 404 - 10/1/92)        JUL 16 97

                        PA Dept. of State

9752- 882

DSCB:15-4124/6124 (Rev 90)-2

For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

7.   (Check one of the following):

___X__ (Business corporation): The corporation is a corporation incorporated for a purpose or purposes involving pecuniary profit, incidental or otherwise.

_____ (Nonprofit corporation): The corporation is a corporation incorporated for a purpose or purposes not involving pecuniary profit, incidental or otherwise.

     IN TESTIMONY WHEREOF, the undersigned corporation has caused this Application for a Certificate of Authority to be signed by a duly authorized officer this ___24th___ day of ___June___ , 19 __97__ .

Factory Authorized Medical Scope Repairs,
                                    (Name of Corporation)

BY: _____
          Jeff Trank (Signature)

TITLE: ___President_____

(PA. _404)

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION, and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## DEFENDANTS' RESPONSE TO PLAINTIFF'S INTERROGATORIES
## AND DOCUMENT REQUESTS IN AID OF JURISDICTION

COMES NOW Defendants, Factory Authorized Medical Scope Repair and Jeff Trank in response to Plaintiff's Interrogatories say the following and through their undersigned counsel reply to the Plaintiff's Document Requests in Aid of Jurisdiction dated October 29, 2002, in the same numbered order as contained in the Request:

## INTERROGATORIES

1.  Identify all of the persons answering these Interrogatories and identify by Interrogatory Number the Interrogatory or Interrogatories each such person has answered or has participated in answering.     Nicole Duncanson - Interrogatories 1-21;
    Shannon Cunningham - Interrogatories 9 and 10.

2.  For each of the Defendant's fiscal years ending 1997, 1998, 1999, 2000 and 2001 and 2002 through August 29, 2002, state total Defendant's gross revenues from (a) all locations world-wide, (b) all United States locations and (c) all Pennsylvania locations.  If the Defendant had no revenues in any year outside the fifty states of the United States, use "0" for that year for world-wide revenues.  If the Defendant's operations in any year were restricted to fewer than fifty states of the United States, state how many states were included for that year.

    (a)   1997          -          0
          1998          -          0
          1999          -          0
          2000          -          0
          2001          -          0
          2002 thru 8/29 -         0

    (b)   1997          -     $ 8,019,568.00          in 21 states
          1998          -     $11,656,248.00          in 26 states
          1999          -     $13,854,170.00          in 27 states
          2000          -     $11,561,612.00          in 23 states
          2001          -     $10,055,727.00          in 24 states
          2002 thru 8/29-     $ 6,493,833.00          in 19 states

    *(c)  1997          -     $   697,463.00
          1998          -     $ 1,228,851.00
          1999          -     $ 1,565,256.00
          2000          -     $   934,003.00
          2001          -     $   910,654.00
          2002 thru 8/29 -    $   684,788.00

*The Defendants have no locations in Pennsylvania.  Revenues indicated are attributed to sales and repairs generated in Pennsylvania

3.     For each of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000, 2001 and 2002 through August 29, 2002, state total revenues (a) world-wide, (b) from the fifty states of the United States and (c) from Pennsylvania from equipment and system repair, system and equipment modification, and all other instances of service performed by the Defendant's employees and agents. If any such instance was performed at no cost to the customer, please list each such instance, its date, and the reason for an absence of cost to the customer. If the Defendant had no such revenues in any year outside the fifty states of the United States, use "0" for that year for world-wide revenues. If the Defendant's operations in any year were restricted to fewer than the fifty states of the United States, state how many states were included for that year.

See response to number 2 above as to revenues. Any repairs at no cost to the customer were effected by way of the Defendant's uniform and general practice throughout all states due to courtesy, warranty, no repairs, capped agreements, or scope purchases. Any items relating to scope purchases were included in above figures. Any capped agreements would also be included in above figures due to overages/credits on the contract were billed/credited to arrive in sales figures.

4.     State the Defendant's breakeven point in total gross revenues for each of the Defendant's fiscal years ending in 1996, 1997, 1998, 1999, 2000 and 2001. Defendants are uncertain as to what is meant by "breakeven point" but has provided financial statements attached hereto in an effort to respond to this Interrogatory.

5.     State the contribution to net profit before taxes of Pennsylvania revenues for each of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000 and 2001.

| | | |
|---|---|---|
| 1997 | - | $ 111,134.00 |
| 1998 | - | $ 182,830.00 |
| 1999 | - | $ 44,345.00 |
| 2000 | - | ($ 324,109.00) |
| 2001 | - | ($ 21,622.00) |

6. If Pennsylvania's total gross revenues changed by more than ten percent from one year to the next in any of the Defendant's fiscal years ending in 1997, 1998, 1999, 2000 and 2001 and 2002 through August 29, 2002, state the reason for any such increase or decrease.

In 1997, 1998, and 1999, Pennsylvania's total gross revenues increased by more than ten percent from one year to the next. In 2000, Pennsylvania's total gross revenues decreased by more than ten percent from 1999. In 2001, Pennsylvania's total gross revenues decreased by less than ten percent from 2000. The Defendants are uncertain about what is meant by "the reason for any such increase or decrease" as many factors may be simultaneously involved. The revenues steadily decreased during the period from June 1, 1999 to June 12, 2001, when the Plaintiff was the sales manager. The Defendants provide the following information in an effort to respond to this Interrogatory:

| Territory | 1997 | 1998 | 1999 | 2000 | 2001 |
|---|---|---|---|---|---|
| 410 | $150,943 | - | - | - | $ 51,757 |
| 420 | $371,645 | - | - | - | $ 110,666 |
| 430 | $ 81,385 | - | - | - | - |
| 815 | $ 19,795 | $300,050 | $ 353,508 | $265,959 | $ 382,454 |
| 820 | $ 26,810 | $311,860 | $ 211,177 | $ 95,380 | $ 256,403 |
| 825 | $ 46,885 | $453,426 | $ 578,653 | $433,839 | $ 109,374 |
| (Cairns)* 835 | - | $163,515 | $ 373,156 | $104,711 | - |
| 845 | - | - | $ 48,762 | $ 34,114 | - |
| Total | $697,463 | $1,228,851 | $1,565,256 | $934,003 | $ 910,654 |

7. For each of the years 1999, 2000 and 2001 state the Pennsylvania gross revenues, if any, that were wholly attributable to employees and/or agents of the Defendants other than the Plaintiff.

Plaintiff became manager on 6/1/99. The individual sales representatives, at that time were fully in control of their accounts and were self-maintained. In that respect, all sales from 6/1/99 - 2001 were attributed to other employees. Since the plaintiff became a manager, sales dropped in that territory.

8. State how and on what date the Defendant notified Plaintiff of each change in the terms and conditions of her employment with the Defendant during the period January 1, 1998 through August 29, 2002.

Not applicable. Defendants have no knowledge of any notification.

9.     State ı  location of each office, sales facility, ɹepair facility or other facility of the

Defendant that was either opened, closed or moved in Pennsylvania during the

period January 1, 1997 through August 29, 2002, giving the date and nature of

each such opening, closing or move.  For this and the next Interrogatory, opening,

closing and moving facilities includes moves from and/or into Pennsylvania.

The Defendant leased a small office at 11532 Parkway D, in Huntington, Pennsylvania for
a short time in 1999-2000, but closed this office due to very infrequent use.

10.     State the location of each office, sales facility, repair facility or other facility of the

Defendant that was neither opened nor closed nor moved in Pennsylvania during

the period January 1, 1997 through August 29, 2002.

See listing of facilities by year attached.

11.     State the business relationship between FAMSR and MDS during the period

January 1, 1997 through October 15, 2002, and if the relationship changed at any

time during the period January 1, 1997 through October 15, 2002, give the date

and description of each change.

FAMSR outsourced and subcontracted some of its sales services to MDS.

12.     State the status of MDS during the period January 1, 1997 through October 15,

2002, and if the status of MDS changed at any time during the period January 1,

1997 through October 15, 2002, give the date and description of each change.

FAMSR began outsourcing repairs to MDS during the last quarter of 2000.
FAMSR stopped outsourcing with MDS in December 2001 when they ceased operations.

13.     If it is not clear from the answer to the previous two Interrogatories, state the date

on which MDS became a "defunct" entity as that term was used in Para. 2 of the

Affidavit of Jeff Trank in Support of Motion to Dismiss and state how the change

in MDS's status was brought about or came about.

The term "defunct" refers to MDS ceasing operations in December 2001

14.    What is the name of the successor in interest to MDS?

        None.

15.    State the date of each trip, both business and non-business, into Pennsylvania of

        Jeff Trank and all other officers and top-level managers of the Defendant during

        the period January 1, 1997 through October 15, 2002, and for each trip, state the

        purpose of the visit, the location or locations visited, and the total length of time of

        the trip.

        Defendants have no knowledge of any travel for top-level managers going into
        Pennsylvania during this time period.

16.    Describe what negotiations, if any, concerning the employment of Plaintiff by the

        Defendant occurred in Pennsylvania, and describe what negotiations, if any,

        occurred by telephone, e-mail, postal mail or other non-in-person means of

        communication between the Plaintiff in Pennsylvania and any other agent or

        employee of the Defendant, whether located in Pennsylvania or not at the time of

        the communication, giving the date of each communication and identifying all of

        the employees and agents of the Defendant involved in the communication.

Defendants not aware of any negotiations which occurred in Pennsylvania. The
Defendants are only aware of negotiations which occurred outside of Pennsylvania as part
of the initial hiring process. See Plaintiff's resume, offer letter, and application for
employment attached which identify all communications concerning the employment of
Plaintiff.

17. State the beginning and end of the period in which Plaintiff's base office was located in New Jersey and state whether the period was continuous or broken.

   July 1999 through May 2000.  The period was continuous.

18. State whether FAMSR is the same entity as Factory Authorized Medical Scope Repairs, Inc., registered as a foreign business in the Bureau of Corporations of the Department of State of the Commonwealth of Pennsylvania.

   It is the same entity.

19. State whether MDS has been registered as a foreign business in the Bureau of Corporations of the Department of State of the Commonwealth of Pennsylvania.

   Defendants are uncertain of the legal status of MDS in the Commonwealth of Pennsylvania.

20. State the extent to which FAMSR is responsible for the debts, including litigation damages, of MDS that have accrued since June 1, 1998.

   FAMSR is not responsible for any debts of MDS.

21. State whether CT Corporation System was FAMSR's service agent in Pennsylvania during the period January 1, 1998 and October 15, 2002, and if CT Corporation System was not FAMSR's service agent in Pennsylvania for that entire period, identify other service agents of FAMSR in Pennsylvania, their mailing addresses and the dates of their tenure as service agents for FAMSR.

   CT Corporation System was the service agent for this period.


_____
Representative of Defendants

Print Name:_____

STATE OF FLORIDA     )
                             )ss:
COUNTY OF BROWARD   )

The foregoing instrument was acknowledged before me this _30ᵗʰ_ day of December,

2002, by _Nicole Duncanson_____, who is personally known to me or who has

produced _driver's license # D525-636-69-685-0_____, identification and who did (did

not) take an oath.

Dennis O'Connor
My Commission DD030611
Expires June 03, 2005

_____
NOTARY PUBLIC
State of Florida-at-large

MY COMMISSION EXPIRES:

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1997 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 8,019,567.57 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 2,357,192.91 | 29.39% |
| GROSS PROFIT | 5,662,374.66 | 70.61% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 2,956,029.40 | 36.86% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 1,425,530.39 | 17.78% |
| OPERATING EXPENSES | 4,381,559.79 | 54.64% |
| OPERATING INCOME | 1,280,814.87 | 15.97% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (2,975.19) | -0.04% |
| NET INCOME | 1,277,839.68 | 15.93% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1998 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,656,248.73 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 3,539,850.35 | 30.37% |
| GROSS PROFIT | 8,116,398.38 | 69.63% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,013,431.86 | 34.43% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 2,297,079.32 | 19.71% |
| OPERATING EXPENSES | 6,310,511.18 | 54.14% |
| OPERATING INCOME | 1,805,887.20 | 15.49% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (71,659.60) | -0.61% |
| NET INCOME | 1,734,227.60 | 14.88% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1999 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 13,854,169.83 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,388,501.79 | 31.68% |
| GROSS PROFIT | 9,465,668.04 | 68.32% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 5,291,279.64 | 38.19% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 3,229,257.48 | 23.31% |
| OPERATING EXPENSES | 8,520,537.12 | 61.50% |
| OPERATING INCOME | 945,130.92 | 6.82% |
| OTHER INCOME / (EXPENSES) | (552,630.27) | -3.99% |
| NET INCOME | 392,500.65 | 2.83% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

| | YTD thru 12/31/2000 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,561,612.42 | 100.00% |
| | | |
| TOTAL REVENUE | | |
| COST OF SALES | 4,326,046.00 | 37.42% |
| GROSS PROFIT | 7,235,566.42 | 62.58% |
| | | |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 4,285,615.86 | 37.07% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 3,557,303.81 | 30.77% |
| OPERATING EXPENSES | 7,842,919.67 | 67.84% |
| OPERATING INCOME | (607,353.25) | -5.25% |
| | | |
| OTHER INCOME / (EXPENSES) | (3,404,649.44) | -29.45% |
| NET INCOME | (4,012,002.69) | -34.70% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

| | YTD thru 12/31/2001 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 10,055,727.01 | 100.00% |
| | | |
| TOTAL REVENUE | | |
| COST OF SALES | 4,214,866.75 | 41.92% |
| GROSS PROFIT | 5,840,860.26 | 58.08% |
| | | |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 3,419,473.44 | 34.01% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 2,828,175.40 | 28.13% |
| OPERATING EXPENSES | 6,247,648.84 | 62.13% |
| OPERATING INCOME | (406,788.58) | -4.05% |
| | | |
| OTHER INCOME / (EXPENSES) | 168,033.81 | 1.67% |
| NET INCOME | (238,754.77) | -2.37% |

## DOCUMENT REQUESTS

Because the volume of documents is massive, Defendants require Plaintiff to arrange for copying by an independent copying service, at Plaintiff's expense. Defendants will cooperate with Plaintiff in reviewing the documents for copying at its premises on a date mutually agreed upon by the parties.

1.     All responsive documents in defendants' possession will be produced.

2.     All responsive documents in defendants' possession will be produced.

3.     All responsive documents in defendants' possession will be produced.

4.     Financial Statements attached.

5.     All responsive documents in defendants' possession will be produced.

6.     All responsive documents in defendants' possession will be produced.

7.     All responsive documents in defendants' possession will be produced.

8.     See listing of facilities by year attached.  All other responsive documents relied upon  in defendants' possession will be produced.

9.     See listing of facilities by year attached.  All other responsive documents relied upon  in defendants' possession will be produced.

10.    This request is vague and the Defendants are uncertain exactly what is sought by plaintiff.

11.    This request is vague and the Defendants are uncertain exactly what is sought by plaintiff.

12.    No known documents exist at this time, but should any such documents become known they will be produced.

13.    Copy of Application for Certificate of Authority as stamped by the Pennsylvanaia Department of State on July 16, 1997 bearing Entity number 2765654, attached.

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1997 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 8,019,567.57 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 2,357,192.91 | 29.39% |
| GROSS PROFIT | 5,662,374.66 | 70.61% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 2,956,029.40 | 36.86% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 1,425,530.39 | 17.78% |
| OPERATING EXPENSES | 4,381,559.79 | 54.64% |
| OPERATING INCOME | 1,280,814.87 | 15.97% |
| OTHER INCOME / (EXPENSES) |  |  |
|  | (2,975.19) | -0.04% |
| NET INCOME | 1,277,839.68 | 15.93% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/1998 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,656,248.73 | 100.00% |
| | | |
| TOTAL REVENUE | | |
| COST OF SALES | 3,539,850.35 | 30.37% |
| GROSS PROFIT | 8,116,398.38 | 69.63% |
| | | |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 4,013,431.86 | 34.43% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 2,297,079.32 | 19.71% |
| OPERATING EXPENSES | 6,310,511.18 | 54.14% |
| OPERATING INCOME | 1,805,887.20 | 15.49% |
| OTHER INCOME / (EXPENSES) | | |
| | (71,659.60) | -0.61% |
| NET INCOME | 1,734,227.60 | 14.88% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

| | YTD thru 12/31/1999 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 13,854,169.83 | 100.00% |
| | | |
| TOTAL REVENUE | | |
| COST OF SALES | 4,388,501.79 | 31.68% |
| GROSS PROFIT | 9,465,668.04 | 68.32% |
| | | |
| OPERATING EXPENSES: | | |
| SELLING EXPENSES | 5,291,279.64 | 38.19% |
| GENERAL AND ADMINISTRATIVE EXPENSES | 3,229,257.48 | 23.31% |
| OPERATING EXPENSES | 8,520,537.12 | 61.50% |
| OPERATING INCOME | 945,130.92 | 6.82% |
| | | |
| OTHER INCOME / (EXPENSES) | (552,630.27) | -3.99% |
| NET INCOME | 392,500.65 | 2.83% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|  | YTD thru 12/31/2000 | YTD as % of Sales |
|---|---|---|
| REPAIR REVENUE | 11,561,612.42 | 100.00% |
| TOTAL REVENUE |  |  |
| COST OF SALES | 4,326,046.00 | 37.42% |
| GROSS PROFIT | 7,235,566.42 | 62.58% |
| OPERATING EXPENSES: |  |  |
| SELLING EXPENSES | 4,285,615.86 | 37.07% |
| GENERAL AND  ADMINISTRATIVE EXPENSES | 3,557,303.81 | 30.77% |
| OPERATING EXPENSES | 7,842,919.67 | 67.84% |
| OPERATING INCOME | (607,353.25) | -5.25% |
| OTHER INCOME / (EXPENSES) | (3,404,649.44) | -29.45% |
| NET INCOME | (4,012,002.69) | -34.70% |

# FACTORY AUTHORIZED MEDICAL SCOPE REPAIRS, INC.
## PROFIT & LOSS

|                                          | YTD thru 12/31/2001 | YTD as<br>% of Sales |
|------------------------------------------|---------------------|----------------------|
| REPAIR REVENUE                           | 10,055,727.01       | 100.00%              |
| TOTAL REVENUE                            |                     |                      |
| COST OF SALES                            | 4,214,866.75        | 41.92%               |
| GROSS PROFIT                             | 5,840,860.26        | 58.08%               |
| OPERATING EXPENSES:                      |                     |                      |
| SELLING EXPENSES                         | 3,419,473.44        | 34.01%               |
| GENERAL AND  ADMINISTRATIVE EXPENSES     | 2,828,175.40        | 28.13%               |
| OPERATING EXPENSES                       | 6,247,648.84        | 62.13%               |
| OPERATING INCOME                         | (406,788.58)        | -4.05%               |
| OTHER INCOME / (EXPENSES)                | 168,033.81          | 1.67%                |
| NET INCOME                               | (238,754.77)        | -2.37%               |

| | 1997 | 1998 | 1999 |
|---|---|---|---|
| Location | **CORPORATE OFC-Rprs/Sales** | **CORPORATE OFC-Rprs/Sales** | **CORPORATE OFC-Rprs/Sales** |
| Payee | Keith Collins-Moved Out 5/97 | Thomas Lester | Thomas Lester |
| address | 2001 Blount Road | 637 N.W. 12th Avenue | 637 N.W. 12th Avenue |
| address | Pompano Beach, Fl 33069 | Deerfield Beach, FL 33342 | Deerfield Beach, FL 33342 |
| Location | **CORPORATE OFC-Rprs/Sales** | **BOSTON OFC-Rprs/Sales** | **ATLANTA REP OFC-Sales** |
| Payee | Thomas Lester-Moved in 6/97 | Bramson Associates | Dr.Mclarnon / Dr.Richard Bunt |
| address | 637 N.W. 12th Avenue | 24 Crescent Street # 106 | 3155 Presidential Dr. #104 |
| address | Deerfield Beach, FL 33342 | Waltham, MA 02154 | Atlanta, GA 30340 |
| Location | **CHICAGO-Repairs/Sales** | **CHICAGO-Repairs/Sales** | **ATLANTA MGR OFC-Sales** |
| Payee | Gary Soloman & Co. | Gary Soloman & Co. | Keystone Commercial Group |
| address | 3166 N. Lincoln Ave #312 | 3166 N. Lincoln Ave #312 | 533 Johnson Ferry Road # 450 |
| address | Chicago, IL 60657 | Chicago, IL 60657 | Marietta, GA 30068 |
| Location | **CLEVELAND-Repairs/Sales** | **CLEVELAND-Repairs/Sls** | **ATLANTA MGR OFC-2-Sales** |
| Payee | Detroit Cook Building | Detroit Cook Building | Keystone Commercial Group |
| address | 14900 Detroit Ave #205 | 14900 Detroit Ave #205 | 533 Johnson Ferry Road # 400 |
| address | Lakewood, OH 44107 | Lakewood, OH 44107 | Marietta, GA 30068 |
| Location | **COLUMBUS-Rprs/Sls** | **COLUMBUS-Rprs/Sls** | **BOSTON OFC-Rprs/Sales** |
| Payee | 513 Limited Partnership | 513 Limited Partnership | Bramson Associates |
| address | 513 East Rich Street | 513 East Rich Street | 24 Crescent Street # 106 |
| address | Columbus, OH 43215 | Columbus, OH 43215 | Waltham, MA 02154 |
| Location | **DALLAS OFC-Rprs/Sls** | **DALLAS OFC-Rprs/Sls** | **BUFFALO OFC-Sales** |
| Payee | Plaza Tower | Plaza Tower | Mike Cutting |
| address | 2121 W. Airport Freeway Suite #225 | 2121 W. Airport Freeway Suite #225 | 2671 Harlem Road |
| address | Irving, TX 75062 | Irving, TX 75062 | Cheektowaga, NY 14225 |
| Location | **DETROIT OFC-Repairs/Sales** | **DETROIT OFC-Repairs/Sales** | **CHICAGO-Repairs/Sales** |
| Payee | Lathrup Office Center | Lathrup Office Center | Gary Soloman & Co. |
| address | 27260 Southfield Road #3 | 27260 Southfield Road #3 | 3166 N. Lincoln Ave #312 |
| address | Latrhup, MI 48076 | Latrhup, MI 48076 | Chicago, IL 60657 |
| Location | **LOS ANGELES-Repairs/Sales** | **HARTFORD OFC-Rprs/Sales** | **CINCINNATI OFC-Rps/Sls** |
| Payee | Harbour Gateway LLC | Smith Street Development | George Robinson |
| address | 19401 S. Vermont Ave #A205A | 460 Smith  Street # B-1 | 327 West 34th Street |
| address | Torrence, CA 90503 | Middletown, CT 06547 | Covington, KY 41015 |
| Location | **ST. LOUIS OFC-Repairs/Sales** | **HOUSTON OFC-Rprs/Sls** | **CLEVELAND-Repairs/Sls** |
| Payee | Rafael Fournier | 10p10lp Ltd. Partnership/Boxer Prop. | Detroit Cook Building |
| address | 2249 S. Brentwood Blvd #6 | 11999 Katy Freeway Suite #150-0 | 14900 Detroit Ave #205 |
| address | St. Louis, MO 63144 | Houston, TX 77079 | Lakewood, OH 44107 |
| Location | **NEW ORLEANS-Repairs/Sls** | **INDIANAPOIS-Repairs/Sls** | **COLUMBUS-Rprs/Sls** |
| Payee | Preferred Realty | Kirby Co. of Northside | 513 Limited Partnership |
| address | 4300 S  I-10 Service Road #103U | 10085 Allisonville Road #103 | 513 East Rich Street |
| address | Metairie, LA 70001 | Fishers, IN 46038 | Columbus, OH 43215 |
| Location | | **KANSAS CITY OFC-Sales** | **DALLAS OFC-Rprs/Sls** |
| Payee | | U.S. Properties | Plaza Tower |
| address | | 5846 Horton Street #212 | 2121 W. Airport Freeway Suite #225 |
| address | | Mission, KS 66202 | Irving, TX 75062 |

|  | **1997** | **1998** | **1999** |
|---|---|---|---|
| Location | | **LOS ANGELES-Repairs/Sales** | **DETROIT OFC-Repairs/Sales** |
| Payee | | Harbour Gateway LLC | Lathrup Office Center |
| address | | 19401 S. Vermont Ave #A205A | 27260 Southfield Road #3 |
| address | | Torrence, CA 90503 | Latrhup, MI 48076 |
| Location | | **LOUISVILLE -Repairs/Sales** | **HARTFORD OFC-Rprs/Sales** |
| Payee | | CGS Investments | Smith Street Development |
| address | | 4814 Preston Hwy # 21 | 460 Smith Street # B-1 |
| address | | Louisville, KY 40213 | Middletown, CT 06547 |
| Location | | **MILWAUKEE-Repairs/Sales** | **HOUSTON OFC-Rprs/Sls** |
| Payee | | Metro Investments Inc. | 10p10lp Ltd. Partnership/Boxer Prop. |
| address | | 3610 N. Oakland Avenue | 11999 Katy Freeway Suite #150-0 |
| address | | Shorewood, WI 53211 | Houston, TX 77079 |
| Location | | **MINNEAPOLIS-Repairs/Sales** | **INDIANAPOIS-Repairs/Sls** |
| Payee | | PCOB Properties | Kirby Co. of Northside |
| address | | 3601 Park Center Blvd #136 | 10085 Allisonville Road #103 |
| address | | St. Louis, MN 55416 | Fishers, IN 46038 |
| Location | | **NEW ORLEANS-Repairs/Sls** | **KANSAS CITY OFC-Sales** |
| Payee | | Preferred Realty | U.S. Properties |
| address | | 4300 S  I-10 Service Road #103U | 5846 Horton Street #212 |
| address | | Metairie, LA 70001 | Mission, KS 66202 |
| Location | | **OKLAHOMA CITY-Sales** | **LOS ANGELES-Repairs/Sales** |
| Payee | | OKC Ltd Partnership / Banta Realty | Harbour Gateway LLC |
| address | | 5909 NW Expressway #307 | 19401 S. Vermont Ave #A205A |
| address | | Oklahoma City, OK 73132 | Torrence, CA 90503 |
| Location | | **SAN DIEGO-Repairs/Sales** | **LOUISVILLE -Repairs/Sales** |
| Payee | | Mission Valley Terrace | CGS Investments |
| address | | 3435 Camino Del Rio S #318 | 4814 Preston Hwy # 21 |
| address | | San Diego, CA 92108 | Louisville, KY 40213 |
| Location | | | **MILWAUKEE-Repairs/Sales** |
| Payee | | **SAN FRANSICO-Repairs/Sls** | Metro Investments Inc. |
| address | | PKD Properties Inc. | 3610 N. Oakland Avenue |
| address | | 5200 Huntington Ave Suite # 330 | Shorewood, WI 53211 |
| | | Richmond, CA 94804 | |
| Location | | | **MINNEAPOLIS-Repairs/Sales** |
| Payee | | **SEATTTLE OFC-Repairs/Sls** | PCOB Properties |
| address | | Del Mar Bldg. | 3601 Park Center Blvd #136 |
| address | | 1123 Maple Avenue SW #200 | St. Louis, MN 55416 |
| address | | Renton, WA 98055 | |
| Location | | **ST. LOUIS OFC-Repairs/Sales** | **NEW ORLEANS-Repairs/Sls** |
| Payee | | Rafael Fournier | Preferred Realty |
| address | | 2249 S. Brentwood Blvd #6 | 4300 S  I-10 Service Road #103U |
| address | | St. Louis, MO 63144 | Metairie, LA 70001 |
| Location | | **TAMPA-Repairs/Sales** | **NEWARK OFC-Rprs/Sls** |
| Payee | | Westken / Kennedy West Bldg. | Eugene Siciliano |
| address | | 4601 W. Kennedy Blvd #234 | #4 Chester Avenue |
| address | | Tampa, Fl 33609 | Bloomfield, NJ 07003 |

| | 1997 | 1998 | 1999 |
|---|---|---|---|
| Location<br>Payee<br>address<br>address | | | **OKLAHOMA CITY-Sales**<br>OKC Ltd Partnership / Banta Realty<br>5909 NW Expressway #307<br>Oklahoma City, OK 73132 |
| Location<br>Payee<br>address<br>address | | | **PHILADELPHIA-Rprs/Sales**<br>Brandywine Realty<br>3002 Lincoln Drive Suite K<br>Marlton, NJ 08053 |
| Location<br>Payee<br>address<br>address | | | **PITTSBURGH-Repairs/Sales**<br>William Bailey<br>11532 Parkway D<br>Huntington, PA 15642 |
| Location<br>Payee<br>address<br>address | | | **SACRAMENTO-Repairs/Sls**<br>Sun Pacific Business Center<br>5777 Madison Ave #311<br>Sacramento. CA 95814 |
| Location<br>Payee<br>address<br>address | | | **SAN ANTONIO OFC-Sales**<br>GNC Properties<br>1603 Babcock Road #144<br>San Antonio, TX 78229 |
| Location<br>Payee<br>address<br>address | | | **SAN DIEGO-Repairs/Sales**<br>Mission Valley Terrace<br>3435 Camino Del Rio S #318<br>San Diego, CA 92108 |
| Location<br>Payee<br>address<br>address | | | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 |
| Location<br>Payee<br>address<br>address | | | **SEATTTLE OFC-Repairs/Sls**<br>Del Mar Bldg.<br>1123 Maple Avenue SW #200<br>Renton, WA 98055 |
| Location<br>Payee<br>address<br>address | | | **ST. LOUIS OFC-Repairs/Sales**<br>Rafael Fournier<br>2249 S. Brentwood Blvd #6<br>St. Louis, MO 63144 |
| Location<br>Payee<br>address<br>address | | | **TAMPA-Repairs/Sales**<br>Westken / Kennedy West Bldg.<br>4601 W. Kennedy Blvd #234<br>Tampa, Fl 33609 |
| Location<br>Payee<br>address<br>address | | | |

| 2000 | 2001 | 2002 |
|---|---|---|
| Location **CORPORATE OFC-Rprs/Sales**<br>Payee Lambda Novatronics<br>address 2859 West McNab Road<br>address Pompano Beach, Fl 33062 | **CORPORATE OFC-Rprs/Sales**<br>Lambda Novatronics<br>2859 West McNab Road<br>Pompano Beach, Fl 33062 | **CORPORATE OFC-Rprs/Sales**<br>Invensys Building Systems Inc.<br>2859 West McNab Road<br>Pompano Beach, Fl 33062 |
| Location **ATLANTA REP OFC-Sales**<br>Payee Dr.Mclamon / Dr.Richard Bunt<br>address 3155 Presidential Dr. #104<br>address Atlanta, GA 30340 | **ATLANTA MGR OFC-Sales**<br>Keystone Commercial Group<br>533 Johnson Ferry Road # 450<br>Marietta, GA 30068 | **ATLANTA MGR OFC-Sales**<br>Keystone Commercial Group<br>533 Johnson Ferry Road # 450<br>Marietta, GA 30068 |
| Location **ATLANTA MGR OFC-Sales**<br>Payee Keystone Commercial Group<br>address 533 Johnson Ferry Road # 450<br>address Marietta, GA 30068 | **BOSTON OFC-Rprs/Sales**<br>Bramson Associates<br>24 Crescent Street # 106<br>Waltham, MA 02154 | **BOSTON OFC-Rprs/Sales**<br>Bramson Associates<br>24 Crescent Street # 106<br>Waltham, MA 02154 |
| Location **ATLANTA MGR OFC-2-Sales**<br>Payee Keystone Commercial Group<br>address 533 Johnson Ferry Road # 400<br>address Marietta, GA 30068 | **CHICAGO-Repairs/Sales**<br>Gary Soloman & Co.<br>3166 N. Lincoln Ave #312<br>Chicago, IL 60657 | **MINNEAPOLIS-Repairs/Sales**<br>Park Avenue of Wayzata<br>604-252 Twelve Oaks Ctr<br>15500 Wayzata Blvd<br>Wayzata , MN 55391 |
| Location **BOSTON OFC-Rprs/Sales**<br>Payee Bramson Associates<br>address 24 Crescent Street # 106<br>address Waltham, MA 02154 | **CINCINNATI OFC-Rps/Sls**<br>George Robinson<br>327 West 34th Street<br>Covington, KY 41015 | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 |
| Location **BUFFALO OFC-Sales**<br>Payee Mike Cutting<br>address 2671 Harlem Road<br>address Cheektowaga, NY 14225 | **DETROIT OFC-Repairs/Sales**<br>Lathrup Office Center<br>27260 Southfield Road #3<br>Latrhup, MI 48076 | |
| Location **CHICAGO-Repairs/Sales**<br>Payee Gary Soloman & Co.<br>address 3166 N. Lincoln Ave #312<br>address Chicago, IL 60657 | **MINNEAPOLIS-Repairs/Sales**<br>Park Avenue of Wayzata<br>604-252 Twelve Oaks Ctr<br>15500 Wayzata Blvd<br>Wayzata , MN 55391 | |
| Location **CINCINNATI OFC-Rps/Sls**<br>Payee George Robinson<br>address 327 West 34th Street<br>address Covington, KY 41015 | **SAN FRANSICO-Repairs/Sls**<br>PKD Properties Inc.<br>5200 Huntington Ave Suite # 330<br>Richmond, CA 94804 | |
| Location **CLEVELAND-Repairs/Sls**<br>Payee Detroit Cook Building<br>address 14900 Detroit Ave #205<br>address Lakewood, OH 44107 | | |
| Location **COLUMBUS-Rprs/Sls**<br>Payee 513 Limited Partnership<br>address 513 East Rich Street<br>address Columbus, OH 43215 | | |
| Location **DALLAS OFC-Rprs/Sls**<br>Payee Plaza Tower<br>address 2121 W. Airport Freeway Suite #225<br>address Irving, TX 75062 | | |

| **2000** | **2001** | **2002** |
|---|---|---|

Location **DETROIT OFC-Repairs/Sales**
Payee     Lathrup Office Center
address   27260 Southfield Road #3
address   Latrhup, MI 48076

Location **HARTFORD OFC-Rprs/Sales**
Payee     Smith Street Development
address   460 Smith  Street # B-1
address   Middletown, CT 06547

Location **HOUSTON OFC-Rprs/Sls**
Payee     10p10lp Ltd. Partnership/Boxer Prop.
address   11999 Katy Freeway Suite #150-0
address   Houston, TX 77079

Location **INDIANAPOIS-Repairs/Sls**
Payee     Kirby Co. of Northside
address   10085 Allisonville Road #103
address   Fishers, IN 46038

Location **KANSAS CITY OFC-Sales**
Payee     U.S. Properties
address   5846 Horton Street #212
address   Mission, KS 66202

Location **LOS ANGELES-Repairs/Sales**
Payee     Harbour Gateway LLC
address   19401 S. Vermont Ave #A205A
address   Torrence, CA 90503

Location **LOUISVILLE -Repairs/Sales**
Payee     CGS Investments
address   4814 Preston Hwy # 21
address   Louisville, KY 40213

Location **MILWAUKEE-Repairs/Sales**
Payee     Metro Investments Inc.
address   3610 N. Oakland Avenue
address   Shorewood, WI  53211

Location **MINNEAPOLIS-Repairs/Sales**
Payee     PCOB Properties
address   3601 Park Center Blvd #136
address   St. Louis, MN 55416
address   **MN ofc moved see below**

Location **MINNEAPOLIS-Repairs/Sales**
Payee     Park Avenue of Wayzata
address   604-252 Twelve Oaks Ctr
address   15500 Wayzata Blvd
          Wayzata , MN 55391
Location **NEW ORLEANS-Repairs/Sls**
Payee     Preferred Realty
address   4300 S  I-10 Service Road #103U
address   Metairie, LA 70001

| **2000** | **2001** | **2002** |
|---|---|---|

Location   **NEWARK OFC-Rprs/Sales**
Payee      Eugene Siciliano
address    #4 Chester Avenue
address    Bloomfield, NJ 07003

Location   **OKLAHOMA CITY-Sales**
Payee      OKC Ltd Partnership / Banta Realty
address    5909 NW Expresswy #307
address    Oklahoma City, OK 73132

Location   **PHILADELPHIA-Rprs/Sales**
Payee      Brandywine Realty
address    3002 Lincoln Drive Suite K
address    Marlton, NJ 08053

Location   **PITTSBURGH-Repairs/Sales**
Payee      William Bailey
address    11532 Parkway D
address    Huntington, PA 15642

Location   **SACRAMENTO-Repairs/Sls**
Payee      Sun Pacific Business Center
address    5777 Madison Ave #311
address    Sacramento. CA 95814

Location   **SAN ANTONIO OFC-Sales**
Payee      GNC Properties
address    1603 Babcock Road #144
address    San Antonio, TX 78229

Location   **SAN DIEGO-Repairs/Sales**
Payee      Mission Valley Terrace
address    3435 Camino Del Rio S #318
address    San Diego, CA 92108

Location   **SAN FRANSICO-Repairs/Sls**
Payee      PKD Properties Inc.
address    5200 Huntington Ave Suite # 330
address    Richmond, CA 94804

Location   **SEATTTLE OFC-Repairs/Sls**
Payee      Del Mar Bldg.
address    1123 Maple Avenue SW #200
address    Renton, WA 98055

Location   **ST. LOUIS OFC-Repairs/Sales**
Payee      Rafael Fournier
address    2249 S. Brentwood Blvd #6
address    St. Louis, MO 63144

Location   **TAMPA-Repairs/Sales**
Payee      Westken / Kennedy West Bldg.
address    4601 W. Kennedy Blvd #234
address    Tampa, Fl 33609



Bradkin & Sayers
ASSOCIATES

Executive & Professional Recruitment
1000 McKnight Park Drive   Suite 1001
Pittsburgh, PA 15237
(412) 367-4444   FAX (412) 367-3013



724-483-0461

# Shannon M. Cairns

**OBJECTIVE**             A rewarding sales position with your company.

**EDUCATION**             DUQUESNE UNIVERSITY
                          Pittsburgh, PA
                          B.A. Liberal Arts; Minor: Biochemistry  May 1998
                          GPA 3.7/4.0 (Cum Laude)

                          **ADDITIONAL TRAINING**
                          Economics, Computers, Public Speaking, AΓΔ Leadership Training

**FUND-RAISING & PROMOTIONAL EXPERIENCE**

Planned and executed promotional programs. Staff Member: Carlow College's Women of Spirit
Program.  Directed publicity efforts for Clairton City Pool, which included press releases and fliers
along with verbal soliciting.

Designed and executed fund-raising campaigns. Developed innovative techniques- such as a Hot
Legs contest, swim-a-thons, & auctions to promote interest in fundraising for the Make-a-Wish and
Juvenile Diabetes foundations, which gained campus-wide attention. Panhellenic Officer: 97-98 & AΓΔ
Sorority.

**LEADERSHIP EXPERIENCE**

Led the Duquesne SwimTeam as captain for two years from 1996 - 98

Coached swimming (White Oak, Clairton, & Spanish Club) and learned to deal with unhappy, irate
customers and how to resolve conflict serving as Head Lifeguard at Clairton City Pools: 96-97

**EXTRACURRICULAR**      Varsity Swim Team: 94-98
**ACTIVITIES**           Varsity Lacrosse Team: 97-98
                         Alpha Gamma Delta Sorority (Social, VP Member Recruitment): 94-98
                         Duquesne University Volunteer Council (Oxfam, Habitat for Humanity)

**AWARDS**               Omicron Delta Kappa National Honor Society
                         National Slovak Society Scholarship: 94-98
                         Dean's List & Director of Athletics Honor Roll: 94-98
                         MAAC Conference All Academic Team: 97
                         Atlantic -10 Conference All Academic Team: 96-98
                         Academic All American: 97
                         Catholic Women's Club & Italian Sports Hall of Fame Scholarship: 94-98
                         Swimming Scholarship (six time record holder, Division I program)
                         Atlantic-10 Conference finalist: 94-98 & Top 3 finisher: 98
                         Top point scorer/Team MVP & Student-Athlete of The Year Nominee 97- 98

                         **REFERENCES AVAILABLE UPON REQUEST**

# Factory Authorized
# Medical Scope Repair, Inc.

June 16, 1998

Shannon M. Cairns
55 Orchard Street
Charleroi, PA 15022

Dear Shannon:

Factory Authorized Medical Scope Repair, Inc. is pleased to extend to you an offer of employment as Sales Representative for the Pittsburgh territory. Your annual base salary will be $24,000. To help your "cash flow", during the first few months of employment you will be paid your base salary the 15th of each month and the last day of each month. After that your base pay will be paid each month on the last day of the month. Commission payments are made at the end of the following month in which the commission was earned.

This offer of employment is contingent upon the following criteria:

* Your ability to provide documentation of your identity and legal right to work in the United States in accordance with the 1986 Immigration Reform and Control Act. The attached sheet provides you with examples of documents you should bring with you on your first day of employment.

* Your signing of the company's Confidentiality and Non-competition Agreement (enclosure). Bring this form with you on your first day.

* During the first 12 months, should your employment terminate for any reason at either party's request, you agree to reimburse Factory Authorized half the amount of the recruiter's fee (50% of $5,000.00).

In accordance with our policy, all employment with FAMSR is for an indefinite duration and is not pursuant to any contract unless there is a separate written agreement signed by you and an Officer of FAMSR.

Should you accept our offer of employment, we would like you to start training on Monday, June 15, 1998. Please let us know your decision at your earliest convenience. Shannon, we look forward to a positive response from you as we feel you will contribute greatly to the success of our team. In the meantime, should you have any questions, please feel free to call me.

Sincerely,

Jo-Ann Orlando
Office Manager

I accept your offer of employment

Signature/Date

# APPLICATION FOR EMPLOYMENT

**PRE-EMPLOYMENT**
**QUESTIONAIRE**
**AN EQUAL**
**OPPORTUNITY EMPLOYER**

## PERSONAL INFORMATION

| NAME (LAST NAME FIRST) | *Cairns, Shannon* | | | SOCIAL SECURITY NO. *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* | |
|---|---|---|---|---|---|
| PRESENT ADDRESS *55 Orchard St.* | APT. NO. | CITY *Charleroi* | STATE *Pa* | ZIP *15022* | |
| PERMANENT ADDRESS | APT. NO. | CITY | STATE | ZIP | |

| ARE YOU 18 YEARS OR OLDER? ☑ YES ☐ NO | PHONE *(724)-483-0461* |
|---|---|

## DESIRED EMPLOYMENT

| POSITION *Pittsburgh Sales Rep* | DATE YOU CAN START *6-15-98* | SALARY DESIRED *24K base* |
|---|---|---|

| ARE YOU EMPLOYED NOW? ☐ YES ☑ NO | IF SO MAY WE INQUIRE OF YOUR PRESENT EMPLOYER? ☐ YES ☐ NO | |
|---|---|---|

| EVER APPLIED TO THE COMPANY BEFORE? ☐ YES ☑ NO | WHERE? | WHEN? |
|---|---|---|
| EVER WORKED FOR THIS COMPANY BEFORE? ☐ YES ☑ NO | WHERE? | WHEN? |

| REASON FOR LEAVING |
|---|
| |

**WHO REFERRED YOU TO THIS COMPANY?**

☑ EMPLOYMENT AGENCY        ☐ NEWSPAPER ADVERTISING        ☐ FRIEND

☐ STATE EMPLOYMENT OFFICE    ☐ COLLEGE PLACEMENT SERVICE        ☐ WALK IN        ☐ OTHER

## EDUCATION

| SCHOOL LEVEL | NAME AND LOCATION OF SCHOOL | NO. OF YEARS ATTENDED | DID YOU GRADUATE? | SUBJECTS STUDIED |
|---|---|---|---|---|
| HIGH SCHOOL | *Serra Catholic McKeesport, Pa.* | *4* | *yes* | |
| COLLEGE | *Duquesne University Pittsburgh, Pa.* | *4* | *yes* | *Biochemistry Liberal Arts* |
| TRADE, BUSINESS OR CORRESPONENCE SCHOOL | | | | |

## GENERAL

SUBJECT OF SPECIAL STUDY OR RESEARCH WORK
*Biochemistry*

SPECIAL TRAINING
*Leadership training*

SPECIAL SKILLS
*Computers, French*

## REFERENCES

BELOW, GIVE THE NAMES OF THREE PERSONS YOU ARE NOT RELATED TO, WHOM YOU HAVE KNOWN AT LEAST ONE YEAR.

| | NAME | ADDRESS | BUSINESS | YEARS ACQUAINTED |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |

## SERVICE RECORD

| BRANCH OF SERVICE | DISCHARGE DATE RANK |
|---|---|
| | |
| | |
| | |
| | |

| HAVE YOU BEEN CONVICTED OF A FELONY WITHIN THE LAST 5 YEARS? | ☐ YES   ☐ NO |
|---|---|

IF YES, EXPLAIN. (WILL NOT NECESSARILY EXCLUDE YOU FROM CONSIDERATION)

## AUTHORIZATION

"I CERTIFY THAT THE FACTS CONTAINED IN THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND UNDERSTAND THAT, IF EMPLOYED, FALSIFIED STATEMENTS ON THIS APPLICATION SHALL BE GROUNDS FOR DISMISSAL.

I AUTHORIZE INVESTIGATION OF ALL STATEMENTS CONTAINED HEREIN AND THE REFERENCES AND EMPLOYERS LISTED ABOVE TO GIVE YOU ANY AND ALL INFORMATION CONCERNING MY PREVIOUS EMPLOYMENT AND ANY PERTINENT INFORMATION THEY MAY HAVE, PERSONAL OR OTHERWISE AND RELEASE THE COMPANY FROM ALL LIABILITY FOR ANY DAMAGE THAT MAY RESULT FROM UTILIZATION OF SUCH INFORMATION.

I ALSO UNDERSTAND AND AGREE THAT NO REPRESENTATIVE OF THE COMPANY HAS ANY AUTHORITY TO ENTER INTO ANY AGREEMENT FOR EMPLOYMENT FOR ANY SPECIFIED PERIOD OF TIME, OR TO MAKE ANY AGREEMENT CONTRARY TO THE FOREGOING, UNLESS IT IS IN WRITING AND SIGNED BY AN AUTHORIZED COMPANY REPRESENTATIVE."

6/16/98
DATE

_Shannon M Cairo_
SIGNATURE

Microfilm Number _____

Entity Number _2265634_

Filed with the Department of State on _____

_Secretary of the Commonwealth_

JUL 16 1997

## APPLICATION FOR CERTIFICATE OF AUTHORITY
### DSCB:15-4124/6124 (Rev 90)

Indicate type of corporation (check one):

**X** Foreign Business Corporation (15 Pa.C.S. § 4124)

___ Foreign Nonprofit Corporation (15 Pa.C.S. § 6124)

In compliance with the requirements of the applicable provisions of 15 Pa.C.S. (relating to corporations and unincorporated associations) the undersigned association hereby states that:

1. The name of the corporation is: **Factory Authorized Medical Scope Repairs, Inc.**

2. The name which the corporation adopts for use in this Commonwealth is (complete only when the corporation must adopt a corporate designator for use in Pennsylvania):

3. (If the name set forth in Paragraph 1 is not available for use in this Commonwealth, complete the following):

   The fictitious name which the corporation adopts for use in transacting business in this Commonwealth is:

   This corporation shall do business in Pennsylvania only under such fictitious name pursuant to the attached resolution of the board of directors under the applicable provisions of 15 Pa.C.S (relating to corporations and unincorporated associations) and the attached form DSCB:54-311 (Application for Registration of Fictitious Name).

4. The name of the jurisdiction under the laws of which the corporation is incorporated is:

   Florida

5. The address of its principal office under the laws of the jurisdiction in which it is incorporated is:

   637 NW 12th Avenue, Deerfield Beach, Florida  33442, Broward

   | Number and Street | City | State | Zip | County |
   |---|---|---|---|---|

6. The (a) address of this corporation's proposed registered office in this Commonwealth or (b) name of its commercial registered office provider and the county of venue is:

   (a)

   | Number and Street | City | State | Zip | County |
   |---|---|---|---|---|

   (b) c/o: C T Corporation System                                    Allegheny County

   Name of Commercial Registered Office Provider                                    County

(PA. - 404 - 10/1/92)

JUL 16 97

PA Dept. of State

CB:15-4124/6124 (Rev 90)-2

For a corporation represented by a commercial registered office provider, the county in (b) shall be deemed the county in which the corporation is located for venue and official publication purposes.

(Check one of the following):

__X__ (Business corporation):  The corporation is a corporation incorporated for a purpose or purposes involving pecuniary profit, incidental or otherwise.

____ (Nonprofit corporation):  The corporation is a corporation incorporated for a purpose or purposes not involving pecuniary profit, incidental or otherwise.

IN TESTIMONY WHEREOF, the undersigned corporation has caused this Application for a Certificate f Authority to be signed by a duly authorized officer this __24th__ day of __June__ , 19 __97__ .

Factory Authorized Medical Scope Repairs,
(Name of Corporation)

BY: _____
     Joel Trank (Signature)

TITLE: President

(P.A. _404)

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing Response to Plaintiff's Interrogatories and

Document Requests in Aid of Jurisdiction was served via facsimile and first class mail this 27th day

of December, 2002, upon the following:

> James B. Lieber
> LEIBER & HAMMER, P.C.
> P.A.I.D. #21748
> 5528 Walnut Street
> Pittsburgh, PA, 15232-2312
> (412) 687-2231
> (412) 687-3140 fax

GEORGE A. LANE, P.A.
FBN 7242
2929 E. Commercial Blvd., #205
Ft. Lauderdale, FL, 33308
(954) 776-8284
(954) 771-9393 fax

George A. Lane

# EXHIBIT D

S-26



Factory Authorized Medical Scope Repair Locations

Seattle
Portland
San Francisco
Los Angeles
San Diego
Minneapolis
Milwaukee
Chicago
Detroit
Cleveland
Columbus
Indianapolis
Cincinnati
Louisville
Buffalo
Pittsburgh
Philadelphia
Newark
Hartford
Boston
Dallas
Houston
New Orleans
Oklahoma City
Kansas City
St Louis
Atlanta
Ft Lauderdale

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief in Opposition to

Defendant's Motion to Dismiss with Memorandum of Law was served this 28th day of January,

2003, upon the following by first class mail, postage prepaid:


      Cathy Bissoon, Esquire
      Reed Smith LLP
      435 Sixth Street
      Pittsburgh, PA 15219-1886

      George A. Lane, Esquire
      George A. Lane, P.A.
      2929 E. Commercial Blvd.
      Suite 205
      Fort Lauderdale, FL 33308

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | Civil Action No. 02-1236 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Honorable Gustave Diamond |
| FACTORY AUTHORIZED MEDICAL | ) | |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; AND JEFF TRANK, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION TO EXTEND TIME FOR RESPONDING
### TO DEFENDANT'S MOTION TO DISMISS

AND NOW comes Plaintiff Shannon M. Cairns, by and through her counsel, Lieber &

Hammer, P.C., and moves this Honorable Court to schedule a date by which Plaintiff must

respond to Defendants' Motion to Dismiss, and in support thereof avers as follows:

1.      On or about November 24, 2002, Plaintiff moved this Court to scheduled a date by

which Plaintiff had to respond to Defendants' Motion to Dismiss with the understanding that

Defendants would respond to Plaintiff's jurisdictional discovery requests by December 3, 2002.

2.      By Order dated November 26, 2002, this Court scheduled the date of January 6,

2003 for Plaintiff to respond to Defendants' Motion to Dismiss

3.      At the end of November, Defendants moved this Court to extend the jurisdictional

discovery deadline from December 3, 2002 to December 28, 2002.   That Motion was unopposed.

4.      By Order dated December 3, 2002, this Court granted Defendants' Motion and set

a discovery deadline of December 28, 2002.

5.      Plaintiff herein moves this Court to schedule a new date by which Plaintiff must respond to Defendants' Motion to Dismiss.

6.      Plaintiff respectfully submits that January 6, 2003 is no longer a feasible date given the fact that Defendants received a 3 week discovery extension and have not yet responded to Plaintiff's jurisdictional discovery requests.

7.      Assuming that Defendants timely respond to Plaintiff's discovery request by December 28, 2002, Plaintiff asks this Court to schedule a new date, preferably January 28, 2003, by which Plaintiff must respond to Defendants' Motion to Dismiss.

8.      Plaintiff believes that thirty days are necessary in order to analyze Defendants's discovery responses and to prepare an appropriate response to Defendants' Motion to Dismiss.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant the Plaintiff until January 28, 2003 in which the Plaintiff must respond to Defendants' Motion to Dismiss.  A proposed Order is attached.

Respectfully submitted,

LIEBER & HAMMER, P.C.

James B. Lieber
PA I.D. # 21748
Thomas M. Huber
PA I.D. # 83053
5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

2

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,  )  Civil Action No. 02-1236

    Plaintiff,  )

    vs.  )  Honorable Gustave Diamond

FACTORY AUTHORIZED MEDICAL  )
SCOPE REPAIR; MEDICAL DEVICE  )
SOLUTION; AND JEFF TRANK,  )  **JURY TRIAL DEMANDED**

    Defendants.  )

## ORDER OF COURT

AND NOW, to wit, this _____6th_____ day of _____January_____, 2003 upon consideration of the within Motion, it is hereby ORDERED that Plaintiff shall file a response to Defendants' Motion to Dismiss on or before the 28th day of January, 2003.

Gustave Diamond
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion to Extend Time to Respond to Defendants' Motion To Dismiss  was served this _2 7_ day of December, 2002, upon the following by first class mail, postage prepaid:


Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-1236 |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | Honorable Gustave Diamond |
| SCOPE REPAIR; MEDICAL DEVICE | ) | |
| SOLUTION; and JEFF TRANK, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' UNCONTESTED MOTION**
**FOR EXTENSION TO REPLY TO DISCOVERY**

Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR

("FAMSR"), MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by undersigned

counsel, file this Uncontested Motion for Extension to Reply to Plaintiff's Interrogatories and

Document Requests to Defendants in Aid of Jurisdiction and Venue in support thereof state as

follows:

        1.      Defendants have been duly served with the Plaintiff's Interrogatories and

Document Requests to Defendants in Aid of Jurisdiction and Venue and currently have until

November 28, 2002 to reply to same.

        2.      Defendants seek a thirty (30) day extension of time in which to respond to

said Plaintiff's Interrogatories and Document Requests to Defendants in Aid of Jurisdiction and

Venue.

3.      There is no objection by Plaintiff to the extension sought so long as the Plaintiff is granted a similar thirty (30) day extension in time to complete her preliminary discovery for the limited purposes of determining the proper jurisdiction and venue of this matter.

WHEREFORE, Defendants request that the Defendants' deadline to reply to the Plaintiff's Interrogatories and Document Requests to Defendants in Aid of Jurisdiction and Venue be extended for thirty (30) days until December 28, 2002, conditional upon Plaintiff also receiving a thirty (30) day extension to complete her preliminary discovery.

Respectfully submitted,

Cathy Bissoon
Pa. ID No. 70371
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3268

George A. Lane
GEORGE A. LANE, P.A.
2929 E. Commercial Blvd., Suite 205
Fort Lauderdale, FL, 33308
(954) 776-8284

Counsel for Defendants

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )
                                      )
    Plaintiff,                        )
                                      )
    v.                                )    Civil Action No. 02-1236
                                      )
FACTORY AUTHORIZED MEDICAL            )    Honorable Gustave Diamond
SCOPE REPAIR; MEDICAL DEVICE          )
SOLUTION; and JEFF TRANK,             )
                                      )
    Defendants.                       )

## ORDER OF COURT

AND NOW, this _3_ day of _December_, 2002,

Defendants' Uncontested Motion for Extension to Reply to Plaintiff's Interrogatories and

Document Requests to Defendants in Aid of Jurisdiction and Venue is GRANTED.  Defendants

must reply to the Plaintiff's Interrogatories and Document Requests to Defendants in Aid of

Jurisdiction and Venue on or before December 28, 2002 and Plaintiff is granted an additional

thirty (30) days to complete her preliminary discovery.

BY THE COURT:

_Gustave Diamond_
Gustave Diamond
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' Uncontested Motion for Extension to Reply to Discovery was served upon counsel for Plaintiff by United States first class mail, this 26th day of November, 2002, addressed as follows:

James B. Lieber, Esq.
Lieber & Hammer, P.C.
5528 Walnut Street
Pittsburgh, PA  15232-2312

Cathy Bissoon

# ReedSmith

**Cathy Bissoon** ▪ 412.288.3268 ▪ cbissoon@reedsmith.com

November 26, 2002

**<u>VIA HAND DELIVERY</u>**

Robert V. Barth, Jr., Clerk
United States District Court for the
  Western District of Pennsylvania
Eighth Floor, Room 829
U.S. Post Office and Courthouse
Pittsburgh, PA 15219

Re:    Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
       <u>Civil Action No. 02-1236 (W.D. Pa.)</u>

Dear Mr. Barth:

     Enclosed for filing in the above-captioned case is Defendants' Uncontested Motion for Extension to Reply to Discovery.

                   Very truly yours,

                   REED SMITH LLP

                   Cathy Bissoon

CB:csf

Enclosure

cc:    James B. Lieber, Esq. (w/enc.)

435 Sixth Avenue
Pittsburgh, PA 15219-1886
412.288.3131
Fax 412.288.3063

Delaware
New Jersey
New York
Pennsylvania
United Kingdom
Virginia
Washington, DC

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,         )   Civil Action No. 02-1236
                          )
         Plaintiff,     )
                          )
     vs.                )
                          )
FACTORY AUTHORIZED MEDICAL   )
SCOPE REPAIR; MEDICAL DEVICE   )
SOLUTION; AND JEFF TRANK,    )   **JURY TRIAL DEMANDED**
                          )
         Defendants.   )

## MOTION TO SCHEDULE DATE FOR PLAINTIFF
## TO RESPOND TO DEFENDANTS' MOTION TO DISMISS

AND NOW comes Plaintiff Shannon M. Cairns, by and through her counsel, Lieber & Hammer, P.C., and moves this Honorable Court to schedule a date by which Plaintiff must respond to Defendants' Motion to Dismiss, and in support thereof avers as follows:

1.     Plaintiff filed a Complaint on July 15, 2002 asserting claims for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and common law battery.

2.     On or about August 29, 2002, Defendants moved to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the case to the Southern District of Florida.

3.     On October 2, 2002, Plaintiff moved to take discovery on the issue of personal jurisdiction.

4.     By Order dated October 3, 2002, this Honorable Court granted Plaintiff's motion and permitted Plaintiff to take discovery for a period of sixty (60) days.

5.     On October 29, 2002, Plaintiff served Defendants with Plaintiff's Interrogatories and Document Requests to Defendants In Aid of Jurisdiction and Venue.

6.     Defendants' responses to Plaintiff's discovery requests are due on or about November 28, 2002, four days before the expiration of the discovery period.

7.     Plaintiff herein moves this Court to schedule a date by which Plaintiff must respond to Defendants' Motion to Dismiss.

8.     Plaintiff respectfully requests a period of thirty days following the expiration of the discovery period to respond to Defendants' Motion to Dismiss assuming, of course, that Defendants serve adequate and timely discovery responses.

9.     Plaintiff believes that thirty days are necessary in order to analyze Defendants' discovery responses and to prepare an appropriate response to Defendants' Motion to Dismiss. Also, Plaintiff's attorneys have a trial in December which will take two to three days and they will be off work for several days during the Thanksgiving and Christmas holidays.

WHEREFORE, Plaintiff respectfully moves this Honorable Court to set a date by which Plaintiff must respond to Defendants' Motion to Dismiss.  A proposed Order is attached.

Respectfully submitted,

LIEBER & HAMMER, P.C.


James B. Lieber
PA I.D. # 21748
Thomas M. Huber
PA I.D. # 83053
5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

2

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,         )    Civil Action No. 02-1236
)
         Plaintiff,     )
)
      vs.         )
)
FACTORY AUTHORIZED MEDICAL   )
SCOPE REPAIR; MEDICAL DEVICE   )
SOLUTION; AND JEFF TRANK,    )    **JURY TRIAL DEMANDED**
)
        Defendants.    )

## ORDER OF COURT

AND NOW, to wit, this _26th_ day of _november_, 2002, upon consideration of the within Motion, it is hereby ORDERED that Plaintiff shall file a response to Defendants' Motion to Dismiss on or before the _6th_ day of _January_, 200_3_.

_Gustave Diamond_, J.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion To Schedule Date

For Plaintiff To Respond To Defendants' Motion To Dismiss  was served this 22nd day of

November, 2002, upon the following by first class mail, postage prepaid:


Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )       Civil Action No. 02-1236
                                      )
            Plaintiff,                )
                                      )
      vs.                             )
                                      )
FACTORY AUTHORIZED MEDICAL            )
SCOPE REPAIR; MEDICAL DEVICE          )
SOLUTION; AND JEFF TRANK,             )       **JURY TRIAL DEMANDED**
                                      )
            Defendants.               )

## BRIEF IN SUPPORT OF MOTION FOR
## LEAVE TO TAKE DISCOVERY ON JURISDICTION

Where a defendant moves to dismiss for lack of personal jurisdiction, courts consistently

permit the plaintiff to take discovery. *See Renner v. Lanard Toys, Ltd.*, 33 F.3d 277, 283 (3d Cir.

1994) (stating that "[n]umerous cases have sustained the right of plaintiffs to conduct discovery

before the district court dismisses for lack of jurisdiction"); *Travelers Indemnity Co. v. TEC*

*America, Inc.*, 909 F.Supp. 249, 253-54 (M.D. Pa. 1995) (permitting plaintiff to take discovery

regarding jurisdictional issues); 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE §2009 (1994) (stating that "it has long been clear that discovery on

jurisdictional issues is proper").

For example, in *Renner*, the Third Circuit overruled the district court's decision to dismiss

the case for lack of personal jurisdiction because the district court refused to permit the plaintiffs

to conduct discovery on the jurisdictional issue. *Renner*, 33 F.3d at 283-84.  In overruling, the

Third Circuit held that the plaintiffs were entitled to take discovery on jurisdictional facts

inasmuch as the case was disposed of "without any opportunity for the normal discovery process"

and the plaintiffs were not required to accept the defendant's analysis of the facts "without the

chance to probe further." *Id.* at 283.

In the present case, Defendants have moved to dismiss for lack of personal jurisdiction. Defendants argue, *inter alia*, that they do not have sufficient contacts with the Commonwealth of Pennsylvania for the Court to exercise personal jurisdiction over them. For example, Defendants allege that they are located in Florida, that all of their employment decisions are made in Florida, and that although they sell products in Pennsylvania, such sales are "minimal" and constitute less than 10% to their total revenues. (*See* Trank Aff., ¶¶ 2, 4, 9, 11).

As in *Brenner*, the Plaintiff has not had the opportunity to discover facts relating to personal jurisdiction and should not be required to accept the Defendants' version of their contacts with Pennsylvania "without the chance to probe further." Therefore, Plaintiff should be entitled to take discovery on the issue of personal jurisdiction. *See Brenner*, 33 F.d at 283; *Travelers Indemnity Co.*, 909 F.Supp. At 253-54.

The discovery to be taken will necessarily focus on the Defendants' contacts with the Commonwealth of Pennsylvania. *See Provident Nat'l. Bank v. California Fed. Sav. & Loan*, 819 F.2d 434, 437 (3d Cir. 1987) ("Once a jurisdiction defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction."). Plaintiff will inquire into the Defendants' allegations made in support of the Motion to Dismiss. In addition, Plaintiff will inquire into such facts as the number of visits, if any, Defendants have made to Pennsylvania, how much business Defendants solicit from Pennsylvania, and how much advertising Defendants direct to Pennsylvania. *See Guyton v. A.M. General*, 2001 WL 1623345, at * 3 (E.D. Pa. Dec. 17, 2001) (noting that the "basis for general jurisdiction is generally found where a non-resident defendant makes a

substantial number of visits to the forum state, solicits business regularly from the forum state or

advertises directly to the forum state.") (finding personal jurisdiction over non-resident

defendant).  Based on the foregoing, this Court should find that Plaintiff is entitled to take

discovery on the issue of personal jurisdiction.

WHEREFORE, Plaintiff respectfully requests this Court to grant her Motion and permit

Plaintiff to conduct discovery on the issue of jurisdiction.


Respectfully submitted,

LIEBER & HAMMER, P.C.


James B. Lieber
PA I.D. # 21748

Thomas M. Huber
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Brief in Support of Motion for Leave to Take Discovery  was served this 2nd day of October, 2002, upon the following by first class mail, postage prepaid:


Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,               )       Civil Action No. 02-1236
                                 )
    Plaintiff,                   )
                                 )
vs.                              )
                                 )
FACTORY AUTHORIZED MEDICAL       )
SCOPE REPAIR; MEDICAL DEVICE     )
SOLUTION; AND JEFF TRANK,        )       **JURY TRIAL DEMANDED**
                                 )
    Defendants.                  )

## MOTION FOR LEAVE TO TAKE DISCOVERY ON JURISDICTION

AND NOW COMES Plaintiff Shannon Cairns, by and through her counsel, Lieber &
Hammer, P.C. and moves this Honorable Court for leave to take discovery on the issue of
personal jurisdiction, and in support thereof avers as follows:

    1.    This lawsuit involves claims for sexual harassment and retaliation under Title VII
of the Civil Rights Act of 1964, as amended, and common law battery.

    2.    Plaintiff is a resident of Pennsylvania.

    3.    Defendants are located in Florida.

    4.    Currently pending before this Court is Defendants' Motion to Dismiss for lack of
personal jurisdiction.

    5.    In support of the Motion to Dismiss, Defendants allege that they lack sufficient
contacts with Pennsylvania for this Court to maintain in personam jurisdiction.  For example,
Defendants allege that all of their employment decisions are made outside of Pennsylvania.  (Aff.
of Jeff Trank, ¶ 11).  Also, Defendants allege that their sales within Pennsylvania are "minimal"
and constitute less than 10% of total revenue.  (*Id.* at ¶ 9).

6.     Plaintiff herein requests leave to take discovery in order to probe Defendants' allegations made in connection with their Motion to Dismiss.  In addition, Plaintiff requests leave to take discovery on matters related to personal jurisdiction, including Defendants visits to Pennsylvania, the extent of any advertising Defendants direct to Pennsylvania, and the extent of any business that Defendants solicit from Pennsylvania.

7.     No discovery has yet taken place in this matter.

8.     For the reasons set out more fully in the accompanying brief, this Court should grant Plaintiff's Motion for Leave to Take Discovery on the issue of personal jurisdiction.

9.     In the event that the Court grants the within Motion, Plaintiff requests the Court to schedule a conference to coordinate the personal jurisdiction discovery proceedings.

WHEREFORE, Plaintiff hereby respectfully moves for leave to take discovery on the issue of personal jurisdiction.  A proposed Order is attached.


Respectfully submitted,

LIEBER & HAMMER, P.C.


James B. Lieber
PA I.D. # 21748

Thomas M. Huber
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231


2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                       )        Civil Action No. 02-1236
                                         )
        Plaintiff,                    )
                                         )
   vs.                                  )
                                         )
FACTORY AUTHORIZED MEDICAL               )
SCOPE REPAIR; MEDICAL DEVICE             )
SOLUTION; AND JEFF TRANK,                )        **JURY TRIAL DEMANDED**
                                         )
      Defendants.                      )

## ORDER OF COURT

AND NOW, this _3rd_ day of _October_, 2002, upon consideration of

Plaintiff's Motion for Leave to Take Discovery, it is hereby ORDERED that the Motion is

GRANTED and the Plaintiff will have _60 (sixty)_ days to conduct discovery on the issue of

personal jurisdiction.

By the Court:

_Gustave Diamond_
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion for Leave to Take

Discovery  was served this 2nd day of October, 2002, upon the following by first class mail,

postage prepaid:


Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )
                                      )
               Plaintiff,             )
                                      )
       v.                             )   Civil Action No. 02-1236
                                      )
FACTORY AUTHORIZED MEDICAL            )
SCOPE REPAIR; MEDICAL DEVICE          )
SOLUTIONS; and JEFF TRANK,            )
                                      )
               Defendants.            )

ORDER OF COURT

AND NOW, this _____ day of October, 2002, IT IS ORDERED that the above case be, and the same hereby is, placed under this case management order and Rule 16.1 for pretrial procedure and all provisions thereof will be strictly enforced; and,

IT FURTHER IS ORDERED that lead counsel for each party shall be present at all scheduled court proceedings, including case management, status and settlement conferences. Counsel shall confer with their clients prior to all conferences or court proceedings and shall obtain the authority to bind the represented party to a settlement agreement prior to all scheduled court conferences or shall have their principals available by telephone during the conference to facilitate the amicable resolution of all matters raised in the litigation.

IT FURTHER IS ORDERED that in all cases assigned to arbitration by the clerk of court pursuant to Local Rule 16.2.4(A), any party which does not consent to arbitration shall file a formal motion requesting the withdrawal of the case from arbitration within 10 days after all defendants have answered the complaint.

A case management conference will be scheduled in all cases

which are not referred to arbitration.   At the case management conference, counsel shall be prepared to identify and discuss all issues raised in the litigation and the need for any special pretrial procedures due to the complexity or procedural posture of the case.   Counsel also shall be prepared to narrow the issues of fact and law and to engage in settlement discussions with opposing counsel and the court.

## A.    DISCOVERY AND PRETRIAL DEADLINES

IT IS FURTHER ORDERED that compliance with the provisions of Local Rule 16.1 shall be completed as follows:

1)   All fact and expert discovery shall be completed on or before January 29, 2003.

Prior to the close of discovery counsel shall stipulate to the date for the submission of expert reports and the dates for depositions of experts, if such report(s) or deposition(s) cannot for good cause be completed within the time limits set forth above.   Any stipulation extending the time periods set forth in Fed.R.Civ.P. 33, 34 and 36 beyond the time limit on all discovery set forth above shall be submitted to the court for approval.

2)   Plaintiff's pretrial narrative statement shall fully comply with Local Rule 16.1.4A and shall be filed on or before February 18, 2003.

3)   Defendants' pretrial narrative statement shall fully comply with Local Rule 16.1.4B and shall be filed on or before March 10, 2003.

Counsel shall specify in the pretrial narrative the facts to be proved at trial. Proof of facts not specified may be excluded at trial upon objection or by the court sua sponte.

Prior to March 20, 2003, counsel for all parties shall meet to:

(a) Complete the attached Pretrial Stipulation form, which is to be filed with the court on or before March 20, 2003.  The completed Pretrial Stipulation shall set forth all uncontested facts which may be read to the jury.   Should the admissibility of any uncontested fact

be challenged, the party objecting and the grounds for such objection shall be stated in writing;

(b) Formally identify and disclose to each other the exhibits to be offered  into evidence at trial;

(c) Stipulate to the admissibility of each identified and disclosed exhibit. Counsel shall prepare a status report which shall be filed with the court at the time of trial specifically identifying each exhibit as to which there is a genuine dispute as to its admissibility and succinctly setting forth the reasons for the dispute. Counsel shall be prepared to discuss the dispute as to the admissibility of any exhibit with the court at the pre-trial settlement conference or the next scheduled conference or proceeding; and,

(d) Determine if the case shall proceed non-jury.

4)    All dispositive motions shall be filed within two (2) weeks after the filing of the pretrial stipulation.

IT FURTHER IS ORDERED that all discovery shall be initiated in sufficient time so that responses thereto can be filed or depositions taken prior to the close of discovery. **Discovery motions will not be considered by the court unless a certificate demonstrating full compliance with Local Rule 7.1(B) is attached to the motion.** Where it is intended that discovery matters will be referenced at trial or a court proceeding, a copy of the discovery matter along with a memorandum explaining the reasons why it must be referenced shall be served and made available to the court at least five (5) business days prior to the time of trial or the proceeding. Any response shall be filed at least one (1) business day prior to the time of trial or the proceeding;

IT FURTHER IS ORDERED that after this case has been listed for trial, or placed on a trial list, the absence of a party's expert witness will not be an excuse to delay the trial.   Video tape service is available through the Clerk of Court;

IT FURTHER IS ORDERED that depositions or portions thereof to

- 3 -

be used as an exhibit or to be read into evidence shall be identified and marked for the record.  A memorandum setting forth the grounds in support thereof shall be filed at least five (5) business days prior to the time of trial.  Any objections to the admissibility of those depositions or portions thereof shall be filed at least one (1) business day prior to the time of trial. The agreed portions shall be marked and page references annexed.

## B.    MOTION PRACTICE

IT FURTHER IS ORDERED that <u>all</u> motions filed with the court shall be accompanied by a brief.  The respondent shall file a response with an accompanying brief within eleven (11) days of service of the motion upon the respondent.  The movant may submit a reply brief within five (5) days of service of the response upon the movant.  **<u>Briefs shall not exceed twenty-five pages absent leave of court</u>.**  Failure of a movant to comply with this order will result in appropriate sanctions, including the denial of the motion if warranted; failure of a respondent to comply with this order will result in appropriate sanctions, including granting the motion as presented if warranted;

IT FURTHER IS ORDERED that should any party file a motion prior to the issuance of this pretrial order, the time in which to file a response to the motion will be eleven (11) days from the date of this pretrial order;

IT FURTHER IS ORDERED that each dispositive motion, including motions for summary judgment, shall be accompanied by a concise statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue.    Each

- 4 -

statement of uncontested fact shall be identified by clear and explicit references to the parts of the record relied upon to support it.   Any response in opposition to the motion shall be accompanied by a separate concise statement of the material facts, corresponding to the numbered paragraphs in the movant's statement and specifically identifying all facts as to which the non-movant contends there exists a genuine issue which must be litigated.   The non-movant's statement likewise shall include clear and explicit references to the parts of the record relied upon to support the contention that there are contested issues of material fact.   All parties shall attach to their statements of material facts copies of the documents or portions of the record which support their statements of contested or uncontested material facts.   The failure to support any proposed statement may result in the summary rejection of the  proposition advanced or the court reading the record as presented by opposing counsel with regard to the proposition advanced.   In determining any motion for summary judgment, the court will assume that facts identified by the movant in its statement of material facts are admitted, unless such facts are specifically controverted in the statement of material facts filed in opposition to the motion;

**IT FURTHER IS ORDERED that the court WILL NOT entertain requests for rulings contained in informal letters.**   All such matters **MUST** be made the subject of a formal motion filed with the Clerk of Court;

IT FURTHER IS ORDERED that pendency of motions, such as motions for summary judgment or motions to dismiss, WILL NOT stay the discovery period or stay any other compliance requirements of

this pretrial order;

IT FURTHER IS ORDERED THAT THE CASE WILL BE DEEMED READY FOR TRIAL ON THE DATE THE PRETRIAL STIPULATION IS FILED AND THEREAFTER WILL BE SUBJECT TO BE CALLED FOR TRIAL WHETHER OR NOT IT FORMALLY HAS BEEN PLACED ON THIS COURT'S TRIAL LIST.   THE PENDENCY OF MOTIONS, INCLUDING DISPOSITIVE MOTIONS, <u>WILL</u> <u>NOT</u> BE A BASIS FOR CONTINUING OR DELAYING TRIAL;   and

IT FURTHER IS ORDERED that <u>all</u> motions not otherwise addressed in this pretrial order, including but not limited to motions in limine and proposed voir dire questions in cases to be tried by a jury, must be filed within two (2) weeks after the pretrial stipulation has been filed.

The unexcused failure to file a motion or a response in a timely manner will result in appropriate sanctions, including the summary denial or granting of the motion.   Where the untimely filing of a motion or a response results in the delay of trial, in addition to the other appropriate sanctions the court may require the offending party to bear the additional expenses and attorney's fees resulting from the delay.   Either party's failure to comply with the requirements imposed by this case management order or to submit matters to the court in a timely manner will result in appropriate sanctions, including the dismissal of the action for failure to prosecute or the granting of judgment for failure to defend in a timely manner.

C.   PRETRIAL SETTLEMENT CONFERENCE

A pretrial settlement conference will be held within thirty (30) days after the pretrial stipulation has been filed. Lead

- 6 -

counsel shall be present and shall be prepared to discuss and narrow all issues as to which a dispute of material fact or law remains.   Counsel also shall be prepared to identify and discuss any pending motions, disputes as to the admissibility of exhibits, proposed special voir dire, and the need for or objection to any unusual procedure to be employed during trial.

_____
Gustave Diamond
United States District Judge

cc:   James B. Lieber, Esq.
      Thomas M. Huber, Esq.
      Lieber & Hammer
      5528 Walnut Street
      Pittsburgh, PA 15232

      Cathy Bissoon, Esq,
      Reed, Smith, Shaw & McClay
      435 Sixth Avenue
      Pittsburgh, PA 15219-1886

      George A. Lane, Esq.
      2929 East Commercial Boulevard
      Suite 700
      Fort Lauderdale, FL 33308

**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,

           Plaintiff,

    v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

           Defendant.

Civil Action No. 02-1236

Judge Diamond

Jury Trial Demanded

### PRAECIPE TO WITHDRAW APPEARANCE

Please withdraw the appearance of Samuel J. Cordes, Mary R. Roman and Ogg, Cordes, Murphy & Ignelzi as counsel for Plaintiff in the above-captioned matter.

Respectfully submitted,

Ogg, Cordes, Murphy & Ignelzi

Samuel J. Cordes
Mary R. Roman

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 78099 (Roman)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

### ORDER

AND NOW, this _____ 11 Th _____

day of _September_, 20_02_

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

1

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of September, 2002, I served a copy of the foregoing

*Praecipe to Withdraw Appearance*  via first class mail, postage prepaid, upon the following:

Cathy Bissoon
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

George Lane
2929 E. Commercial Boulevard
Suite 205
Fort Lauderdale, FL 33308

James Lieber
5528 Walnut Street
Pittsburgh, PA 15232

Mary R. Roman

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )     Civil Action No. 02-1236
                                      )
             Plaintiff,               )
                                      )
vs.                                   )
                                      )
FACTORY AUTHORIZED MEDICAL            )
SCOPE REPAIR; MEDICAL DEVICE          )
SOLUTION; AND JEFF TRANK,             )     **JURY TRIAL DEMANDED**
                                      )
             Defendants.              )

## APPEARANCE

To the Clerk of this Court and all parties of record:

Please enter my appearance as counsel in this case for Shannon M. Cairns.

Respectfully submitted,

LIEBER & HAMMER, P.C.

James B. Lieber, Esquire
PA I.D. # 21748

Thomas M. Huber, Esquire
PA I.D. # 83053

5528 Walnut Street
Pittsburgh, PA  15232-2312
(412) 687-2231

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Appearance was served this

9th day of September, 2002, upon the following by first class mail, postage prepaid:

Cathy Bissoon, Esquire
Reed Smith LLP
435 Sixth Street
Pittsburgh, PA 15219-1886

George A. Lane, Esquire
George A. Lane, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308

Samuel J. Cordes, Esquire
Mary Roman, Esquire
Ogg Cordes Murphy & Ingelzi, L.L.P.
245 Fort Pitt Boulevard
Fourth Floor
Pittsburgh, PA 15222

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,

        Plaintiff,

    v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

        Defendant.

Civil Action No. 02-1236

Judge Diamond

Jury Trial Demanded

## MOTION FOR EXTENSION OF TIME TO FILE
## RESPONSE TO MOTION TO DISMISS

    Plaintiff Shannon M. Cairns, by undersigned counsel, files this Motion for Extension of Time to file Response to Motion to Dismiss.

    1.      This is a case in which Plaintiff alleges she was sexually harassed, retaliated against and constructively discharged by her former employers, Factory Authorized Medical Scope Repair and Medical Device Solutions, as well as related common law tort claims against Jeff Trank, President of FAMSR and MDS.

    2.      Defendants have filed a motion seeking dismissal of the action or transfer to the Southern District of Florida.

    3.      Undersigned counsel agreed to represent Plaintiff only for the purpose of writing and filing a Complaint, to allow Plaintiff sufficient time to retain counsel of her choosing.

    4.      Plaintiff has not yet informed undersigned counsel whether she has retained new counsel.

    5.      Once Plaintiff informs undersigned counsel that she has selected and retained new counsel, this firm will withdraw its appearance.

    6.      Therefore, Plaintiff requests a thirty day extension to file her response to the Motion to Dismiss.

    7.      Defendants' counsel consents to this extension.

1

8.     No prior extensions of this deadline have been sought.

WHEREFORE, Plaintiff requests the deadline for filing her response to Defendants' Motion to Dismiss be extended until October 19, 2002.

Respectfully submitted,

Ogg, Cordes, Murphy & Ignelzi

Samuel J. Cordes
Mary R. Roman

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 78099 (Roman)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify on this 5th day of September, 2002, I served a copy of the foregoing *Motion for Extension of Time to File Response to Motion to Dismiss* via first class mail, postage prepaid, upon the following:

Cathy Bissoon
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219

George Lane
2929 E. Commercial Boulevard
Suite 205
Fort Lauderdale, FL 33308

Mary R. Roman

## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

    v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

      Defendant.

Civil Action No. 02-1236

Judge Diamond

Jury Trial Demanded

## ORDER OF COURT

AND NOW, this 10th day of September , 2002, Plaintiff's Motion for

Extension of Time to File Response to Defendants' Motion to Dismiss is GRANTED.  Plaintiff must

file her response on or before October 19, 2002.

BY THE COURT:

_____
Gustave Diamond
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )
                                      )
              Plaintiff,              )
                                      )
         v.                           )  Civil Action No. 02-1236
                                      )
FACTORY AUTHORIZED MEDICAL            )
SCOPE REPAIR; MEDICAL DEVICE          )
SOLUTION; and JEFF TRANK,             )
                                      )
              Defendants.             )

ORDER OF COURT

AND NOW, this ___ day of September, 2002, defendants having
filed a motion to dismiss and brief in support of their motion
(Document Nos. 6 & 7), IT IS ORDERED that on or before September
19, 2002, plaintiff shall file her response and brief in opposition
to defendants' motion.

_____
Gustave Diamond
United States District Judge

cc:  Samuel J. Cordes, Esq.
     Mary Roman, Esq.
     Ogg Cordes Murphy & Ignelzi, LLP
     245 Fort Pitt Boulevard
     Fourth Floor
     Pittsburgh, PA 15222

     Cathy Bissoon, Esq.
     Reed Smith LLP
     435 Sixth Avenue
     Pittsburgh, PA 15219-1886

     George A. Lane, Esq.
     George A. Lane, P.A.
     2929 E. Commercial Boulevard
     Suite 205
     Fort Lauderdale, FL 33308

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

      Plaintiff,

v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

      Defendants.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## AFFIDAVIT OF JEFF TRANK IN SUPPORT OF MOTION TO DISMISS

STATE OF FLORIDA        )
                       )SS
COUNTY OF BROWARD    )

      BEFORE ME, the undersigned authority, personally appeared JEFF TRANK, who, after being duly cautioned and sworn, stated upon oath as follows:

1.     I am the President of Factory Authorized Medical Scope Repair and I am personally named as a Defendant in the above-styled cause, and as such, am making this Affidavit of my own personal knowledge.

2.     Factory Authorized Medical Scope Repair and Medical Device Solutions are both Florida corporations, with head offices in Pompano Beach, Florida. Medical Device Solutions is a defunct company.

3.      Neither Factory Authorized Medical Scope Repair nor Medical Device Solutions maintains an office in Pennsylvania.

4.      I am a resident of the state of Florida.

5.      I am not, nor have I ever been a resident of Pennsylvania.

6.      On October 14, 2000 I hosted a regional sales meeting at my vacation residence in Georgia.

7.      Plaintiff SHANNON M. CAIRNS attended this meeting and has now filed this current suit based on events that allegedly occurred at this meeting at my vacation residence in Georgia and subsequently on events that allegedly occurred in our office in Florida.

8.      Factual statements in the Defendant's Motion to Dismiss with Memorandum of Law are correct.  Plaintiff was employed by FAMSR in June 1998 and in July 1999 became a sales manager with the company, based in New Jersey.  Her territory covered the states of New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania.

9.      Pennsylvania constitutes a minimal sales percentage of the company revenues, at a percentage that would be under ten percent.

10.     Plaintiff's decision to work out of her home in Pittsburgh was a unilateral decision and not a condition of employment.  None of the defendants provided any monies or services related to any home office Plaintiff may have maintained in Pennsylvania.

11.    All employment decisions are made at the head office of FAMSR in Pompano

Beach, Florida.   No employment decisions have been made by the company or its

executive staff at any other location.


FURTHER AFFIANT SAYETH NOT.

JEFF TRANK


SWORN TO AND SUBSCRIBED before me this 28 day of August, 2002.

NOTARY PUBLIC
MY COMMISSION EXPIRES:

G A Lane
My Commission CC807087
Expires February 7 2003

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

Affidavit of Jeff Trank in Support of Motion to Dismiss was served this date on counsel for

Plaintiff by United States mail, first class and postage prepaid, addressed as follows:

> Samuel J. Cordes, Esq.
> Mary Roman, Esq.
> Ogg Cordes Murphy & Ignelzi, L.L.P.
> 245 Fort Pitt Boulevard
> Fourth Floor
> Pittsburgh, PA  15222

Cathy Bisson
PA I.D. No. 70371
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA  15219-1886
(412) 288-3268

George A. Lane
FL Bar No. 7242
GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL  33308
(954) 776-8284

Counsel for Defendants

Dated:  August 29, 2002

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

       Plaintiff,

    v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTION; and JEFF TRANK,

       Defendant.

_____/

Civil Action No. 02-1236

Honorable Gustave Diamond

## DEFENDANT'S MOTION TO DISMISS WITH MEMORANDUM OF LAW

COMES NOW, Defendants, FACTORY AUTHORIZED MEDICAL SCOPE REPAIR ("FAMSR"), MEDICAL DEVICE SOLUTION ("MDS") AND JEFF TRANK, by undersigned counsel, and file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and lack of proper venue; or in the alternative move to transfer venue to the Southern District of Florida pursuant to 28 U.S.C.A. Section 1406 and in support thereof states as follows:

## FACTUAL BACKGROUND

On or about June 15, 1998, Plaintiff SHANNON M. CAIRNS ("Plaintiff") commenced employment with FAMSR, a Florida corporation headquartered in Pompano Beach, Florida. Plaintiff was employed as a sales representative and on July 1, 1999 as a sales manager, based in New Jersey. Throughout Plaintiff's tenure as a sales manager with FAMSR, her sales territory covered several states, including New York, New Jersey, Ohio, West Virginia, North Carolina and Pennsylvania.

FAMSR never required nor encouraged Plaintiff to reside and work out of her home in Pittsburgh as a condition of employment. More importantly, Plaintiff decided unilaterally to work out her home solely for her own convenience.

On or about October 14, 2000, Plaintiff attended a FAMSR regional sales meeting near Atlanta, Georgia at the vacation home of FAMSR president and co-defendant Jeff Trank ("Mr. Trank"). Plaintiff's entire suit is based on alleged events that transpired at this meeting in Georgia. However, Plaintiff filed the current action in this Court in Pennsylvania even though Plaintiff is fully aware that FAMSR does not maintain any offices in Pennsylvania and the alleged events sued upon occurred in the state of Georgia.

Defendant MDS is an inactive Florida corporation, with its head office at Pompano Beach, Florida. It has no connection to Plaintiff.

## STANDARD OF LAW

In considering a Rule 12(b)(2) motion to Dismiss, the court must construe all allegations of the complaint as true, and any conflict in affidavits must be viewed in favor of the non-moving party. Bucks County Playhouse v. Bradshaw, 577 F.Supp. 1203 (E.D. Pa. 1983). Because personal jurisdiction is a waivable defense under Federal Rule of Civil Procedure 12(h)(1), the defendant bears the initial burden of raising lack of personal jurisdiction. Clark v. Matsushita Elec. Indus. Co., 811 F. Supp. 1061, 1064 (M.D. Pa. 1993). Once the defense is raised, however, the burden shifts to the plaintiff to prove that exercise of jurisdiction is permissible and that sufficient contacts to support jurisdiction exist between the defendant and the forum state. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3rd Cir. 1992).

A defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  The contacts must be such that the defendant could reasonably anticipate being haled into court in the forum state.  Romann v. Geissenberger Mfg. Corp., 865 F.Supp. 255 (E.D. Pa. 1994).  Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3rd Cir. 1984).  Within these boundaries defined by the Due Process Clause, Pennsylvania courts may exercise either general or specific jurisdiction over a defendant pursuant to its long-arm statutes.  42 Pa. Cons. Stat. Sect 5301; 42 Pa. Cons. Stat. Sect. 5322.  The relevant parts of the two sections are as follows:

1.    Specific Jurisdiction

"A tribunal of this Commonwealth may exercise personal jurisdiction over a person [including corporations] who acts directly or by an agent, as to a cause of action or other matter arising from such person:  (1) Transacting any business in this Commonwealth . . . (3) Causing harm or tortuous injury by an act or omission in this Commonwealth.  .  .  (4) Causing harm or tortuous injury in this Commonwealth by an act or omission outside this Commonwealth."  [42 Pa. Cons. Stat. Sect. 5322(a).]

2.    General Jurisdiction

"The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:  (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth. . . (ii) Consent, to the extent authorized by the consent. . . (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth."  [42 Pa. Cons. Stat. Sect. 5301].

## DISCUSSION

**1.      Specific Jurisdiction**

The alleged activities for which this suit is based occurred in Georgia or Florida, not in Pennsylvania. Plaintiff states in her complaint that the events for which she filed suit occurred in a sales meeting at Mr. Trank's vacation home. Plaintiff, however, did not include in her suit that Mr. Trank's vacation home was located in Georgia. Thus, the alleged activities for which Plaintiff filed suit occurred in Georgia. Plaintiff also makes a claim for retaliation, more specifically, that FAMSR changed the terms and conditions of Plaintiff's employment and thus, constructively discharging her. Yet, all of FAMSR's employment decisions, including the hiring and terminating of employees, occur at FAMSR's home office in Florida. Therefore, even if Plaintiff's allegations were remotely meritorious, which they are not, this court located in Pennsylvania still cannot exercise personal jurisdiction over FAMSR. Under the Pennsylvania long-arm statute, specific jurisdiction requires only a minimum of contacts, but also requires the controversy to be "related" in some way to the defendant's contact with the forum. Romann v. Geissenberger Mfg. Corp., 865 F.Supp. 255 (E.D. Pa. 1994); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).

Here, Plaintiff's cause of action is unrelated to any contact FAMSR may have in Pennsylvania. FAMSR does not maintain an office in Pennsylvania. Plaintiff employment at the relevant times was as a traveling sales manager based out of New Jersey, but thereafter moved on her own accord and convenience to work out of her home in Pennsylvania. Furthermore, FAMSR did not provide monies or services for Plaintiff's home office in Pennsylvania. Most importantly, Plaintiff's claims are based upon alleged events that took place in Georgia and Florida, not Pennsylvania. Consequently, since it is clear that Plaintiff's claims did not arise out

of any contact FAMSR may have had with Pennsylvania, this court cannot exercise specific personal jurisdiction over FAMSR.

### 2.    General Jurisdiction

When a controversy does not arise out of the defendant's contacts with the forum, as is the case here, the court may exercise jurisdiction if the defendant has "continuous and systematic business contacts" with the forum. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).  These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." International Shoe, 326 U.S. at 318.  In other words, in order to satisfy due process requirements, a corporation's contacts must be "extensive and pervasive," amounting to a purposeful availment of the "privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Romann, at 260.  (citing Fields v. Ramada Inn, Inc., 816 F.Supp. 1033, 1035 (E.D. Pa. 1993)).

The facts and discussion of the Romann case are instructive although the case was partially abrogated on grounds not relevant to the facts in this dispute.  In Romann, the plaintiff salesman, a resident of Pennsylvania who worked out of his home, sued his employer, a New Jersey corporation, in the eastern district of Pennsylvania.  The court denied personal jurisdiction over the Defendant corporation because, *inter alia*, only two to four percent of the defendant's sales occurred in Pennsylvania.  Id. at 261.  The court noted that "such a figure is hardly reflective of the type of 'extensive and pervasive' contact required by the personal jurisdiction standard."

More importantly, the Romann court opined that although the plaintiff resided and worked out his home in Pennsylvania, "there is no evidence to suggest that [defendant] either

required or encouraged [plaintiff] to reside in Pennsylvania as a condition of employment. [Thus], the unilateral decisions of [the plaintiff] . . . to reside in Pennsylvania and receive paychecks there do not constitute purposeful contacts by [the defendant], and cannot serve as the basis for the exercise of personal jurisdiction over [the plaintiff's] employer." Id. at 261-262. *See Also* Rodale Press, Inc. v. Submatic Irrigation Systems, Inc., 651 F.Supp. 208 (E.D. Pa. 1986)(unilateral activity of those who claim some relationship with non-resident defendant cannot satisfy the requirement of contact with the forum state.)(cited in Romann).

In another similar case, the plaintiff sales manager who resided and worked in Indiana sued his employer, a California corporation, under an age discrimination theory in Indiana federal court. Charlesworth v. Marco Mfg. Co., 878 F.Supp. 1196 (N.D. Ind. 1995). The Court ultimately held that it lacked personal jurisdiction over the defendant because, *inter alia*, the amount of sales produced by the plaintiff and the corporation in Indiana was not significant enough to allow jurisdiction. In addition, the Court agreed with Romann's Court opinion and provided that "the law clearly states that 'the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.' Thus, [the plaintiff] may not rely on his own contacts within the state of Indiana in his attempt to establish that this court has jurisdiction over [the defendant]. Nor may [the plaintiff] rely on the fact that he resides in Indiana." Id. at 1202 (citing Nu-Way Systems v. Belmont Marketing, 635 F.2d 617, 620 (7th Cir. 1980).

Accordingly, it is clear from the case law that personal jurisdiction cannot be exercised over FAMSR. FAMSR's minimal business contacts and activity in Pennsylvania are not significant to the standard of 'extensive and pervasive' as required by this Court. Plaintiff's sales territory incorporated up to eight states and her sales production as well as FAMSR's overall

sales production in Pennsylvania is minimal.  Furthermore, the fact that Plaintiff worked out of her residence in Pennsylvania while employed by FAMSR does not in itself establish jurisdiction over FAMSR.  *See* Romann; Charlesworth.  Thus, Plaintiff cannot meet the general personal jurisdictional requirements to allow this matter to proceed in this Court.

## ALTERNATIVE MOTION TO TRANSFER

In the alternative to FAMSR's Motion to Dismiss, and since this Court cannot take personal jurisdiction over FAMSR, this Court may transfer this matter in the interest of justice to the Southern District of Florida, the district in which FAMSR is located.  Pursuant to 28 U.S.C. Sect. 1404 and 1406, this Court has broad discretion and power to transfer this case to another district when this court cannot exercise jurisdiction over a particular defendant.  FAMSR's offices, majority of employees and most importantly, witnesses for both parties are all located at FAMSR's headquarters in South Florida.  Therefore, in the interest of justice and in the alternative to dismissing this matter, FAMSR admits that it is subject to personal jurisdiction in the state of Florida and requests that this case be transferred to the Southern District of Florida.

ALL OF WHICH IS RESPECTFULLY SUBMITTED THIS 28TH DAY OF AUGUST, 2002.

Cathy Bissoon
PA I.D. No. 70371
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886
(412) 288-3268

George A. Lane
GEORGE A. LANE, P.A.
2929 E. Commercial Blvd.
Suite 205
Fort Lauderdale, FL 33308
(954) 776-8284
Counsel for Defendants

George A. Lane
FL Bar No. 7242

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

Defendant's Motion to Dismiss with Memorandum of Law was served this date on counsel for

Plaintiff by United States mail, first class and postage prepaid, addressed as follows:

>           Samuel J. Cordes, Esq.
>           Mary Roman, Esq.
>           Ogg Cordes Murphy & Ignelzi, L.L.P.
>           245 Fort Pitt Boulevard
>           Fourth Floor
>           Pittsburgh, PA  15222

_____
Cathy Bisson

Dated:  August 29, 2002

25

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                    )
                                      )
    Plaintiff,                     )
                                      )
    v.                             )    Civil Action No. 02-1236
                                      )
FACTORY AUTHORIZED MEDICAL            )    Honorable Gustave Diamond
SCOPE REPAIR, MEDICAL DEVICE          )
SOLUTIONS AND JEFF TRANK,             )
                                      )
    Defendants.                    )

## STIPULATION FOR EXTENSION OF TIME

It is hereby stipulated and agreed by and between the parties that the time period for answering Plaintiff's Complaint, or to otherwise plead, be extended and that said Answer or other pleading shall be due on or before August 29, 2002.


Mary R. Roman
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA  15222
(412) 471-8500

Counsel for Plaintiff


Cathy Bissoon
Pa. ID No. 70371
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3268

George A. Lane
George A. Lane, P.A.
2929 E. Commercial Boulevard
Suite 700
Fort Lauderdale, FL  33308

Counsel for Defendants

## O R D E R

AND NOW, this 19th day of August, 2002, IT IS SO ORDERED.

Gustave Diamond
United States District Judge

# ReedSmith

Cathy Bissoon ▪ 412.288.3268 ▪ cbissoon@reedsmith.com

August 15, 2002

**VIA HAND DELIVERY**

Robert V. Barth, Jr., Clerk
United States District Court for the
  Western District of Pennsylvania
Eighth Floor, Room 829
U.S. Post Office and Courthouse
Pittsburgh, PA 15219

Re:     Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
        Civil Action No. 02-1236 (W.D. Pa.)

Dear Mr. Barth:

        Enclosed for filing in the above-captioned case is a Stipulation for Extension of Time.

                        Very truly yours,

                        REED SMITH LLP

                        *Cathy Bissoon*

                        Cathy Bissoon

CB:csf

Enclosure

cc:     Mary R. Roman, Esq. (w/enc.)

435 Sixth Avenue          Delaware
Pittsburgh, PA 15219-1886     New Jersey
412.288.3131              New York
Fax 412.288.3063          Pennsylvania
                          United Kingdom
                          Virginia
                          Washington, DC

"Reed Smith" refers to Reed Smith LLP and related entities.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS,               )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        Civil Action No. 02-1236
                                 )
FACTORY AUTHORIZED MEDICAL       )        Honorable Gustave Diamond
SCOPE REPAIR, MEDICAL DEVICE     )
SOLUTIONS AND JEFF TRANK,        )
                                 )
                Defendants.      )



## MOTION FOR ADMISSION *PRO HAC VICE* OF GEORGE A. LANE, ESQUIRE

Defendants Factory Authorized Medical Scope Repair, Medical Device Solutions and Jeff Trank ("Defendants"), by its counsel, Cathy Bissoon, member of the bar of the United States District Court for the Western District of Pennsylvania, moves this Court to admit George A. Lane, Esquire to appear and to participate in this case on behalf of Defendants, and assigns the following reasons in support thereof:

1.      George A. Lane, Esquire, sole shareholder in the law firm of George A. Lane, P.A. in Fort Lauderdale, Florida is licensed to practice law in the State of Florida and is a member of the bar in good standing of the United States District Court for the Southern District of Florida, and the United States Court of Appeals for the Eleventh Circuit

2.      Cathy Bissoon, a partner in the law firm of Reed Smith LLP in Pittsburgh, Pennsylvania, is licensed to practice law in the Commonwealth of Pennsylvania and is a member

in good standing of the bar of the United States District Court for the Western District of

Pennsylvania, the United States Courts of Appeals for the Third, Fourth and Sixth Circuits.

WHEREFORE, Defendants, by their counsel, Cathy Bissoon, respectfully

requests the Court to grant the admission of George A. Lane, Esquire *pro hac vice*.

Respectfully submitted,

Cathy Bissoon
Pa. ID No. 70371
REED SMITH LLP
435 Sixth Avenue
Pittsburgh, PA  15219
(412) 288-3268

Counsel for Defendants,
Factory Authorized Medical Scope Repair,
Medical Device Solutions and Jeff Trank

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,                     )
                                       )
    Plaintiff,     )
                                       )
     v.        )  Civil Action No. 02-1236
                                       )
FACTORY AUTHORIZED MEDICAL             )  Honorable Gustave Diamond
SCOPE REPAIR, MEDICAL DEVICE           )
SOLUTIONS AND JEFF TRANK,              )
                                       )
    Defendants.     )

## ORDER

  AND NOW, this 15th day of August, 2002, upon consideration of the

foregoing Motion for Admission Pro Hac Vice, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED that said Motion will be and is hereby GRANTED, and that George A. Lane, Esquire

will be and is hereby admitted to appear and participate before this Court in this case on behalf of

Defendants.

_Gustave Diamond_
                  J.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing

Motion for Admission *Pro Hac Vice* of George A. Lane, Esquire was served upon counsel for

Plaintiff by placing said document in the United States first class mail, postage prepaid, this 13th

day of August, 2002, addressed as follows:

> Samuel J. Cordes, Esq.
> Mary R. Roman, Esq.
> Ogg, Cordes, Murphy & Ignelzi
> 245 Fort Pitt Boulevard
> Pittsburgh, PA  15222

Cathy Bisson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANNON M. CAIRNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-1236 |
| | ) | |
| FACTORY AUTHORIZED MEDICAL | ) | Honorable Gustave Diamond |
| SCOPE REPAIR, MEDICAL DEVICE | ) | |
| SOLUTIONS AND JEFF TRANK, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AFFIDAVIT OF GEORGE A. LANE FOR ADMISSION *PRO HAC VICE*</u>

| | | |
|---|---|---|
| STATE OF FLORIDA | ) | |
| | ) | SS: |
| COUNTY OF _BROWARD_ | ) | |

After having been duly sworn according to law, I do hereby depose and say that the following statements are true and correct:

1. I am the sole shareholder in the law firm of George A. Lane, P.A. in Fort Lauderdale, Florida.

2. I am licensed to practice law in the State of Florida and I am a member of the bar in good standing of the United States District Court for the Southern District of Florida, and the United States Court of Appeals for the Eleventh Circuit.

3. I have never been disciplined or censured by any court before which I have appeared.

4.    The Defendants have requested that I represent them in this matter.

George A. Lane

SWORN to and subscribed before me
this 12 day of August, 2002.

Notary Public

My Commission Expires: 10/30/05

DIANA OCAMPO
MY COMMISSION # DD 068460
EXPIRES: October 30, 2005
Bonded Thru Notary Public Underwriters

-2-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

Affidavit of George A. Lane for Admission *Pro Hac Vice* was served upon counsel for Plaintiff

by placing said document in the United States first class mail, postage prepaid, this 13th day of

August, 2002, addressed as follows:

Samuel J. Cordes, Esq.
Mary R. Roman, Esq.
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA  15222

Cathy Bisspon

# ReedSmith

**Cathy Bissoon** ▪ 412.288.3268 ▪ cbissoon@reedsmith.com

August 13, 2002

**VIA HAND DELIVERY**

Robert V. Barth, Jr., Clerk
United States District Court for the
  Western District of Pennsylvania
Eighth Floor, Room 829
U.S. Post Office and Courthouse
Pittsburgh, PA 15219

Re:    Shannon Cairns v. Factory Authorized Medical Scope Repair, et al.
       Civil Action No. 02-1236 (W.D. Pa.)

Dear Mr. Barth:

      Enclosed for filing in the above-captioned case is the Motion for Admission *Pro Hac Vice* of George A. Lane, Esquire and the Affidavit of George A. Lane for Admission *Pro Hac Vice*. Also enclosed is a check in the amount of $40.00.

      Very truly yours,

      REED SMITH LLP

      *Cathy Bissoon*

      Cathy Bissoon

CB:csf

Enclosures

cc:    Samuel J. Cordes, Esq. (w/encs.)

435 Sixth Avenue
Pittsburgh, PA 15219-1886
412.288.3131
Fax 412.288.3063

Delaware
New Jersey
New York
Pennsylvania
United Kingdom
Virginia
Washington, DC

"Reed Smith" refers to Reed Smith LLP and related entities

r e e d s m i t h . c o m

# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

       Plaintiff,

    v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

       Defendant.

Civil Action No. 02-1236

Jury Trial Demanded

## AFFIDAVIT OF SERVICE

I, Mary R. Roman, do hereby affirm:

1.     I am counsel for Plaintiffs in the above captioned litigation.

2.     On July 17, 2002, I served the Summons and Complaint by certified mail, return receipt requested on Defendants Factory Authorized Scope Repair, Medical Device Solutions and Jeff Trank pursuant to Fed.R.Civ.P. 4(h)(1), incorporating by reference Fed.R.Civ.P. 4(e)(1), and Pa.R.Civ.P. 403 and 404. (Attached as Exhibit "1" are the Domestic Return Receipts showing service).

4.     On July 24, 2002, I spoke with George Lane, counsel for Defendants, who accepted service. A copy of Mr. Lane's letter is attached as Exhibit 2.

3.     I state under penalty of perjury that the foregoing is true and correct.

Mary R. Roman

SWORN TO AND SUBSCRIBED
BEFORE ME THIS 2nd DAY
OF AUGUST, 2002.

Notary Public

Notarial Seal
Holly Noelle France, Notary Public
Pittsburgh, Allegheny County
My Commission Expires Aug. 18, 2003

Member, Pennsylvania Association of Notaries

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Factory Authorized Medical
Scope Repair
3854 West McNabb Road
Pompano Beach FL 33069

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Darby Coffman
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
7/17/02

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7001 1940 0004 9103 9583

PS Form 3811, August 2001   Domestic Return Receipt   102595-01-M-2509

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Jeff Trank
c/o Factory Authorized Medical
Scope Repair
3854 West McNabb Road
Pompano Beach FL 33069

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Darby Coffman
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
7/17/02

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7001 1940 0004 9103 9569

PS Form 3811, August 2001   Domestic Return Receipt   102595-01-M-2509

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Medical Device Solutions
1291-A S. Powerline Road
Suite 185
Pompano Beach FL 33069

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
7/17/02

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   7001 1940 0004 9103 9576

PS Form 3811, August 2001   Domestic Return Receipt   102595-01-M-2509

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SHANNON M. CAIRNS )
)
Plaintiff )
)
v. )          Civil Action No.  02 - 1236
)
FACTORY AUTHORIZED MEDICAL )
SCOPE REPAIR, ET AL )
)
Defendants )

## ORDER

**AND NOW**, this 31st day of July, 2002, **IT IS ORDERED**, that the Clerk of Court

directly reassign the above captioned case to District Judge Gustave Diamond for all

further proceedings.

_____
Robert J. Cindrich
U.S. District Judge

cc:    All counsel of record.

FEE PAID
RECEIPT# 4798
SUMMONS ISS
1536

# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF PENNSYLVANIA

SHANNON M. CAIRNS,

    Plaintiff,

  v.

FACTORY AUTHORIZED MEDICAL
SCOPE REPAIR; MEDICAL DEVICE
SOLUTIONS; and JEFF TRANK,

    Defendant.

Civil Action No.

**02  1236**

Jury Trial Demanded

## CIVIL COMPLAINT

  Plaintiff Shannon M. Cairns, by undersigned counsel, files this Complaint and in support thereof alleges as follows:

### I. Jurisdiction

1.  The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(f)(3); 28 U.S.C. §1331 and 1343(a) and 28 U.S.C. §1367.

2.  Cairns has satisfied all procedural and administrative prerequisites to suit under Title VII.

3.  Defendant Factory Authorized Medical Scope Repair (FAMSR) is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in that it employs more than 15 individuals.

4.  Defendant  Medical Device Solutions (MDS) is an employer within the meaning of Title VII, 42 U.S.C. §2000e(b), in that it employs more than 15 individuals.

### II. The Parties

5.  Plaintiff Shannon M. Cairns is a woman who resides at 55 Orchard Street, Charleroi, PA 15022.

6.  Defendant  Factory  Authorized  Medical  Scope  Repair  is  located at  2859  West McNabb Road, Pompano Beach, FL 33069.

7.  Defendant Medical Device Solutions  is located at 1291-A S. Powerline Road, Suite 185, Pompano Beach FL 33069.

1

8.     Defendant Jeff Trank is an individual who maintains a place of business at 2859 West McNabb Road, Pompano Beach, FL 33069.  Trank is the President of both Defendant FAMSR and Defendant MDS.

9.     Defendant FAMSR and Defendant MDS were joint employers of Cairns.

### III. Factual Background

10.    Plaintiff incorporates paragraphs 1 through 9 as if fully restated.

11 .    In October 2000 Cairns was employed as a Regional Sales Manager for Defendant FAMSR and MDS.

12.    During the course of her employment Cairns was a good performer and her performance was never criticized.

13.    On October 14, 2000, Cairns attended a s regional sales meeting at Trank's home.

14.    During the evening of the meeting, Trank grabbed Cairns and kissed her.

15.    When Cairns protested Trank's unwanted and offensive touching, Trank told her she was "hot and sexy" and refused to release her.

16.    Later that same evening, Trank told Cairns he wanted to talk to her.

17.    Trank then assaulted Cairns again by picking her up, carrying her to a bed and pinning her down.  While he had Cairns pinned down, Trank attempted to grope her breasts and rubbed his pelvis against her.

18.    Despite Cairns' protests, Trank refused to dismount her and continued to proposition her for sex.

19.    Trank finally released Cairns.  He said everyone would think they had sex anyway.

20.    Cairns reported the incident the next day to her supervisor Greg Constantino.

21.    Constantino said that Trank had been drinking and had been having marital problems. Constantino also told Cairns that Trank feared he was no longer attractive to younger women.

22.    Following Cairns' rejection of Trank's unwanted and offensive sexual advances and her complaint to Constantino, Defendants retaliated against Cairns by changing the terms and

2

conditions of Cairns' employment.

23.    Cairns' attorneys' attempted to resolve the matter by sending a letter to Defendants.

24.    Defendants again retaliated against Cairns by changing the terms and conditions of her employment.

25.    Cairns was constructively discharged as a result of Defendants' actions.

**Count I**
**Sexual Harassment**
**Cairns v. Defendants FAMSR and MDS**

26.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 25, as if fully set forth herein.

27.    As set forth at length above, the actions of Defendants directed to Cairns created a hostile work environment.

28.    The aforesaid treatment of Cairns was intentional and was undertaken by Defendants because of Cairns' sex.

29.    The aforesaid treatment of Cairns as set forth above was pervasive and regular in that Cairns was subjected to repeated and unwelcome sexually derogatory language and touching.

30.    The aforesaid conduct of Defendant, through its agents, servants, and employees, detrimentally affected Cairns.

31.    The actions of Defendants, through their agents and servants, as set forth above, would detrimentally affect reasonable women in the position.

32.    Defendants either knew or should have known of the existence of a sexually hostile environment.

33.    Despite such knowledge, Defendants failed to take prompt and adequate remedial action to prevent and to stop the conduct.

34.    The actions of Defendants, as set forth above discriminated against Cairns in the terms and conditions of her employment because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(a)(1).

3

35.     The actions of Defendants were intentional and were taken in reckless indifference to Cairns' federally protected right to not be subjected to unwelcome and unwanted conduct of a sexual nature.

36.     As a direct and proximate result of Defendants' actions, Cairns was constructively discharged and suffered humiliation, inconvenience, mental distress, embarrassment, loss of income, and benefits.

WHEREFORE, Cairns demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

a.      That Defendants be ordered to reinstate Cairns into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.      That Defendants be required to compensate Cairns for the full value of wages she would have received had it not been for Defendants' illegal treatment of Cairns, with interest until the date Cairns is offered employment into a position substantially equivalent to the one which Cairns occupied at the time of her constructive discharge;

c.      That Defendants be required to provide Cairns with front pay if the Court determines reinstatement is not feasible;

d.      That Defendants be required to compensate Cairns for lost benefits, including profit sharing and/or pension benefits until Cairns' normal retirement date;

e.      That Cairns be awarded compensatory damages in an amount to be determined at trial;

f.      That Defendants be ordered to pay Cairns punitive damages;

g.      That Defendants be enjoined from discriminating or retaliating against Cairns in any manner prohibited by Title VII;

h.      That Cairns be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee;

i.      That Cairns be granted such further legal and equitable relief as the Court may deem just and proper.

**Count II**
**Title VII Retaliation**
**Plaintiff v. Defendants FAMSR and Defendants MDS**

37.     Plaintiff incorporates paragraphs 1 through 36 as if fully restated.

4

38.     Cairns' complaint to Constantino was in good faith opposition to discriminatory practices, which is protected activity under Title VII, 42 U.S.C. §2000e-3(a).

39.     Further, the letter from Cairns' counsel to Defendants FAMSR and MDS was also in good faith opposition to Defendants' discriminatory practices which is protected activity under Title VII, 42 U.S.C. §2000e-3(a).

40.     Following Cairns' complaint to Constantino and her attorney's letter protesting Defendants' discriminatory conduct, Defendants acting through their agents and employees, retaliated against Cairns by changing the terms and conditions of her employment.

41.     As a result of Defendants' retaliatory acts Defendants FAMSR and MDS constructively discharged Cairns.

42.     Defendants, acting through their agents and employees, thus retaliated against Cairns in violation of Title VII, 42 U.S.C. §2000e-3(a).

43.     Defendants' actions in constructively discharging Cairns because of her good faith complaints of gender discrimination were taken intentionally and with reckless indifference to Cairns' federally protected right to be free from retaliation for opposing discriminatory employment practices.

44.     As a result of Defendants' intentional discrimination against Cairns, Cairns has suffered and continues to suffer damages, including but not limited to lost wages and benefits, anxiety, loss of reputation, lost career opportunities, emotional distress, humiliation and inconvenience.

WHEREFORE, Cairns demands judgment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as amended by the Civil Rights Act of 1991 as follows:

a.      That Defendants be ordered to reinstate Cairns into the position she occupied prior to Defendants' discriminatory actions, together with all benefits incident thereto, including, but not limited to wages, benefits, training and seniority;

b.      That Defendants be required to compensate Cairns for the full value of wages she would have received had it not been for Defendants' illegal treatment of Cairns, with interest until the date Cairns is offered employment into a position substantially equivalent to the one which Cairns occupied at the time of her constructive discharge;

5

c.      That Defendants be required to provide Cairns with front pay if the Court determines reinstatement is not feasible;

d.      That Defendants be required to compensate Cairns for lost benefits, including profit sharing and/or pension benefits until Cairns' normal retirement date;

e.      That Cairns be awarded compensatory damages in an amount to be determined at trial;

f.      That Defendants be ordered to pay Cairns punitive damages;

g.      That Defendants be enjoined from discriminating or retaliating against Cairns in any manner prohibited by Title VII;

h.      That Cairns be awarded against Defendants the costs and expenses of this litigation, including a reasonable attorneys fee;

i.      That Cairns be granted such further legal and equitable relief as the Court may deem just and proper.

### Count III
### Battery
### Plaintiff v. Jeff Trank

45.      As set for the above Trank repeatedly caused unwanted contact with Cairns during October 14, 2000.  Such unwanted and offensive touching constitutes a battery.

46.      Cairns did not welcome Trank's contact, and was reasonably offended by such contact.

47.      As a result, Cairns suffered great pain of the body and anguish of mind and was otherwise damaged.

48.      The acts of Trank were done wantonly, recklessly, and with an absolute disregard for the health and welfare of Cairns.

WHEREFORE, Cairns demands judgment against Defendant Trank as follows:

a.      compensatory damages;

b.      punitive damages.

6

Respectfully submitted,

Ogg, Cordes, Murphy & Ignelzi

_____
Samuel J. Cordes
Mary R. Roman

Pa. I.D. No. 54874 (Cordes)
Pa. I.D. No. 78099 (Roman)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 471-8500

Attorneys for Plaintiff

7

(Rev. 3/99)

# CIVIL COVER SHEET

## 02  1236

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Shannon M. Cairns

**DEFENDANTS**

Factory Authorized Medical Scope Repair, Medical Device Solutions and Jeff Trank

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Washington
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Samuel J. Cordes
Mary R. Roman
Ogg, Cordes, Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA  15222   (412) 471-8500

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury — Med. Malpractice
☐ 365 Personal Injury — Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
HABEAS CORPUS:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)  Plaintiff was discriminated against

because of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(a)(1).

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
NONE
JUDGE _____  DOCKET NUMBER _____

DATE  7-15-02
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44A                                                    REVISED OCTOBER, 1993

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

### THIS CASE DESIGNATION SHEET MUST BE COMPLETED

**PART A**

This case belongs on the (_____ Erie_ _____ Johnstown _X_ Pittsburgh) calendar.

1. **ERIE CALENDAR** - If cause of action arose in the counties of Crawford, Elk, Erie, Forest, McKean, Venango or Warren, OR <u>any</u> plaintiff or defendant resides in one of said counties.
2. **JOHNSTOWN CALENDAR** - If cause of action arose in the counties of Bedford, Blair, Cambria, Clearfield or Somerset, OR <u>any</u> plaintiff or defendant resides in one of said counties.
3. Complete if on **ERIE CALENDAR**: I certify that the cause of action arose in _____ County and that the _____ resides in _____ County.
4. Complete if on **JOHNSTOWN CALENDAR**: I certify that the cause of action arose in _____ County and that the _____ resides in _____ County.

**PART B** (You are to check ONE of the following)

1. ___ This case is related to Number _____, Judge _____
2. _X_ This case is not related to a pending or terminated case.

### DEFINITIONS OF RELATED CASES:

**CIVIL:** Civil cases are deemed related when a case filed relates to property included in another suit, or involves the same issues of fact or it grows out of the same transactions as another suit, or involves the validity or infringement of a patent involved in another suit.

**EMINENT DOMAIN:** Cases in contiguous closely located groups and in common ownership groups which will lend themselves to consolidation for trial shall be deemed related.

**HABEAS CORPUS & CIVIL RIGHTS:** All habeas corpus petitions filed by the same individual shall be deemed related. All pro se Civil Rights actions by the same individual shall be deemed related.

**PART C**

1. **CIVIL CATEGORY** (Place x in only applicable category).
   1. ( )  Antitrust and Securities Act Cases
   2. ( )  Labor-Management Relations
   3. ( )  Habeas Corpus
   4. ( X )  Civil Rights
   5. ( )  Patent, Copyright, and Trademark
   6. ( )  Eminent Domain
   7. ( )  All other federal question cases
   8. ( )  All personal and property damage tort cases, including maritime, FELA, Jones Act, Motor vehicle, products liability, assault, defamation, malicious prosecution, and false arrest.
   9. ( )  Insurance indemnity, contract, and other diversity cases.
   10. ( )  Government Collection Cases (shall include HEW Student Loans (Education), VA Overpayment, Overpayment of Social Security, Enlistment Overpayment (Army, Navy, etc.), HUD Loans, GAO Loans (Misc. Types), Mortgage Foreclosures, S.B.A. Loans, Civil Penalties and Coal Mine Penalty and Reclamation Fees.)

I certify that to the best of my knowledge the entries on this Case Designation Sheet are true and correct.

Date: _7-15-02_                              _____
                                                ATTORNEY AT LAW

**NOTE: ALL SECTIONS OF BOTH SIDES MUST BE COMPLETED BEFORE CASE CAN BE PROCESSED.**